KARIN G. PAGNANELLI (SBN 174763), kgp@msk.com
MARC E. MAYER (SBN 190969), mem@msk.com
DANIEL A. KOHLER (SBN 285501), dxk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone:   (310) 312-2000
Facsimile:    (310) 312-3100

Attorneys for Plaintiffs Blizzard Entertainment, Inc. and Valve Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Blizzard Entertainment, Inc., and Valve Corporation,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Lilith Games (Shanghai) Co. Ltd., uCool, Inc., and uCool Ltd.,<br><br>　　　　　Defendants. | CASE NO. 3:15-CV-4084<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Blizzard Entertainment, Inc. ("Blizzard") and Valve Corporation ("Valve") (jointly "Plaintiffs"), for their Complaint against Defendants uCool, Inc., uCool Ltd. (collectively, "uCool"), and Lilith Games (Shanghai) Co., Ltd. ("Lilith") (collectively, the "Defendants"), allege as follows:

**Preliminary Statement**

1. Plaintiffs Blizzard and Valve are two of the most respected game developers and publishers in the world and the owners of copyrights in some of the most popular and critically-acclaimed games ever made, including "Warcraft III," "World of Warcraft," "Diablo III," and "Dota 2." Plaintiffs bring this lawsuit in order to put a stop to, and seek redress for, the ongoing and deliberate infringement of Plaintiffs' copyrights by Defendants through their video games "Dota Legends" (sometimes called "Sword and Tower" or "Dot Arena," among other names) and "Heroes Charge" (collectively, the "Infringing Games").

**Jurisdiction and Venue**

2. This is a civil action alleging copyright infringement under the Copyright Act, 17 USC § 501. This Court has exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1338.

3. This Court has personal jurisdiction over Defendants, including because Defendants have engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and have purposefully directed their activities at the United States and at California. Among other things, (a) each of the Defendants or their respective agents are doing or have been doing business continuously in the State of California and this District, (b) a substantial part of the wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Northern District of California, and (c) Defendants know that the damages and other harmful effects of Defendants' infringing activities occur in the United States and primarily in California, where Blizzard has its principal place of business and where Valve has a substantial number of customers. In addition to

the foregoing, Defendant Lilith has invoked the jurisdiction of this Court by filing a lawsuit in this District titled *Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc. et al.*, Case No. 3:15-cv-01267-SC.

4. Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District, including because Blizzard and Valve have suffered injury in this District and Defendants have directed their infringing activities to residents of this District.

**The Parties**

5. Blizzard is a Delaware corporation organized and existing under the laws of the State of California, having its principal place of business in Irvine, California. Among the computer games whose copyrights are owned by Blizzard are the games "Warcraft III," "World of Warcraft," "Starcraft II: Wings of Liberty," "Starcraft II: Heart of the Swarm," "Diablo," "Diablo II," "Diablo III," "Hearthstone," and "Heroes of the Storm."

6. Valve is a Washington corporation, having its principal place of business in Bellevue, Washington. Among the games published and owned by Valve is the computer game "Dota 2."

7. Plaintiffs are informed and believe, and on that basis allege, that defendant Lilith Games (Shanghai Co.) Ltd., is a mobile game developer and publisher located in Shanghai, China. Lilith purports to be the creator and distributor (either directly or through authorized licensees) of the popular mobile game known variously as (among other names) "Sword and Tower," "Dota Legends," and "Dot Arena." In addition, Plaintiffs are informed and believe, and on that basis allege, that on or about June 25, 2015, Lilith released in the United States another version of "Dota Legends" entitled "Soul Hunters." "Soul Hunters" is available, among other places, on the Apple App Store and Google Play platform.

8. Plaintiffs are informed and believe, and on that basis allege, that defendants uCool, Inc. and uCool, Ltd. are collectively a mobile game developer and publisher located in Menlo Park, California. uCool purports to be the creator and distributor of the mobile game "Heroes Charge."

