IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., AND VALVE CORPORATION,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>LILITH GAMES (SHANGHAI) CO. LTD., AND UCOOL, INC.,<br><br>　　　　Defendants. | No. 3:15-cv-04084-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

Video game developers Blizzard Entertainment, Inc. ("Blizzard") and Valve Corporation ("Valve") sued Lilith Games (Shanghai) Co. Ltd ("Lilith") and uCool, Inc. ("uCool") for copyright infringement under 17 U.S.C. § 101 et seq. See Compl. (dkt. 1) ¶¶ 30, 39. As copyright holders of well-known video games, Blizzard and Valve (collectively, "Plaintiffs") allege that Lilith and uCool's mobile games impermissibly copied the characters, "settings, terrain, background art, and other assets" from Plaintiffs' numerous video game franchises. See id. ¶¶ 9–13, 19–24. uCool, acting independently of its co-defendant, moves to dismiss Plaintiffs' Second Claim for Relief—that is, their sole claim against uCool—under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) or, alternatively, moves for a more definite statement under FRCP 12(e). Mot. to Dismiss (dkt. 20) ("MTD") at 1, 3 n.3. Because Plaintiffs fail to state a plausible claim for copyright infringement, the Court GRANTS uCool's motion to dismiss WITH LEAVE TO AMEND.

## I. BACKGROUND

Blizzard and Valve are well-known video game developers and copyright owners of the popular video game franchises "Warcraft," "World of Warcraft," "Warcraft III," "Starcraft," "Diablo," "Defense of the Ancients" or "DotA," "DotA 2,"[1] and others (collectively, "Warcraft Works"). See Compl., ¶¶ 1, 5–6, 9, 11; Supplemental Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (dkt. 18) ("Supplemental Report").

> All of the "Warcraft" games take place in the "Warcraft" universe, which is populated by an enormous variety of distinctive mythical creatures and characters, such as techsavvy goblins, huge winged demons, bovine humanoids known as "Taurens," serpentine sea creatures known as "Naga," giant humanoid panda warriors known as "Pandaren," tall purple-skinned elves known as "Night Elves," sentient trees known as "Ancients," and hundreds of others. Many instances of these creatures are distinctive characters in their own right, with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories. Each of the characters that populate the "Warcraft" universe and other worlds created by Blizzard represents Blizzard's copyrightable expression and is subject to copyright protection.

Id. ¶ 10. In addition to asserting copyright ownership of the Warcraft Works and the characters therein, Plaintiffs also assert copyright ownership of "a variety of related products and merchandise." Id. ¶¶ 9–10, 12, 37–38; see also Supplemental Report.

In their Complaint filed on September 8, 2015, Plaintiffs allege that mobile video games created by defendants Lilith and uCool—games called "DotA Legends" and "Heroes Charge," respectively—infringe on Plaintiffs' copyrights in the Warcraft Works. Id. ¶¶ 19–22, 30, 39. Plaintiffs contend that Lilith and uCool copied the characters, "settings, terrain, background art, and other assets" in those games. See id. ¶ 22. Before uCool filed this motion, Plaintiffs submitted a report purporting to contain "a comprehensive list of the copyright registrations at issue . . . listing each copyright registration and the corresponding plaintiff [to whom it belongs]." See Supplemental Report (dkt. 18); Opp'n at 5.

Although Plaintiffs do not expressly specify any allegedly infringing settings, terrain, and background art, they assert that "almost every one of the hero[] [characters] available in

---

[1] Blizzard owns the copyright in all of the aforementioned video games with the exception of "Dota 2," which Valve owns. Compl. ¶¶ 1, 5–6, 9, 12.

2

the Lilith Games," which were in turn allegedly copied by uCool,[2] "is a two-dimensional version of a character either from one of Blizzard's games . . . or from Dota 2." Id. ¶ 19. Moreover, "dozens of characters from 'Heroes Charge' are derived from and substantially similar to Blizzard and Valve's characters, rendered in cartoonish, two-dimensional form." Id. at 22. Plaintiffs allege that Lilith's "DotA Legends" copied Warcraft "spells" (or in-game abilities), special powers, and icons.[3] Id. at 20. As to uCool, Plaintiffs allege that "[m]any if not all" of the hand-drawn character portraits that accompany the heroes in "Heroes Charge" "are copied or derived from images of characters in the 'Warcraft' universe or 'Dota 2.'" Id. at 24. Plaintiffs cite three examples of uCool's characters with allegedly infringing portraits: uCool's anthropomorphized panda warrior, allegedly derived from Blizzard's "Chen Stormstout"; uCool's "Savage One," allegedly derived from Blizzard's Naga warrior; and "Emberstar," allegedly derived from Dota 2's character "Lima." Id.

