1  KARIN G. PAGNANELLI (SBN 174763), kgp@msk.com
   MARC E. MAYER (SBN 190969), mem@msk.com
2  DANIEL A. KOHLER (SBN 285501), dxk@msk.com
   MITCHELL SILBERBERG & KNUPP LLP
3  11377 West Olympic Boulevard
   Los Angeles, CA  90064-1683
4  Telephone:   (310) 312-2000
   Facsimile:    (310) 312-3100
5
6  Attorneys for Plaintiffs Blizzard
   Entertainment, Inc. and Valve Corporation
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10
11
12  Blizzard Entertainment, Inc., and Valve        CASE NO. 3:15-CV-04084-CRB
    Corporation,
13                                                 **FIRST AMENDED COMPLAINT FOR**
                    Plaintiffs,                     **COPYRIGHT INFRINGEMENT**
14
             v.                                    **DEMAND FOR JURY TRIAL**
15
16  Lilith Games (Shanghai) Co. Ltd., uCool, Inc.,
    and uCool Ltd.,
17
                    Defendants.
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

7325825.4

1    Plaintiffs Blizzard Entertainment, Inc. ("Blizzard") and Valve Corporation ("Valve")

2    (jointly "Plaintiffs"), for their First Amended Complaint against Defendant uCool, Inc. ("uCool"),

3    and Lilith Games (Shanghai) Co., Ltd. ("Lilith") (collectively, the "Defendants"), allege as

4    follows:

5

6                                **Preliminary Statement**

7        1.        This is an action for copyright infringement.  Plaintiffs, two of the most successful

8    and renowned game developers and publishers in the world, seek to put a stop to, and to obtain

9    redress for, the bad faith and deliberate copying by Defendants of Plaintiffs' copyrighted computer

10   games – including the world-famous games "Warcraft III," "World of Warcraft," and "Dota 2" –

11   in Defendants' mobile games titled "Dota Legends" (also known as "Dot Arena") and "Heroes

12   Charge."

13       2.        Defendants have extensively appropriated some of the most unique and best-

14   known elements of Plaintiffs' groundbreaking games.  Defendants' infringement of Plaintiffs'

15   copyrights is pervasive and permeates the entirety of their games.  Defendants gave most, if not

16   all, of their 40-plus "heroes" visual depictions that are copied or derived from unique creatures and

17   characters featured and depicted in Plaintiffs' works and endowed these "heroes" with the same or

18   substantially similar appearance, in-game roles, unique special abilities, and functions as their

19   counterparts in Plaintiffs' games.  Defendants incorporated into their games locations and

20   landmarks from Blizzard's Warcraft games, including the famous "Dark Portal," and the fictional

21   city of "Silvermoon."  Defendants copied Blizzard's in-game icons almost verbatim.  In the case

22   of uCool, Defendant used as its theme music one of Blizzard's most popular musical compositions

23   from the game World of Warcraft (titled "Stonefire").  While many of these discrete acts of

24   copying are themselves actionable infringements, when all of these uses are taken collectively it is

25   clear that Defendants' games infringe Plaintiffs' works.

26       3.        Defendants' copying is knowing and intentional, and deliberately calculated to

27   profit from the worldwide popularity of Plaintiffs' works.  Their strategy has been successful.  The

28

Mitchell
Silberberg &
Knupp LLP

7325825.4

1    popular gaming news site Kotaku explained that Dota Legends features "traditional Warcraft

2    characters."  Meanwhile, uCool's users have repeatedly noted the similarity between Heroes

3    Charge and Plaintiffs' games, commenting that: "I just love[] the fact they [the heroes] were

4    Warcraft/Dota lookalikes," "I play Heroes Charge because I love DotA," and "Heroes Charge is a

5    DOTA 2 replica in terms of graphic designs."  This Court should put a stop to Defendants'

6    ongoing acts of infringement.

7

8                                    **Jurisdiction and Venue**

9              4.       This is a civil action alleging copyright infringement under the Copyright Act, 17

10   U.S.C. § 501.  This Court has exclusive subject matter jurisdiction over these claims pursuant to

11   28 U.S.C. § 1338.

12             5.       This Court has personal jurisdiction over Defendants, including because

13   Defendants have engaged in, contributed to, and induced the infringing conduct at issue within the

14   United States and the State of California and have purposefully directed their activities at the

15   United States and at California.  Among other things, (a) each of the Defendants or their respective

16   agents are doing or have been doing business continuously in the State of California and this

17   District, (b) a substantial part of the wrongful acts committed by Defendants, and each of them,

18   have occurred in interstate commerce, in the State of California, and in the Northern District of

19   California, and (c) Defendants know that the damages and other harmful effects of Defendants'

20   infringing activities occur in the United States and primarily in California, where Blizzard has its

21   principal place of business and where Valve has a substantial number of customers.  In addition to

22   the foregoing, Defendant Lilith has invoked the jurisdiction of this Court by filing a lawsuit in this

23   District titled *Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc. et al.*, Case No. 3:15-cv-01267-

24   LHK.

25             6.       Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a substantial part

26   of the events giving rise to the claims alleged in this Complaint occurred in this District, including

27   because Blizzard and Valve have suffered injury in this District and Defendants have directed their

28   infringing activities to residents of this District.

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**The Parties**

7.      Blizzard is a Delaware corporation organized and existing under the laws of the State of California, having its principal place of business in Irvine, California.  Among the computer games whose copyrights are owned by Blizzard are the games "Warcraft III," "World of Warcraft," "Starcraft II: Wings of Liberty," "Diablo III," "Hearthstone," and "Heroes of the Storm."

8.      Valve is a Washington corporation, having its principal place of business in Bellevue, Washington.  Among the games published and owned by Valve is the computer game "Dota 2."

9.      Plaintiffs are informed and believe, and on that basis allege, that defendant Lilith Games (Shanghai Co.) Ltd., is a mobile game developer and publisher located in Shanghai, China. Lilith purports to be the creator and distributor (either directly or through authorized licensees) of the popular mobile game known variously as (among other names) "Dota Legends," "Sword and Tower," and "Dot Arena."  In addition, Plaintiffs are informed and believe, and on that basis allege, that on or about June 25, 2015, Lilith released in the United States another version of Dota Legends titled "Soul Hunters." Soul Hunters is available, among other places, on the Apple App Store and Google Play platform.

10.      Plaintiffs are informed and believe, and on that basis allege, that defendant uCool, Inc. is a mobile game developer and publisher located in Menlo Park, California.  uCool purports to be the creator and distributor of the mobile game "Heroes Charge."

