QUINN EMANUEL URQUHART & SULLIVAN, LLP
Claude M. Stern (Bar No. 96737)
    claudestern@quinnemanuel.com
Evette D. Pennypacker (Bar No. 203515)
    evettepennypacker@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
    michaellafond@quinnemanuel.com
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California  94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Derek J. Tang (Bar No. 296230)
    derektang@quinnemanuel.com
50 California St., 22nd  Fl.
San Francisco, California  94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for uCool, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Blizzard Entertainment, Inc., and Valve Corporation,<br><br>    Plaintiffs,<br><br>   v.<br><br>Lilith Games (Shanghai) Co. Ltd., and uCool, Inc.,<br><br>    Defendants. | CASE NO. 3:15-cv-04084-CRB<br><br>**DEFENDANT UCOOL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**Date:**   **March 25, 2016**<br>**Time:**   **10:00 a.m.**<br>**Courtroom:** **6, 17th Floor**<br>**Judge:**   **The Hon. Charles R. Breyer** |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 25, 2016 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom 6 located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant uCool, Inc. will and hereby does move the Court to dismiss Plaintiffs' claim for violation of the Copyright Act, 17 U.S.C. § 101, *et seq*, brought against uCool, Inc, with respect to the games DotA, DOTA 2, Diablo III and Starcraft II.    This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this notice of motion and supporting memorandum of points and authorities, the declaration filed in support of this motion, the request for judicial notice filed with this motion, the records and papers on file in this action, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.


DATED: February 8, 2016              QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP


                                     By   */s/ Evette D. Pennypacker*
                                        Claude M. Stern
                                        Evette D. Pennypacker
                                        Attorneys for uCool, Inc.

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 1

III. APPLICABLE LEGAL STANDARDS .............................................................................. 4

IV.  ARGUMENT ...................................................................................................................... 5

    A.   Any Claim of Infringement In DotA Should Be Dismissed With Prejudice. ........... 5

        1.   Plaintiffs do not allege registration of a copyright in DotA. ......................... 5

        2.   Plaintiffs' cannot claim "effective registration" of DotA. ............................ 6

        3.   Plaintiffs cannot demonstrate ownership of DotA. ........................................ 7

            (a)   Plaintiffs fail to plausibly allege ownership of a copyright in DotA. .................................................................................................... 8

            (b)   Plaintiffs cannot amend their complaint to allege complete ownership of DotA. ............................................................................ 9

    B.   Valve Fails to State a Claim of Infringement of DOTA 2 ..................................... 11

    C.   Blizzard Fails To State a Claim of Infringement of Diablo III or Starcraft II ........ 12

V.   CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*AFL Telecommunications LLC v. SurplusEQ.com Inc.*,
  946 F. Supp. 2d 928 (D. Ariz. 2013) ..................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................9

*Campbell v. Walt Disney Co.*,
  718 F. Supp. 2d 1108 (N.D. Cal. 2010) ............................................................5

*Capcom Co. v. MKR Grp., Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ........................................1, 13, 14

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .....................................................................4, 5, 14

*Choyce v. SF Bay Area Indep. Media Ctr. ("Choyce I")*,
  2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) ..................................................1, 6

*Choyce v. SF Bay Area Indep. Media Ctr. ("Choyce II")*,
  2014 WL 2451122 (N.D. Cal. June 2, 2014) ..................................................7, 8

*Christianson v. W. Pub. Co.*,
  149 F.2d 202 (9th Cir. 1945) ..............................................................................5

*Erickson v. Nebraska Mach. Co.*,
  2015 WL 4089849 (N.D. Cal. July 6, 2015) ....................................................10

*Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*,
  792 F.2d 1432 (9th Cir. 1986) ..........................................................................12

*Games Workshop Ltd. v. Chapterhouse Studios, LLC*,
  2012 WL 5949105 (N.D. Ill. Nov. 27, 2012) ...................................................15

*Good v. Nippon Yusen Kaisha*,
  2013 WL 2664193 (E.D. Cal. June 12, 2013) ...................................................10

*Goodwin v. Best Plan, Int'l, Ltd.*,
  2004 WL 1924147 (N.D. Cal. Aug. 30, 2004) ....................................................6

*Gorski v. The Gymboree Corp.*,
  2014 WL 3533324 (N.D. Cal. July 16, 2014) ........................................5, 12, 13

*Jim Marshall Photography*,
  2013 WL 3339048 ...............................................................................................8

*Nat'l Photo Group LLC v. Allvoices Inc.*,
  2014 WL 280391 (N.D. Cal. Jan. 24, 2014) ......................................................4

*Oskar Sys., LLC v. Club Speed, Inc.*,
  745 F. Supp. 2d 1155 (C.D. Cal. 2010)................................................................6, 7

*RSI Corp. v. Int'l Bus. Machines Corp.*,
  2009 WL 605837 (N.D. Cal. Mar. 9, 2009).............................................................6

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ..............................................................................................5, 6

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003)..................................................................................8

*Ricketts v. Haah*,
  2013 WL 3242947 (C.D. Cal. June 26, 2013)...........................................................2

*Romo v. Wells Fargo, Bank N.A.*,
  2016 WL 324286 (N.D. Cal. Jan. 27, 2016)...........................................................11

