KARIN G. PAGNANELLI (SBN 174763), kgp@msk.com
MARC E. MAYER (SBN 190969), mem@msk.com
DANIEL A. KOHLER (SBN 285501), dxk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone:   (310) 312-2000
Facsimile:    (310) 312-3100

Attorneys for Plaintiffs Blizzard
Entertainment, Inc. and Valve Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Blizzard Entertainment, Inc., and Valve Corporation, | CASE NO. 3:15-cv-04084-CRB |
| Plaintiffs, | The Honorable Charles R. Breyer |
| v. | **MEMORANDUM OF PLAINTIFFS BLIZZARD ENTERTAINMENT, INC. AND VALVE CORPORATION IN OPPOSITION TO UCOOL, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Lilith Games (Shanghai) Co. Ltd., uCool, Inc., and uCool Ltd., | |
| Defendants. | DATE:       April 8, 2016 |
| | TIME:       10:00 a.m. |
| | CTRM.:      6, 17th Floor |

Mitchell
Silberberg &
Knupp LLP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT.................................................1

II.    STATEMENT OF THE ISSUES. ......................................................................................2

III.   SUMMARY OF ALLEGATIONS AND BACKGROUND FACTS. ...............................2

IV.    PLAINTIFFS MAY SUE FOR INFRINGEMENT OF DOTA 2, INCLUDING ANY
       PREEXISTING MATERIAL FROM DOTA CONTAINED THEREIN..........................4

       A.    Plaintiffs' Copyright Registrations for DotA Cure Any Even Arguable
             Procedural Defect. ...................................................................................................5

       B.    Valve's Dota 2 Registration Permits It To Sue On Both The New Material And
             Any Preexisting Material From DotA. ....................................................................6

       C.    Valve Did Not "Disclaim" DotA By Completing Section 6 Of The Online
             Registration Form As Required By The Copyright Act..........................................8

       D.    uCool's Purported Challenges To Plaintiffs' Chain Of Title In DotA Raise
             Factual Issues Not Appropriate For Resolution Here. ............................................9

V.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED COPYING OF PROTECTABLE
       ELEMENTS OF LEORIC AND TERRAN MARINE. ....................................................12

VI.    CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A & M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) .................................................................11

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) .................................................................11

*AFL Telecommunications LLC v. SurplusEQ.com Inc.*,
   946 F. Supp. 2d 928 (D. Ariz. 2013) .........................................................9

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) .....................................................................6

*Capcom Co. v. MKR Group, Inc.*,
   2008 U.S. Dist. LEXIS 83836 (N.D. Cal. Oct. 10, 2008) .......................14

*Capital Concepts, Inc. v. Mt. Corp.*,
   2012 U.S. Dist. LEXIS 182874 (W.D. Va. Dec. 30, 2012) ......................11

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
   372 F.3d 471 (2d Cir. 2004) .....................................................................11

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   2013 U.S. Dist. LEXIS 169813 (N.D. Cal. Dec. 1, 2013) .........................6

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   2014 U.S. Dist. LEXIS 75345 (N.D. Cal. June 2, 2014) (*Choyce II*) ......10

*Christopher Phelps & Assoc., LLC v. Galloway*,
   492 F.3d 532 (4th Cir. 2007) .....................................................................4

*Computer Assocs. Int'l v. Altai, Inc.*,
   775 F. Supp. 544 (E.D.N.Y. 1991) ....................................................4, 5, 6

*DaVinci Editrice S.R.L. v. Ziko Games, LLC*,
   2014 U.S. Dist. LEXIS 110139 (S.D. Tex. Aug. 8, 2014) .......................14

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) .........................................................................8

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) .................................................................13

*Facebook, Inc. v. Power Ventures, Inc.*,
   2009 U.S. Dist. LEXIS 42367 (N.D. Cal. May 11, 2009) .........................1

**OPPOSITION TO UCOOL, INC.'S MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ...................................................................................................13

*Fleener v. Trinity Broad. Network*,
    203 F. Supp. 2d 1142 (C.D. Cal. 2001) ......................................................................15

*Gaiman v. McFarlane*,
    360 F.3d 644 (7th Cir. 2004) .......................................................................................13

*Games Workshop Ltd. v. Chapterhouse Studios, LLC*,
    2012 U.S. Dist. LEXIS 168360 (N.D. Ill. Nov. 27, 2012) ..........................................15

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ...................................................................................11

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) .....................................................................................13

*Micro Star v. Formgen Inc.*,
    154 F. 3d 1107 (9th Cir. 1998) .................................................................................3, 11

*Novelty Textile Mills v. Joan Fabrics Corp.*,
    558 F. 2d 1090 (2d Cir. 1977) .....................................................................................15

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
    527 F.3d 1218 (11th Cir. 2008) .....................................................................................7

*Oskar Sys., LLC v. Club Speed, Inc.*,
    745 F. Supp. 2d 1155 (C.D. Cal. 2010) .........................................................................7

*Positive Black Talk Inc. v. Cash Money Records, Inc.*,
    394 F.3d 357 (5th Cir. 2004) .........................................................................................5

*R.W. Beck, Inc. v. E3 Consulting, LLC*,
    577 F.3d 1133 (10th Cir. 2009) .....................................................................................6

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) .......................................................................................................4

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*,
    923 F. Supp. 1231 (N.D. Cal. 1995) ..............................................................................7

*Sid & Marty Krofft Television v. McDonalds Corp.*,
    562 F.2d 1157 (9th Cir. 1977) .....................................................................................14

Mitchell
Silberberg &
Knupp LLP

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Smith v. Jackson,*
    84 F.3d 1213 (9th Cir. 1996)..................................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*
    464 U.S. 417 (1984) ...............................................................................4

*Spry Fox, LLC v. LOLApps, Inc.,*
    2012 U.S. Dist. LEXIS 153863 (W.D. Wash. Sept. 18, 2012) ...........................12, 15

