QUINN EMANUEL URQUHART & SULLIVAN, LLP
Claude M. Stern (Bar No. 96737)
    claudestern@quinnemanuel.com
Evette D. Pennypacker (Bar No. 203515)
    evettepennypacker@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
    michaellafond@quinnemanuel.com
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California  94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Derek J. Tang (Bar No. 296230)
    derektang@quinnemanuel.com
50 California St., 22nd  Fl.
San Francisco, California  94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for uCool, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Blizzard Entertainment, Inc., and Valve Corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>Lilith Games (Shanghai) Co. Ltd., and uCool, Inc.,<br><br>        Defendants. | CASE NO. 3:15-cv-04084-CRB<br><br>**DEFENDANT UCOOL, INC.'S AMENDED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**Date:          April 8, 2016**<br>**Time:          10:00 a.m.**<br>**Courtroom:  6, 17th Floor**<br>**Judge:         The Hon. Charles R. Breyer** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

II.   BLIZZARD'S CLAIM IN DOTA SHOULD BE DISMISSED WITH PREJUDICE .......... 1

    A.   Plaintiffs Disavow Any Claims By Blizzard in DotA ............................... 1

    B.   Plaintiffs May Not Amend Their Complaint To Assert a Registration of DotA ......................................................................................... 2

III.  VALVE CANNOT STATE A CLAIM OF INFRINGEMENT BASED ON DOTA 2 ......... 3

    A.   Valve Cannot Allege Copyright Ownership of Material in DotA ........................... 3

        1.   Valve's Registration Disclaims DotA ....................................... 3

        2.   The FAC Fails To Allege <u>Facts</u> Plausibly Stating that Valve Owns DotA ..................................................................... 4

        3.   Valve Cannot Allege Joint Ownership of DotA. ................................ 5

        4.   Valve and Blizzard Cannot Allege Collective Ownership of DotA ............. 6

    B.   Plaintiffs Fail to Assert "New" Material in DOTA 2 ................................. 9

IV.   PLAINTIFFS FAIL TO STATE A CLAIM OF INFRINGEMENT OF DIABLO III AND STARCRAFT II ......................................................................... 9

    A.   Non-Infringement Is Properly Decided on a Motion To Dismiss ........................... 9

    B.   There Is No Substantial Similarity of any Protectable Elements of "King Leoric" or "Terran Marine" ................................................................. 11

        1.   Plaintiffs Identify No Protectable Similarities With King Leoric ............... 12

        2.   Plaintiffs Identify No Protectable Similarities With Terran Marine ........... 13

V.    PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE IMPROPER ................................. 14

VI.   CONCLUSION ................................................................................. 15

UCOOL'S AMENDED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*AFL Telecomm. LLC v. SurplusEQ.com Inc.*,
  946 F. Supp. 2d 928 (D. Ariz. 2013) ...................................................................4

*Abend v. MCA, Inc.*,
  863 F.2d 1465 (9th Cir. 1988) ............................................................................3

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ..............................................................................3

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ..........................................................................13

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) .............................................................11

*Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co.*,
  2015 WL 8178826 (N.D. Cal. Dec. 8, 2015) ....................................8, 9, 12, 13, 14

*Capcom Co. v. MKR Grp. Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ...............................10, 12, 13, 15

*Capitol Records, Inc. v. Naxos of Am., Inc.*,
  372 F.3d 471, 483 (2d Cir. 2004)) .......................................................................7

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .............................................................................14

*Choyce v. SF Bay Area Independent Media Ctr.*,
  2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) .......................................................2

*Choyce v. SF Bay Area Independent Media Ctr.*,
  2014 WL 2451122 (N.D. Cal. Nov. 3, 2014) ...............................................2, 4, 5

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ...........................................................................11

*Christianson v. West Public Co*,
  149 F.2d 202 (9th Cir. 1945) .............................................................................10

*Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*,
  2010 WL 3790656 (N.D. Cal. Sept. 27, 2010) .............................................5. 15

*Danjaq, LLC v. Universal City Studios, LLC*,
  2014 WL 7882071 (C.D. Cal. Oct. 2, 2014) ........................................................9

*Dancy v. Aurora Loan Services, LLC*,
  2011 WL 835787 (N.D. Cal. Mar. 4, 2011) .......................................................15

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007) ..................................................................................5

UCOOL'S AMENDED REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*,
   2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) ..............................................7

*Duckhole Inc. v. NBC Universal Media, LLC*,
   2013 WL 5797279 ........................................................................................11

*Epikhin v. Game Insight N. America*,
   2015 WL 6957491 (N.D. Cal. Nov. 11, 2015) ..............................................3

*Ets-Hokin v. Skyy Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000) ......................................................................12

*Express, LLC v. Fetish Grp., Inc.*,
   424 F. Supp. 2d 1211 (C.D. Cal. 2006) ........................................................4

*Ford v. Ray*,
   2015 WL 5315943 (W.D. Wa. Sept. 11, 2015) ............................................5

*Fox Film Corp. v. Marvel Ents.*,
   155 F. Supp. 2d 1 (S.D.N.Y. 2001) ..............................................................15

*Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ......................................................................11

*Games Workshop Ltd. v. Chapterhouse Studios, LLC.*,
   2012 WL 5949105 (N.D. Ill. Nov. 27, 2012) ..............................................14

*Gorski v. The Gymboree Corp.*,
   2014 WL 3533324 ........................................................................................10

*Gottlieb Development LLC v. Paramount Pictures Corp.*,
   590 F. Supp. 2d 625 (S.D.N.Y. 2008) ..........................................................9

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
   739 F. Supp. 1392 (C.D. Cal. 1990) ............................................................8

*Jacobsen v. Katzer*,
   535 F.3d 1373 (Fed. Cir. 2008) ....................................................................8

*Jim Marshall Photography, LLC v. John Varvatos of Cal.*,
   2013 WL 3339048 (N.D. Cal. June 28, 2013) ..............................................7

*Kantemirov v. Goldine*,
   2005 WL 1593533 (N.D. Cal. June 29, 2005) ..............................................2

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ........................................................................12

*Kwan Software Engineering, Inc. v. Foray Tech., LLC*,
   2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ................................................1

*Micro Star v. Formgen, Inc.*,
   154 F.3d 1107 ................................................................................................8

*Novelty Textile Mills v. Joan Fabrics Corp.*,
   558 F.2d 1090 (2d. Cir. 1977) ......................................................................11

*OSKAR System, LLC v. Club Speed, Inc.,*
   745 F. Supp. 2d 1155 (C.D. Cal. 2010) ....................................................................3

*Reed-Union Corp. v. Turtle Wax, Inc.,*
   77 F.3d 909 (7th Cir. 1996) .....................................................................................12

