UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., AND VALVE, )<br><br>        Plaintiff, )<br><br>  VS. )<br><br>LILITH GAMES (SHANGHAI) CO.<br>LTD., and UCOOL, INC., )<br><br>        Defendants. )<br>_____) | **No. C 15-4084 CRB**<br><br><br><br>San Francisco, California<br>Friday, April 8, 2016 |

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff:

        MITCHELL SILBERBERG & KNUPP LLP
        11377 West Olympic Boulevard
        Los Angeles, California  90064-1683
      **BY: MARC E. MAYER, ESQUIRE**

For Defendant uCool, Inc.:

        QUINN, EMANUEL, URQUHART & SULLIVAN LLP
        555 Twin Dolphin Dr. - 5th Floor
        Redwood Shores, California  94065
      **BY: CLAUDE M. STERN, ESQUIRE**
            **EVETTE D. PENNYPACKER, ESQUIRE**

**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
           **Official Reporter**

Friday - April 8, 2016                    10:03 a.m.

P R O C E E D I N G S

---oOo---

**THE CLERK:**  Calling civil action 15-4084, Blizzard

Entertainment, Inc. et al. versus Lilith Games.

Counsel, please step forward to the podium and state your

appearances.

**MR. MAYER:**  Good morning, Your Honor.  Marc Mayer for

the plaintiffs.

**THE COURT:**  Good morning.

**MR. STERN:**  Good morning, Your Honor.  Claude Stern

and Evette Pennypacker, of Quinn Emanuel, on behalf of uCool.

**THE COURT:**  Good morning.

**MR. STERN:**  Good morning.

**THE COURT:**  So, as we know, the Court had granted the

defendant's motion with respect to the original -- I think it

was the original, might have been the first, but I think it was

the original complaint.  Pointed out some defects -- as the

Court viewed it, some defects -- primarily, that the plaintiff

failed to meet their burden of alleging in detail copyright

ownership and failed to identify their aspects of their work

that the defendant infringed, and granted leave to amend.

And now the defense has -- pardon me, plaintiffs have

amended their complaint.  And it appears to successfully

address those shortcomings.

The question, of course, is, you know, how to really test the evidence in the case. I mean, is there really a conflict? And what is the evidence in the case? Which I think is more appropriately addressed through a summary judgment motion than it is on a motion to dismiss, as I see it, because I think that the complaint is successful in stating the claims.

But I think I have to turn to the defense and ask them if they want to add to this and try to talk me out of it. Whatever you feel comfortable doing. But, you know, tentatively -- and I usually give a tentative just because I think it then focuses the parties' argument.

Yes.

**MS. PENNYPACKER:** Thank you, Your Honor. I would like to address your question. In particular, the question, it seems to me, that you're asking is whether this is the proper time to look at the --

**THE COURT:** Yes, that's exactly the question.

**MS. PENNYPACKER:** And we would submit that it is, Your Honor, because in the cases that we have cited to you, the issue of ownership was decided as a matter of law. And, candidly, they weren't motion-to-dismiss cases. But at the time that those cases were decided, the same evidence that you have before you now was before those courts. And they decided the issue as a matter of law.

Plaintiff has not indicated that there would be any

additional evidence to consider but, rather, has simply argued

that we shouldn't decide this now as a procedural matter.

And I'm not sure that plaintiffs would be able to come

forward with any additional such evidence --

**THE COURT:**  If that's true -- and I appreciate your

remarks.  If that's true, though it requires you to essentially

refile and make your argument that there is no further evidence

or that the evidence is in conflict on any material aspect,

isn't it much better to go up on appeal -- if there is an

appeal -- on that record than on something in which the test

is, you know, the test for a motion to dismiss?

The problem I've always found in 20 years or so is that

you can't predict with any degree of certainty across the board

in cases how motions to dismiss which are granted are treated

by an appellate court.

And it seems to me there is a real predisposition by

appellate courts to be very technical on motions to dismiss,

and far less so on summary judgment.  That is, they say, okay,

everybody has had an opportunity to, quote, litigate, develop

their record; it's a full record.  Not as full as a trial would

be.  Full enough for these purposes.  And there we are.  You

know, we have at it.

So I guess what I'm saying to you is, is that, as you

concede, I think that these cases that you are relying on came

up in the context of summary judgment.  Isn't that one --

1    **MS. PENNYPACKER:** One was post trial and one was

2    summary judgment, that's correct.

3         **THE COURT:** So you never know what goes on in people's

4    minds. But I have to believe that they looked at it and said,

5    okay, plaintiffs had a full, ample, adequate shot; there we

6    are.