**Blizzard and its Games**

9. Blizzard is a computer game developer and publisher, engaged in the business of developing, financing, producing, marketing and distributing high-quality computer software games. Among Blizzard's computer game products are some of the most successful and best-selling computer games in the world, including the "Warcraft," "Starcraft" and "Diablo" game franchises. Blizzard also is the publisher of the enormously popular computer and mobile card game "Hearthstone" (which incorporates characters and images from the "Warcraft" universe). In June 2015 Blizzard released "Heroes of the Storm," an online multiplayer game that brings together Blizzard's best-known characters from each of its major game franchises. Blizzard is the owner of valid and subsisting copyrights in each of the "Warcraft," "Diablo," and "Starcraft" games (including "Hearthstone" and "Heroes of the Storm") and in a variety of related products and merchandise (the "Blizzard Works").

10. All of the "Warcraft" games take place in the "Warcraft" universe, which is populated by an enormous variety of distinctive mythical creatures and characters, such as tech-savvy goblins, huge winged demons, bovine humanoids known as "Taurens," serpentine sea creatures known as "Naga," giant humanoid panda warriors known as "Pandaren," tall purple-skinned elves known as "Night Elves," sentient trees known as "Ancients," and hundreds of others. Many instances of these creatures are distinctive characters in their own right, with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories. Each of the characters that populate the "Warcraft" universe and other worlds created by Blizzard represents Blizzard's copyrightable expression and is subject to copyright protection.

11. Among Blizzard's copyrighted game products is the game "Warcraft III," which was released in 2002. In or about 2003, members of the Blizzard community, using "Warcraft III's" copyrighted graphical art assets, including the character art, sounds, and terrain models, created a "mod" (or "modification") to "Warcraft III" known as "Defense of the Ancients," or "DotA." "DotA" is a multiplayer game in which ten players (divided into two teams of five) each select a character (or "hero"), acquire experience (used to improve the hero's abilities) and money (used to acquire items), and then use their hero to attack and defeat the enemy team's stronghold.

"DotA" is the most popular "Warcraft III" mod ever created and has been played by millions of players. The style of game pioneered by "DotA" has come to be known as a "MOBA" or "multiplayer online battle arena."

### Valve and "Dota 2"

12. Valve is a computer game developer and publisher, engaged in the business of developing, producing, marketing and distributing high-quality computer software games. Among Valve's computer game products are some of the most successful and best-selling computer games in the world, including most recently, the game titled "Dota 2." Valve is the owner of a valid and subsisting copyright in "Dota 2" and in characters, images, artwork, and other copyrightable elements contained in that work (collectively, the "Valve Works.").

13. In "Dota 2," teams select from over 100 unique playable "hero" characters and engage in battle with each other on a computer-generated battlefield or "map." Each "Dota 2" hero starts the game with a single ability, and during the course of the game gains experience and gold, which unlock access to unique abilities, spells, and items. Each of "Dota 2's" heroes possesses a unique set of approximately four powers, which are displayed with unique animations (accompanied by sound effects and dialogue) when invoked in the game. These powers are an integral part of each hero's persona and presence within the game. Each of the characters that populate the world of Dota 2 represents Valve's copyrightable expression and is subject to copyright protection.

### Defendants and their Infringing Games

14. Defendants are two game developers, one (Lilith) based in Shanghai, China, and the other (uCool) based in Menlo Park, California. Defendants are in the business of making and distributing video games for mobile platforms such as the Apple iPhone and iPad and Android devices. Defendants offer their mobile titles on a "free-to-play" basis. Under this business model (known in the games industry as a "micro-transaction" model), Defendants do not charge users to download their game titles, but instead make money by selling to their users (for real currency)

virtual goods or "unlocks" such as new characters, character upgrades, weapons, and character customizations such as clothing and armor. Defendants' business thus relies on attracting a large body of users to download their games, knowing that only some portion of those users ultimately will play the game for a sustained period of time and spend money to unlock or acquire additional content.