Plaintiffs request that the Court grant, among other things, preliminary and permanent injunctions, "monetary relief . . . including actual damages and/or Defendants' profits, or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. § 504," as well as costs and attorneys' fees pursuant to 17 U.S.C. § 505. See id. Prayer for Relief ¶¶ 1–6.

In October 2015, uCool, acting for itself and not its co-defendant, filed this motion to dismiss under FRCP 12(b)(6) and for a more definite statement under FRCP 12(e).

---

[2] In their opposition papers, Plaintiffs' cite to Lilith Games (Shanghai) Co. v. UCool, Inc., No. 15-CV-01267-SC, 2015 WL 5591612 (N.D. Cal. Sept. 23, 2015), an ongoing case between the co-defendants in the instant case. Opp'n at 4. There, the court denied Lilith's request for a preliminary injunction against uCool because Lilith had not shown a likelihood of irreparable harm. Lilith Games, 2015 WL 5591612, at *13–14. Judge Conti nevertheless determined that uCool's "Heroes Charge" and Lilith's "DotA Legends" were "almost identical from the user's standpoint, with only minor modifications." Id. at *9; see also Compl. ¶ 23 (contending that uCool likely "appropriated the entirety of Lilith's characters . . . and re-published them with minor and insubstantial changes.").

[3] Although Plaintiffs do not specifically assert that uCool copied the same aspects of these characters, they allege that "all or nearly all of uCool's publicly disclosed heroes are copied either from Blizzard or Valve, and/or copied from the Lilith Games, which copied their heroes from Blizzard and Valve." Compl. at 23.

3

## II. LEGAL STANDARD

### A. Motion to Dismiss

A complaint that fails to state a claim upon which relief may be granted is subject to dismissal under Rule 12(b)(6). See Fed. R. Civ. P. 12(b)(6). The dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In ruling on a 12(b)(6) motion, the Court accepts "all well-pleaded allegations of material fact" and draws all reasonable inferences in favor of the nonmoving party, but the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

To state a claim for copyright infringement, a complaint must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Rice v. Fox Broad. Co., 330 F.3d 1170, 1174 (9th Cir. 2003) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Motion for a More Definite Statement

Under Rule 12(e), "[a] party may move for a more definitive statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A Rule 12(e) motion for a more definite statement must be considered in light of the liberal pleading standards set forth in [Rule] 8(a)(2)." Comm. for Immigrant Rights of Sonoma Cty. v. County of Sonoma, 644 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009). "A motion for a more definite statement is proper

4

1 only where the complaint is so vague or ambiguous that the opposing party cannot respond,
2 even with a simple denial, in good faith or without prejudice to himself." Id. 1192 (internal
3 quotation omitted).  The motion should be denied "if the detail sought by a motion for more
4 definite statement is obtainable through discovery." Beery v. Hitachi Home Elecs. (Am.),
5 157 F.R.D. 477, 480 (C.D. Cal. 1993); see also Bureerong v. Uvawas, 922 F. Supp. 1450,
6 1461 (C.D. Cal. 1996) (citation omitted) ("A motion for a more definite statement attacks
7 unintelligibility in a pleading, not simply mere lack of detail.").

## III. DISCUSSION

uCool argues that the Court should dismiss the Complaint for failure to state a claim or, alternatively, order Plaintiffs to provide a more definite statement. For the following reasons, the Court GRANTS the motion to dismiss WITH LEAVE TO AMEND.

### A. Copyright Ownership of Plaintiffs' Works

To state a claim for copyright infringement a plaintiff must plausibly allege two elements: (1) ownership of a valid copyright, and (2) copying of constituent parts of the work that are original. See Feist, 499 U.S. at 361; Rice, 330 F.3d at 1174; Salt Optics, Inc. v. Jand, Inc., No. SACV 10-0828 DOC, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010). With respect to ownership, uCool argues that Plaintiffs fail to identify "a single copyright they claim uCool infringes" or "the owner of any copyright they claim uCool infringes," particularly the owner of "Dota 2." MTD at 7. uCool further raises the prospect "that either Blizzard or Valve lack standing to bring suit, because the copyrights at issue might be owned by the other plaintiff." Id. at 9.