**Blizzard and its Games**

11.      Blizzard is a computer game developer and publisher, engaged in the business of developing, producing, marketing and distributing high-quality computer software games.  Among Blizzard's computer game products are the most successful and best-selling computer games in the world, including Warcraft III, World of Warcraft, Starcraft II and Diablo III.  Blizzard also is the publisher of the enormously popular computer and mobile game "Hearthstone," a digital playing card game that incorporates characters and images from its Warcraft games and related

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Mitchell
Silberberg &
Knupp LLP

7325825.4

1   products.  Beginning in March of 2014, Blizzard released to members of the public the game

2   "Heroes of the Storm," an online multiplayer game that brings together Blizzard's best-known

3   characters from each of its major game franchises.  Heroes of the Storm was released to the public

4   in final form in June 2015 and was highly publicized for years before its release.

5          12.     Blizzard is the owner of valid and subsisting copyrights in each of the Warcraft,

6   Diablo, and Starcraft games (including Hearthstone and Heroes of the Storm) and in related

7   products and merchandise (the "Blizzard Works").  A list of the Blizzard Works is set forth in

8   **Schedule A** and incorporated by reference herein.  Blizzard licenses its works for use in comic

9   books, novels, action figures, toys, board games, card games, posters, clothing, and plush toys.

10  Blizzard has also created hundreds of pieces of artwork depicting its games, many of which were

11  used to create the creatures and characters in its games.  Blizzard has published that artwork on its

12  Internet websites and in books such as "the Art of Warcraft," and "the Art of World of Warcraft."

13         13.     Among Blizzard's most popular games are the Warcraft series of games.  The first

14  Warcraft game, "Warcraft: Orcs and Humans," was released in 1994, followed by "Warcraft II" in

15  1995, and Warcraft III in 2002.  The original Warcraft series of games are computer strategy

16  games, in which the player takes control of an army of fantastical creatures and engages in battle

17  with opponents across a persistent series of mythical landscapes.  In 2004, Blizzard released the

18  hugely popular and groundbreaking game World of Warcraft, an online role-playing game

19  featuring the locations, characters, monsters, and "lore" (*i.e.,* mythical history) first developed in

20  the Warcraft strategy games.  The Warcraft games are among the most successful games ever

21  created, have been played by millions of people around the world, and have won countless

22  industry awards.

23         14.     All of the Warcraft games take place in the same fictional universe: the world of

24  "Azeroth."  Azeroth is a fully-realized fantasy world that is home to a diverse set of unusual and

25  distinctive mythical creatures.  The creatures that inhabit the Warcraft universe are depicted

26  visually within the games and appear consistently throughout the Warcraft games.  Blizzard's

27  unique depiction of its fictional creatures, characters, and locations is expressed in the Warcraft

28

Mitchell
Silberberg &
Knupp LLP

7325825.4

4                    CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1  games themselves and in comic books, art books, posters, action figures, board games, tabletop

2  role-playing games, and other ancillary and tie-in products.

3        15.    All of the creatures and characters in Warcraft are depicted and portrayed in a

4  distinct and consistent manner that is starkly different from depictions of fantasy worlds in classic

5  mythology or other video games, board games, or role-playing games.  For example, Warcraft's

6  "Night Elves" are depicted as tall (sometimes antlered), purple-skinned humanoids with huge,

7  exaggerated ears and green or blue hair.  Night Elves frequently are depicted as riding on large

8  sabre-toothed cats.  Warcraft's "Tauren" are giant, horned, cow-like creatures who walk on two

9  legs, have a thick mane of hair, wear prominent nose rings, live a tribal, Native-American like

10  existence, and often carry giant totems which they use as weapons.  Warcraft's "Death Knights"

11  are pale, cloaked, undead warriors that carry large glowing swords adorned with magical runes,

12  and often are depicted riding sinister-looking armored horse-like creatures with two curved horns.

13        16.    Further, the "Trolls" of the Warcraft games are depicted as tall but hunched-over,

14  with long tusks protruding from their jowls or lower jaws, and long, pointy noses and ears.  They

15  are tribal in culture, and practice a voodoo-esque form of dark magic, typically involving bone

16  fetishes and ritual sacrifice.  They are typically depicted as having green, blue, or purple skin and

17  mohawks or other large crests of colorful hair.  Warcraft's "Naga," unlike any other depiction of

18  such creatures, are depicted as green or blue sea serpent warriors with patterned and flared frills

19  and manes of scales and spines, hanging tendril beards and dense rows of teeth that protrude from

20  their lower jaw to their upper jaw.  The Naga wear heavy armor and carry pointed staffs or

21  tridents.  Warcraft's "Dryads" possess an elven torso, the body of a deer, usually are depicted with

22  green hair, and carry heavy spears.  A few representative examples of Warcraft's creatures are

23  depicted below:

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**



Night Elf from World of Warcraft

Tauren from World of Warcraft





Troll from World of Warcraft

Naga from World of Warcraft

17.    In addition to the distinctive nature of Warcraft's creatures, the Warcraft games and related products depict recurring characters (sometimes referred to as "heroes"). Warcraft's heroes have been depicted in a number of Blizzard games, including Warcraft III, World of Warcraft, Hearthstone, and Heroes of the Storm. They also have been depicted in similar and recognizable fashion in action figures, plush toys, and artwork published by Blizzard or under license from Blizzard, including in game cover artwork, book cover illustrations, and illustrations created by Blizzard art designers that have been made available in art books or on the Internet. By way of example only, and without limitation, are the following heroes from the Warcraft Universe:

Mitchell
Silberberg &
Knupp LLP

7325825.4

1    (a)    "Chen Stormstout" is a bearded "Pandaren Brewmaster" (*i.e.*, a martial arts

2  practicing monk who brews and consumes beer on a regular basis).  Chen is always depicted as a

3  rotund panda/human hybrid with a cheerful but fierce disposition.  Chen is a powerful fighter,

4  known to be perhaps the strongest Brewmaster monk in Azeroth.  Chen wears a distinctive

5  armored-wooden hat with a fur brim and metal cap.  He carries an enormous beer barrel and a long

6  bamboo staff from which hang ornamented gourds which Chen uses as weapons.  Chen's hat, as

7  well as his gourds, are ornamented with distinctive paw-print emblems.  In addition to his skill in

8  martial arts, Chen's combat skills include the abilities to soak his enemies in beer, causing various

9  debilitating effects, as well as the ability to split himself into three "elemental" spirits: fire, earth

10  and storm.  Chen has appeared in the video games Warcraft III, World of Warcraft, and Heroes of

11  the Storm (among others), and in a number of authorized derivative works, including graphic

12  novels such as "Pearl of Pandaria."  Chen consistently has been depicted with the same visual or

13  physical characteristics and as possessing the foregoing traits, abilities, and characteristics, as

14  illustrated below:



Chen from World of Warcraft and Warcraft III

20    (b)    "Illidan Stormrage" is a popular Night-Elf-turned-demon character from the

22  Warcraft universe.  Illidan was born a Night Elf, but was blinded and transformed into a half-

23  night-elf-half-demon of tremendous power.  Illidan is usually depicted as a muscular purple-

24  skinned night elf with long black hair and intricate tattoos (arcane and tribal in appearance)

25  adorning his torso and arms.  He does not wear a shirt, and wears long frayed pants and a loin

26  cloth, with bare feet.  He is blind, and wears a blindfold covering his eye sockets, which often

27  radiate light through the blindfold.  He wields two long, distinct, bladed weapons, and fights using

28  extreme agility and speed.  Illidan also is frequently depicted in his "demon form."  In this form,

Mitchell
Silberberg &
Knupp LLP

7325825.4

7                    CASE NO. 3:15-cv-04084-CRB

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

he retains most of his appearance as a blinded night demon hunter, but has two long, curved horns growing from his head, and two long, frayed, bat-like wings. His legs also resemble those of a goat from the knees down. Illidan has appeared in the games Warcraft III, World of Warcraft, and Heroes of the Storm (among others), and in numerous authorized novels and graphic novels. Illidan is one of the most popular and recognizable characters in the world of video games. In June of 2015, Empire Magazine listed Illidan as #17 on their list of "the 50 greatest video game characters." Illidan is consistently depicted in the above manner, as illustrated below:

  

Illidan from Heroes of the Storm, Warcraft III, and World of Warcraft

(c)    "Gul'Dan" is one of the primary antagonists in the Warcraft universe. Gul'dan was formerly an Orc shaman. However, he abandoned his people to the demon lord Kil'jaeden to become a powerful warlock, thereby causing the Orcs to fall to demonic enslavement. Gul'dan appears in Warcraft III and World of Warcraft. Gul'dan is consistently depicted with a long grey beard, long, pointed lower teeth which extend over his upper lip, a dark hood, robes, a curved staff, and ritualistic armor bearing large horns and skulls which protrude from his back, as illustrated below:

 

Gul'Dan from World of Warcraft

18.     Azeroth also features a wide array of distinctive fictional locations and landmarks. These include: (1) the "Dark Portal," a magical gate featuring a dragon head and claws that transports characters to the world of "Outland;" (2) the opulent "Blood-Elf" city of "Silvermoon;" (3) the sacred Night-Elf "Moonwells;" (4) the Tauren city of "Thunder Bluff;" and (5) the floating necropolis of "Naxxramas." These locations and landmarks are rendered in detail in World of Warcraft, and can be visited or explored by players. These locations also have been visually depicted in artwork and comic books.

19.     Warcraft III and World of Warcraft also contain numerous discrete visual and audiovisual elements such as music and artwork. Among the musical works contained in World of Warcraft is a recording of the musical composition "Stonefire." Stonefire is played each time players enter certain taverns in World of Warcraft and has been made available by Blizzard for sale online.

20.     Additionally, in Warcraft III and World of Warcraft, spells and special powers available to playable characters are represented by small pieces of hand-drawn artwork, sometimes referred to as an "icon." For example, the power of "Hex" in World of Warcraft is represented by an image of a surprised frog, while "Death Coil" is represented by a flaming green skull, as follows:

 

Each icon contained in Warcraft III and World of Warcraft constitutes unique and protectable creative expression.

21.      In addition to the Warcraft Games, Blizzard is the owner of the games Diablo III and Starcraft II.  One of the characters that inhabits the world of Diablo is "King Leoric, the Skeleton King."  Leoric appears in Diablo, Diablo III, Heroes of the Storm, and related tie-in products.  He is consistently depicted as a skeleton king with long white hair and beard, distinctive armor, a red loincloth and a spiky gold crown.  Starcraft II features a team of space soldiers known as "Terran Marines," among them "Jim Raynor" and "Tychus Findlay."  Terran Marines wear a distinctive set of giant blue space armor with huge, oversized shoulder pads, a fully-enclosed helmet with round tubes protruding from it, and a yellow faceplate.  Terran Marines also carry comically oversized rifles that are often at least one-half the size of the entire suit of armor. Following are representative images of Leroic and the Terran Marine characters:



"Leoric" from Diablo III and Heroes of the Storm



"Terran Marine" from Starcraft II

Mitchell Silberberg & Knupp LLP

7325825.4

CASE NO. 3:15-cv-04084-CRB

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1

## **Warcraft III and Defense of the Ancients ("DotA")**

2      22.      Warcraft III shipped with both the "base" game and a software tool known as the

3   "World Editor," which enabled players, under license from Blizzard, to "modify" the game and

4   create new in-game maps, scenarios and gameplay using Warcraft III's graphical art assets,

5   including the character art, models, sounds, and terrain.  Beginning in or about 2003, pursuant to

6   Blizzard's World Editor License, certain individuals (the "DotA Creators") developed and offered

7   to the public a "mod" (short for "modification") to Warcraft III known as "Defense of the

8   Ancients," or "DotA."

9      23.      DotA is a multiplayer game in which ten players (divided into two teams of five)

10  each select a character (or "hero"), acquire experience (used to improve the hero's abilities) and

11  "gold" (used to acquire items), and then use their hero to attack and defeat the enemy team's

12  stronghold (referred to as the team's "Ancient").  DotA has been played by millions of players

13  around the world.

14      24.      DotA features approximately 100 playable "heroes."  Each of DotA's heroes was

15  derived from a character model (*i.e.,* the graphical depiction of a character) present in Warcraft III

16  and given a new name (and, sometimes, a background story).  Thus, for example, the DotA hero

17  "Pandaren Brewmaster" is derived from the Warcraft III model for a Pandaren Monk, "Tinker"

18  uses the Warcraft III model for a Goblin Tinkerer, "Slardar" uses the Warcraft III Naga model;

19  "Enchantress" uses the Warcraft III Dryad model, and "Earthshaker" uses a Tauren model.

20      25.      Each DotA hero possesses a persistent appearance and a distinct and unique set of

21  special skills that can be used in the game.  For example, one of the Pandaren Brewmaster's

22  special powers is "Drunken Haze," in which he "[d]renches an enemy unit in alcohol, causing his

23  movement speed to be reduced, and causing his attacks to have a chance to miss."  Each DotA

24  character's set of skills is represented in the game using an icon derived from Warcraft III.

25      26.      Pursuant to written agreements, Blizzard and Valve collectively own 100% of the

26  copyright in all original expression embodied within the DotA mod.