*Russell v. Price*,
  612 F.2d 1123 (9th Cir. 1979)..................................................................1, 7, 11, 12

*San Jose Options, Inc. v. Ho Chung Yeh*,
  2014 WL 1868738 (N.D. Cal. May 7, 2014) ............................................................6

*Sarvis v. Polyvore, Inc.*,
  2013 WL 4056208 (D. Mass. Aug. 9, 2013) .............................................................9

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)................................................................................5, 9

*Synopsys, Inc. v. Atoptech, Inc.*,
  2016 WL 80549 (N.D. Cal. Jan. 7, 2016) ............................................................6, 7

*Thomas v. Walt Disney Co.*,
  2008 WL 425647 (N.D. Cal. Feb. 14, 2008) *aff'd*, 337 F. App'x 694 (9th Cir. 2009)...............12

*White v. Kimmell*,
  193 F.2d 744 (9th Cir. 1952)..................................................................................10

*Wyatt Tech. Corp. v. Malvern Instruments Inc.*,
  2009 WL 2365647 (C.D. Cal. July 29, 2009) *aff'd*, 526 F. App'x 761 (9th Cir. 2013) ............10

**Statutes**

Copyright Act, 17 U.S.C. § 101 ....................................................................................... ii

17 U.S.C. § 103 ...............................................................................................................11

17 U.S.C. § 204 .................................................................................................................9

17 U.S.C. § 409 .................................................................................................................6

17 U.S.C. § 410 .................................................................................................................8

17 U.S.C. § 411 .................................................................................................................6

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION TO DISMISS

17 U.S.C. § 411(a) ................................................................................................................. v, 5

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ ii, 5

## **Other Authorities**

*Brave New Worlds: the Oxford Dictionary of Science Fiction* 205
   (1st Ed. 2007) ...................................................................................................................14

**ISSUES TO BE DECIDED**

i.    Should Plaintiffs' copyright infringement claims against uCool with respect to "DotA" and "DOTA 2" be dismissed for failure to register the work at issue pursuant to 17 U.S.C. § 411(a), or, alternatively, for failure to plausibly plead ownership of the work?

ii.   Should Plaintiffs' copyright infringement claims against uCool with respect to "Diablo III" and "Starcraft II" be dismissed for failure to plausibly state a claim for copyright infringement of a registered work?

# I.        INTRODUCTION AND SUMMARY OF ARGUMENT

In their First Amended Complaint ("FAC") Plaintiffs attempt to, but fail to properly allege infringement of "DotA," "DOTA 2," "Diablo III" and "Starcraft II."   <u>First,</u> Plaintiffs cannot assert a copyright in DotA, a fan-created game which neither Blizzard nor Valve authored or registered.   *Choyce v. SF Bay Area Indep. Media Ctr. ("Choyce I")*, 2013 WL 6234628, at \*3 (N.D. Cal. Dec. 2, 2013).   In fact, Plaintiffs **cannot** properly plead ownership of DotA, as the agreements on which Plaintiffs purport to rely demonstrate that Plaintiffs failed to acquire ownership rights from each of the DotA authors.   <u>Second,</u> because Plaintiffs assert only elements of DOTA 2 that derive from DotA, and they fail to identify any expression that is original to DOTA 2, their claim with respect to DOTA 2 also fails.   *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979).   <u>Finally,</u> the two characters from Diablo III and Starcraft II—a "skeleton king" and a "space marine"—are not original to Plaintiffs, and Plaintiffs fail to identify any similarities in protectible expression between these characters and Heroes Charge.   Plaintiffs thus fail to state an infringement claim with respect to Diablo III or Starcraft II.   *Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at \*5 (N.D. Cal. Oct. 20, 2008).

Accordingly, the Court should dismiss with prejudice Plaintiffs' infringement claim with respect to DotA and DOTA 2, Diablo III and Starcraft II.

# II.       FACTUAL AND PROCEDURAL BACKGROUND

***Blizzard, Valve and the asserted works.***   Plaintiff Blizzard is a computer game developer and publisher (FAC ¶ 11) best known for its "Warcraft" series of fantasy games (FAC ¶ 13), which includes such games as "Warcraft III," "World of Warcraft," "Hearthstone" and "Heroes of the Storm."   (FAC ¶ 11.)   Blizzard also developed and published the games "Diablo III" and "Starcraft II," which are not part of the Warcraft franchise.   (FAC ¶ 21.)

Plaintiff Valve is a competing game developer and publisher.   While Valve purports to have created "some of the most successful and best-selling computer games in the world," it asserts only one game in this litigation: "DOTA 2."   (FAC ¶ 27.)

Plaintiffs also jointly accuse uCool of infringing a copyright in a game entitled "DotA." However, neither plaintiff owns DotA, neither plaintiff has registered a copyright in DotA, and

1   thus neither plaintiff may enforce a copyright in DotA.

2       *The fan-created game "DotA" (2002-2010):*   Blizzard published the game "Warcraft III"

3   in 2002.   (FAC ¶ 13.)   Warcraft III included a feature called the "World Editor," which enabled

4   players to modify the game to create their own maps, scenarios and gameplay.   (FAC ¶ 22.)