*Streetwise Maps v. Van Dam, Inc.,*
    159 F.3d 739 (2d Cir. 1998)..................................................................6, 8

*Synopsis, Inc. v. Atoptech, Inc.,*
    2016 U.S. Dist. LEXIS 1859 (N.D. Cal. 2016)...........................................7, 9

*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.,*
    8 F. Supp. 2d 357 (S.D.N.Y. 1998) ..............................................................10

*U2 Home Entm't, Inc. v. Kylin TV, Inc.,*
    2007 U.S. Dist. LEXIS 50131 (E.D.N.Y. July 10, 2007) ..................................10

*United States v. Jackson,*
    208 F.3d 633 (7th Cir. 2000)..................................................................12

*Walt Disney Prods. v. Air Pirates,*
    581 F.2d 751 (9th Cir. 1978)..................................................................13

*White v. Kimmell,*
    193 F.2d 744 (9th Cir. 1952)..................................................................11

*Woods v. Universal City Studios, Inc.,*
    920 F. Supp. 62 (S.D.N.Y. 1996)..............................................................6

*Wyatt Tech. Corp. v. Malvern Instruments Incorporation,*
    2009 U.S. Dist. LEXIS 66097 (C.D. Cal. July 29, 2009) ..................................11

*Xoom, Inc. v. Imageline, Inc.,*
    323 F.3d 279 (4th Cir. 2003)..................................................................7

*Young Design, Inc. v. Teletronics, Int'l Inc.,*
    2001 U.S. Dist. Lexis 21851 (E.D. Va. July 31, 2001) ....................................8

Mitchell
Silberberg &
Knupp LLP

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

### STATUTES

17 U.S.C.
§ 102 .................................................................................................................................4
§ 408(a) ............................................................................................................................4
§ 409 ..............................................................................................................................8, 9
§ 410(c) .............................................................................................................................5
§ 411 ..............................................................................................................................4, 6
§ 501(b) .............................................................................................................................8

Mitchell
Silberberg &
Knupp LLP

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiffs' First Amended Complaint ("FAC") sufficiently alleges all of the necessary elements for an infringement claim: namely, that Plaintiffs are the owners of registered copyrights in the works in suit and that uCool infringed Plaintiffs copyrights by copying protected expression from Plaintiffs' works in "Heroes Charge" and distributing that infringing work in the United States without authorization.  *Facebook, Inc. v. Power Ventures, Inc.*, 2009 U.S. Dist. LEXIS 42367, *7 (N.D. Cal. May 11, 2009) ("[A] plaintiff need only allege (1) ownership of a valid copyright and (2) copying of original elements of the work.").  Additionally, pursuant to the Court's December 8, 2015 Order, the FAC includes numerous examples (not exhaustive) of protectable elements of Plaintiffs' games and illustrates the manner by which Defendants infringed these games, thereby confirming that uCool's copying is pervasive and intentional.

In an effort to further delay its response to the Complaint and divert attention from its own conduct, uCool has filed what is, at best, a thinly disguised, pre-discovery and pre-Answer motion for summary judgment.  In its Motion, uCool asks that the Court adjudicate factual theories and claims concerning ownership, authorship, intent, originality, and substantial similarity, based on extraneous materials, unsupported hearsay found on the Internet, and pure conjecture.  At worst, uCool's motion is deceptive, claiming that Valve "disclaimed" substantive rights based on the mandatory language of the Copyright Office's online form and predicating its substantial similarity analysis on an image of a character ("War Chief") that uCool changed after this lawsuit was filed, without even mentioning the previous version.  *See* Mayer Decl., Exs. 10, 11.

uCool's motion is largely premised on its theory that Plaintiffs may not sue for infringement of DotA because they failed to register a copyright in that work.  The issue is a phantom, based on a mischaracterization of the First Amended Complaint and a misreading of the law.  The copyright that Valve is suing on in this case is Dota 2, which has been registered with the Copyright Office.  Though Dota 2 incorporates some elements from DotA, which itself is a "modification" (*i.e.*, a derivative work) of Blizzard's Warcraft III (also registered), that fact does not preclude Valve from asserting claims as to both the new and preexisting material.  The First Amended Complaint alleges that Plaintiffs own both the underlying work (DotA) ***and*** the

1  derivative work (Dota 2).  The law is clear that in such circumstances the copyright registration for

2  Dota 2 is sufficient to permit Plaintiffs to sue on the *entirety* of Dota 2, including preexisting

3  elements also contained in DotA.  In any event, the issue is moot because Plaintiffs have now

4  registered a copyright in three versions of DotA, and thus have cured any arguable procedural

5  defect.  *See* Mayer Decl., Exs. 2-5.  If necessary (though it should not be), Plaintiffs are prepared

6  to supplement their Complaint to add these registration numbers.

7         As for uCool's argument that Plaintiffs cannot establish, as a matter of law, that uCool

8  copied protectable elements of Blizzard's Leoric and Terran Marine, that claim involves issues of

9  disputed fact that cannot be resolved on a motion to dismiss.  Plaintiffs have sufficiently alleged

10  that uCool appropriated more than simply the "idea" of a skeleton warrior or astronaut.  The

11  handful of movie stills and images proffered by uCool are not subject to judicial notice and are

12  wholly insufficient to meet uCool's burden of establishing that the particular expression taken by

13  uCool is standard in the genre.  Rather, they prove that the "ideas" of a skeleton king and astronaut

14  are capable of a broad range of expression.  This is further confirmed by uCool's efforts to edit its

15  own work to disguise some of its most obvious appropriations.  In the meantime, while asking the

16  Court to compare the parties' respective products, uCool has not actually put any of these products

17  into the record (or even produced them in the lawsuit).