*Reliance Insurance Co. v. Polyvision Corp.,*
   474 F.3d 54 (2d Cir. 2007) ........................................................................................7

*Rice v. Fox Broad. Co.,*
   330 F.3d 1170 (9th Cir. 2003) .................................................................................12

*Richlin v. Metropolitan-Goldwyn-Mayer Pictures, Inc.,*
   531 F.3d 962 (9th Cir. 2008) .....................................................................................5

*Righthaven LLC v. Hoehn,*
   716 F.3d 1166 (9th Cir. 2013) ...................................................................................7

*Rosenfeld v. U.S. Department of Justice,*
   903 F. Supp. 2d 859 (N.D. Cal. 2012) ................................................................2, 14

*Schneider v. California Department of Correctional*, 1
   51 F.3d 1194 (9th Cir. 1998) ..........................................................................4, 8, 13

*Sepehry-Fard v. Nationstar Mortgage LLC,*
   2015 WL 332202 (N.D. Cal. Jan. 26, 2015) ...........................................................15

*Silvers v. Sony Pictures Entertainment, Inc.,*
   402 F.3d 881 (9th Cir. 2005) .....................................................................................7

*Sobhani v. @Radical.Media, Inc.,*
   257 F. Supp. 2d 1234 (C.D. Cal. 2003) ..................................................................15

*Spry Fox v. LOLApps Inc.,*
   2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ..............................................10, 12

*Stichting Pensioenfonds ABP v. Countrywide Finance Corp.,*
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) .....................................................................2

*Synopsys, Inc. v. Atoptech, Inc.,*
   2016 WL 80549 (N.D. Cal. Jan. 7, 2016) ..................................................................4

*Thomas v. Walt Disney Co.,*
   2008 WL 425647 (N.D. Cal. Feb. 14, 2008) ...........................................................13

*Tompkins v. 23andMe, Inc.,*
   2014 WL 2903752 (N.D. Cal. June 25, 2014) .........................................................15

*Tuff-N-Rumble Management, Inc. v. Sugarhill Music Public Inc.,*
   8 F. Supp. 2d 357 (S.D.N.Y. 1998) ...........................................................................7

*U2 Home Entertainment, Inc. v. Kylin TV, Inc.,*
   2007 WL 2028108 (E.D.N.Y. July 11, 2007) ............................................................7

*Wake Up & Ball LLC v. Sony Music Entm't Inc.,*
   119 F. Supp. 3d 944 (D. Ariz. 2015) .........................................................................6

1    *White v. Kimmell*,
        193 F.2d 744 (9th Cir. 1952) ..................................................................................8
2
     *Wild v. NBC Universal, Inc.*,
3        788 F. Supp. 2d 1083 (C.D. Cal. May 24, 2011) ..............................................11, 12

4    *Wyatt Tech. Corp. v. Malvern Instruments Inc.*,
        2009 WL 2365647 (C.D. Cal. July 29, 2009)
5        *aff'd*, 526 F. App'x 761 (9th Cir. 2013) ...............................................................8

6    *Zella v. E.W. Scripps Co.*,
        529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................11, 15
7

8                                **Federal Statutes**

9    17 U.S.C. § 101 .......................................................................................................5

10   17 U.S.C. § 410 .......................................................................................................4

11   Fed. R. Evid. 803.....................................................................................................15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' attempt to rewrite their DotA infringement theory in their Opposition must fail. Plaintiffs' First Amended Complaint repeatedly accuses uCool of infringing both Blizzard's and Valve's copyrights in **DotA**, but Plaintiffs now seek to remedy their failure to timely register a copyright in DotA by claiming that uCool infringes **Valve's** copyright in **DOTA 2**, a **derivative** game of DotA.   Based on this representation, the Court should dismiss Plaintiffs' claims based on any copyright in DotA with prejudice.   Moreover, Plaintiffs' sudden pivot from DotA to DOTA 2 still cannot rescue them from the fact that neither Valve **nor** a combination of Valve and Blizzard have ownership of DotA, and any claim based on DOTA 2 or DotA must therefore fail.

Blizzard does not even attempt to identify protectable elements of its artwork for King Leoric and the Terran Marine (the only works asserted from Diablo III and Starcraft II, respectively), or to explain why the expressive elements in the artwork are not unprotectable scenes-a-faire. Instead, Blizzard incorrectly argues that the Court cannot engage in a substantial similarity analysis at the pleading stage.   However, these works are properly before the Court, there are no protectable similarities between Blizzard's artwork and the accused artwork in Heroes Charge, and Blizzard's Diablo III and Starcraft II claims also should be dismissed with prejudice.

## II.    BLIZZARD'S CLAIM IN DOTA SHOULD BE DISMISSED WITH PREJUDICE

### A.    Plaintiffs Disavow Any Claims By Blizzard in DotA

Plaintiffs' FAC accuses Heroes Charge of infringing Plaintiffs' copyrights in DotA no fewer than sixteen times (*see* FAC ¶¶ 38, 41, 45-46, 54, Ex. B at 1-1), while representing that "Blizzard and Valve collectively own" the copyright in DotA.   On this basis, uCool moved to dismiss Plaintiffs' DotA claims.   (Mot. 4.)   Plaintiffs now state that uCool "mischaracteriz[es] the First Amended Complaint," and argue that any claims regarding DotA were in fact brought pursuant to Valve's copyright in DOTA 2.   (Opp. 1, 4-12.)   Since Plaintiffs have now abandoned any claim that DotA is being independently asserted, Blizzard's DotA-based allegations should be dismissed.

Plaintiffs also fail to address uCool's arguments that none of Blizzard's works are derivative of DotA, that Blizzard failed to identify DotA in its copyrights (Mot. 6-7), or that Blizzard failed to plausibly allege ownership of DotA.   (Mot. 8-9.)   Any response is now waived.   *Rosenfeld v.*

1  *U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) (failure to respond in an

2  opposition brief to an argument in an opening brief "constitutes waiver or abandonment");

3  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal.

4  2011) (same).    This waiver is fatal to any DotA-related claim Blizzard may seek to later assert.

5       Blizzard also may not attempt to sue uCool for infringing **Valve's** copyright in DOTA 2.

6  Blizzard admits that it is not the author of DOTA 2, and does not plead ownership in DOTA 2.

7  *See Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 2451122, at *4 (N.D. Cal. Nov. 3, 2014)

8  ("*Choyce II*") (plaintiff who admits he did not author work must plead ownership with specificity);

9  *see also* FAC ¶ 27 (alleging Valve is creator of DOTA 2).    Accordingly, Blizzard's claims

10  regarding DotA must be dismissed **with prejudice**.