7         **MS. PENNYPACKER:** I --

8         **THE COURT:** Yes.

9         **MS. PENNYPACKER:** I have no way of knowing obviously.

10        **THE COURT:** I don't either. I don't either.

11        **MS. PENNYPACKER:** And I don't know, standing here

12   today, whether or not there was even a motion to dismiss filed.

13   What I can say is that right now the evidence that is before

14   Your Honor is the same evidence those courts ultimately relied

15   upon to find that ownership was -- that there was an

16   abandonment of the copyright.

17        And right now, sitting here today, the complaint

18   incorporates by reference the very agreements that show

19   abandonment. One doesn't even need to go to a blog post or any

20   other information that's outside what's incorporated directly

21   by reference into the complaint.

22        And so right now, on this procedural posture, we are well

23   within the bounds of what motion to dismiss will look at on the

24   record. So we think that it would be appropriate now to look

25   at this, and efficient for the Court because no evidence can

1    come in.

2        What those decisions that we cited to Your Honor say is

3    even where there was deposition testimony or a declaration from

4    an author, because that information was directly contrary to

5    what was in the document evidence showing abandonment, the

6    courts excluded that evidence; they didn't consider it.

7        And right now you have before Your Honor an affirmative

8    statement in the original assignment agreement from the very

9    first author of DotA, saying that the work was dedicated to the

10   public.  Twice it says that in agreement.

11       So it's difficult to understand what we would all gain

12   from spending a lot more resources on litigating that.

13       **THE COURT:**  I'll turn to plaintiffs.

14       **MR. MAYER:**  Sure.  Your Honor, I would certainly agree

15   that this is not an issue at the pleading stage.

16       What we've alleged -- and, again, there are some

17   complexities because the work we're suing on is work called

18   DotA 2.  We do have a registration.  The registration is prima

19   facie evidence of the ownership.  The dispute seems to be over

20   some of the underlying material.

21       What we've alleged in the complaint is we've alleged that

22   we own that underlying material; that we own it pursuant to a

23   series of assignment agreements.  There are three particular

24   assignment agreements that are now in the record.  There's also

25   an end user license agreement that gives certain ownership

1  rights.

2      What the defendants are doing is basically leveling a

3  full-scale attack on the facts of our ownership.  They're

4  arguing that one of these four assignees may have abandoned his

5  rights.  And abandonment certainly is a factual issue.

6      There are issues here about what author contributed what;

7  whether there may be other people that may claim some sort of

8  amorphous authorship.  But at the end of the day, there are a

9  series of agreements.  There's no dispute that there are these

10  agreements.

11      And the agreements are in the record.  They establish --

12  certainly at the pleading stage they've met our burden to show

13  that we own or at least have sufficiently alleged ownership of

14  DotA.  And if we want to fight down the road over who authored

15  what and whether there's abandonment by one of the four

16  authors, that's for a later day.

17          **MS. PENNYPACKER:**  May I respond?  Thank you.

18          **THE COURT:**  Sure.

19      **MS. PENNYPACKER:**  I think that, actually, plaintiff's

20  comments confirm that this is the right time to decide this

21  issue because the licenses are before the Court.

22      There is no dispute as to the contents of the license or

23  their authenticity.  They were produced by the plaintiffs in

24  the case.  They are not disputing that they are incorporated by

25  reference in the complaint.

1    And in the first amended complaint the only allegation for

2  ownership of the work that we're discussing is in paragraph 26.

3  And reads, in its entirety:

4       "Pursuant to written agreements, Blizzard and Valve

5       collectively own 100 percent" --

6       **THE COURT:**  What page are you reading of the

7  complaint?

8       **MS. PENNYPACKER:**  It is page 11, paragraph 26.  The

9  last paragraph on page 11 of the first amended complaint.  And

10  in that paragraph it says:

11       "Pursuant to written agreements, Blizzard and Valve

12       collectively own 100 percent of the copyright and all

13       original expression embodied within the DotA mod."

14       That is literally the only allegation of ownership for

15  that particular work.  And that is, by definition, a conclusory

16  allegation.

17       So we have before Your Honor the licenses that are not in

18  dispute.  And it seems strange to have to push forward beyond

19  this stage when the parties are basically in agreement as to

20  those licenses.

21       And if I could have your indulgence to look at --

22       **THE COURT:**  Sure.

23       **MS. PENNYPACKER:**  -- the license that we are talking

24  about, I think you would understand further why we would press

25  this at this stage.

1    Exhibit 1 to the LaFond declaration that was submitted

2  with our opening papers is the license from Kyle Summer, who is

3  known as Eul -- that's E-u-l -- to Valve.