15. Plaintiffs are informed and believe, and on that basis allege, that in or about February 2014, Lilith released in China the mobile game "Dota Legends," for the Android and iOS (Apple iPhone/iPad) platforms. The name "Dota Legends" is a specific reference to "DotA" and "Dota 2." "Dota Legends" has been downloaded millions of times, and is available for download in the United States, including on the Chinese language Apple App store accessible in the United States. Plaintiffs are informed and believe, and on that basis allege, that of the millions of downloads of "Dota Legends" many of these are by users located within the United States who make in-game purchases with payment methods denominated in U.S. dollars.

16. Plaintiffs are informed and believe, and on that basis allege, that Lilith also has created and distributed, or has caused to be created and distributed, an English-language version of "Dota Legends" known as "Dot Arena" (another reference to "DotA" and "Dota 2"). "Dot Arena" has been and currently is available for download, including in the United States, via the website www.dotarena.com (the "Dot Arena Website"). "Dot Arena" is localized for use in the United States, including by offering micro-transactions in exchange for U.S. dollars. The Dot Arena Website, which is entirely in English and accessible throughout the world, including in the United States, includes detailed images of each of the heroes and items contained in "Dot Arena." Plaintiffs are informed and believe, and on that basis allege, that except for its use of the English language, "Dot Arena" is substantively identical to "Dota Legends."

17. "Dota Legends," and "Dot Arena" (along with the game's other versions and permutations) (collectively, the "Lilith Games") purport to be mobile "action card games" that attempt to emulate the "style" of games such as "DotA" and "Dota 2." In the Lilith Games, players assemble a team of heroes from a roster of characters and battle a variety of monsters, demons, and other antagonists. As in "Dota 2," each hero either has or acquires certain special

abilities or spells that may be activated to trigger a short animation sequence and deal damage to enemies. Also, as in "Dota 2," much of the Lilith Games' strategy comes from building a team that takes advantage of each hero's strengths and weaknesses.

18. At present, the Lilith Games offer players a choice of more than 50 heroes, each with approximately four special powers or spells. Some of these heroes (and their powers) are available immediately upon starting the game, while others may be obtained only by purchasing or earning virtual coins to "unlock" them.

19. Plaintiffs are informed and believe, and on that basis allege, that in designing the Lilith Games, Lilith made a deliberate and concerted effort to re-create many of Blizzard and Valve's best-known and most recognizable characters. As a result, almost every one of the heroes available to players in the Lilith Games is a two-dimensional version of a character either from one of Blizzard's games (especially its "Warcraft" series of games) or from "Dota 2." In fact, in correspondence between Lilith and uCool, uCool specifically asserted that characters from "Dota Legends" are "unauthorized derivative works of copyrighted characters found in earlier multiplayer battle games such as Defense of the Ancients ("DOTA") and DOTA 2 (from which Lilith also takes the names of its game and characters), as well as World of Warcraft . . . ." This is not surprising; Lilith has demonstrated an ongoing pattern of conduct by which it intentionally appropriates Plaintiffs' intellectual property for its own gain. In fact, Plaintiffs are informed and believe that an affiliate company of Lilith, LongTu Games, has developed and/or recently published in Asia a game entitled "Star Legend," which appropriates and exploits iconic "StarCraft" characters, vehicles, settings, and other assets.

20. For many of the characters in the Lilith Games, Lilith also has copied Plaintiffs' character's spellbook or its set of special powers. Indeed, many of the action icons present in the Lilith Games appear to be directly appropriated from Plaintiffs' games. For example, "Dota Legends" and "Dot Arena" contain a character that resembles a sea captain, who has the ability to launch a ghostly pirate ship to stun and inflict damage to enemies. That character is copied from Dota 2's "Kunkaa the Admiral," whose powers include "Ghost Ship," by which Kunkaa "summons a ghostship to cut a swath through battle, causing damage and stuns to enemy units as

1 it crashes through." Plaintiffs also are informed and believe, and on that basis allege, that certain settings, terrain, background art, and other assets within the Lilith Games (as well as "Heroes Charge") infringe protected elements of their games.