These contentions are without merit. Plaintiffs have alleged that they own the copyrights in the Warcraft Works, see Compl. ¶¶ 5–6, 9, 11; see also Supplemental Report,[4]

---

[4] uCool contends that the Court may not consider Plaintiffs' Supplemental Report because "this document was not referenced in the complaint." MTD at 3 n.3. Even so, courts may take judicial notice of "matters of public record" where the facts therein are not subject to "reasonable dispute." Id. (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)); Fed. R. Evid. 201; see also Leghorn v. Wells Fargo Bank, 950 F. Supp 1093, 1106 (N.D. Cal. 2013) (taking judicial notice of a matter of public record because the party opposing judicial notice made no efforts to dispute the public record itself). Plaintiffs' Supplemental Report, a filing with the U.S. Copyright Office, meets this criteria and is thus judicially noticeable. See id.

5

and that these are the copyrights they generally accuse uCool of infringing, see Compl. ¶ 23 ("[A]ll or nearly all of uCool's publicly disclosed heroes [from 'Heroes Charge'] are copied either [directly or indirectly] from Blizzard and Valve."). The Complaint also makes clear that, whereas Valve owns the copyright in "Dota 2," Blizzard owns the remaining copyrights in the Warcraft Works. Compl. ¶¶ 5–6; see also Opp'n at 5 (emphasis omitted) (asserting that Plaintiffs' Supplemental Report contains "a comprehensive list of the copyright registrations at issue" in this case[5]). Given Plaintiffs' allegations that "Heroes Charge" infringes on at least one copyrighted work of Blizzard and of Valve, uCool's standing argument fails on its own terms. Moreover, contrary to uCool's assertion that "[t]here is [] no way for uCool or the Court to determine from the face of the Complaint what works are at issue," MTD at 8, Plaintiffs have identified numerous allegedly infringed copyrights and their respective owners, see Compl. ¶¶ 5–6, 9, 11; see also Supplemental Report. The Court thus concludes that Plaintiffs have plausibly alleged "ownership of a valid copyright." See Feist, 499 U.S. at 361; Rice, 330 F.3d at 1174

### B. Copyrightability of Plaintiffs' Characters

"One aspect of the [Feist] ownership element is the copyrightability of the subject matter and, more particularly, the scope of whatever copyright lies therein." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1476 (9th Cir. 1992)). Moreover, the second Feist prong, regarding copying of constituent elements of an original work, requires plaintiffs to allege "that the works at issue are substantially similar in their protected elements." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); see Feist, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. . . . [C]opyright protection may extend only to those components of a work that are original to the author.").

---

[5] uCool questions the accuracy this statement, and with good reason. See MTD at 4. The Complaint asserts a copyright in one game, "Heroes of the Storm," that was released nearly one year after uCool published "Heroes Charge." Id.; Comp'l ¶ 9. Plaintiffs do not address this issue in their opposition papers.

As part of the Ninth Circuit's "extrinsic test" for substantial similarity, courts must determine whether any of the allegedly similar features of the works at issue are plausibly protected by copyright. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994); see also Symantec, 960 F.2d at 1476 ("Analytic dissection is relevant not only to the copying element of a copyright infringement claim, but also to the claim's ownership element."). This is a question of law. See Cavalier, 297 F.3d at 823. Here, to the extent that Plaintiffs accuse uCool of copying Plaintiffs' characters as well as "settings, terrain, background art, and other assets," Plaintiffs must also demonstrate the copyrightability of these elements. Compl. ¶ 20.

Characters are not ordinarily entitled to copyright protection. Rice, 330 F.3d at 1175; see also DC Comics v. Towle, 802 F.3d 1012, 1019 (9th Cir. 2015) ("Not every comic book, television, or motion picture character is entitled to copyright protection."). The Ninth Circuit has held that "copyright protection is available only 'for characters that are especially distinctive.' To meet this standard, a character must be 'sufficiently delineated' and display 'consistent, widely identifiable traits.'" Towle, 802 F.3d at 1019 (citation omitted); see also Identity Arts v. Best Buy Enter. Servs. Inc., No. C 05-4656 PJH, 2007 WL 1149155, at *15 (N.D. Cal. Apr. 18, 2007) (dismissing for failure to state a claim where complaint was devoid of facts identifying the character "by attribute or demeanor, or any other characteristic that would allow the court to extend copyright protection"). The scenes-à-faire doctrine excludes from copyright protection "'stock' characters and plots in dramatic works and 'now encompasses stereotyped expression, standard or common features in a wide variety of works, including audiovisual works generated by computers.'" Capcom U.S.A., Inc. v. Data E. Corp., No. C 93-3259 WHO, 1994 WL 1751482, at *6 (N.D. Cal. Mar. 16, 1994) (alteration in original) (quoting Apple Comput., Inc. v. Microsoft Corp., 799 F. Supp. 1006, 1021 (N.D. Cal. 1992)).