27

28

Mitchell
Silberberg &
Knupp LLP

7325825.4

11                          CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**Valve and Dota 2**

27.    Valve is a computer game developer and publisher, engaged in the business of developing, producing, marketing and distributing high-quality computer software games.  Among Valve's computer game products are some of the most successful and best-selling computer games in the world, including most recently, the game titled "Dota 2."  Valve is the owner of a valid and subsisting copyright in Dota 2 and in characters, images, artwork, and other copyrightable elements contained in that work (collectively, the "Valve Works.").

28.    Dota 2 includes over 100 individual playable characters ("heroes") and many individual items which have persistent, recognizable appearance and characteristics.  Many of Dota 2's heroes are derived from heroes present in DotA and have the same or similar skills and powers as their DotA counterparts.  By way of example only, and without limitation, among the heroes featured and depicted in Dota 2 are:

(a)    "Barathrum the Spirit Breaker," a bull-like humanoid with large horns and a ring through his septum, who wields a fiery magical lantern and possesses the ability to pass through space and time.  Spirit Breaker's in-game skills include the abilities to: (1) charge directly to a far-away enemy, causing a stunning "bash" attack to any enemy he passes through on the way, and stunning the target and causing damage when he reaches his destination; (2) unleash a "bash" attack, which causes damage and stuns the target; and (3) phase through space to appear next to a target enemy, delivering "bash" attacks upon reappearing and dealing bonus damage.



Spirit Breaker from Dota 2

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

(b)    "Luna the Moon Rider" a female ranged hero who wears purple armor, a distinctive headdress, rides a dark, armored, sabre-toothed cat, and commands the power of the moon. Luna attacks by throwing a glaive weapon that can hit multiple enemies at once and by controlling the power of the moon. Her in-game skills include the abilities to: (1) call down a beam of lunar energy, causing damage to the enemy; (2) empower her glaive to jump from one enemy to another (with the damage dealt decreasing per jump), thereby striking multiple opponents per attack; (3) passively increase the attack damage of her and her allies; and (4) call down a barrage of lunar energy attacks, striking random nearby enemies and causing damage.



Luna from Dota 2

(c)    "Mogul Khan the Axe" is an enormous, bearded, red humanoid who wears shoulder armor and armored gauntlets, and carries an oversized battle axe, which he adores and treats as his child. He has a broad face and nose, and his proportions are comically exaggerated to reflect his brutish nature. His in-game skills include the abilities to: (1) enhance his armor, reducing the damage he takes from incoming attacks; (2) curse an enemy, causing them to take damage over time; (3) deliver a powerful area attack to nearby enemies; and (4) deliver a devastating attack with his axe which causes substantial extra damage to its target if the target's health is low. If an enemy is killed by this attack, Axe and his teammates receive a bonus to their combat effectiveness.

Mitchell
Silberberg &
Knupp LLP

7325825.4

13                    CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Axe from Dota 2

29.     Dota2 is one of the most popular multiplayer games in the world.  The popularity of Dota 2's hero characters within the gaming community is one of the primary reasons for Dota 2's ongoing success.  Millions of people play Dota 2 every month, and each individual Dota 2 hero is picked by players to be played millions of times each month.  Many players are deeply invested in their favorite Dota 2 heroes and derive great enjoyment from playing specific characters or being part of a team of recognizable and well-known heroes.  The distinctiveness and popularity of the Dota 2 heroes is routinely remarked on by members of the gaming press, and numerous websites exist to track the popularity of each Dota 2 hero (including by how many games are played on a monthly basis using each hero), including http://www.dotabuff.com.

**Defendants and The Infringing Games**

30.     Defendants are two game developers, one (Lilith) based in Shanghai, China, and the other (uCool) based in Menlo Park, California.  Defendants are in the business of making and distributing video games for mobile platforms such as the Apple iPhone and iPad and Android devices.  Defendants offer their mobile titles on a "free-to-play" basis.  Under this business model (known in the games industry as a "micro-transaction" model), Defendants do not charge users to download their game titles, but instead make money by selling to their users (for actual currency) virtual goods or "unlocks" such as new characters, character upgrades, weapons, and character customizations such as clothing and armor, within the game itself.  Defendants' business thus

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1  relies on attracting a large body of users to download their games, knowing that only some portion

2  of those users ultimately will play the game for a sustained period of time and spend money to

3  unlock or acquire additional content.

4

5                                    Lilith and Its Games

6          31.     Plaintiffs are informed and believe, and on that basis allege, that in or about

7  February 2014, Lilith released in China the mobile game "Dota Legends," for the Android and

8  iOS (Apple iPhone/iPad) platforms.  The name Dota Legends is a specific reference to DotA and

9  Dota 2.  Dota Legends has been downloaded millions of times, and is available for download in

10  the United States, including on the Chinese-language Apple App store accessible in the United

11  States.  Plaintiffs are informed and believe, and on that basis allege, that of the millions of

12  downloads of Dota Legends many of these are by users located within the United States who make

13  in-game purchases with payment methods denominated in U.S. dollars.

14          32.     Plaintiffs are informed and believe, and on that basis allege, that Lilith also has

15  created and distributed, or has caused to be created and distributed, an English-language version of

16  Dota Legends known as "Dot Arena" (another reference to DotA and Dota 2).  Dot Arena has

17  been and currently is available for download, including in the United States, via the website

18  www.dotarena.com (the "Dot Arena Website").  Dot Arena is localized for use in the United

19  States, including by offering micro-transactions in exchange for U.S. dollars.  The Dot Arena

20  Website, which is entirely in English and accessible throughout the world, including in the United

21  States, includes detailed images of each of the heroes and items contained in Dot Arena.  Plaintiffs

22  are informed and believe, and on that basis allege, that except for its use of the English language,

23  Dot Arena is substantively identical to Dota Legends.  Hereinafter, Dota Legends, Dot Arena, and

24  all other versions and permutations of Dota Legends, are referred to collectively as the "Lilith

25  Games."

26          33.     Plaintiffs are informed and believe, and on that basis allege, that the Lilith Games

27  have been downloaded globally in excess of 80 million times, with an estimated monthly revenue

28  of over $30 million.

Mitchell
Silberberg &
Knupp LLP

7325825.4

15                    CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

<u>uCool and Heroes Charge</u>

34.    Plaintiffs are informed and believe, and on that basis allege, that in or about August 2014, uCool released a game titled "Heroes Charge."  Heroes Charge is extremely similar in gameplay, design, and appearance to the Lilith Games.  Lilith has alleged in a separate lawsuit that Heroes Charge is a verbatim or near verbatim copy of the Lilith Games and copied Lilith's computer software source code.  On September 23, 2015, Judge Samuel Conti ruled that Lilith was likely to succeed on the merits of its claim for infringement against uCool, finding that "the striking similarities between the games' protected elements such as the visual appearance of characters and settings further support the Court's conclusion that Lilith is likely to prove substantial similarity at trial."

35.    Heroes Charge is one of the top ranked games on the Apple App and Google Play Stores and has been downloaded millions of times.  It has been publicly reported that uCool spent $2.25 million to run a 15-second advertisement for Heroes Charge during the 2015 Super Bowl, and thereafter launched a nationwide television campaign for the game.  Heroes Charge continues to generate substantial revenue for uCool.

**Defendants' Infringement of Plaintiffs' Copyrighted Works**

36.    The Lilith Games and Heroes Charge (collectively, the "Infringing Games") are detailed audiovisual works that contain music, sound effects, artwork, digital character "sprites" (*i.e.*, two-dimensional depictions of creatures and characters), and animations.

37.    In the Infringing Games, players assemble a team of ten heroes from a roster of distinct characters and battle a variety of monsters, demons, and other antagonists across computer-generated locations.  The player begins the game with a small roster of heroes and skills, and as he or she plays the game unlocks additional heroes and skills, as well as new locations to visit.

38.    Plaintiffs are informed and believe, and on that basis allege, that at the time Defendants created the Infringing Games (or, in the case of uCool, copied Lilith's game), they had access to Plaintiffs' games and were aware of their massive popularity throughout the world.

Mitchell
Silberberg &
Knupp LLP

7325825.4

16                    CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1  Without license or authorization from Plaintiffs, Defendants used in their games visual,

2  audiovisual, musical, and gameplay elements that were derived from, and substantially similar to,

3  those contained in Plaintiffs' games.  Among the protected elements that Defendants appropriated

4  from Plaintiffs' games are Plaintiffs' visual depictions of their characters and creatures, Plaintiffs'

5  character roles and skills for each of the hero characters appearing in DotA and Dota 2, Plaintiffs'

6  in-game icon artwork, visual depictions of locations and landmarks which appear in Blizzard's

7  games, and Blizzard's musical compositions, as well as the overarching combination, selection,

8  and arrangement of the foregoing discrete elements.  The result is that not only are specific

9  discrete elements of Defendants' games copied from Plaintiffs' game, but Defendants' games, as a

10  whole, are unauthorized derivatives of Plaintiffs' games.

11       39.     Plaintiffs' initial investigation of just a single version of the Infringing Games has

12  revealed that Plaintiffs' copyrights have been infringed by Defendants' games in the following

13  manner:

14

15  *A.*     ***Defendants' Playable Heroes***

16       40.     The Infringing Games each feature a cast of approximately 40 heroes, with

17  additional heroes being added from time to time (the "Infringing Heroes").  Each hero has a name,

18  nickname, battlefield "position," and set of approximately four special "skills" or spells.  Each

19  hero is depicted in each Infringing Game in at least two ways: (1) each hero is depicted on a

20  computerized hero "card," which contains a still drawing of the hero and contains information

21  about the hero and his or her abilities (the "Hero Card"), and (2) each hero is depicted as a two-

22  dimensional cartoon "sprite" (the "Hero Sprite").  The Hero Sprite is a dynamic image of the

23  character that appears on the computer-rendered battlefield and conducts animated fight "moves,"

24  casts spells, or performs unusual feats at the player's direction.  Defendants also have depicted

25  their heroes in animated promotional trailers and in images, drawings, and animated pictures and

26  cartoons on their websites.

27       41.     All, or nearly all, of the Infringing Heroes, and the roster of the Infringing Heroes,

28  are derived from the heroes in DotA and/or Dota 2.  Further, the Infringing Heroes were given

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1  visual appearances designed to mimic those of heroes, creatures, and characters which appear in

2  one of more of Plaintiffs' games.  The Infringing Heroes thus infringe Plaintiffs' copyrights in at

3  least two ways: (1) their visual appearances are substantially similar to visual depictions of

4  characters or creatures appearing in one or more of Plaintiffs' games, and (2) most (if not all) of

5  the Infringing Heroes possess substantially similar or identical sets of in-game skills as their

6  counterparts in DotA and Dota 2.  Indeed, most of the Infringing Heroes infringe in both regards.

7

8        *Visual Depictions of Defendants' Heroes*

9        42.     Nearly all of Defendants' Hero Cards and sprites in the Infringing Games are

10 substantially similar in appearance to Plaintiffs' corresponding depictions of characters or

11 creatures featured in one or more of Plaintiffs' games.  With respect to Defendants' Hero Sprites,

12 Defendants have recreated Plaintiffs' characters and creatures in "chibi" style.  The chibi style is a

13 popular and very common style that is used pervasively, particularly in Asia, to depict characters

14 from pop culture such as video games, television shows, and movies.  Blizzard and Valve both

15 license the use of their characters in this style, such as to Funko as part of its popular "Pop!" line

16 of vinyl figures.

17       43.     The full extent of Defendants' copying can be appreciated only through review of

18 the relevant artwork, illustrations and character models, including the Hero Cards, Hero Sprites,

19 and depictions of the heroes on Defendants' websites and promotional videos, which are

20 voluminous.  However, by way of example, and without limitation, Plaintiffs allege that the

21 infringing similarities depicted in **Exhibit A**, attached hereto and incorporated by reference herein,

22 are representative of Defendants' pervasive infringement of Plaintiffs' games.

23       44.     The foregoing are just a few examples of the manner in which Defendants have

24 appropriated the distinctive look and feel of Plaintiffs' copyrighted works.  In addition to

25 modeling their heroes after Warcraft and Dota 2 characters and creatures, both Defendants also

26 have incorporated into their games Infringing Heroes (namely "War Chief" and "Rifleman" from

27 Heroes Charge and "Leo" and "Jimmy" from Dot Arena) that are substantially similar in protected

28 expression to depictions of Blizzard's Leoric and Terran Marine, including as they appear in

Mitchell
Silberberg &
Knupp LLP

7325825.4

18        CASE NO. 3:15-cv-04084-CRB

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1    Diablo III and Starcraft II.  Plaintiffs are informed and believe, and on that basis aver, that the

2    visual depiction of nearly every one of the 40-plus heroes depicted in each of the Infringing

3    Games contain elements of protected expression from Plaintiffs' works.

4

5          *Hero Roles, Skills, and Abilities*

6          45.    In addition to the foregoing, all or nearly all of the Infringing Heroes are endowed

7    with sets of in-game abilities and skills that are nearly identical to those possessed by the heroes

8    featured in DotA and Dota 2.  Indeed, Plaintiffs are informed and believe, and on that basis allege,

9    that Defendants have taken painstaking care to ensure that the Infringing Heroes replicate the roles

10   and unique skillsets of their counterparts in DotA and Dota 2, and they openly admit and advertise

11   as much to their users.  Defendants and their users routinely refer to the Infringing Heroes by the

12   names of their Dota 2 counterparts on their support forums and elsewhere (*e.g.*, "Brute a.k.a.

13   Axe," "Shallows Keeper a.k.a. Tidehunter," "Death Knight a.k.a. Abbadon").

14         46.    By way of example, and without limitation, are the representative comparisons set

15   forth in **Exhibit B**, attached hereto and incorporated by reference herein.  Plaintiffs note that all or

16   nearly all of the Infringing Heroes depicted in Defendants' games are derived from heroes in DotA

17   and Dota 2, and thus mimic their appearances, roles, ***and*** skills in striking detail.

18         47.    Plaintiffs' hero characters, including the unique and distinctive sets of skills

19   possessed by each, are Plaintiffs' protected expression which Defendants have appropriated.  The

20   skills and roles possessed by each Hero establish the sequence of the games' events, govern the

21   interplay of the characters, embody and express the rules of the game, and dictate how players and

22   characters interact with one another.  Moreover, Plaintiffs' unique and original selection and

23   arrangement of their in-game skills and the characters and roles to which those skills are affixed,

24   constitutes Plaintiffs' protected expression, which has been appropriated by Defendants wholesale.

25

26   **B.    *Depictions of Plaintiffs' Locations and Landmarks***

27         48.    Defendants also have appropriated landscapes, landmarks, and locations depicted

28   in "Warcraft III" or "World of Warcraft."  They have done so in at least two ways:

Mitchell
Silberberg &
Knupp LLP

7325825.4

19                CASE NO. 3:15-cv-04084-CRB
**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

49.     First, in the in-game "maps" contained in the Infringing Games, Defendants have included representations of particular places or locations to which their users can "travel." These images are substantially similar to buildings, landmarks, and structures contained in "Warcraft III" and/or "World of Warcraft" and are immediately recognizable to members of the gaming public as such. Defendants have copied numerous locations and landmarks from Plaintiffs' games, including, without limitation: (1) the Dark Portal (referred to as the "Outland Portal" in Heroes Charge); (2) the Blood-Elf city of Silvermoon; (3) the Night-Elf Moonwells; (4) the Tauren city of Thunder Bluff; and (5) the floating necropolis of Naxxramas. Exemplars of these infringing locations are set forth in **Exhibit C**.

50.     Second, certain background art used in the battlefields in the Infringing Games is similar to and evocative of locations contained in World of Warcraft. Plaintiffs are informed and believe that Defendants based their battlefields on playable "zones" from World of Warcraft in creating the background art for their playable levels, including, without limitation, "Silvermoon," "Molten Core" and "Dragonblight."

### C.     *Depictions of Plaintiffs' Icon Artwork*

51.     Each of Plaintiffs' games and the Infringing Games incorporates small pieces of visual artwork accompanying (among other things) their Heroes' in-game skills referred to as "icon" artwork. In creating the Infringing Games, Defendants directly appropriated dozens of pieces of Plaintiffs' unique icon artwork, either verbatim, or with only insignificant changes. For example, defendant uCool copied the below icon artwork from Valve's Dota 2 to create its own icon artwork in Heroes Charge by merely reversing the image found in Dota 2:

<table>
<tr><td>Dota 2</td><td></td><td>Heroes Charge</td></tr>
</table>

52.     Further, by way of example, and without limitation, are the representative comparisons depicted in **Exhibit D**, attached hereto and incorporated by reference herein.

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Mitchell
Silberberg &
Knupp LLP
7325825.4

1    Plaintiffs are informed and believe, and on that basis aver, that the artwork used in dozens of icons

2    used in the Infringing Games are copied from artwork contained in Plaintiffs' games.

3

4    **D.    *Derivative Musical Compositions***

5         53.    "Heroes Charge" contains a sound recording embodying a musical composition

6    that is virtually identical to Blizzard's musical composition "Stonefire" (the "Infringing Heroes

7    Charge Music").  A recording of Stonefire is contained in World of Warcraft.  The Infringing

8    Heroes Charge Music is played during the game's opening or title screen, and continues to play on

9    a loop as the player plays Heroes Charge.

10

11   **E.    *Combination of Elements and Total Look and Feel***

12        54.    When all of the infringements are taken together, it is clear that the Infringing

13   Games are intended to, and do, emulate and appropriate the Plaintiffs' games and related products,

14   particularly the Warcraft Games and Dota 2.  The overall impression created by the Infringing

15   Games, particularly among their target audience, is that they are largely or completely derived

16   from Plaintiffs' games, set in the unique and distinctive worlds in which Plaintiffs' games are set,

17   feature the same set of creatures and characters that can be found in Plaintiffs' games, play in a

18   manner that is similar to DotA and Dota 2, and sound like Plaintiffs' games.  In these ways, the

19   overall impact and effect of Defendants' taking indicates substantial appropriation.

20

21                      **Defendants' Conduct is Willful and Deliberate**

22        55.    Plaintiffs are informed and believe, and on that basis allege, that Defendants'

23   infringement is knowing, willful, and deliberate.  Files contained in the Lilith Games reveal that

24   many of the artwork files contained in the game are named according to their Blizzard or Dota 2

25   counterparts, such as "Naga.jpg" "Tauren.jpg," "Lina.jpg," and "Pugna.jpg."  uCool also has

26   admitted, either expressly or inadvertently, that its game is based on Plaintiffs' works, and has

27   knowingly published or permitted to be published a list of its heroes on its website with explicit

28

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1   reference to their Blizzard or Dota counterparts, such as "Drunken Master a.k.a. Pandaren

2   Brewmaster" and "Savage One a.k.a. Slardar."

3       56.     Plaintiffs are informed and believe, and on that basis aver, that both Lilith and

4   uCool's use of Plaintiffs' works was a calculated business strategy, and that Defendants designed

5   and marketed their games with the intention of capturing the attention of the tens of millions of

6   consumers who are fans of Plaintiffs' games.  Because Defendants' "free-to-play" business model

7   relies on attracting a large body of users to download their games, Defendants made a concerted

8   decision to mimic Plaintiffs' games and thus attract a substantial segment of Plaintiffs' preexisting

9   audience.  Defendants thus incorporated into their games the foregoing heroes and other elements,

10  with the object of attracting to their games fans of Dota 2 and Blizzard's games, who already are

11  familiar with Plaintiffs' recognizable heroes and artwork.  As a result, most, if not all, of the

12  revenue received by Defendants is attributable to the infringement.

13

14                         **FIRST CLAIM FOR RELIEF**

15                           **Copyright Infringement**

16                         (By Plaintiffs Against Lilith)

17      57.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1

18  through 56, as if set forth fully herein.

19      58.     Blizzard is the owner of valid and registered copyrights in each of the Blizzard

20  Works.

21      59.     Valve is the owner of valid and registered copyrights in each of the Valve Works.

22      60.     Lilith has infringed, and is continuing to infringe, Blizzard and Valve's copyrights

23  by reproducing, adapting, distributing, publicly performing, and publicly displaying, and

24  authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display

25  copyrighted elements of the Blizzard Works and Valve Works without authorization, in violation

26  of the Copyright Act, 17 U.S.C. § 101 *et seq*.

27      61.     Neither Blizzard nor Valve have ever authorized or given consent to Lilith to use

28  their copyrighted works in the manner complained of herein.

Mitchell
Silberberg &
Knupp LLP

7325825.4

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

62.    Lilith's acts of infringement are willful, in disregard of, and with indifference to the rights of Blizzard and Valve.

63.    As a direct and proximate result of the infringements alleged herein, Blizzard and Valve are entitled to damages and to Lilith's profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard and Valve are entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

64.    Blizzard and Valve further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

65.    As a result of Lilith's acts and conduct, Blizzard and Valve have sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Blizzard and Valve are informed and believe, and on that basis allege, that unless enjoined and restrained by this Court, Lilith will continue to infringe Plaintiffs' rights in the Blizzard and Valve works.  Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Lilith's continuing infringing conduct.

## SECOND CLAIM FOR RELIEF

### Copyright Infringement

(By Plaintiffs Against uCool)

66.    Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 65, as if set forth fully herein.

67.    Blizzard is the owner of valid and registered copyrights in each of the Blizzard Works.

68.    Valve is the owner of valid and registered copyrights in each of the Valve Works.

69.    uCool has infringed, and is continuing to infringe, Blizzard and Valve's copyrights by reproducing, adapting, distributing, publicly performing, and publicly displaying, and authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display

Mitchell
Silberberg &
Knupp LLP

7325825.4

CASE NO. 3:15-cv-04084-CRB

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

1   copyrighted elements of the Blizzard and Valve Works without authorization, in violation of the

2   Copyright Act, 17 U.S.C. § 101 *et seq.*

3       70.     Neither Blizzard nor Valve have ever authorized or given consent to uCool to use

4   their copyrighted works in the manner complained of herein.

5       71.     uCool's acts of infringement are willful, in disregard of, and with indifference to

6   the rights of Blizzard and Valve.

7       72.     As a direct and proximate result of the infringements alleged herein, Blizzard and

8   Valve are entitled to damages and to uCool's profits in amounts to be proven at trial, which are not

9   currently ascertainable.  Alternatively, Blizzard and Valve are entitled to maximum statutory

10  damages of $150,000 for each copyright infringed, or in such other amount as may be proper

11  under 17 U.S.C. § 504(c).

12      73.     Blizzard and Valve further are entitled to their attorneys' fees and full costs

13  pursuant to 17 U.S.C. § 505.

14      74.     As a result of uCool's acts and conduct, Blizzard and Valve have sustained and

15  will continue to sustain substantial, immediate, and irreparable injury for which there is no

16  adequate remedy at law.  Blizzard and Valve are informed and believe, and on that basis allege,

17  that unless enjoined and restrained by this Court, uCool will continue to infringe Plaintiffs' rights

18  in the Blizzard and Valve works.  Plaintiffs are entitled to temporary, preliminary, and permanent

19  injunctive relief to restrain and enjoin uCool's continuing infringing conduct.

20

21                          **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor on each and

23  every claim for relief set forth above and award them relief including, but not limited to, an Order:

24      1.     Preliminarily and permanently enjoining Defendants, their officers, employees,

25  agents, subsidiaries, representatives, distributors, dealers, members, affiliates, licensees, internet

26  service providers, and all persons acting in concert or participation with them from infringing

27  Plaintiffs' copyrighted works, including by copying, selling, marketing, distributing, or publicly

28  performing the Lilith Games, "Heroes Charge," or any substantially similar product.

Mitchell
Silberberg &
Knupp LLP

7325825.4

2.    Requiring Defendants to deliver to Plaintiffs all copies of materials that infringe or violate any of Plaintiffs' rights described herein.

3.    Requiring Defendants to provide Plaintiffs with an accounting of any and all sales of products or services that infringe or violate any of Plaintiffs' rights.

4.    Awarding Plaintiffs monetary relief including damages sustained by Plaintiffs in an amount not yet determined, including actual damages and/or Defendants' profits, or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. § 504, as appropriate.

5.    Awarding Plaintiffs their costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and other applicable laws.

6.    Awarding such other and further relief as this Court may deem just and appropriate.


DATED: January 8, 2016                    KARIN G. PAGNANELLI
                                          MARC E. MAYER
                                          DANIEL A. KOHLER
                                          MITCHELL SILBERBERG & KNUPP LLP


                                          By: /s/ Marc E. Mayer
                                          _____
                                          Marc E. Mayer
                                          Attorneys for Plaintiffs Blizzard
                                          Entertainment, Inc. and Valve Corporation

Mitchell
Silberberg &
Knupp LLP

7325825.4

25                    CASE NO. 3:15-cv-04084-CRB
FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT

1

## <u>JURY DEMAND</u>

2        Plaintiffs Blizzard Entertainment, Inc. and Valve Corporation hereby demand a trial by

3  jury on all matters and issues so triable.

4

5  DATED: January 8, 2016            KARIN G. PAGNANELLI
                                  MARC E. MAYER

6                             DANIEL A. KOHLER
                             MITCHELL SILBERBERG & KNUPP LLP

7

8

9                          By:  /s/ Marc E. Mayer
                             Marc E. Mayer

10                          Attorneys for Plaintiffs Blizzard
                          Entertainment, Inc. and Valve Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26         CASE NO. 3:15-cv-04084-CRB

**FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**

# SCHEDULE A

3:15-cv-4084-CRB

## SCHEDULE A
## BLIZZARD WORKS

| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| TX 6-881-506 | WORLD OF WARCRAFT #10, October 2008 | Blizzard Entertainment, Inc. |
| TX 6-910-360 | WORLD OF WARCRAFT #12, December 2008 | Blizzard Entertainment, Inc. |
| TX 6-941-251 | WORLD OF WARCRAFT #15, March 2009 | Blizzard Entertainment, Inc. |
| TX 6-943-737 | WORLD OF WARCRAFT #16, April 2009 | Blizzard Entertainment, Inc. |
| TX 6-955-156 | WORLD OF WARCRAFT #18, June 2009 | Blizzard Entertainment, Inc. |
| TX 6-984-959 | WORLD OF WARCRAFT #19, July 2009 | Blizzard Entertainment, Inc. |
| TX 6-987-154 | WORLD OF WARCRAFT #20, August 2009 | Blizzard Entertainment, Inc. |
| TX 7-042-460 | WORLD OF WARCRAFT #22, October 2009 | Blizzard Entertainment, Inc. |
| TX 7-031-777 | WORLD OF WARCRAFT #23, November 2009 | Blizzard Entertainment, Inc. |
| TX 7-084-279 | WORLD OF WARCRAFT #24, December 2009 | Blizzard Entertainment, Inc. |
| TX 7-086-699 | WORLD OF WARCRAFT #25, January 2010 | Blizzard Entertainment, Inc. |
| TX 7-059-438 | WORLD OF WARCRAFT SPECIAL #1, February 2010 | Blizzard Entertainment, Inc. |
| TX 6-889-153 | WORLD OF WARCRAFT.  [Published: 2007-11-14.  Issue: no. 1, January 2008] | Blizzard Entertainment, Inc. |
| TX 6-938-392 | WORLD OF WARCRAFT.  [Published: 2007-12-19.  Issue: no. 2, February 2008] | Blizzard Entertainment, Inc. |
| TX 6-970-827 | WORLD OF WARCRAFT.  [Published: 2008-01-16.  Issue: no. 3, March 2008] | Blizzard Entertainment, Inc. |
| TX 6-851-500 | WORLD OF WARCRAFT.  [Published: 2008-03-26.  Issue: no. 5, May 2008] | Blizzard Entertainment, Inc. |
| TX 7-075-040 | WORLD OF WARCRAFT.  [Published: 2008-04-16.  Issue: no. 6, June 2008] | Blizzard Entertainment, Inc. |
| TX 7-066-185 | WORLD OF WARCRAFT.  [Published: 2008-05-21.  Issue: no. 7, July 2008] | Blizzard Entertainment, Inc. |
| TX 7-085-034 | WORLD OF WARCRAFT.  [Published: 2008-06-18.  Issue: no. 8, August 2008] | Blizzard Entertainment, Inc. |
| TX 6-995-397 | WORLD OF WARCRAFT.  [Published: 2008-07-16.  Issue: no. 9, September 2008] | Blizzard Entertainment, Inc. |
| TX 7-038-930 | WORLD OF WARCRAFT.  [Published: 2008-09-17.  Issue: no. 11, November 2008] | Blizzard Entertainment, Inc. |
| TX 6-927-200 | WORLD OF WARCRAFT.  [Published: 2008-11-19.  Issue: no. 13, January 2009] | Blizzard Entertainment, Inc. |
| TX 6-932-305 | WORLD OF WARCRAFT.  [Published: 2008-12-31.  Issue: no. 14, February 2009] | Blizzard Entertainment, Inc. |
| TX 6-971-053 | WORLD OF WARCRAFT.  [Published: 2009-03-18.  Issue: no. 17, May 2009] | Blizzard Entertainment, Inc. |
| TX 6-965-173 | WORLD OF WARCRAFT.  [Published: 2009-07-15.  Issue: no. 21, September 2009] | Blizzard Entertainment, Inc. |
| TX 6-910-348 | WORLD OF WARCRAFT: ASHBRINGER #2, December 2008. | Blizzard Entertainment, Inc. |
| TX 6-953-119 | WORLD OF WARCRAFT: ASHBRINGER #4, February 2009. [Published: 2009-02-25.  Issue: no. 4, February 2009] | Blizzard Entertainment, Inc. |
| TX 7-038-900 | WORLD OF WARCRAFT: ASHBRINGER. [Published: 2008-09-10. Issue: no. 1, November 2008] | Blizzard Entertainment, Inc. |
| TX 6-933-270 | WORLD OF WARCRAFT: ASHBRINGER. [Published: 2008-12-31. Issue: no. 3, January 2009] | Blizzard Entertainment, Inc. |
| TX 7-607-222 | WORLD OF WARCRAFT: PEARL OF PANDARIA | Blizzard Entertainment, Inc. |
| VA 1-797-367 | World of Warcraft: The Art of the Trading Card Game | Blizzard Entertainment, Inc. |
| PA 0001787529 | DIABLO III | Blizzard Entertainment, Inc. |
| PAu 003573039 | DIABLO III | Blizzard Entertainment, Inc. |
| PA 0001887284 | DIABLO : REAPER OF SOULS | Blizzard Entertainment, Inc . |
| PA 0001867193 | HEARTHSTONE: Heroes of Warcraft | Blizzard Entertainment, Inc. |
| PA 0001829416 | STARCRAFT II – Heart of the Swarm | Blizzard Entertainment, Inc. |
| PA 0001687433 | STARCRAFT II – Wings of Liberty | Blizzard Entertainment, Inc. |
| PAu 003447800 | STARCRAFT II: Wings of Liberty | Blizzard Entertainment, Inc. |

1 of 2

3:15-cv-4084-CRB

| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| PA 0001146503 | WarCraft : the Frozen Throne expansion set | Blizzard Entertainment, Inc. |
| PA 0001225976 | Warcraft, the Frozen Throne expansion set By Blizzard Entertainment, Inc. | Blizzard Entertainment, Inc. |
| PA 0001711157 | WORLD OF WARCRAFT: CATACLYSM (video game) | Blizzard Entertainment, Inc. |
| PA 0001806462 | WORLD OF WARCRAFT: Mists of Pandaria (video game) | Blizzard Entertainment, Inc. |
| PA 0001333913 | World of warcraft: the burning crusade | Blizzard Entertainment, Inc. |
| PA 0001932646 | WORLD OF WARCRAFT: Warlords of Draenor | Blizzard Entertainment, Inc. |
| PA 0001611882 | WORLD OF WARCRAFT: WRATH of the LICH KING | Blizzard Entertainment, Inc. |
| PA 0000822523 | Starcraft | Blizzard Entertainment, Inc. |
| PA 0000875327 | StarCraft expansion set : Brood War | Blizzard Entertainment, Inc. |
| PA 0001072560 | WarCraft III : Reign of Chaos | Blizzard Entertainment, Inc. |
| PA 0001082161 | WarCraft III : Reign of Chaos | Blizzard Entertainment, Inc. |
| PA 0001225976 | Warcraft, the Frozen Throne expansion set. By Blizzard Entertainment, Inc. | Blizzard Entertainment, Inc. |
| PA 0001247131 | World of Warcraft | Blizzard Entertainment, Inc. |
| TX 0005984004 | World of warcraft—client : Beta 3 | Blizzard Entertainment, Inc. |
| PA 0001951722 | HEROES OF THE STORM STARTER PACK. | Blizzard Entertainment, Inc. |