5   Thereafter, the community of Warcraft III players began using the World Editor to modify

6   Warcraft III to create a new game, which they called "Defense of the Ancients," or "DotA."

7       DotA was a distinct game from Warcraft III, with its own gameplay and rules, and notably,

8   a different cast of characters, with corresponding names, background stories, and skills.   (FAC ¶¶

9   22-25.)   One of the earliest DotA creators was ███████████ known online by the name "Eul."

10  In approximately 2002, ██████████ began developing the original version of DotA, which he

11  released in 2003.   But on September 23, 2004, ██████████ announced on the public Web forum

12  thewarcenter.com that he was ceasing work on DotA and releasing any rights in the game:

13      "I wish I could give you a last map that's playable, but I can't.   Instead, from this
        point forward, DotA is now open source.   **Whoever wishes to release a version**
14      **of DotA may without my consent**[.]"

15  (Ex. 6).[1]   DotA fans immediately responded, noting that ██████████ announcement "basically

16  g[a]ve permission to an endless amount of people to go and host their modded versions of DotA."

17  (*Id.* at 2.)   In the years following ██████████ retirement, DotA went through numerous public

18  iterations from different creators, including ███████████████████████████████

19  ██████████, who worked on a subsequent version of DotA called "DotA Allstars."   Another

20  creator was ████████████████████████████████████████

21  ██████████████████   At no point during this period did Plaintiffs register or claim any

22  ownership in any of the myriad versions of DotA that had been released. (LaFond Decl. ¶ 2)[2]

23  _____

24      [1]    All exhibit references are to the Declaration of Michael LaFond filed with this motion.
        [2]    This Court may judicially notice Plaintiffs' lack of registration, as the Copyright Office
25  database is a proper subject of judicial notice.   *See Ricketts v. Haah*, 2013 WL 3242947, at *2
    (C.D. Cal. June 26, 2013) ("The Court takes judicial notice that according to the Copyright Office
26  database, Plaintiffs have not registered any copyrights.").
27      On February 4, 2016, Plaintiffs, conceding their lack of registration, informed uCool that,
    more than ten years after the game's publication, Plaintiffs finally intend to file an application to
28  register a copyright in DotA.   uCool has been unable to locate record of such application.

1    ***Valve's attempts to obtain rights in DotA (2010).***    Following the success of DotA, ████

2    ████████    and began trying to acquire intellectual property rights in the fan-created DotA

3    game.    (*See, e.g.*, Ex. 2.)  ███████████████████████████████████████████

4

5

6

7

8

9

10

11

12

13

14    ███████████████████████████████    Without ownership of ██████████ original DotA

15    work, neither Blizzard nor Valve may claim complete ownership of rights in DotA.

16    ***Blizzard's and Valve's disputes over DotA (2011-2012).***    In July 2011, Valve applied to

17    the Patent & Trademark Office for a trademark on the word "DOTA."   (Ex. 7.)   Blizzard filed

18    an opposition to Valve's application in November 2011, arguing that Valve had no rights to the

19    mark because "members of the public have come to associate and identify the marks 'Defense of

20    the Ancients,' 'DotA,' 'DOTA,' and 'Dota' with Blizzard and its interactive computer game

21    products."   (Ex. 7 ¶ 15.)  ████████████████████████████████████████████

22    ███████████████████████████████████████████████████████████████

23    ███████████████████████████████████████████████████████████████

24    ███████████████████████████████████████████████████████████████

25    ████████████████████████████████████████   Blizzard eventually withdrew

26    its opposition in May 2012, and the "DotA" trademark issued to Valve in 2013.

27    ***Valve releases DOTA 2.***   Valve released the game DOTA 2 in 2013.   As Plaintiffs

28    admit, DOTA 2 is derived from "DotA," and "[m]any of Dota 2's heroes are derived from heroes

present in DotA and have the same or similar skills and powers as their DotA counterparts." (FAC ¶ 28.)    The FAC makes clear that **every one** of the asserted DOTA 2 characters appeared previously in DotA.    (FAC ¶ 45 & Ex. B.)    While Valve registered a copyright in the derivative work DOTA 2, that registration explicitly **disavows** any copyright ownership in DotA.    (Ex. 5.)

*Plaintiffs' claim against uCool (2015-):*    "Heroes Charge" was first released in August 2014.    Plaintiffs filed this case on September 8, 2015, nearly a year later.    (Dkt. 1.)    In their first complaint, Blizzard and Valve claimed no ownership of, and did not accuse uCool of infringing, any copyrights in DotA.    Indeed, the complaint did not mention DotA at all, instead vaguely accusing Heroes Charge of including characters similar to "characters in the 'Warcraft' universe or 'Dota 2.'" (Dkt. 1 ¶ 24.) The Court dismissed this complaint for "fail[ing] to apprise uCool or the Court of which 'Heroes Charge' characters infringe which characters from which of Blizzard or Valve's numerous games, 'related products and merchandise.'" (Dkt. 35 at 10).

The allegations in Plaintiffs' First Amended Complaint break down as follows:

- *Warcraft series:*    Claims that uCool infringes Blizzard's "visual depictions" of certain characters, landmarks and icons in the Warcraft series (FAC ¶¶ 42-43 & Ex. A, FAC ¶¶ 48-50 & Ex. C, FAC ¶¶ 51-52 & Ex. D), as well as a single musical composition (FAC ¶ 53).