18         Plaintiffs have alleged infringement of their copyrighted works and are entitled to prove

19  ownership, originality and protectability based on admissible evidence and on a fully developed

20  record.  uCool's Motion should be denied in its entirety.

21  **II.    STATEMENT OF THE ISSUES.**

22         1.      Did Plaintiffs satisfy the procedural registration formality in order to bring a claim

23  for copyright infringement of Dota 2, including elements derived from preexisting works that

24  Plaintiffs also own and are now registered with the Copyright Office?

25         2.      Did Plaintiffs sufficiently allege copying of protectable elements of Diablo III and

26  Starcraft II?

27  **III.   SUMMARY OF ALLEGATIONS AND BACKGROUND FACTS.**

28         While the FAC alleges in detail the basis of Plaintiffs' claims, Plaintiffs briefly outline a

few of the allegations pertinent to this Motion.

**Blizzard, Valve, and The DotA Mod.**  Blizzard and Valve are game publishers and the owners of a number of popular computer games, including Warcraft III, World of Warcraft, Diablo III, Starcraft II, and Dota 2, all of which are registered with the Copyright Office.  FAC, ¶¶ 67-68 & Schedule A.  Warcraft III, a real-time computer strategy game, released with a "World Editor" tool that permitted users of the game, under an express limited license from Blizzard, to create and release custom game "maps" (also known as "mods").  FAC, ¶ 22.[1]  One of the most popular authorized Warcraft III mods was "Defense of the Ancients," or "DotA," an online multiplayer game that uses Warcraft III art files and character models to allow players to select from a cast of approximately 100 "heroes."  In 2010 and 2011, Plaintiffs obtained written assignments of all rights in DotA from the only four authors of DotA:  Eul, Icefrog, Guinsoo, and Pendragon.  FAC, ¶¶ 23-26; LaFond Decl., Exs. 1-3.

**Dota 2.**  In 2012, Valve released Dota 2.  Dota 2 is a stand-alone computer game that does not use the Warcraft III engine or art files.  Dota 2 incorporates new, completely re-designed versions of many of the "heroes" from DotA and their skills and powers, as well as other new material.  FAC, ¶¶ 27-29.  Dota 2 was registered with the Copyright Office in 2012.  FAC, ¶ 68.

**Heroes Charge and Its Iterations.**  In 2014, uCool developed and released to the public the mobile game "Heroes Charge."  FAC, ¶ 34.  "Heroes Charge" is largely copied from, and contains (among other elements) artwork, images, heroes, and even Lilith's copyright notice, from the game "Dota Legends" (also called "Dot Arena"), released by defendant Lilith.  FAC, ¶ 34.  "Heroes Charge" (like Dota Legends) was designed to attract the millions of fans of Blizzard's games and of Dota 2.  FAC, ¶ 38, 55-56.  "Heroes Charge" includes numerous protectable elements from Plaintiffs' games, including recognizable characters or creatures (and their particular appearances) from Blizzard's games (especially Warcraft III and World of Warcraft)

---

[1]  A computer game "mod" is a set of instructions that tell the game engine (in this case, Warcraft III) where to place certain assets, what text to display on the screen, and how to operate characters and creatures within the game world.  *See Micro Star v. Formgen Inc*., 154 F. 3d 1107, 1110 (9th Cir. 1998) (explaining computer game "mods").  Using the Warcraft III World Editor, and under license from Blizzard, the DotA creators created a cast of characters using existing Warcraft III character models, sounds, and other art files.  FAC, ¶ 22*; See also* LaFond Decl., Ex. 7, ¶¶ 7-14.  DotA cannot be played without an installed copy of Warcraft III.

Mitchell
Silberberg &
Knupp LLP

CASE NO. 3:15-cv-04084-CRB
**OPPOSITION TO UCOOL, INC.'S MOTION TO DISMISS**

and Dota 2; the selection and arrangement of characters from DotA and Dota 2 (including their skills and powers); one of Blizzard's most popular musical compositions from World of Warcraft; dozens of discrete icons from Warcraft III, World of Warcraft, and Dota 2; and depictions of fictitious landmarks and locations from Warcraft III and World of Warcraft.  FAC, ¶¶ 38-56.  "Heroes Charge" unmistakably looks, sounds, feels, and plays like Plaintiffs' games.  FAC, ¶ 54.

## IV.    PLAINTIFFS MAY SUE FOR INFRINGEMENT OF DOTA 2, INCLUDING ANY PREEXISTING MATERIAL FROM DOTA CONTAINED THEREIN.

Copyright protection for an original work of authorship exists from the moment the work is fixed in a tangible medium of expression.  17 U.S.C. § 102 ("[c]opyright protection subsists… in original works of authorship fixed in any tangible medium of expression…").  *See also Computer Assocs. Int'l v. Altai, Inc.*, 775 F. Supp. 544, 555 (E.D.N.Y. 1991); *Christopher Phelps & Assoc., LLC v. Galloway*, 492 F.3d 532, 538 (4th Cir. 2007) ("The copyright itself does not depend upon registration.").

While the owner of a copyright may register the work with the copyright office "at any time during the subsistence of copyright in any published or unpublished work," "[s]uch registration is ***not*** a condition of copyright protection."  17 U.S.C. § 408(a) (emphasis added).  *See also Sony Corp. of Am. v. Universal City Studios, Inc.* 464 U.S. 417, 493 n. 44 (1984) ("[A]lthough an infringement action cannot be brought unless the work is registered, registration is not a condition of copyright protection. Copying an unregistered work still may be infringement") (citations omitted).  However, in order to ***sue*** for infringement, the plaintiff must have submitted an application for a copyright registration.  17 U.S.C. § 411.  Section 411 is a procedural formality; it is not jurisdictional and not intended to deprive a plaintiff of standing.  *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010) ("§ 411(a)'s registration requirement is nonjurisdictional . . . .").  A plaintiff thus may sue for infringements that took place both prior to and after the registration.