**B.    Plaintiffs May Not Amend Their Complaint To Assert a Registration of DotA**

12       Plaintiffs offer to "supplement" their complaint to allege their just-filed registrations in DotA.

13  (Opp. 8.)    Yet Plaintiffs admit they are not asserting DotA, and such amendment would be futile

14  in any event.    Accordingly, the Court should deny Plaintiffs leave to amend to assert DotA.[1]

15       Even if Plaintiffs had properly alleged registration of DotA, they would fail to state a claim

16  because they have not plausibly pled **facts establishing ownership** of the copyright in DotA.

17  (*See* Mot. 7-11; *infra* § III.A.)    Plaintiffs' new suggestion that they may secure a presumption of

18  ownership of DotA by relying on their recent registration of **DotA 6.83** (Opp. 5) is wrong as a

19  matter of law.    Plaintiffs are barred from asserting DotA 6.83 because it was created in 2015 and

20  registered in 2016, well **after** Heroes Charge was published.    *OSKAR Sys., LLC v. Club Speed,*

21  *Inc.*, 745 F. Supp. 2d 1155, 1163 (C.D. Cal. 2010) is directly on point.    There, the plaintiff filed a

22  registration for software created in 2008, claiming the work was "derivative" of an earlier program

23  created in 2002.    *Id.* at 1160-61.    The plaintiff then relied on the registration of its **2008** software

---

25       [1]    Since Plaintiffs FAC previously asserted DotA as an independent work, their admission

26  that DotA was not registered is fatal (Opp. 5), as they must "satisfy the registration requirements **before** filing[.]"    *Kantemirov v. Goldine*, 2005 WL 1593533, at *6 (N.D. Cal. June 29, 2005).

27  Registering **after** filing the complaint cannot avoid dismissal.    *Choyce v. SF Bay Area Indep. Media Ctr.*, 2013 WL 6234628, at *3 (N.D. Cal. Dec. 2, 2013) (dismissing complaint where work

28  was later registered); *Kantemirov*, 2005 WL 1593533, at *6 (same).

to accuse defendant's product—created in **2006**—of infringing the underlying **2002** program.   *Id.* at 1157, 1162-63.   The court barred the plaintiff from asserting its 2008 copyright, holding that it was precluded from suing on "derivative" works created **after** the accused product.   *Id*. at 1163; s*ee also Epikhin v. Game Insight N. Am.*, 2015 WL 6957491, at *6 (N.D. Cal. Nov. 11, 2015) (barring plaintiffs from suing on deposited code from allegedly derivative work).   Plaintiffs' registration of DotA 6.83 fails for the same reasons as in *OSKAR*.   DotA 6.83 was not published until March 27, 2015 (Dkt. 55-5), seven months **after** Heroes Charge (FAC ¶ 34).   Plaintiffs are barred from accusing Heroes Charge of infringing DotA 6.83, and their request for leave to amend should be denied.   *OSKAR Sys.*, 745 F. Supp. 2d at 1163; *Epikhin*, 2015 WL 6957491, at *5.

## III.   VALVE CANNOT STATE A CLAIM OF INFRINGEMENT BASED ON DOTA 2

Plaintiffs argue for the first time that **Valve** may sue uCool for allegedly infringing material in DotA because it registered a copyright in **DOTA 2,** a derivative work based on an unspecified version of DotA.   (Opp. 6-7.)   But Valve fails to plausibly allege an ownership interest in DotA's copyright, and the FAC does not identify representative examples of infringement of any material original to DOTA 2; thus, Valve fails to state a claim based on any aspect of DOTA 2.   Valve's DOTA 2 claims should be dismissed with prejudice.

### A.   Valve Cannot Allege Copyright Ownership of Material in DotA

"A derivative copyright protects only the new material contained in the derivative work, not the matter derived from the underlying work."   *Abend v. MCA, Inc.*, 863 F.2d 1465, 1473 (9th Cir. 1988).   Valve attempts to rely on the limited exception identified in *Apple Computer v. Microsoft*, which held that in the specific case where "**the owner of the derivative work is also the owner of the underlying material incorporated herein**, the plaintiff may sue . . . for copied material that was incorporated from the [preexisting work].'"   (Opp. 6 (*quoting* 35 F.3d 1435, 1447 (9th Cir. 1994).)   But because Valve's registration explicitly disclaims DotA, and the FAC fails to plead that Valve, the registrant and owner of the derivative work DOTA 2, "is also the owner of the underlying material incorporated herein," Valve fails to state a claim regarding DotA.

#### 1.   Valve's Registration Disclaims DotA

Valve's copyright registration disclaims any right in DotA by designating DotA as "Material

-3-

1  Excluded from This Claim." (Dkt. 44-8.)  Valve does not dispute that its DOTA 2 certificate of

2  registration constitutes "prima facie evidence of . . . the facts stated in the certificate."  17 U.S.C §

3  410.  Thus, Valve may not now rely on DOTA 2 to assert a claim in DotA.  *See AFL Telecomm.*

4  *LLC v. SurplusEQ.com Inc.*, 946 F. Supp. 2d 928, 941 (D. Ariz. 2013).  Plaintiffs do not dispute

5  that the holding of *AFL* invalidates their claim, but attempt to distinguish *AFL* by citing a **blog**

6  **post**.  (*See* Opp. 9)  Plaintiffs ignore that *AFL* is simply the latest in a line of cases holding that

7  disclaimed pre-existing works are excluded from derivative copyrights.  *See, e.g. Express, LLC v.*

8  *Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1220 (C.D. Cal. 2006) ("by disclaiming any copyright in

9  the lace trim, Fetish reduced its copyright registration to nothing more than 'embroidery

10  design.'").[2]  Accordingly, Valve disclaimed any copyright interest in DotA when it registered

11  DOTA 2.

12             **2.      The FAC Fails To Allege <u>Facts</u> Plausibly Stating that Valve Owns DotA**

13          Valve does not dispute that its registration of **DOTA 2**, at a minimum, does not entitle it to a

14  presumption of ownership of **DotA**.  In the absence of this presumption, a complaint "must

15  contain [] well-pled factual allegations from which it is plausible to conclude that Plaintiff himself

16  owns a valid copyright" in the asserted work.  *Choyce II,* 2014 WL 2451122, at *2.  The FAC is

17  devoid of any allegations that Valve owns a valid copyright in the entirety of DotA.  The sole

18  ownership allegation relating to DotA is the conclusory statement that "[p]ursuant to written

19  agreements, **Blizzard and Valve collectively** own 100% of copyright in all original expression

20  embodied within the DotA mod." (FAC ¶ 26.)  This conclusory statement need not be assumed

21  true at the motion to dismiss stage.  *Choyce II*, 2014 WL 2451122, at *4.[3]  But even if accepted,

22

_____

23

24      [2] Plaintiffs also cite to *Synopsys, Inc. v. Atoptech, Inc.*, 2016 WL 80549, at *1 (N.D. Cal. Jan.
       7, 2016), which involved competing declarations detailing registration; here, Valve impermissibly

25      submits unverified attorney argument on an opposition brief.  *Schneider v. California Dep't of*
       *Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) (on "a Rule 12(b)(6) dismissal, a court may not look

26      beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition").
           [3] Confusingly, Plaintiffs attempt to distinguish *Choyce II* by arguing that in that case "the

27      plaintiff admitted in a sworn declaration that the work at issue was not created by him[.]"  (Opp.
       10.)  But this is precisely uCool's point:  Plaintiffs admit that they are not the authors of DotA.