4           **THE COURT:**  I'm sorry, he's --

5           **MS. PENNYPACKER:**  It's Exhibit 1 to the LaFond

6  declaration, the opening LaFond declaration.

7           **THE COURT:**  I have it here.

8           **MS. PENNYPACKER:**  Thank you.

9           **THE COURT:**  September 27th, is that the one?

10          **MS. PENNYPACKER:**  Yes.  It's dated September 27, 2010.

11  And Kyle Summer, who is a party to this license to Valve, was

12  the original creator of the DotA mod.  So he isn't just any one

13  of the authors.  He is the original author of this particular

14  work.

15      And as Your Honor will see, in paragraph B, under the

16  recitals, it says, "Seller" -- who is Eul/Kyle Summer.  "Seller

17  later ceased his development of the Ancients (DotA) and

18  released his work to the public for further development."

19      It's right there in black and white.

20      Later, and the next paragraph, says, "To the extent seller

21  retains any rights in defense of the Ancient, Valve desires to

22  acquire all those rights."

23      The second paragraph I just read references the first

24  paragraph, to say that, We don't even know if he owns any

25  rights.

1    And then if you look further, if you turn to page 3 of

2  that agreement, under representations and warranties, under

3  3.1.2, it specifically references this dedication to the

4  public.

5    Under "Intellectual Property" it says, "Except for

6  seller's foreign post on the warcenter.com formally posted

7  at" -- and then there is a long URL I won't trouble to read

8  into the record -- "seller has not assigned or otherwise

9  transferred ownership of..." and then it goes on.

10    This makes clear that except for that dedication to the

11  public, he has not otherwise assigned.  Kyle Summer viewed that

12  blog posting as an assignment to the public of the work that he

13  had created for DotA.  And all of that work was assigned in

14  2004, many, many years before this license.

15    This license is the foundation -- I mean, these

16  representations are the foundation for showing the abandonment

17  of all of the other work.

18    So even though plaintiffs then went and tried to clean

19  this up by getting this license and getting licenses from

20  others who continued to work on the DotA mod after this

21  transfer to the public in 2004, they've never owned the

22  original mod because Mr. Summer dedicated that to the public.

23    So, at most, they can possibly own things that were

24  created thereafter.  But we don't know what those things are,

25  based on this conclusory allegation in paragraph 26.  There's

nowhere in the complaint that details who owns what or who worked on what.

So we think that Your Honor actually has sufficient evidence now to rule on the issue of abandonment. It's very clear in this agreement.

We've also provided a copy of the Web post that is still available on archive.net. And that's at Exhibit 6 to the LaFond declaration. And you can see that -- I know that Blizzard has -- has contested the admissibility of this particular document, but -- not only recited case law --

**THE COURT:** So your point essentially, among other things, is, look they allege that Blizzard collectively and Blizzard and Valve collectively had a hundred percent of this. And the problem is that it was given away previously to the public or dedicated to the public or abandoned by the creator.

And so what can you own a hundred percent of when you didn't own it to begin with? To begin with, you may have owned it, but before the agreement was executed, before the license agreement was executed.

Certainly, they may have something subsequent to the execution of a license, but that's not what this lawsuit is about. Is it? Maybe it is. I don't know. That's their argument.

Is that fair to say that's what you're saying? I don't want to misquote you and not understand what you're saying.

1    **MS. PENNYPACKER:**  I think that's correct, Your Honor.

2    I think our view is that this license or this dedication to the

3    public that happened in 2004 was abandonment of the copyright

4    in the DotA mod.

5        And that was the beginning of the creation of this

6    particular work that they're suing on.  And so it doesn't --

7    whatever happened after that, one must first look at this

8    because this was the foundation of it.

9        The other thing to point out is that all of the characters

10   that plaintiffs assert the Heroes Charge game infringes, they

11   say are in both DotA and then DotA 2; DotA 2 being registered

12   by Valve, a plaintiff in this lawsuit.

13       And if that's the case, we at least need to know which of

14   these things are owned by whom.  If all of the characters that

15   we are accused of infringing were dedicated to the public in --

16   by Mr. Summer in 2004, there is no lawsuit against us on even

17   DotA 2, if those characters appeared first in DotA and then

18   later in DotA 2.

19       **THE COURT:**  Respond?

20       **MR. MAYER:**  Your Honor, these are exactly the kind of

21   issues that are not appropriate at the pleading stage.

22       What we've alleged is that Blizzard and Valve collectively

23   own 100 percent of the copyright and all original expression

24   embodied within the DotA mod.