21. Plaintiffs are informed and believe, and on that basis allege, that in or about August 2014, uCool released a game titled "Heroes Charge." "Heroes Charge" is extremely similar in gameplay, design, and appearance to the Lilith Games. In fact, Lilith has alleged in a separate lawsuit that "Heroes Charge" is a verbatim or near verbatim copy of the Lilith Games and copied Lilith's computer software source code.

22. "Heroes Charge," like the Lilith Games, is a mobile game in which the player builds a team from a roster of heroes and completes a series of objectives. Similarly, dozens of characters from "Heroes Charge" are derived from and substantially similar to Blizzard and Valve's characters, rendered in cartoonish, two-dimensional form.

23. Plaintiffs are informed and believe, and on that basis allege, that uCool either intentionally designed its heroes to emulate and copy Blizzard and Valve's characters or, more likely, appropriated the entirety of Lilith's characters (including their spells and special actions) and re-published them with minor and insubstantial changes. As a result, all or nearly all of uCool's publicly disclosed heroes are copied either from Blizzard or Valve, and/or copied from the Lilith Games, which copied their heroes from Blizzard and Valve.

24. Additionally, accompanying each of the heroes in "Heroes Charge" is a hand-drawn image of the character, representing the character in more detail and in a less cartoonish manner. Many, if not all, of these character portraits are copied or derived from images of characters in the "Warcraft" universe or "Dota 2." In fact, one of the images (of uCool's version of Blizzard's "Chen Stormstout" character), is a direct reference to the box art of the 2012 expansion to Blizzard's popular game "World of Warcraft," titled "Mists of Pandaria":

 

Other of uCool's character drawings are equally if not more blatant copies of Blizzard and Valve's characters, such as its "Savage One," derived from and substantially similar to Blizzard's Naga warrior, and "Emberstar," derived from Dota 2's "Lina."

25. "Heroes Charge," due in large part (if not entirely) to its use of look-alikes of Plaintiffs' characters, has been enormously successful. "Heroes Charge" is one of the top ranked games on the Apple App and Google Play Stores and has been downloaded millions of times. It has been publicly reported that uCool recently spent $2.25 million to run a 15-second advertisement for "Heroes Charge" during the 2015 Super Bowl, and thereafter launched a nationwide television campaign for the game. "Heroes Charge" continues to generate substantial revenue for uCool.

26. Plaintiffs are informed and believe, and on that basis allege, that both Lilith and uCool designed and marketed their games with the intention of capturing the attention of the tens of millions of consumers who are fans of Plaintiffs' games. They deliberately created substantially similar versions of Plaintiffs' characters in order to make their games immediately recognizable to the general public and to capture the appeal and popularity of Plaintiffs' games. Defendants did so in order to maximize the number of people downloading their games and then, in turn, to sell upgrades and virtual items to some portion of those players. In fact, uCool's users have repeatedly noted the similarity between uCool's "heroes" and Plaintiffs' characters: "we just love[] the fact they [the heroes] were Warcraft/Dota lookalikes and we would like to have it this way forever." Additionally, by withholding versions of some of Plaintiffs' most popular

characters until unlocked by game play or virtual currency, Plaintiffs encourage and induce their players to invest a substantial amount of time and money to ensure that they are able to play with those characters.

### FIRST CLAIM FOR RELIEF

### Copyright Infringement

(By Plaintiffs Against Lilith)

27. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 26, as if set forth fully herein.