Here, Plaintiffs cite DC Comics v. Towle to establish the copyrightability of the Warcraft Works. Towle outlined a three-part test for determining whether a character is entitled to copyright protection: (1) "the character must generally have physical as well as

conceptual qualities," (2) "the character must be sufficiently delineated to be recognizable as the same character whenever it appears . . . [c]onsidering the character as it has appeared in different productions, it must display consistent, identifiable character traits and attributes, although the character need not have a consistent appearance," and (3) "the character must be especially distinctive and contain some unique elements of expression." See 802 F.3d at 1021 (citations omitted). The court in Towle applied this test and determined that "D.C. [Comics] retained its copyright in the Batmobile character even though its appearance in the 1966 and 1989 productions did not directly copy any comic book depiction." Towle, 802 F.3d at 1025; Opp'n at 10. The Ninth Circuit, however, extended copyright protection to the Batmobile "character" only after extensively cataloging the car's distinctive characteristics:

> In addition to its status as "a highly-interactive vehicle, equipped with high-tech gadgets and weaponry used to aid Batman in fighting crime," the Batmobile is almost always bat-like in appearance, with a bat-themed front end, bat wings extending from the top or back of the car, exaggerated fenders, a curved windshield, and bat emblems on the vehicle. This bat-like appearance has been a consistent theme throughout the comic books, television series, and motion picture, even though the precise nature of the bat-like characteristics have changed from time to time.
>
> The Batmobile also has consistent character traits and attributes. No matter its specific physical appearance, the Batmobile is a "crime-fighting" car with sleek and powerful characteristics that allow Batman to maneuver quickly while he fights villains. In the comic books, the Batmobile is described as waiting "[l]ike an impatient steed straining at the reins . . . shiver[ing] as its super-charged motor throbs with energy" before it "tears after the fleeing hoodlums" an instant later . . . . Furthermore, the Batmobile has an ability to maneuver that far exceeds that of an ordinary car. In the 1966 television series, the Batmobile can perform an "emergency bat turn" via reverse thrust rockets. Likewise, in the 1989 motion picture, the Batmobile can enter "Batmissile" mode, in which the Batmobile sheds "all material outside [the] central fuselage" and reconfigures its "wheels and axles to fit through narrow openings."
>
> Equally important, the Batmobile always contains the most up-to-date weaponry and technology. At various points in the comic book, the Batmobile contains a "hot-line phone . . . directly to Commissioner Gordon's office" maintained within the dashboard compartment, a "special alarm" that foils the Joker's attempt to steal the Batmobile, and even a complete "mobile crime lab" within the vehicle. Likewise, the Batmobile in the 1966 television series possesses a "Bing-Bong warning bell," a mobile Bat-phone, a "Batscope, complete with [a] TV-like viewing screen on the dash," and a "Bat-ray." Similarly, the Batmobile in the 1989 motion picture is equipped with a "pair of forward-facing Browning machine guns," "spherical bombs," "chassis-mounted shinbreakers," and "side-mounted disc launchers."

Towle, 802 F.3d at 1021–22.

Here, by contrast, although Plaintiffs allege that "dozens of characters from 'Heroes Charge' are derived from and substantially similar to Blizzard and Valve's characters," they plead no facts demonstrating that any one of the dozens of characters are plausibly copyrightable. Compl. ¶ 22. Instead, Plaintiffs make conclusory statements that their characters are "distinctive . . . with names, distinctive physical appearances, clothing, weapons, traits, abilities, and ongoing stories." Id. ¶ 10; see also id. ("Each of the characters that populate the 'Warcraft' universe and other worlds created by Blizzard represents Blizzard's copyrightable expression and is subject to copyright protection."); id. ¶ 13 ("Each of the characters that populate the world of Dota 2 represents Valve's copyrightable expression and is subject to copyright protection.").

Given that the Court need not accept as true conclusory allegations, see Daniels–Hall, 629 F.3d at 998, Plaintiffs have failed to meet their burden of alleging—with sufficient detail—copyright ownership in the characters from the Warcraft Works, see Gorski v. The Gymboree Corp., No. 14-CV-01314-LHK, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014) ("[T]he Court concludes that Gorski has not alleged any protectable elements, [thus] Gorski has not alleged sufficient facts to suggest that Gorski's designs can pass the extrinsic test for substantial similarity."). The Court thus GRANTS uCool's motion to dismiss WITH LEAVE TO AMEND.