- *DotA/DOTA 2:*    Claims that uCool infringes Plaintiffs' "in-game abilities and skills" of characters appearing in both DotA and DOTA 2 (FAC ¶¶ 45-47 & Ex. B).

- *Diablo III/Starcraft II:*    Claims that uCool infringes Blizzard's depiction of the characters King Leoric from Diablo III and Terran Marine from Starcraft II (FAC ¶ 44).

uCool brings the present motion to dismiss Plaintiffs' claims regarding DotA/DOTA 2, Diablo III and Starcraft II.[3]

## III.    APPLICABLE LEGAL STANDARDS

---

[3] Although Plaintiffs assert numerous works as a single infringement claim, Plaintiffs must satisfy the requirements of a infringement claim (ownership and copying) with respect to each asserted copyright.    *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The Court may dismiss Plaintiffs' claim with respect to each copyright for which Plaintiff fails to state a claim.    *See Nat'l Photo Group LLC v. Allvoices Inc.*, 2014 WL 280391, at *9 (N.D. Cal. Jan. 24, 2014) (dismissing infringement claim with respect to two of three asserted photographs where only one was registered with Copyright Office).

1    To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

2    accepted as true, to state a claim for relief that is plausible on its face[.]"  *Ashcroft v. Iqbal*, 556

3    U.S. 662, 678 (2009).   No federal copyright infringement claim exists "until preregistration or

4    registration of the copyright claim has been made" with the Copyright Office.  *Reed Elsevier,*

5    *Inc. v. Muchnick*, 559 U.S. 154, 157-58 (2010); 17 U.S.C. § 411(a).   Once this precondition has

6    been established, to state a claim for copyright infringement, a plaintiff must allege facts to

7    demonstrate both "that he or she owns the copyright and that defendant copied protected elements

8    of the work."  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).[4]

9    Demonstrating copying of the protected elements "requires the plaintiff to allege that the

10   infringer had access to plaintiff's copyrighted work and that the works at issue are substantially

11   similar[.]"  *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *3 (N.D. Cal. July 16, 2014).

12   "[W]hen the copyrighted work and the alleged infringement are both before the court, capable of

13   examination and comparison, non-infringement can be determined on a motion to dismiss[.]"

14   *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Campbell v. Walt Disney*

15   *Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010) (same).

16   **IV.    ARGUMENT**

17   **A.    Any Claim of Infringement In DotA Should Be Dismissed With Prejudice.**

18   Much of the FAC accuses uCool of infringing copyrights in characters from the game

19   "DotA"—a game Plaintiffs admit they did not author, for which they have alleged no registration,

20   and over which they cannot plausibly allege ownership.

21   **1.    Plaintiffs do not allege registration of a copyright in DotA.**

22   Plaintiffs accuse uCool of infringing DotA no fewer than sixteen times in the FAC.   (*See,*

23   *e.g.* FAC ¶ 41 (alleging infringement where "the Infringing Heroes possess substantially similar or

24   identical sets of in-game skills as their counterparts in DotA . . ."); *see also* FAC ¶¶ 38, 45-46, 54,

25   _____

26   [4]  "[T]o prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting
     documents upon which their claims are based, a court may consider a writing referenced in a

27   complaint but not explicitly incorporated therein if the complaint relies on the document and its
     authenticity is unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal

28   citations and quotations omitted).

1   and Ex. B at 1-11.)   However, the FAC contains no specific allegation that Plaintiffs actually

2   registered a copyright in DotA—a required "precondition to filing a claim" imposed by 17 U.S.C.

3   § 411.   *Reed Elsevier*, 559 U.S. at 166.   A search of the Copyright Office's public database on

4   February 8, 2016, also revealed no registrations for DotA.   LaFond Decl. ¶ 2.   Failure to

5   explicitly allege registration is grounds for dismissal.   *San Jose Options, Inc. v. Ho Chung Yeh*,

6   2014 WL 1868738, at \*4 (N.D. Cal. May 7, 2014); *RSI Corp. v. Int'l Bus. Machines Corp.*, 2009

7   WL 605837, at \*5 (N.D. Cal. Mar. 9, 2009); *Goodwin v. Best Plan, Int'l, Ltd.*, 2004 WL 1924147,

8   at \*1 (N.D. Cal. Aug. 30, 2004).[5]   Because of Plaintiffs' failure to register, and failure to allege

9   registration of a copyright in DotA, any claim related to any element original to DotA—*i.e.*, any of

10  the characters described in Exhibit B to the First Amended Complaint—must be dismissed.

### 2.   Plaintiffs' cannot claim "effective registration" of DotA.

12       Plaintiffs' clear failure to register DotA cannot be cured by reliance on the effective

13  registration doctrine, which narrowly permits that "registration of a derivative of a pre-existing

14  work can, in certain circumstances, suffice to register the original work . . . if the owner of the

15  copyright in the derivative work also holds all ownership rights in the original works upon which

16  the derivative works are based."   *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155,

17  1162 (C.D. Cal. 2010) (internal quotations omitted).   Because none of Plaintiffs' subsequent

18  registrations encompass DotA, and neither Blizzard nor Valve holds all ownership rights in DotA,

19  Plaintiffs are foreclosed from arguing that they have effectively registered a copyright in DotA.

20       First, none of Blizzard's copyright registrations identify DotA as a preexisting work, as

21  required by 17 U.S.C. § 409.   *See* Ex. 4.   If Blizzard intended to claim a right to any elements

22  appearing in DotA, then when registering later works, Blizzard was required to make "an

23  identification of any preexisting work or works" which it intended to incorporate.   17 U.S.C. §

24  409; *see Synopsys, Inc. v. Atoptech, Inc.*, 2016 WL 80549, at \*1 (N.D. Cal. Jan. 7, 2016) (holding

---

26       [5]     Failure to allege registration is grounds for dismissal even if Plaintiffs file an application
27  for registration after filing suit.   *See Choyce I*, 2013 WL 6234628, at \*3 ("the Complaint fails to
    allege that Plaintiff has registered his alleged copyright . . .[and] it appears that he did not apply
28  until after the complaint was filed. Accordingly, the complaint must be dismissed.").

that a generic identification of "prior works" "[did] not suffice to provide a meaningful identification" and precluded infringement claim). *Id.* But Blizzard's copyright registrations rarely claim preexisting works at all, and when they do, they make no mention of DotA, but simply use the kind of sweeping language that *Synopsys* held insufficient to implicate effective registration. *See, generally,* Ex. 4. Accordingly, Blizzard's registrations cannot form the basis of any claim to pre-existing content present in DotA. *Synopsys*, 2016 WL 80549, at *1; *see also Oskar Sys.*, 745 F. Supp. 2d at 1164 (declining to extend registration to preexisting features where derivative work registration "fails to indicate the 'precise underlying or preexisting work'").

Nor can Valve claim to have registered DotA through its registration of the subsequent game "DOTA 2." Indeed, Valve's registration for DotA 2 explicitly **disclaims** any preexisting work in DotA, and therefore, Valve cannot bring a claim asserting the very work it has disclaimed. *See* Ex. 5. (disclaiming DotA); *see also AFL Telecommunications LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013) (holding that registration of derivative software did not suffice to effectively register "specifically disclaime[d] previous versions"); *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) ("a derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work").

Finally, Plaintiffs cannot rely on the effective registration doctrine because that doctrine is limited to situations in which the registrant "holds all ownership rights in the original works". *Oskar Sys*, 745 F. Supp. 2d at 1162. Because, Plaintiffs allege that ownership of DotA is split between them, neither party can possess "all ownership rights" in DotA, and none of Blizzard's or Valve's copyright registrations may effectively register DotA.

### 3.    Plaintiffs cannot demonstrate ownership of DotA.

Plaintiffs' assertion of a copyright in DotA fails for the independent reason that Plaintiffs have not alleged facts from which ownership of DotA can be plausibly inferred. To state a claim of infringement, a complaint must contain "well-pled factual allegations from which it is plausible to conclude that Plaintiff himself owns a valid copyright." *Choyce v. SF Bay Area Indep. Media Ctr.* ("*Choyce II*"), 2014 WL 2451122, at *4 (N.D. Cal. June 2, 2014). But Plaintiffs provide only a single, conclusory allegation regarding ownership, which is not sufficient

1    to survive dismissal.   *Id.*   Moreover, the "written agreements" on which Blizzard and Valve rely

2    in their complaint make clear that Plaintiffs **do not**, as alleged, own all ownership rights in DotA.

3    Because Plaintiffs cannot cure the deficiency in their complaint to properly allege ownership of

4    DotA, their claims regarding DotA should be dismissed with prejudice.

5                           (a)     Plaintiffs fail to plausibly allege ownership of a copyright in DotA.

6           Even if Blizzard and Valve took action to register DotA today, they would be entitled to no

7    presumption of ownership in DotA, as the presumption only applies where "registration [is] made

8    before or within five years after first publication of the work."   17 U.S.C. § 410; *see* FAC ¶ 22

9    (alleging that DotA was created "in or about 2003").   Plaintiffs must therefore independently

10   plead facts giving rise to a plausible inference of ownership.   *Choyce II*, 2014 WL 2451122, at

11   *4.   Without meeting this burden, Plaintiffs fail to state a necessary element of copyright

12   infringement: "ownership of a valid copyright[.]"   *Rice v. Fox Broad. Co.,* 330 F.3d 1170, 1174

13   (9th Cir. 2003).   Plaintiffs' DotA ownership allegation is a single conclusory statement—

14   unsupported by facts—that "Blizzard and Valve collectively own 100% of the copyright . . . [in]

15   the DotA mod."   (FAC ¶ 26.)   Plaintiffs plead no specific facts from which the Court may

16   plausibly infer ownership, and any claims relating to DotA must be dismissed.

17          In *Choyce II*, where the plaintiff admitted registration of the copyright at issue took place

18   more than five years after first publication, no presumption of ownership was available.   2014

19   WL 2451122, at *4.   The court explained:   "[s]ince Plaintiff . . . cannot avail himself of th[e]

20   prima facie presumption . . . [t]he [complaint] therefore must contain additional well-pled factual

21   allegations from which it is plausible to conclude that Plaintiff himself owns a valid copyright[.]"

22   *Id*.   Moreover, in view of plaintiff's admission that he was not the original author of the work, a

23   mere conclusory assertion of ownership was insufficient to state a claim.   *Id*; *see also Jim

24   Marshall Photography*, 2013 WL 3339048, at *8 (without prima facie presumption, "[a]t the

25   pleading stage, a plaintiff bears the burden of alleging adequate facts to support a claim of

26   equitable ownership of copyrights.").

27          Blizzard and Valve offer no more than the plaintiff in *Choyce II*.   They plead no

28   registration of DotA within five years of its first publication, and thus benefit from no presumption

of ownership.   Blizzard and Valve also admit they are not the original authors of DotA (FAC ¶ 22), but try to cover this deficiency by pleading conclusorily that "[p]ursuant to written agreements, Blizzard and Valve collectively own . . . DotA."   (FAC ¶ 26.)   But the complaint's vague reference to unspecified "written agreements" is not a specific fact sufficient to give rise to a plausible inference of ownership.   Rather, it is merely a formulaic recitation of the legal requirement that any transfer of copyright must be "in writing."   17 U.S.C. § 204.   "[A] formulaic recitation of . . . elements" is not sufficient to plausibly assert Blizzard and Valve's actual ownership of a copyright in DotA.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Sarvis v. Polyvore, Inc.*, 2013 WL 4056208, at *6 (D. Mass. Aug. 9, 2013) (dismissing claim for failure to plead ownership where complaint contained only conclusory allegation that plaintiff "is the assignee of copyrights of the art and copyrights [sic] of Sheila Wolk").   Accordingly, Blizzard and Valve fail to allege ownership of a copyright in DotA.

> (b)   <u>Plaintiffs cannot amend their complaint to allege complete ownership of DotA.</u>

Plaintiffs' failure to allege details of any "written agreements" or how such agreements purportedly support their claim of collective ownership cannot be cured through amendment. Plaintiffs' written agreements demonstrate that they do **not** actually own "100% of the copyright" in DotA, as they claim.   (FAC ¶ 26.)[6]

In particular, Plaintiffs have produced ██████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████   In
that post, which is still available online through the Internet Archive's "Wayback Machine," ████

---

[6]   The agreements on which Plaintiffs intend to rely, which they produced to uCool, are attached as Exhibits 1, 2, and 3 to the LaFond Declaration, and are properly the subject of judicial notice as "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned[.]"   *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

1  ████████ firmly relinquished any rights in his work in DotA, stating that "[w]hoever wishes to

2  release a version of DotA may without my consent".[7]  *See* Ex. 6.  ████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  *See, e.g. Wyatt Tech. Corp. v. Malvern Instruments Inc.*, 2009 WL 2365647, at *12 (C.D. Cal. July

6  29, 2009) *aff'd*, 526 F. App'x 761 (9th Cir. 2013) (holding that copyright was abandoned by

7  author's statement that "there are no restrictions on this material" and "you may distribute it freely

8  to your colleagues" operated as copyright abandonment); *White v. Kimmell*, 193 F.2d 744, 745

9  (9th Cir. 1952) (holding that copyright was abandoned by plaintiff's statement, averred to in the

10 complaint, that recipients had permission to make copies without limitation).

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████ and Plaintiffs cannot, as a matter of law, own "100% of the

19 copyright" in DotA.

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████

22 _____

23 [7] ████████████████████████████████████████████████████

24 ████████████████  *Good v. Nippon Yusen Kaisha*, 2013 WL 2664193, at *9 (E.D. Cal.

25 June 12, 2013) (finding that terms posted online are part of a contract because "[i]ncorporation by reference can include not only referenced paper documents but electronic documents as well").

26 Moreover, websites may be judicially noticed through copies archived on the Wayback Machine. *See Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at n.1 (N.D. Cal. July 6, 2015) ("Courts

27 have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot

28 reasonably be questioned")

Case No. 3:15-cv-04084-CRB



Because neither ████████████ nor ████████████ accounts for ████████

abandoned copyright in DotA, Plaintiffs cannot possibly plead additional facts, supported by

existing assignments, demonstrating that they "own 100% of the copyright" in DotA.[9]

Accordingly, granting Plaintiffs leave to amend their claims with respect to DotA would be futile,

The Court should dismiss all claims related to DotA with prejudice.    *See Romo v. Wells Fargo,*

*Bank N.A.*, 2016 WL 324286, at *4 (N.D. Cal. Jan. 27, 2016) (claims are dismissed with prejudice

where document incorporated by reference demonstrates that amendment would be futile).

### B.    Valve Fails to State a Claim of Infringement of DOTA 2

In an apparent attempt to mask the fatal deficiency of their claims with respect to DotA,

Valve alleges that uCool infringes not only characters in DotA, but the same characters as they

appear in its sequel, DOTA 2.    But Valve cannot rely on DOTA 2 to rescue or replace Plaintiffs'

failure to register the underlying elements of DotA.    Valve registered DOTA 2 as a derivative

work,[10] and "a derivative copyright protects only the new material contained in the derivative

work, not the matter derived from the underlying work," which, in this case, is DotA.    *Russell*,

612 F.2d at 1128; *see also* 17 U.S.C. § 103 ("copyright in a   . . . derivative work extends only to

_____

[8] ████████████████████████████████████████████████████

████████████████████████████

[9]    Moreover, even if Plaintiffs had obtained rights to all ███████ work in DotA—
which they have not—Plaintiffs do not, because they cannot, allege that these ████ were the **only**
authors of DotA (which Plaintiffs allege is a single work), or that ██████ retained copyrights in
the entire game until conveying them to Blizzard and Valve in 2010 and 2011.    Thus, Plaintiffs
do not, and cannot, provide factual support showing that they own all copyrights in DotA

[10]    *See* Ex. 5.

the material contributed by the author of such work").    Accordingly, Valve can only state a claim related to DOTA 2 insofar as the FAC identified elements **original** to DOTA 2.    But every alleged infringement of DOTA 2 in the FAC is linked to material appearing in **both** DotA **and** DOTA 2—the FAC fails to plead any facts related to material only appearing in DOTA 2.    (*See, e.g.,* FAC Ex. B (identifying 5 characters "as featured in DotA and DOTA 2" and 6 characters "as depicted in DotA and DOTA 2").)    Because Plaintiffs do not assert any elements protected by the derivative copyright in DOTA 2, they fail to state a claim with respect to DOTA 2, and this claim should be dismissed.    *See Gorski*, 2014 WL 3533324, at *3.[11]

C.    **Blizzard Fails To State a Claim of Infringement of Diablo III or Starcraft II**

Separate from its claims relating to DotA, Blizzard's claims relating to the games "Diablo III" and "Starcraft II" should also be dismissed.    Blizzard accuses uCool of infringing these works with respect to the artwork for two characters—"King Leoric" of Diablo III and the "Terran Marine" of Starcraft II.    (FAC ¶¶ 21, 41, 44.)    Because the FAC fails to identify any protectible similarities between the artwork for these characters and uCool's accused characters, Plaintiffs fail to state a claim of infringement with respect to either game.

To state a claim for copyright infringement, a plaintiff must plead sufficient facts to satisfy the Ninth Circuit's extrinsic test for substantial similarity.    *See Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *5 (N.D. Cal. July 16, 2014).    "The extrinsic test measures objectively . . . whether protectable elements of two works are substantially similar."    *Thomas v. Walt Disney Co.*, 2008 WL 425647, at *2 (N.D. Cal. Feb. 14, 2008) *aff'd*, 337 F. App'x 694 (9th Cir. 2009).    When applying the extrinsic test, the "court must . . . inquire only whether the protectable elements are substantially similar standing alone . . . the court will filter out and disregard the

_____

[11]    Nor can Valve cannot cure its complaint to accuse uCool of infringing any copyrights in elements original to DOTA 2.    In response to uCool's interrogatories seeking identification of all Valve characters at issue, Valve identified **only** characters previously appearing in DotA.    *See* Ex. 9.    Valve's interrogatory responses corroborate that Valve does not, and cannot allege infringement of any expression in DOTA 2 that does not appear in DotA.    *See Russell*, 612 F.2d at 1128.    Accordingly, Valve is aware that it can plead no new facts to cure the FAC, and Valve's claims should be dismissed with prejudice.    *See Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*, 792 F.2d 1432, 1438 (9th Cir. 1986) (affirming dismissal with prejudice).

1  unprotectable elements[.]" *Capcom,* 2008 WL 4661479, at *5.  Where the complaint fails to

2  allege similarity in protectable expression, the complaint is dismissed.  *See Gorski*, 2014 WL

3  3533324, at *5. Under the doctrine of "scenes-a-faire," character traits that are "common [to]

4  stock characters" or "flow naturally from generic plot-lines," are not protectable in copyright and

5  are disregarded.  *Capcom,* 2008 WL 4661479, at *6-7.   In this case, because Plaintiffs do not,

6  and cannot, allege any elements of King Leoric or the Terran Marine that are original and not

7  simply unprotectible scenes-a-faire, they fail to satisfy the extrinsic test with respect to both

8  characters.

**King Leoric (FAC ¶ 21)**           **King of the Dead (Lord of the Rings Ex. 10)**



15      The King Leoric character consists entirely of unprotectible scenes-a-faire elements.   In

16  describing King Leoric, Blizzard claims a copyright in the depiction of a "skeleton king with long

17  white hair and a beard, distinctive armor, a red loincloth and a spiky gold crown."  FAC ¶ 21.

18  The idea of a undead skeleton warrior is in and of itself hardly original.  *See* Ex. 10, 11, 12.

19  Undead warriors date back at least to ancient Greek mythology—in Thebes' founding myth, an

20  army of undead skeletons springs from the ground where Cadmus has planted the teeth of a

21  dragon, and in the well-known myth of Jason and the Argonauts, a similar undead army springs up

22  to challenge Jason en route to claiming the golden fleece.   Ex. 12.   Undead skeleton warriors are

23  also prevalent in modern, popular fantasy.   The 2003 movie *Pirates of the Caribbean*:   *The*

24  *Curse of the Black Pearl* features undead, cursed pirates who turn into skeletons in the moonlight

25  (Ex. 11) and the movie adaptation of J.R.R. Tolkien's *The Return of the King*, from the same year,

26  features the "King of the Dead" an undead skeleton king and warrior.   Ex. 10.   Both of these

27  films predate Blizzard's Diablo III by nine years.   Accordingly, Blizzard may not claim

28  protection over the unoriginal idea of a skeleton warrior or a skeleton king.

1    Further, the descriptive elements of King Leoric over which Blizzard claims protection—

2    white hair, armor and a crown—are simply scenes-a-faire elements that would be associated with

3    any king, including an undead king.   Indeed, the King of the Dead in *The Return of the King* is

4    depicted with **exactly** the features Blizzard claims.   Ex. 10.   Similarly, a red loincloth is simply

5    a generic medieval item of clothing and cannot form the basis of an infringement claim. *See*

6    *Capcom*, 2008 WL 4661479, at *8 (finding brown hair and leather jackets were elements of stock

7    characters.)   Blizzard cannot now claim ownership over the well-known trope of an undead

8    warrior king by annexing these standard fantasy wardrobe choices, (Ex. 10, 11, 12), which flow

9    directly and necessarily from the idea of an undead warrior king.   Ex. 10.   When these

10    unprotectible elements are filtered, no similarities remain between King Leoric and the cartoonish

11    War Chief from Heroes Charge.   *See* Ex. 16, 18.   Because King Leoric is the **only** element of

12    Diablo III asserted by Blizzard, the Court should dismiss all claims referencing Diablo III.

13    Likewise, Blizzard has failed to identify any protectable elements of their "Terran Marine"

14    character.   According to the FAC, Terran Marines are "a team of space soldiers . . .[who] wear a

15    distinctive set of giant blue space armor with huge, oversized shoulder pads, a fully-enclosed

16    helmet with round tubes protruding from it, and a yellow faceplate."   FAC ¶ 21.   But the idea of

17    "space marine" is simply a well-recognized and often-seen stock character in science fiction

18    entertainment, and is not protectible by copyright. *See, e.g. Brave New Worlds: the Oxford*

19    *Dictionary of Science Fiction* 205 (1st Ed. 2007) (listing "space marine" as a commonly occurring

20    character type); *Capcom*, 2008 WL 4661479, at *8 (finding no copyright protection for "a stock

21    character expected to be present in any number of stories").   By the same token, Blizzard's

22    attempt to claim protection over the wardrobe of a space marine—*i.e.*, "space armor," a space

23    helmet and a large rifle— flows directly from the idea of a "space marine" and for this reason is

24    unoriginal, unprotected scenes-a-faire.   *See, e.g. Cavalier v. Random House, Inc.*, 297 F.3d 815,

25    823 (9th Cir. 2002) ("the common elements of electrified fences, automated tours, dinosaur

26    nurseries, and uniformed workers [are] scenes a faire that flow[] from the concept of a dinosaur

27    zoo.").   Blizzard's description of a helmet "enclosed" with "round tubes protruding from it, and a

28    yellow faceplate" simply describes elements of the suits worn by the Apollo 11 astronauts in 1969.

1    *See* Ex. 14, 15.    Accordingly, Blizzard has failed to allege any original expression.

2        Moreover, to the extent Blizzard attempts to claim an original copyright in the Terran

3    Marine's exaggerated, "oversized shoulder pads," another court has already held that this **exact**

4    **feature** was copyrighted by another party, Games Workshop, in the 1980s—decades before

5    Blizzard released Starcraft II in 2010.   In *Games Workshop Ltd. v. Chapterhouse Studios, LLC*,

6    2012 WL 5949105 at *11 (N.D. Ill. Nov. 27, 2012), the Northern District of Illinois noted that

7    Games Workshop had created a Space Marine in 1987, and recognized that a copyrightable

8    element of the Space Marine was "[t]he unusually large proportional size of the shoulder pads as

9    compared to the Space Marine's head (depicted in GW's product at entry 49)[.]").   Even the

10   elements of Games Workshop's Space Marine not found to be protectible match Blizzard's Terran

11   Marine identically—down to blue armor and an enclosed helmet with protruding round tubes.

12   *See* Ex. 13 (documents filed in the 2012 *Games Workshop* litigation).   Blizzard may not claim

13   copyrights in features of a character that it copied from another game maker.

14        **Terran Marine (FAC ¶ 21)**                    **Space Marine (Games Workshop, Ex. 13)**



19        When the idea of a space marine, as well as the unprotectible or unoriginal wardrobe

20   elements asserted by Blizzard, are removed from the Terran Marine, no similarities remain

21   between Blizzard's artwork and Heroes Charge's Rifleman which is drawn in a cartoonish format

22   and features different armor and weaponry from the Terran Marine.   *See* Ex. 17, 19.   Because

23   Blizzard fails to satisfy the substantial similarity test with respect to both King Leoric and the

24   Terran Marine, its claims relating to Diablo III and Starcraft II should be dismissed.

25   **V.    CONCLUSION**

26        For the foregoing reasons, uCool. respectfully requests that this Court dismiss all claims

27   related to DotA, DOTA 2, Diablo III, and Starcraft II.   uCool further requests that this Court

28   dismiss all claims relating to DotA and DOTA 2 with prejudice.

1

2
DATED: February 8, 2016

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3
By   */s/ Evette D. Pennypacker*

4
Claude M. Stern
Evette D. Pennypacker
Attorneys for uCool, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28