There is no dispute that Valve owns a valid copyright registration for Dota 2.  The registration was completed within five years of Dota 2's publication, and thus the registration constitutes *prima facie* evidence of the facts stated therein (*i.e.* Valve's ownership of a valid copyright in the work).  *See* 17 U.S.C. § 410(c) ("[A] certificate of registration made before or

Mitchell
Silberberg &
Knupp LLP

within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."). uCool's lengthy discussion of the Warcraft III DotA mod is a red herring. What uCool actually is arguing is that because some elements of Dota 2 were "derived from" DotA, Plaintiffs cannot bring a claim for uCool's copying of any of these preexisting elements. uCool is incorrect as a matter of law.[2]

### A.     Plaintiffs' Copyright Registrations for DotA Cure Any Even Arguable Procedural Defect.

Irrespective of its merit, uCool's argument is moot because on February 5 and 12, Plaintiffs filed copyright registrations for three versions of DotA: the very first version (DotA Beta 2), a version released in 2010 (DotA 6.68), and the most recent version (DotA 6.83). Blizzard and Valve are the copyright claimants for each of these registrations. The registration for DotA 6.83 was made within five years of its release and thus it constitutes *prima facie* evidence of Plaintiffs' ownership. 17 U.S.C. § 410(c). Plaintiffs notified uCool **before its motion was filed** that it would be obtaining these registrations, and requested that uCool forego this motion and the wasted resources it would consume. uCool refused. *See* Mayer Decl., ¶ 2 & Ex. 1.

Registration is not jurisdictional. The purported failure to register a copyright is at most a curable defect. Contrary to Defendants' suggestion, "an action need be not dismissed simply because the registration occurs after the filing of the complaint." *Altai, Inc.*, 775 F. Supp. at 557-58 (permitting amendment of the complaint where the plaintiff presented the court with amended copyright certificates on the last day of trial.). Where, as here, the statute of limitations has not run, no Answer has been filed, the defendants are on notice of the precise nature of Plaintiffs' claims, and there has been no prejudice, "a formalistic dismissal, followed by … commencement of a new action, is unnecessary and would be wasteful." *Id. See also Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 366-67 (5th Cir. 2004) (holding that the subsequent

---

[2] uCool's motion also should be denied because Valve's claims for infringement of Dota 2 are **not** limited to material contained in DotA. Dota 2 is a new product that, while incorporating some elements from DotA, contains substantial additional material. This includes Valve's visual depiction of Dota 2 characters (FAC, Ex. A & ¶¶ 42-44), icons and artwork (FAC, ¶ 51), and the selection and arrangement of certain skills, abilities, and heroes. FAC, ¶¶ 45-47. In (improperly) citing to Plaintiffs' interrogatory responses, Plaintiff ignored that Valve confirmed that "**significant additional protected expression…was added to Dota 2 that was not present in DotA**." LaFond Decl., Ex. 9 (emphasis added).

registration cured the Section 411 defect because "technicalities should not prevent litigants from having their cases heard on the merits.").

Nevertheless, if the Court determines that the existing complaint is insufficient for suit on preexisting elements of DotA in Dota 2, then it should permit Plaintiffs leave to supplement the complaint to incorporate reference to the DotA registrations.  *See Woods v. Universal City Studios, Inc.*, 920 F. Supp. 62, 64 (S.D.N.Y. 1996) ("Woods also represented at oral argument that he has applied for separate registration of the 1987 and 1991 works, and expects a certificate of registration from the copyright office within the next few days."); *Altai*, 775 F. Supp. at 557 (granting leave to file a Second Amended Complaint to supplement copyright registration allegations).  This is exactly what was contemplated in the case relied upon by uCool, *Choyce v. SF Bay Area Indep. Media Ctr.,* but uCool omitted the most relevant part: "***Plaintiff may amend the complaint to allege that he has applied for a copyright.***" 2013 U.S. Dist. LEXIS 169813, *10 (N.D. Cal. Dec. 1, 2013) (emphasis added).

### B.    Valve's Dota 2 Registration Permits It To Sue On Both The New Material And Any Preexisting Material From DotA.

While Valve did register a copyright in DotA, it need not have done so.  Where, as here, the owner of the derivative work is also the owner of the underlying material incorporated therein, the plaintiff may sue on the entirety of the new work, "even for copied material that was incorporated from the [preexisting work]."  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994).  Thus, "if the same party owns a copyright in both a derivative work…and the underlying work that is incorporated in the derivative work, registration of a copyright in the derivative work is sufficient to permit an infringement action on either the preexisting (unoriginal) material or on any newly contributed material."  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009).  *See also Streetwise Maps v. Van Dam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("[T]he registration certificate relating to the derivative work in this circumstance will suffice to permit [the plaintiff] to maintain an action based on defendants' infringement of the pre-existing work."); *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003) ("[B]ecause Imageline owned copyright in SuperBundle and Master Gallery and in the underlying works of each, its registration of SuperBundle and Master Gallery

1  was sufficient to permit an infringement action on the underlying parts, whether they be new or

2  preexisting."); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229 (11th Cir. 2008)

3  (courts "eschew[] strict application of the registration requirement in cases where a party owns

4  both a preexisting work and a derivative work that incorporates elements of the original.");

5  *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1241-1242 (N.D.

6  Cal. 1995) ("Where, as here, the author of a collection or derivative work is also the author of the

7  preexisting work, registration of the collection is sufficient.").[3]

8      The foregoing rule squarely applies here because Plaintiffs allege that by virtue of written

9  assignments, including those attached to uCool's Motion, they collectively own "***100% of the***

10  ***copyright in all original expression contained within the DotA mod.***"  FAC, ¶ 26 (emphasis

11  added).  Additionally, Valve's copyright registration explicitly identifies "DotA" as a preexisting

12  work.  *See* LaFond Decl., Ex. 5.[4]  As the owner of both the registered derivative work and the

13  underlying work, the statutory formality is met and Plaintiffs may assert claims with respect to all

14  material contained within Dota 2, including material also present in DotA.  Whether uCool

15  disagrees with or intends to challenge Plaintiffs' ownership allegation is not material to this

16  motion, and has no bearing on the narrow issue of whether Plaintiffs have met the statutory

17  registration requirement.

18      uCool's argument that Plaintiffs cannot sue on any aspects of Dota 2 that were also in

19  DotA because **both Plaintiffs** (Valve and Blizzard) collectively claim ownership of DotA is

20  misplaced and unsupported.  There is no practical or policy reason to condition the ability of a

21  plaintiff to ***bring suit*** on a derivative work on whether it is a sole owner or co-owner of the

22  underlying material.[5]  That is particularly true here, since every entity that claims to own DotA is

23

24  [3]  uCool refers to this doctrine as "effective registration."  Strictly speaking, however, DotA need not be "effectively registered" in order for Plaintiffs to sue on Dota 2 and underlying material contained therein.  *Xoom*, 323 F.3d at 283.  Irrespective of nomenclature, the result is the same.

25
26  [4]  The identification of DotA as a preexisting work is not equivalent to the ambiguous claims made in *Synopsis, Inc. v. Atoptech, Inc.* to "prior works by claimant."  2016 U.S. Dist. LEXIS 1859, *4 (N.D. Cal. 2016).

27  [5]  *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155 (C.D. Cal. 2010), did not address this issue at all.  That case involved a plaintiff that fraudulently deposited a 2008 version of computer software in support of a registration for a version released in 2002.  The *Oskar* court's *dicta* that courts permit a plaintiff to assert claims over preexisting material where it owns "all" of the

28

1   present in this lawsuit.  Further, it is well-established that *any* copyright claimant has standing to

2   bring an infringement claim for the *entirety* of the work, with or without any co-owners or co-

3   claimants.  *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (owner may bring suit for copyright

4   infringement without joining other co-owners); 17 U.S.C. § 501(b) (any "legal or beneficial

5   owner" of a copyright may institute an action for infringement).  Thus, Valve would have standing

6   to sue for infringement of DotA and Dota 2 under any circumstance.

7       **C.**    **Valve Did Not "Disclaim" DotA By Completing Section 6 Of The Online Registration Form As Required By The Copyright Act.**

8         uCool attempts to further create confusion by ascribing an unintended (and unfair)

9   consequence from the fact that Valve registered Dota 2 using the Copyright Office electronic form

10  (rather than a paper application).  The use of the phrase "Material Excluded From This Claim" in

11  the online form does not mean that registrants have disclaimed the ability to sue for underlying

12  material.  To the contrary, the registrant of a work that incorporates pre-existing works *must*

13  include the name of the pre-existing work as "Material Excluded From This Claim."  *See* 17

14  U.S.C. § 409 ("The application for copyright registration shall be made on a form prescribed by

15  the Register of Copyright and shall include… in the case of a…derivative work, *an identification*

16  *of any preexisting work or works that it is based on or incorporates*.") (emphasis added).

17        uCool confuses a semantic issue with a substantive waiver.  The purported "disclaimer"

18  language that uCool points to in the Dota 2 registration (titled "Limitation of Copyright Claim") is

19  not Valve's language, but unalterable phrasing contained in the Copyright Office's electronic

20  copyright registration form.  The "Material Excluded" language replaced the language of Section 6

21  of the paper form (titled "Derivative Work or Compilation").  That is the same language that was

22  relied on by the *Streetwise* court (and others) to *permit* the plaintiff to sue on unregistered

23  preexisting works.  159 F.3d at 746-47 (copyright registration identified preexisting work).

24  (Ironically, if Plaintiffs had not identified DotA in this portion of the form, uCool would be

25

26      ────────────────────

    (…continued)

27  preexisting work did not address joint ownership, or purport to limit the doctrine to sole owners. Nearly all other cases do not use the word "all."  *See, e.g.*, *Young Design, Inc. v. Teletronics, Int'l*

28  *Inc.*, 2001 U.S. Dist. Lexis 21851, *38 (E.D. Va. July 31, 2001) ("[J]urisdiction is proper because plaintiff has shown that it has *a* valid copyright in version 1.4 . . . .") (emphasis added).

Mitchell Silberberg & Knupp LLP

1   arguing that they could not sue on the preexisting material for that reason.  *See* Mot. at 5).

2   Notably, when Plaintiffs recently registered DotA, they used the paper form (containing the

3   original language), but when the copyright office issued the actual registration it did so on the

4   electronic form, using the new "excluded" language.  There is no evidence that the Copyright

5   Office intended to change its longstanding practice, far less change the law, when it created the

6   electronic form. [6]  There also is no reason why someone that registers a copyright online should be

7   deemed to have waived rights that are granted to someone who submits the exact same

8   information on paper.

9       The one (non-binding) case cited by uCool in support of its "disclaimer" argument, *AFL*

10  *Telecommunications LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013),

11  overlooked that the plaintiff had filed its application online, did not realize that the online form

12  changed the derivative work language, and failed to address Section 409 of the Copyright Act.

13  For that reason, the decision is incorrect and has been criticized.[7]  In fact, in *Synopsis, Inc. v.*

14  *Atoptech, Inc.*, a case cited by uCool, this Court acknowledged this very issue and the problem

15  posed by the wording of the Copyright Office electronic form.  It thus found that the "exclusion"

16  language in the electronic registration form did ***not*** constitute a waiver of rights but raised "a

17  triable issue … as to whether Synopsis disclaimed its right to sue to enforce its copyrights

18  therein."  2016 U.S. Dist. LEXIS 1859, *4 (N.D. Cal. Jan. 7, 2016).

19      **D.    uCool's Purported Challenges To Plaintiffs' Chain Of Title In DotA Raise
              Factual Issues Not Appropriate For Resolution Here.**

20      The remainder of uCool's registration argument consists of its claim that Plaintiffs have

21  failed to "plausibly" plead ownership of DotA.  uCool's argument mischaracterizes the FAC and

22  ignores the legal standard on a Rule 12 motion.  Instead, at the pleading stage uCool asks the

23  Court to resolve its bald assertion that Plaintiffs' claim of ownership is false, based on an

24  incomplete factual record and relying entirely on inadmissible hearsay and conjecture concerning

25

26  [6]  *Compare* Mayer Decl., Ex. 6 ("Check the appropriate box(es) to exclude any preexisting
       material that this work is based on or incorporates….") *with* Mayer Decl., Ex. 7 (Paper Form: "In
27     space 6a identify the preexisting work that has been recast, transformed, or adapted . . . .").

    [7]  *See, e.g.,* http://propertyintangible.com/2013/05/what-you-cant-put-on-a-copyright-
28     registration.html

Mitchell
Silberberg &
Knupp LLP

1   the nature of individual contributions to DotA and whether one DotA creator (of four) subjectively

2   intended to abandon his copyright.

3         uCool does not, and cannot, cite a single case holding that a plaintiff must allege the details

4   of its chain of title in its initial pleading, far less **prove** its chain of title.  The law is exactly the

5   opposite.  *U2 Home Entm't, Inc. v. Kylin TV, Inc.*, 2007 U.S. Dist. LEXIS 50131, *20 (E.D.N.Y.

6   July 10, 2007) ("To the extent defendants argue that plaintiff failed to allege an unbroken chain of

7   title to the rights at issue, it is unnecessary for the complaint to include such detailed factual

8   recitation…. [D]efendants fail to make the necessary showing to justify dismissal of the

9   complaint at this stage of the litigation because such particularity in pleadings is not required.");

10  *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.*, 8 F. Supp. 2d 357 (S.D.N.Y. 1998)

11  (declining to dismiss action where copyright ownership was disputed:  "[A]s this litigation

12  advances, it may be necessary for the Court to sort out the history of copyright ownership . . . .  It

13  is premature, however, at this stage, on a motion to dismiss… to engage in this fact-intensive and

14  apparently hotly disputed endeavor.").

15        Plaintiffs' allegations in the FAC plainly are sufficient to support their claim of ownership.

16  Plaintiffs allege that DotA is a licensed "modification" of Warcraft III that uses Warcraft III

17  artwork, icons, music, and software assets and that can be played only through the Warcraft III

18  client.  FAC, ¶¶ 22-26.  Plaintiffs allege that their ownership of DotA derives from written

19  assignment agreements (the "Assignments").  FAC, ¶ 26.  The Assignments, which have been

20  produced in this litigation and which uCool has attached to its Motion, plainly grant to Plaintiffs

21  all of the relevant rights in the DotA mod, and each Assignee has represented and warranted that

22  he has not transferred his rights to any other person or entity.  LaFond Decl., Exs. 1-3.  In fact,

23  uCool **admits** that the assignees are the "**creators**" of DotA.  Mot. at 2.  This could not be more

24  different from *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 U.S. Dist. LEXIS 75345, *5 (N.D.

25  Cal. June 2, 2014) (*Choyce II*), in which the plaintiff admitted in a sworn declaration that the work

26  at issue was **not** created by him, thus explicitly calling into question his claim of ownership.

27        Nothing in uCool's papers calls into question the plausibility of Plaintiffs' ownership

28  allegation in the FAC.  uCool cannot point to any judgment, court decision, or other document that

1   establishes that Plaintiffs do not own the entirety of DotA.  uCool does not, and cannot, identify

2   (far less through a document subject to judicial notice) a single person or entity *other than*

3   *Plaintiffs* and their predecessors-in-interest that even has *claimed* to possess *any* ownership

4   interest in DotA or, for that matter, that has claimed authorship of independently copyrightable

5   material in DotA.  *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1233 (9th Cir. 2000) (author is "the

6   person to whom the work owes its origin and who superintended the whole work, the 'master

7   mind'").  Finally, uCool has no basis to challenge any of the Assignments, and cannot do so, either

8   on this motion or otherwise.  *See Capital Concepts, Inc. v. Mt. Corp.*, 2012 U.S. Dist. LEXIS

9   182874, *6 (W.D. Va. Dec. 30, 2012) ("Defendants have no standing to challenge the validity of

10  the McAbee Agreement, as there is no dispute between McAbee and Plaintiff....").

11         The only purported basis for uCool's challenge to Plaintiffs' ownership allegations is its

12  claim that a single, archived Internet forum post purportedly by one of the four Assignors (Eul)

13  proves that the copyright was abandoned.  It does not.  In order to prove abandonment, uCool

14  must establish that the copyright owner subjectively *intended* to abandon or surrender his rights

15  under the Copyright Act.  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.

16  2001) ("[A]bandonment of copyright occurs only if there is an intent by the copyright proprietor to

17  surrender rights in his work.").[8]  That is a highly factual issue that cannot be decided on a motion

18  to dismiss, or even on summary judgment.  *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d

19  471, 483 (2d Cir. 2004) ("[F]ederal procedural law would normally render the issue of intent to

20  abandon inappropriate for summary judgment.").  uCool certainly cannot meet its burden of

21  proving abandonment based solely on inadmissible and ambiguous hearsay from the Internet.

---

22  [8]  The cases cited by uCool are not on point, and neither was decided at the pleading stage.  *White*
23  *v. Kimmel*, 193 F.2d 744, 745 (9th Cir. 1952), dealt (after trial) with the different issue of
    whether, under the 1909 Act, a plaintiff had abandoned his common law copyright through a
24  "general publication."  *Wyatt Tech. Corp. v. Malvern Instruments Incorporation*, 2009 U.S. Dist.
    LEXIS 66097, *35 (C.D. Cal. July 29, 2009), relied on deposition testimony and declarations
25  confirming the plaintiff's intent to abandon, neither of which are present here.  Eul, at minimum,
    never abandoned the right to profit commercially from DotA, which is prohibited under the
26  Warcraft III World Editor License.  *See Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th
    Cir. 1998) ("[A]bandoning some rights is not the same as abandoning all rights, and FormGen
27  never overtly abandoned its rights to profit commercially from new levels.").  Additionally, it is
    well understood that the term "open source" refers to a type of *license*, not copyright
28  abandonment.  *See, e.g., Jacobsen v. Katzer*, 535 F.3d 1373, 1381 (Fed. Cir. 2008) ("Open source
    licensing has become a widely used method of creative collaboration....").

1   *United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("The web postings were not

2   statements made by declarants testifying at trial, and they were being offered to prove the truth of

3   the matter asserted.  That means they were hearsay.").  Despite uCool's unsupported attack on

4   Eul's rights, uCool does not dispute that Plaintiffs *also* possess ownership rights in all

5   copyrightable material authored by Guinsoo, Pendragon, and Icefrog.  Whether the elements that

6   uCool infringed were authored by Eul, Guinsoo, Pendragon or Icefrog is a factual issue and need

7   not be decided now.

8   **V.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED COPYING OF PROTECTABLE
        ELEMENTS OF LEORIC AND TERRAN MARINE.**

9       As it attempted to do in its first motion, uCool tries to seek summary adjudication at the

10   pleading stage on factual issues of substantial similarity and originality of certain exemplar images

11   from Plaintiffs' works, ignoring that Plaintiffs' burden at this stage is only to allege facts sufficient

12   to state a claim.  uCool also gives short shrift to the relevant legal standards, and it is unclear

13   whether uCool's challenge is to the originality of Plaintiffs' characters or their substantial

14   similarity to uCool's derivative heroes.  Plaintiffs have sufficiently alleged both.

15       uCool's argument initially falters because uCool has failed to put before the Court *any* of

16   the works at issue (either Plaintiffs' *or* its own).  uCool's own Motion confirms that this basic

17   deficiency precludes adjudication on the merits.  *See* Mot. at 5 (citing cases where "the

18   copyrighted work and the alleged infringement are both before the Court" and "capable of

19   examination").  *See also Spry Fox, LLC v. LOLApps, Inc.*, 2012 U.S. Dist. LEXIS 153863, *19

20   (W.D. Wash. Sept. 18, 2012) ("It is as difficult to compare two video games by looking at a few

21   screen shots and reading written descriptions of game play as it is to compare two movies by

22   looking at posters and reading excerpts of screenplays.").  Pursuant to the Court's December 8

23   Order, Plaintiffs' exemplar images are representative, not exhaustive.  12/8/15 Order on Motion to

24   Dismiss (Dkt. 35), at 10 (requiring only a "representative sampling of infringed content").

25       uCool's failure to proffer copies of *its own game* is deliberate.  uCool admitted in its court

26   filings that the depiction of its heroes (both as "sprites" and "hero cards") has changed

27   substantially since uCool first released the game.  *See* Mayer Decl., Ex. 10 (Declaration of Jacky

28   Cheung, ¶ 14: "[N]ew art was introduced during August and September of 2014. ***The new art***

1    *made substantial changes to many of the characters*.") (emphasis added).  *See also* Mayer Decl.,

2    Ex. 13 (uCool notes that changes to characters were made in September 2014).  These very same

3    court filings also confirm that among the heroes that uCool recently changed is "War Chief,"

4    which until recently wore a spiked crown nearly identical to that of Leoric.  *Id*.; *See also* Mayer

5    Decl., Exs. 11, 13.  It is disingenuous for uCool to proffer only images of the most recent revised

6    version of "War Chief," without *any* reference to the earlier versions.  Meanwhile, uCool has

7    refused to produce any versions of its work, claiming that to the extent any copies of the game

8    exist it does not have them and (unbelievably) cannot obtain them.  *See* Mayer Decl., ¶ 12.

9         The foregoing aside, Plaintiffs' allegations are more than sufficient to establish that Leoric

10   and Terran Marine are protectable and original, and were infringed by "War Chief" and

11   "Rifleman."  The requisite level of creativity required for copyright protection is extremely low;

12   "even a slight amount will suffice."  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

13   345 (1991).  Courts also have recognized that characters that are depicted *visually* generally are

14   entitled to copyright protection because they have "physical as well as conceptual qualities."  *DC*

15   *Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015).  *See also Walt Disney Prods. v. Air*

16   *Pirates*, 581 F.2d 751, 752 (9th Cir. 1978) ("While many literary characters may embody little

17   more than an unprotected idea, a comic book character, which has physical as well as conceptual

18   qualities, is more likely to contain some unique elements of expression."); *Gaiman v. McFarlane*,

19   360 F.3d 644, 660-61 (7th Cir. 2004) ("Although Gaiman' s verbal description of Cogliostro may

20   well have been of a stock character, once he was drawn and named and given speech he became

21   sufficiently distinctive to be copyrightable."). [9]  In the FAC, Plaintiffs included exemplar images

22   of both the Leoric and Terran Marine characters to demonstrate that they have distinctive visual

23   appearances that are consistent throughout Plaintiffs' games.  While the pictures are worth a

24   thousand words, Plaintiffs also included brief descriptions of some of each character's traits to

25   illustrate that these characters are not mere archetypes or "ideas."  FAC, ¶ 21.

---

[9]  Even if certain individual aspects of these characters were generic or *scenes a faire* (which they
are not), the *combination* of elements is protectable expression.  *Metcalf v. Bochco*, 294 F.3d
1069, 1074 (9th Cir. 2002) ("The particular sequence in which an author strings a significant
number of unprotectable elements can itself be a protectable element.  Each note in a scale, for
example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").

26

27

28

Mitchell
Silberberg &
Knupp LLP

1    As for infringement, Plaintiffs do not merely allege similarities in ideas, such as the idea of

2   an "undead warrior" (Mot. at 13) or "space soldier" (Mot. at 14).  Rather, Plaintiffs allege that

3   uCool appropriated distinctive aspects of Blizzard's particular ***expression*** of these ideas.[10]  *Sid &*

4   *Marty Krofft Television v. McDonalds Corp.*, 562 F.2d 1157, 1164-65 (9th Cir. 1977).  *See also*

5   FAC, ¶¶ 40-44.  For example, uCool copied Leoric's particular hair, facial expression, the color

6   and design of his armor plating and red loin cloth, and his distinct ornamented spiked crown.

7   uCool's decision to replace War Chief's crown with a Spartan helmet (and make other changes) is

8   a tacit admission that the elements it copied were not necessary to express the idea of an undead

9   warrior.  Likewise, uCool copied minute details of the Terran Marine, including the color and

10   shape of its armor, the sunken orange visor, the rounded shoulderpads with flat outer edges, the

11   flashlight tubes, the segmented gloves, and the distinctive boots with holes on the tops of the feet.

12   uCool's obvious copying of these very specific expressive elements is, at minimum, sufficient to

13   state a claim for infringement.  *DaVinci Editrice S.R.L. v. Ziko Games, LLC*, 2014 U.S. Dist.

14   LEXIS 110139, *35 (S.D. Tex. Aug. 8, 2014) ("The side-by-side comparison shows substantial

15   similarity between the characters and roles in [plaintiff's game] and the corresponding characters

16   and roles in [defendant's game].  [Plaintiff] has stated a claim on which relief can be granted.").

17    Finally, uCool cannot rely on a few selected images from outside the pleadings to establish

18   that, ***as a matter of law***, Plaintiffs' characters are not original to them or were not copied by

19   uCool.  uCool does not cite a single case in which issues of substantial similarity were decided on

20   the pleading stage based on examination of extrinsic evidence of purported prior art.  The images

21   and other documents that uCool has placed into the record are not judicially noticeable and thus

22   cannot be considered on a motion to dismiss.  *See Capcom Co. v. MKR Group, Inc.*, 2008 U.S.

23   Dist. LEXIS 83836, *9 (N.D. Cal. Oct. 10, 2008) (declining to take notice of "zombie movies and

24   video games; and [] certain ideas and elements common and prevalent in such movies and

25   games."); *see* Opposition to Request for Judicial Notice, at 3.  Nor is this the time to engage in an

26

27

28

---

[10] That "War Chief" and "Rifleman" ***in fact*** were modeled on Leoric and Terran Marine is clear to
uCool's customers.  *See* Mayer Decl., Ex. 11.  *See Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir.
1996) (under the "inverse ratio" rule, the greater the access, the less similarity is required.)  In
Lilith's "Dot Arena" these same heroes are named "Leo" and "Jimmy" (for Terran Marine "James
Raynor").  Mayer Decl., Ex. 11.

1   exhaustive survey of the universe of fantasy and science fiction media.  The Court cannot

2   conclude from three movie stills, a space suit, and a board game figurine that any (far less all) of

3   the elements that uCool is alleged to have taken from Plaintiffs are standard in the genre, *scenes a*

4   *faire*, or otherwise unprotectable.  *See Fleener v. Trinity Broad. Network*, 203 F. Supp. 2d 1142,

5   1148-1149 (C.D. Cal. 2001) ("Defendants have failed to fulfill their burden to establish any relied-

6   on element is standard in the genre, much less indispensable.").  To the contrary, each of the

7   images uCool proffers is visually distinct from Plaintiffs' works in numerous ways.  Thus, uCool's

8   materials actually confirm that there are myriad ways to depict an undead warrior or space soldier,

9   but uCool instead elected to copy Plaintiffs' particular expression.[11]

10      The images also are irrelevant.  uCool does not claim and cannot prove (especially at this

11  stage) that it copied from these other materials, and not from Plaintiffs' works.  *See Novelty Textile*

12  *Mills v. Joan Fabrics Corp.*, 558 F. 2d 1090, 1093 n.3 (2d Cir. 1977) ("The existence of a prior

13  work (whether in the public domain or not) is significant only if (1) the plaintiff copied from that

14  work; or (2) the defendant copied from that work.").  Thus, nothing in uCool's purported "prior

15  art" affects in any manner the plausibility of Plaintiffs' allegations of originality and substantial

16  similarity.  *Spry Fox, LLC*, 2012 U.S. Dist. LEXIS 153863, at *19 ("With these objective

17  similarities in protected expression, it is at least plausible that Spry Fox can pass the extrinsic test

18  for substantial similarity.").

19  **VI.    CONCLUSION.**

20      For the foregoing reasons, uCool's Motion should be denied.  Alternatively, Plaintiffs

21  should be given leave to amend or supplement their Complaint.

22  DATED: March 1, 2016                    MITCHELL SILBERBERG &KNUPP LLP

23

24                                          By:  /s/ Marc E. Mayer
                                                 Marc E. Mayer
                                                 Attorneys for Plaintiffs
25

26  _____
    [11]  Contrary to uCool's assertion, *Games Workshop Ltd. v. Chapterhouse Studios, LLC*, 2012 U.S.
27  Dist. LEXIS 168360, *27 (N.D. Ill. Nov. 27, 2012), actually confirms that the elements that uCool
    copied from Terran Marine *are* protectable, and are *not* "stock" elements.  uCool cannot justify its
28  infringement by arguing that similar elements appear in another copyrighted work that uCool *also*
    did not have permission to copy.