28      (FAC ¶ 22 (DotA created by "DotA Creators"); *see also* (Opp. 10.)  As in *Choyce II*, Plaintiffs
                (footnote continued)

1    Valve fails to plead that it has copyright ownership entitling it to sue on the "entirety" of DotA.

2        Plaintiffs argue incorrectly that even if ownership of the various copyrights in DotA is split

3    between Blizzard and Valve, Valve "has standing to bring an infringement claim for the entirety of

4    the work, with or without any coworkers or co-claimants."   (Opp. 8.)   But Plaintiffs' cited case,

5    *Davis v. Blige*, stands only for the principle that "the authors of a **joint work** are **co-owners** of

6    copyright in the work … to be treated generally as tenants in common."   505 F.3d 90, 98 (2d Cir.

7    2007).   A "joint work" is "a work prepared by two or more authors with the intention that their

8    contributions be merged into inseparable or interdependent parts of a unitary whole."   17 U.S.C.

9    § 101; *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008).   The

10   FAC contains no allegations that DotA is a joint work prepared by authors intending to merge their

11   contributions into a unitary whole, or that Blizzard and Valve are co-owners of a copyright in the

12   entirety of any version of DotA.   *See Ford v. Ray*, 2015 WL 5315943, at *5 (W.D. Wa. Sept. 11,

13   2015) (dismissing copyright claim where "[p]laintiff has not alleged **facts** showing a mutual intent

14   to be co-authors").   Rather, Plaintiffs' allegation that Blizzard and Valve "collectively" own rights

15   in DotA at most suggests that each owns a **portion** of DotA's copyrightable expression, and that

16   Valve may only sue on the specific portions of DotA it owns.   Because the FAC does not

17   plausibly allege that Valve has ownership rights over the entirety of DotA, and does not define the

18   scope of Valve's copyright ownership, Valve's claims with respect to DotA must also fail.

19            **3.    Valve Cannot Allege Joint Ownership of DotA.**

20       Even if granted leave to amend, Plaintiffs cannot plausibly allege that DotA constitutes a joint

21   work or that Valve is a "co-owner" of DotA.   The FAC, as well as Plaintiffs' just-filed copyright

22   registrations for DotA, makes clear that Valve at most owns discrete **portions** of specific versions

23   of DotA.   Accordingly, Valve's claims should be dismissed with prejudice.

24            (a)    Blizzard, not Valve, owns the Blizzard-authored material in DotA.

25       Valve cannot claim ownership in any graphical art assets present in DotA,   The FAC alleges

26   that DotA is a "mod" to Blizzard's game Warcraft III, and that DotA relies on "Warcraft III's

27   _____

28   are not the authors and the work was registered outside of five years, so more facts must be
     alleged to plead ownership.   2014 WL 2451122 , at *2.

1    graphical art assets, including the character art, models, sounds and terrain."   (FAC ¶ 22.)   This

2    is supported by Plaintiffs' copyright registrations, which identify DotA as a derivative work based

3    on Warcraft III.   (Dkt. 55-5 to 55-7.)   But the FAC alleges that **Blizzard**, not Valve, is the author

4    and owner of Warcraft III.   (FAC ¶¶ 7, 12, att. A.)   Because the graphical art assets in DotA all

5    originate from Warcraft III, in which Valve has alleged no ownership rights, Valve may not rely on

6    its ownership of DOTA 2 to sue uCool for infringing any graphical art assets in DotA.

7                          (b)    <u>The multiple fans who contributed to DotA were not joint authors.</u>

8        The copyright registrations submitted with Plaintiffs' opposing brief make clear that DotA's

9    alleged fan-creators were **not** joint authors of a single, unitary work, but worked at different times

10   on distinct, separately copyrighted versions of DotA.   The DotA beta 2 registration lists Eul as its

11   sole author and a completion date of 2002 (Dkt. 55-5), while the registrations of versions 6.68 and

12   6.83 list Icefrog as their sole author and completion dates of 2010 and 2015. (Dkt. 55-6, 55-7.)

13   None of the registrations identify Pendragon or Guinsoo, whom Plaintiffs concede authored

14   portions of DotA before allegedly assigning their rights.   (Opp. 3.)   Moreover, the FAC alleges

15   that these fans had complete control over their segments of DotA, further defeating ownership.

16   (*See* FAC ¶ 22 (DotA creators acted independently)); *Wake Up & Ball LLC v. Sony Music Entm't*

17   *Inc.*, 119 F. Supp. 3d 944, 953 (D. Ariz. 2015) (no joint authorship where "complete creative and

18   supervisory control and authority" alleged).   Because Valve cannot allege that it owns a copyright

19   in all of DOTA 2, its claims must be dismissed with prejudice.

20                      **4.    Valve and Blizzard Cannot Allege Collective Ownership of DotA**

21       Even if it were sufficient for Valve to state a claim by showing that Blizzard and Valve

22   "collectively" own 100% of the copyright in DotA—which it is not—the claim would fail because

23   Blizzard and Valve **do not**, in fact, own all the copyrightable expression in DotA between them.

24   (*See* Mot. 9-11.)[4]    The copyright for much of DotA was abandoned, a point Plaintiffs fail to rebut.

25

26   _____

27       [4]  To defend its claim of "100%" ownership, Plaintiffs newly allege that Eul, Guinsoo,
     Pendragon, and Icefrog are the "only four authors" of DotA.   This is improper, as these facts are
     not in the FAC and "within the confines of Rule 11[.]"   *Dollar Tree Stores Inc. v. Toyama*
28   *Partners, LLC*, 2010 WL 1688583, at *3 (N.D. Cal. Apr. 26, 2010).   Moreover, Plaintiffs'
         (footnote continued)

1    Plaintiffs wrongly argue that this Court cannot examine ownership at the pleading stage by

2    looking at the underlying assignment agreements.   (Opp. 9-10.)   In fact, courts in the Ninth

3    Circuit regularly do exactly that.   *See, e.g., Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th

4    Cir. 2013) (affirming motion to dismiss copyright claim where language of assignment agreement

5    did not transfer required rights to plaintiff); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881,

6    890 (9th Cir. 2005) (granting motion to dismiss based on assignment agreement).[5]   A review of

7    the purported assignment from Eul to Valve—and its incorporation of his forum post—makes

8    clear that Eul abandoned his copyright in DotA before entering into the agreement.   (Mot. 9-11.)[6]

9    Rather than offer an alternative interpretation, Plaintiffs seek to keep Eul's statement from the

10   court's consideration.   (Opp. at 11-12.)   But Plaintiffs ignore that Eul's post was incorporated

11   by reference into his assignment agreement, and therefore into the FAC as well.   *See infra* § V.

12   Plaintiffs then wrongly argue that the issue of abandonment is a "fact intensive question"

13   that "cannot be decided . . . even on summary judgment."   (Opp. 11.)   **First**, they rely only on a

14   single Second Circuit case (*id.* (citing *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471,

15   483 (2d Cir. 2004)), ignoring that courts in this Circuit repeatedly have ruled on copyright

16   abandonment as a matter of **law**.   *Wyatt Tech. Corp. v. Malvern Instruments Inc.*, 2009 WL

17   2365647, at *13 (C.D. Cal. July 29, 2009) *aff'd*, 526 F. App'x 761 (9th Cir. 2013); *Hadady Corp.*

18

---

19   allegation appears to be entirely false:   Multiple media reports identify numerous additional
authors of DotA beyond these four.   *See* http://www.gamepressure.com/e.asp?ID=115 (authors

20   include "Meian" and "Neichus").   The Court may consider this evidence in response to Plaintiffs'
introduction of facts not alleged in the FAC.   *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54,

21   57 (2d Cir. 2007) (extrinsic evidence properly considered on 12(b)(6) where plaintiff's

22   submissions added facts not present in complaint).

23   [5] In both of Plaintiffs' two out-of-circuit cases, the defendant moved to dismiss by
**challenging** the alleged **authenticity** of the assignments that were incorporated into the pleadings.

24   See *U2 Home Entm't, Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, at *4 (E.D.N.Y. July 11, 2007);
*Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d 357, 361 (S.D.N.Y. 1998).

25   uCool does not here challenge (but reserves the right to challenge) the authenticity of the
assignment agreements incorporated into Plaintiffs' FAC.

26   [6] Plaintiffs' suggestion that uCool must identify an "entity other than Plaintiffs" to challenge
ownership (Opp. 11) misstates the law.   It is Plaintiffs' burden to plead ownership, not uCool's.

27   *Choyce II*, 2014 WL 2451122, at *2; *Jim Marshall Photography, LLC v. John Varvatos of Cal.*,
2013 WL 3339048, at *8 (N.D. Cal. June 28, 2013) ("Even at the pleading stage, a plaintiff bears

28   the burden of alleging adequate facts to support a claim of [] ownership of copyrights.").

1   *v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990); *see also White v.*

2   *Kimmell*, 193 F.2d 744, 745 (9th Cir. 1952) (finding abandonment from allegations in complaint).[7]

3       **Second**, Plaintiffs cite to *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008), to suggest

4   that Eul's use of the term "open source" may have been intended as a "license."   (Opp. 11 n.8.)

5   But in *Jacobsen*, the "copyright holder [] expressly stated the terms upon which the right to

6   modify and distribute the material depended and invited direct contact if a downloader wished to

7   negotiate other terms[.]"   *Id.* at,1381.   Plaintiffs point to no such language in Eul's statement of

8   abandonment, which allows anyone to release DotA "**without [Eul's] consent**[.]"   (Dkt. 44-9.)

9       **Third**, Plaintiffs' claim that "uCool must establish that the copyright owner **subjectively**

10  intended to abandon" the copyright is wrong.   (Opp. 11.)   Courts have repeatedly rejected

11  arguments of "subjective intent" and found abandonment when the clear language of the author

12  was not open to interpretation.   *Hadady*, 739 F. Supp. at 1399; *Wyatt Tech.*, 2009 WL 2365647, at

13  \*13.   Plaintiffs fail to show that abandonment was not "the only possible meaning" of Eul's clear

14  statement that "[w]hoever wishes to release a version of DotA may without my consent."

15  *Hadady*, 739 F. Supp. at 1399; *Wyatt Tech.*, 2009 WL 2365647, at \*13; Dkt. 44-9.[8]   Nor do

16  Plaintiffs address that Eul's assignment explicitly identified his forum post as having limited his

17  IP rights in DotA.   (Dkt. 44-4.)   Because Plaintiffs can plead no facts showing that Eul did not

18  abandon his copyright, any claims based on Eul's work must be dismissed with prejudice.[9]

19  ────────────────────

20      [7]  Plaintiffs argue that *White* examined abandonment after trial, and looked at the 1909 Act.

21  (Opp. 11 n.8.)   But most Circuit decisions occur after final disposition, as required by 28 U.S.C.
    §§ 1291, 1292, and plaintiffs do not argue that the standard is different under the 1976 Act.

22      [8]  Plaintiffs, citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, suggest that because the
    Warcraft III World Editor License prohibited Eul from profiting commercially, he did not

23  "abandon" this right.   (Opp. 11 n.8.)   Plaintiffs have not explained this argument, and because it
    does not follow from the complaint, it cannot be relied on.   *Schneider*, 151 F.3d at 1197 n.1.   At

24  any rate, the World Editor License only applies to Warcraft III **artwork**, and not unique user-
    created **characters**, which include their own "background stor[ies]" and "distinct and unique

25  set[s] of special skills".   (FAC ¶¶ 24-25; LaFond Decl. ¶ 11.)   *See also Blizzard Entm't, Inc. v.*

26  *Lilith Games (Shanghai) Co.*, 2015 WL 8178826, at \*6 n. 6 (N.D. Cal. Dec. 8, 2015).

27      [9]  Plaintiffs argue that even if they do not possess rights in Eul's work, they nonetheless own
    all "material authored by Guinsoo, Pendragon, and Icefrog."   (Opp. 12.)   But Plaintiffs' FAC

28  contains no allegations identifying content authored by Guinsoo, Pendragon, or Icefrog.   Plaintiffs
    may not attempt to avoid dismissal by refusing to identify whose works are even at issue—in
        (footnote continued)

**B.    Plaintiffs Fail to Assert "New" Material in DOTA 2**

Plaintiffs argue in a footnote that even if Valve cannot rely on registering DOTA 2 to assert claims arising from material in DotA, their claims relating to DOTA 2 should proceed because "Valve's claims . . . are **not** limited to material contained in DotA."   (Opp. 5 n.2.)   This blanket statement is insufficient to state a claim. As in the initial complaint, Valve fails to identify representative instances of alleged infringement attributable to content original to DOTA 2.[10] *Blizzard Entm't*, 2015 WL 8178826, at *6.   Valve's infringement allegations of "new" material in DOTA 2 have the same fatal flaws as the original complaint, and Valve's claim must be dismissed.

**IV.    PLAINTIFFS FAIL TO STATE A CLAIM OF INFRINGEMENT OF DIABLO III AND STARCRAFT II**

In its Motion, uCool explained that Plaintiffs have failed to allege substantial similarity in protected elements between Heroes Charge and Blizzard's Diablo III and Starcraft II products. (Mot. 12-15.)   Plaintiffs do not address these points, instead asking the Court to delay the issue until summary judgment.   (Opp. 18.)   Because Plaintiffs have not responded to uCool's arguments, the Diablo III and Starcraft II copyrights should be dismissed with prejudice.

**A.    Non-Infringement Is Properly Decided on a Motion To Dismiss**

Plaintiffs' claim that non-infringement is an issue for summary judgment (Opp. 12) is plainly wrong.   Ninth Circuit courts long have recognized that "when the copyrighted work and the alleged infringement are both before the court . . . non-infringement can be determined on a motion to dismiss."   *Christianson v. West Pub. Co*, 149 F.2d 202, 203 (9th Cir. 1945); *Gorski v. The Gymboree Corp.*, 2014 WL 3533324, at *2 (same).   Plaintiffs provide no contrary authority.

Plaintiffs protest, without merit, that non-infringement cannot be determined because uCool

direct contravention of this Court's order dismissing their previous complaint for failing to provide specific assertions of copyright or allegations of infringement.   (Dkt. 35 at 10-11.)

[10]   Plaintiffs' lone allegation of original work from DOTA 2 asserts a single, generic icon, FAC ¶ 51; all other icons are attributed to Blizzard works.   (FAC Ex. D.)   Alleging copying of a single icon, out of hundreds, does not plead copying of a "quantitatively or qualitatively significant portion" of DOTA 2 so as to escape dismissal for de minimis use.   *Cf. Danjaq, LLC v. Universal City Studios, LLC*, 2014 WL 7882071, at *5 (C.D. Cal. Oct. 2, 2014); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008) (dismissing complaint for failure to allege more than de minimis copying).

1   points to the actual character artwork accused in the FAC, rather than comparing the **entirety** of

2   the parties' respective games.    (Opp. 12.)[11]    However, Plaintiffs' **only** allegation of infringement

3   for either Diablo III or Starcraft II is the "visual depiction[s]" of "War Chief" and "Rifleman" in

4   Heroes Charge.    (FAC ¶ 44.)    This is **exactly** what uCool put before the Court.    (*See* Dkt. 44-

5   16; 44-17; 44-18; 44-19.)    The only authority cited by Plaintiffs, *Spry Fox v. LOLApps Inc.*,

6   looked at elements which, unlike artwork, could not be assessed without playing the games at

7   issue.    *See* 2012 WL 5290158, at *5-7 (W.D. Wash. Sept. 18, 2012) (examining gameplay, rules

8   and game design).    Ironically for Plaintiffs, the *Spry Fox* court relied on images alone to

9   determine that **visual aspects of the games were not protectable under the copyright laws**.    *Id.*

10  (holding that elements such as "the display of visual game tips in the margins" and "an in-game

11  marketplace where the player can redeem coins" were unprotectable).    In any case, uCool has

12  now put full copies of Heroes Charge, Diablo III and Starcraft II before the court, mooting the

13  issue.    (LaFond Decl. ¶¶ 3-10.)[12]

14      Plaintiffs' further suggestion that the Court may not assess substantial similarity without

15  examining **every** historical copy of Heroes Charge also fails.    (Opp. 12-13.)    Plaintiffs' FAC

16  pleads **ongoing** infringement.    (*See* FAC ¶ 69 (alleging "uCool has infringed, **and is continuing**

17  **to infringe**").)    Plaintiffs cannot claim, contrary to the FAC, that their accusations actually lie

18  against a historical, unspecified version of Heroes Charge.[13]    uCool has submitted images from

19  the current version of Heroes Charge, which stands accused, and the Court is free to rule on non-

---

21  [11]  Plaintiffs' accusation that "uCool has refused to produce any versions of [Heroes Charge]"
    is both misleading and irrelevant.    (Opp. 13.)    uCool has produced game assets and materials in
22  its possession.    Moreover, Plaintiffs have alleged both that Heroes Charge may be freely
    downloaded at any time, and that they already obtained a copy.    (FAC ¶¶ 30, 39.)

23  [12]  This evidence is properly submitted on reply because it "merely responds to arguments []
    raised in [the] Opposition . . . or elaborates on points made in Defendants' motion[.]"  *FastCap,*
24  *LLC v. Snake River Tool Co., LLC*, 2015 WL 6828196, at *3 (N.D. Cal. Nov. 6, 2015).

25  [13]  Moreover, as Plaintiffs admit, the changes in question were made to Heroes Charge in
    "August and September 2014," nearly **a year before** Plaintiffs filed their initial complaint.    (Opp.
26  12.)    Plaintiffs cannot reasonably claim surprise as an excuse for their failure to properly identify
    versions of Heroes Charge they accuse, particularly when those changes happened months before
27  Plaintiffs filed their complaint.    (*See* FAC (filed Jan. 8, 2016); *see also* Dkt. 55-12.)    If Plaintiffs
    admit that they filed the FAC without investigating the very product they accuse, that is
28  sanctionable under Rule 11.    *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

---

infringement.    *See, e.g. Capcom*, 2008 WL 4661479, at *5.

Additionally, Plaintiffs' contention that this Court may only rule if every element of each game is scrutinized (Opp. 15) is wrong.    *Zella v. E.W. Scripps Co.* is instructive.    There the plaintiffs sought to avoid dismissal by demanding that the court view every single episode of a copyrighted television serial before ruling.    529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007).    The court rejected plaintiffs' argument, explaining that if "the Court must have all episodes before it to rule on a motion to dismiss, [that] would essentially give Plaintiffs a free pass to the summary judgment stage."    As it had reviewed all content identified in the complaint and briefing, the court held that it "[would] not perform Plaintiffs' work for them and review all 150 episodes to select those which infringe on Plaintiffs' copyrights."    *Id.*; *see Funky Films, Inc. v. Time Warner Entmt. Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (finding review of only 3 episodes out of 150 sufficient); *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1060 (C.D. Cal. 2010) (same).    The same reasoning applies here:    In response to this Court's Order dismissing their original complaint, Plaintiffs identified **specific images** of specific characters in their complaint, presumably picking those they thought were the most compelling examples of infringement. uCool put those works before the Court, and the Court may rule on Plaintiffs' selection. Plaintiffs may not backtrack or rely on **unstated** accusations in an attempt to manufacture an issue of fact.

Finally, Plaintiffs' argument that uCool may not point to other, well-known expressive works to illustrate scenes-a-faire ignores that Ninth Circuit courts regularly look to other works in the genre to properly filter out elements that are scenes-a-faire.    *See, e.g. Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1100 (C.D. Cal. May 24, 2011) (pointing to *Harry Potter*, *Star Trek*, and *Lost* to find magical teleportation unprotectable); *Duckhole Inc. v. NBC Universal Media, LLC*, 2013 WL 5797279, at *1 (comparing dynamic between plaintiff's characters to *Cheers*). Plaintiffs' reliance on *Novelty Textile Mills v. Joan Fabrics Corp.* is misplaced, as that case is from the Second Circuit and applies the ordinary observer test, not the substantial similarity test of this jurisdiction.    558 F.2d 1090 (2d. Cir. 1977); *contrast id.* at 1093, *with Wild*, 788 F. Supp. at 1100.

### B.    There Is No Substantial Similarity of any Protectable Elements of "King Leoric" or "Terran Marine"

Once the works at issue are examined, it is clear that Plaintiffs' FAC fails to identify facts

1   "plausibly establishing . . . both the copyrightability of their work and infringement."   *Blizzard*

2   *Entm't*, 2015 WL 8178826, at *7.[14]   Plaintiffs seek to shirk this burden by arguing they need only

3   plead **creative expression**, ignoring uCool's Motion and this Court's instruction on the scenes-a-

4   faire doctrine.   *Contrast* Opp. 13 (describing "level of creativity required for copyright

5   protection") *with* Mot. 13 (describing "scenes-a-faire"); *see Blizzard Entm't*, 2015 WL 8178826, at

6   *4 ("The scenes-a-faire doctrine excludes from copyright protection 'stock' characters.").   This

7   defect is fatal to Plaintiffs' arguments, as the fact that stock character elements may be **creative**

8   **expression** does not render them **protectable** pursuant to the scenes-a-faire doctrine.   *See, e.g.*,

9   *Spry Fox,* 2012 WL 5290158, at *5-*7 (finding scenes-a-faire "creative choices" not protectable

10  on   motion to dismiss); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076, 1082 (9th Cir. 2000)

11  (finding image of vodka bottle creative, but remanding for consideration of scenes-a-faire); *Reed-*

12  *Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir. 1996).   Plaintiffs only rely on cases

13  that examine whether sufficient creativity exists, and not the question of scenes-a-faire.

14      Under the correct scenes-a-faire analysis, Plaintiffs miss the mark.   Scenes-a-faire holds that

15  stock characters are not protectable.   *Capcom Co. v. MKR Grp. Inc.*, 2008 WL 4661479, at *6 &

16  *8 (N.D. Cal. Oct. 20, 2008) (finding unprotectable a "tough, cynical journalist[], with short

17  brown hair and leather jacket[]").   But Plaintiffs have pled nothing but stock character tropes

18  with respect to Leoric and Terran Marine, and their infringement claim fails.[15]

19          **1.       Plaintiffs Identify No Protectable Similarities With King Leoric**

20      Plaintiffs identify "Leoric" with a list of elements, each of which uCool has shown to be

21

22      [14]  Plaintiffs' new accusation that "uCool's customers" allegedly believe War Chief and
23  Rifleman "were in fact modeled on Leoric and Terran Marine" not only is improperly introduced,
    but ignores that a substantial similarity analysis in the Ninth Circuit requires "a two-part analysis:
24  an extrinsic test and an intrinsic test[.]"   *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir.
    2003).   "The extrinsic test is an objective measure of the articulable similarities," which Plaintiffs
25  fail to articulate.   *Id.*   Instead, they address only the intrinsic test of the impression of the
    "ordinary, reasonable audience[.]"   *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042,
26  1045 (9th Cir. 1994).   But Plaintiffs must pass **both** tests.   *Rice*, 330 F.3d at 1174.   *Smith v.*
    *Jackson*, 84 F.3d 1213, cited by Plaintiffs, examines only **access**, **not** substantial similarity.
27      [15]  Plaintiffs also admit that they cannot claim ownership of the idea of an "undead warrior" or
28  a "space soldier" (Opp. 14), so uCool need not address that point.

1    scenes-a-faire.   (Mot. 14.)   As can be surmised by examining well-known skeleton kings in

2    popular fiction (Dkt. 44-13, 44-14), a stock "skeleton king" would inherently have a crown, armor,

3    skeletal features (*e.g.*, a skeletal "facial expression" and white hair), and medieval garb (*e.g.*, a loin

4    cloth), because these features all "flow" from the idea of a skeleton king.   *See Berkic v. Crichton*,

5    761 F.2d 1289, 1293 (9th Cir. 1985) (scenes-a-faire includes "incidents which flow naturally from

6    a [] plot premise").   Plaintiffs now seek to avoid dismissal based on "Leoric's . . . hair, facial

7    expression, . . . armor, plating . . . loin cloth, and his distinct [] spiked crown" (Opp. 14)—the

8    same features identified by uCool—but fail to address the stock nature of these features.

9    Moreover, Plaintiffs fail to identify "**similarity** in protectable expression."   *Thomas v. Walt*

10   *Disney Co.*, 2008 WL 425647, at *5 (N.D. Cal. Feb. 14, 2008) (dismissing complaint where "[a]

11   comparison of the characters does not support a finding of substantial similarity").   Instead,

12   Plaintiffs only conclusorily assert that similarity exists without explaining **how** or **why**.[16]   While

13   Plaintiffs claim Leoric and War Chief have similar "design [of] armor plating" (Opp. 14), a

14   comparison shows Leoric's to be adorned with gold symbols, while War Chief's is solid grey.

15   (Dkt. 44-22.)   Similarly, Plaintiffs ignore that Leoric's loincloth is pristine and scarlet red, while

16   War Chief's is rust-colored and tattered.   (Dkt. 44-22.)   Plaintiffs also fail to address obvious

17   differences:   War Chief has glowing eyes, a sword, a cartoonish style, metal boots, and a purple

18   cape; while Leoric has empty eye sockets, an oversized mace, leather boots and no cape.   *See*

19   Dkt. 44-22; *Capcom*, 2008 WL 4661479, at *8 (no infringement where "[o]ther elements of both

20   characters [] reflect significant dissimilarity").   Plaintiffs have not alleged substantial similarity,

21   and any claim based on Leoric or Diablo III should be dismissed.

22              **2.      Plaintiffs Identify No Protectable Similarities With Terran Marine**

23        Plaintiffs' Terran Marine arguments are even weaker, as the features asserted by Plaintiffs were

24   largely held unprotectable in *Games Workshop Ltd. v. Chapterhouse Studios, LLC.*   2012 WL

25   

26   _____

27        [16] Plaintiffs' argument regarding alleged changes to War Chief also is not supported by the
     FAC and is improper   *Schneider*, 151 F.3d at 1197 n.1.   Indeed, in dismissing Plaintiffs' first
     complaint, this court noted that it could not consider Blizzard's argument regarding the Chen
28   Stormstout character for this same reason.   *Blizzard Entm't*, 2015 WL 8178826, at *6 n.6.

1    5949105 (N.D. Ill. Nov. 27, 2012).[17]   In response, Plaintiffs again improperly allege new facts

2    not in their complaint (Opp. 14 ("flashlight tubes, the segmented gloves, and [] distinctive boots"))

3    which may not be considered.   *Blizzard Entm't*, 2015 WL 8178826, at *6 n.6.   Plaintiffs also do

4    not dispute that the Terran Marine's space helmet and rifle flow directly from stock imagery,

5    including the actual suits worn by Apollo 11 astronauts (Mot. 14), and so have waived these

6    arguments.   *Rosenfeld*, 903 F. Supp. 2d at 869.   As a result, Plaintiffs do not identify a single

7    protectable element of the Terran Marine alleged in the FAC.

8          Moreover, as with Leoric, Plaintiffs fail to identify **how** Terran Marine and Rifleman are

9    similar beyond conclusory assertions.   Plaintiffs point to "the color, shape of [the] armor, the

10   sunken orange visor, [and] rounded shoulder pads with flat edges" (Opp. 14), but Rifleman's

11   armor is uniform in color, while Terran Marine's is pock-marked; Rifleman's visor covers his eyes,

12   while Terran Marine's covers his whole face; Rifleman's shoulder pads are flat, not round; and

13   Rifleman is drawn in a cartoonish style.   (*See* Dkt. 44-23.)   Plaintiffs also fail to address their

14   differences, including Rifleman's much larger shoulder pads, Terran Marine's lack of a nose-and-

15   mouth covering, and the differences between Rifleman's futuristic gun and Terran Marine's

16   carbine.   *Id.*   These differences are fatal to Plaintiffs' claims.   *Capcom*, 2008 WL 4661479, at

17   *8.   Any claim based on Terran Marine or Starcraft II should be dismissed.

18   **V.     PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE IMPROPER**

19         Plaintiffs have lodged evidentiary objections to uCool's submission of materials properly

20   subject to notice pursuant to Federal Rule of Evidence 201.   These objections lack merit.

21         **Screenshots from the Internet Archive are judicially noticeable**.   Plaintiffs mistakenly

22

23   _____

24      [17]   Plaintiffs also appear to argue that the court cannot look at the *Games Workshop*
     decision, despite its status as a district court's legal determination of copyrightability.   (Dkt. 56.)
25   This is incorrect; this Court is free to look to protectability determinations made by other courts as
     a matter of law.   *See, e.g. Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002)
26   (looking to sister court's holding that, "electrified fences, automated tours, dinosaur nurseries, and
     uniformed workers were scenes-a-faire that flowed from the concept of a dinosaur zoo").
27   Plaintiffs' argument that "uCool cannot justify its infringement by arguing that similar elements
     appear in another copyrighted work" (Opp. 15 n.11), is nonsensical.   Plaintiffs cannot assert
28   artwork and elements that they did not create and do not own.

argue Internet Archive pages cannot be authenticated by counsel (Dkt. 56 at 2-3), citing trademark cases where images were submitted to contradict allegations of "first use." But this District has taken judicial notice of the Internet Archive sua sponte to view documents **incorporated into the complaint**. *See, e.g.*, *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *1 n.1 (N.D. Cal. June 25, 2014). Plaintiffs do not challenge the Eul agreement's authenticity; thus, it is properly incorporated into the complaint, and its terms—including the forum post—are not "hearsay." *See Dancy v. Aurora Loan Servs.*, *LLC*, 2011 WL 835787, at *4 (N.D. Cal. Mar. 4, 2011).[18]

**Plaintiffs' discovery responses are judicially noticeable**. Plaintiffs cite only out-of-district authority to argue that discovery responses cannot be judicially noticed. (Dkt. 56 at 3.) That is not the rule of this District. *See, e.g. Sepehry-Fard v. Nationstar Mortgage LLC*, 2015 WL 332202, at *6 (N.D. Cal. Jan. 26, 2015). And Plaintiffs have attached uCool's discovery responses to their own opposition brief (Dkt. 55-14).

**uCool's scenes-a-faire submissions are judicially noticeable**. Plaintiffs misstate *Craig Frazier Design, Inc. v. Zimmerman Agency, LLC*, in which the court declined to judicially notice only whether one work was **derivative** of another specific work. *See* 2010 WL 3790656, at *4 n. 1 (N.D. Cal. Sept. 27, 2010). Here, uCool is not requesting judicial notice to show that Blizzard's works are derivative, but to show scenes-a-faire based on generic elements of other creative works, which is permissible. *See, e.g. Zella*, 529 F. Supp. 2d at 1129.[19]

## VI.   CONCLUSION

For the foregoing reasons, uCool, Inc. respectfully requests that this Court grant uCool's Motion and dismiss Plaintiffs' claims against uCool with respect to DotA, DOTA 2, Diablo III and Starcraft II.

---

[18]   Plaintiffs' contention that clauses incorporated into the Eul agreement are "hearsay" (Opp. 1-12) is independently incorrect because contract terms are **not** hearsay. Fed. R. Evid. 803
[19]   *Capcom Co. v. MKR Grp., Inc.* is easily distinguished. As Plaintiffs admit, that case involved obscure "movies [] made long ago, indeed in some instances as far back as 1932." *Id.* By contrast, uCool has requested judicial notice of recent blockbusters, *see* Dkt. 55-1, and courts recognize that judicial notice is proper for popular movies. *See Sobhani v. @Radical.Media, Inc.*, 257 F. Supp. 2d 1234, 1235 n.1 (C.D. Cal. 2003) (judicial notice of *Cast Away*); *Fox Film Corp. v. Marvel Ents.*, 155 F. Supp. 2d 1, 41 n.71 (S.D.N.Y. 2001) (judicial notice of *Star Wars*).

1    DATED: March 14, 2015

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

2

3                                By   /s/ Evette D. Pennypacker
                                     _____
4                                    Claude M. Stern
                                     Evette D. Pennypacker
5                                    Attorneys for uCool, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28