25       There are four agreements.  We're now engaged in a dispute

over which agreement governs; and what was conveyed in one
agreement versus a second agreement and then a third agreement;
and what expression is original; and which characters were
created in which version, and who created those characters.
These are all complicated --

     **THE COURT:**  So your argument essentially is that there
is ambiguity -- that there are issues of fact with respect to
who owns what was intended to be encompassed within these
agreements and how these agreements were treated; and,
therefore, that's factually intensive in their disputes with
respect to that.  Is that --

     **MR. MAYER:**  Yes.  I'd phrase it a little bit
differently, which is that there are four authors of the DotA
mod.  Those four authors contributed different elements.  They
picked up on each other's work.

     **THE COURT:**  Well, this is why I think that the motion
to dismiss should be denied, because it seems to me that if
you're right, you'll have an easy case.  You'll be right back
here in a summary judgment, and we go through it and deal with
it on that basis after some limited discovery.

    I don't want discovery on damages at this point.  It
appears to me that the discovery should be limited to the
issues that essentially are liability issues as distinct from
damages issues.

    And maybe I'll see you back here in 90 days or 120 days,

1    and we'll sort through -- I don't know how long it's going to

2    take, but we'll sort through the issues and see if you're

3    right.  At least from the Court's point of view.

4        I sort of look at it and say you may be right.  You may be

5    right.  And I know that it seems to you and to your client sort

6    of like a waste.  And I appreciate that.  But sometimes what is

7    characterized as a waste and it gets up to the court of

8    appeals, you know, judges look at it and they say, well, not

9    really a waste.  And then you've had a waste.  Then you've

10   really -- you've had two years of expensive litigation.

11       So, anyway, the motion to dismiss will be denied.  And

12   discovery will be limited to liability issues.  And I'll see

13   you back here whenever somebody is ready to come back.

14       Mr. Stern.

15           **MR. STERN:**  Your honor, a question for you.

16           **THE COURT:**  Yes.

17           **MR. STERN:**  And I understand Your Honor has denied the

18   motion.  I'm not rearguing it, but it is a question about the

19   summary judgment motion that we would be focusing on.

20       Right now, if Your Honor reads the complaint, the

21   complaint actually claims -- seems to claim infringement of

22   five works.  Those works are StarCraft, Diablo, World of

23   Warcraft, DotA 1, and DotA 2.  Those are the five works.

24       The purpose of the motion to dismiss was to say

25   essentially on the latter half of the argument about the

1   similarities of the character, that gets rid of Starcraft and

2   Diablo.  On the defective registration argument, the argument

3   Your Honor just addressed, that gets rid of DotA 1 and DotA 2.

4   And that leaves the case being a case of Warcraft against the

5   uCool product.

6       And I appreciate Your Honor has said that we should focus

7   on the liability side of the case.

8       **THE COURT:**  Well, I think you're going to get to the

9   point of how much you have to deal with.  And I think that's a

10  very good point.  And I think the answer is you can move for

11  partial summary judgment.

12      You pick what I call the money issues -- see, I have no

13  way of looking at these things and figuring out -- it's like a

14  patent case.  I have no way of looking at something where there

15  are a number of claims to know whether this is a big item or

16  little item; it's put in or not put in; or it's put in because

17  of this or that or so forth.

18      The lawyers are in a much better position than the Court

19  to make that determination.  The lawyers are motivated by

20  business concerns as distinct from just legal concerns.  So you

21  certainly are entitled to make a partial motion for summary

22  judgment.  And that may very well clear the brush, as it were.

23      **MR. STERN:**  And, Your Honor, if we do make the motion

24  for partial summary judgment as Your Honor suggests, we want to

25  make sure that isn't with prejudice to any later motions in the

1    case that we may have to follow.

2              **THE COURT:**  It won't be.

3              **MR. STERN:**  Wonderful.

4              **THE COURT:**  Yeah.

5              **MR. STERN:**  Thank you, Your Honor.

6              **THE COURT:**  Okay.  Thank you very much.

7              **MR. MAYER:**  Thank you, Your Honor.

8              **MS. PENNYPACKER:**  Thank you, Your Honor.

9         (At 10:24 a.m.the proceedings were adjourned.)

10                        -   -   -   -

11

12                  **CERTIFICATE OF REPORTER**

13         I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16   DATE:   Monday, April 18, 2016

17

18

19                    *Katherine Sullivan*

20   _____

21       Katherine Powell Sullivan, CSR #5812, RMR, CRR
                    U.S. Court Reporter

22

23

24

25