28. Blizzard is the owner of valid and registered copyrights in each of the Blizzard Works.

29. Valve is the owner of valid and registered copyrights in each of the Valve Works.

30. Lilith has infringed, and is continuing to infringe, Blizzard and Valve's copyrights by reproducing, adapting, distributing, publicly performing, and publicly displaying, and authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display copyrighted elements of the Blizzard Works and Valve Works without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

31. Neither Blizzard nor Valve ever have authorized or given consent to Lilith to use their copyrighted works in the manner complained of herein.

32. Lilith's acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard and Valve.

33. As a direct and proximate result of the infringements alleged herein, Blizzard and Valve are entitled to damages and to Lilith's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Blizzard and Valve are entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

34. Blizzard and Valve further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

35. As a result of Lilith's acts and conduct, Blizzard and Valve have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard and Valve are informed and believe, and on that basis allege, that, unless enjoined and restrained by this Court, Lilith will continue to infringe Plaintiffs' rights in the Blizzard and Valve works. Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Lilith's continuing infringing conduct.

### SECOND CLAIM FOR RELIEF

**Copyright Infringement**

(By Plaintiffs Against uCool)

36. Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 35, as if set forth fully herein.

37. Blizzard is the owner of valid and registered copyrights in each of the Blizzard Works.

38. Valve is the owner of valid and registered copyrights in each of the Valve Works.

39. uCool has infringed, and is continuing to infringe, Blizzard and Valve's copyrights by reproducing, adapting, distributing, publicly performing, and publicly displaying, and authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display copyrighted elements of the Blizzard and Valve Works without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

40. Neither Blizzard nor Valve ever have authorized or given consent to uCool to use their copyrighted works in the manner complained of herein.

41. uCool's acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard and Valve.

42. As a direct and proximate result of the infringements alleged herein, Blizzard and Valve are entitled to damages and to uCool's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Blizzard and Valve are entitled to maximum statutory

damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

43. Blizzard and Valve further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

44. As a result of uCool's acts and conduct, Blizzard and Valve have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard and Valve are informed and believe, and on that basis allege, that, unless enjoined and restrained by this Court, uCool will continue to infringe Plaintiffs' rights in the Blizzard and Valve works. Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin uCool's continuing infringing conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor on each and every claim for relief set forth above and awarding them relief including, but not limited to, an Order:

1. Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, licensees, internet service providers, and all persons acting in concert or participation with them from infringing Plaintiffs' copyrighted works, including by copying, selling, marketing, distributing, or publicly performing the Lilith Games, "Heroes Charge," or any substantially similar product.

2. Requiring Defendants to deliver to Plaintiffs all copies of materials that infringe or violate any of Plaintiffs' rights described herein.

3. Requiring Defendants to provide Plaintiffs with an accounting of any and all sales of products or services that infringe or violate any of Plaintiffs' rights.

4. Awarding Plaintiffs monetary relief including damages sustained by Plaintiffs in an amount not yet determined, including actual damages and/or Defendants' profits, or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. § 504, as appropriate.

5. Awarding Plaintiffs their costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and other applicable laws.

6. Awarding such other and further relief as this Court may deem just and appropriate.

DATED: September 8, 2015

        KARIN G. PAGNANELLI
        MARC E. MAYER
        DANIEL A. KOHLER
        MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Marc E. Mayer
     Marc E. Mayer
     Attorneys for Plaintiffs Blizzard
     Entertainment, Inc. and Valve Corporation

7059327.2
12     CASE NO. 3:15-cv-4084
**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

## JURY DEMAND

Plaintiffs Blizzard Entertainment, Inc. and Valve Corporation hereby demand a trial by jury on all matters and issues so triable.

DATED: September 8, 2015

KARIN G. PAGNANELLI
MARC E. MAYER
DANIEL A. KOHLER
MITCHELL SILBERBERG & KNUPP LLP


By: /s/ Marc E. Mayer
    Marc E. Mayer
    Attorneys for Plaintiffs Blizzard
    Entertainment, Inc. and Valve Corporation