### C. Failure to Plead a Representative Infringements

uCool contends that Plaintiffs fail to identify the aspects of Plaintiffs' works that "Heroes Charge" infringes. MTD at 7. The second Feist prong—whether a defendant has copied constituent elements of a protected work—does not require Plaintiffs to specify each and every instance of infringement at the pleadings stage. "To avoid unwieldiness, courts have approved a complaint that simply alleges representative acts of infringement, rather than a comprehensive listing." 3 M. & D. Nimmer, Nimmer on Copyright § 12.09[A][2] (Rev. Ed.)); see also Perfect 10, Inc. v. Cybernet Ventures, Inc., 167 F. Supp. 2d 1114, 1120–21 (C.D. Cal. 2001).

Here, despite their assertions to the contrary, Plaintiffs provide no such representative infringement. Instead, they make only general allegations: "[D]ozens of characters from 'Heroes Charge' are derived from and substantially similar to Blizzard and Valve's characters," Compl. ¶ 22; "all or nearly all of uCool's publicly disclosed heroes are copied," id. ¶ 23; "certain settings, terrain, background art, and other assets . . . infringe protected elements of their games," id. ¶ 20; and "[m]any, if not all, of these character portraits are copied or derived from images of characters in the "Warcraft" universe or "Dota 2," id. ¶ 24.

As it stands, Plaintiffs' sweeping allegations fail to apprise uCool or the Court of which "Heroes Charge" characters infringe which characters from which of Blizzard or Valve's numerous games, "related products and merchandise."[6] Id. ¶¶ 9–10; see Supplemental Report (listing more than fifty copyrights). If, as Plaintiffs contend, dozens of characters are at issue—not to mention "settings, terrain, background art, and other assets"—then a plausible claim would require that Plaintiffs submit a representative sampling of infringed content, pleading infringement with the level of detail required by the Ninth Circuit and establishing that the content and characters at issue are copyrightable.

Absent such representative acts of infringement, the Court cannot meaningfully evaluate the plausibility of Plaintiffs' allegations regarding the appropriation of Plaintiffs' copyrighted Warcraft Works content. See Cutler v. Enzymes, Inc., No. C 08-04650 JF (RS), 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009) (dismissing for failure to state a claim that is plausible on its face where "the complaint alleges far fewer discrete facts than did the

---

[6] Where Plaintiffs provide a sampling—albeit scant—of allegedly infringed characters, they do so only in the context of allegedly infringing character portraits. See id. ¶ 25 (discussing the portraits of Chen Stormstout," the "Naga" warrior, and the character "Lina"). The copying of such portraits does little to support Plaintiffs' principal allegation that uCool appropriated these characters (and "dozens" more) wholesale—i.e., "whether [uCool's] in-game character models are substantially similar to their analogs in plaintiff's works." Opp'n at 12.

In their opposition papers, Plaintiffs do allege wholesale copying of only one of their characters, "Chen Stormstout." See Opp'n at 14 ("uCool slavishly copied 'Chen Stormstout' down to the most minute detail, including by copying his clothing, weapons, equipment, facial expression, beard, pose, special powers, and even the shape, color, and details of Chen's ceramic jug, beer barrel, bamboo staff, and hat design."). Such allegations are too little, too late. See Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

10

complaint in Perfect 10"). Consequently, the Court GRANTS uCool's motion to dismiss WITH LEAVE TO AMEND.

### D. Motion for a More Definite Statement

uCool moves for a more definite statement under Rule 12(e) because, it contends, the Complaint provides insufficient "notice of what Plaintiffs claim they own that Heroes Charge allegedly infringes." MTD at 14–15. uCool petitions the Court to "require that Blizzard/Valve specifically allege which works are at issue, which copyright registrations are at issue, and what aspects of Heroes Charge they allege infringes." Id. Given that the Court concludes that the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6), it need not reach uCool's Rule 12(e) request. Should Plaintiffs elect to file an amended complaint, they are obliged to cure the deficiencies identified in this Order.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS uCool's motion to dismiss WITH LEAVE TO AMEND. Plaintiffs should be allowed an opportunity to add the additional detail required by Ninth Circuit case law to their complaint, thereby plausibly establishing with a representative sampling both the copyrightability of their work and infringement.

**IT IS SO ORDERED.**

Dated: December 8, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE