1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Claude M. Stern (Bar No. 96737)
2      claudestern@quinnemanuel.com
   Evette D. Pennypacker (Bar No. 203515)
3      evettepennypacker@quinnemanuel.com
   Mark Tung (Bar No. 245782)
4      marktung@quinnemanuel.com
   Michael LaFond (Bar No. 303131)
5      michaellafond@quinnemanuel.com
   Maissa Chouraki (Bar No. 307711)
6      maissachouraki@quinnemanuel.com
   555 Twin Dolphin Dr., 5th Fl.
7  Redwood Shores, California   94065
   Telephone:     (650) 801-5000
8  Facsimile:     (650) 801-5100

9  Attorneys for uCool, Inc.

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14

15
   Blizzard Entertainment, Inc., and Valve        CASE NO. 3:15-cv-04084-CRB
16 Corporation,
                                                  **DEFENDANT UCOOL, INC.'S NOTICE**
17                Plaintiffs,                      **OF MOTION AND MOTION FOR**
                                                  **PARTIAL SUMMARY JUDGMENT**
18         v.
                                                  **Date:        March 10, 2017**
19 Lilith Games (Shanghai) Co. Ltd., and          **Time:        10:00 a.m.**
   uCool, Inc.,                                    **Courtroom:   6, 17th Floor**
20                                                 **Judge:       The Hon. Charles R. Breyer**
                  Defendants.
21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom 6 located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant uCool, Inc. will and hereby does move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff Valve Corporation's claim of copyright infringement, and in particular, is seeking summary judgment that Valve does not own any copyrights in the computer game DotA, and by extension, Valve's derivative alleged copyright in Dota 2 does not protect **any** game elements first found in DotA.

In the alternative uCool is seeking partial summary judgment that Valve does not own a copyright in, and/or lacks standing to assert, one or more of the following categories of discrete elements found in DotA: (i) the sequence, structure, and organization of gameplay; (ii) the visual appearance of any of the characters; (iii) any of the characters created by Eul; (iv) any of the characters created by Guinsoo; (v) any of the characters created by Terrorblaze; (vi) any of the characters created by Meian, Madcow, Afrothunder, Cottontop, ShadowPenguin or Eva00r; (vii) any of the characters created by Neichus; (viii) any of the characters created by a party whom Valve has been unable to identify; (ix) any of the characters created by Icefrog; and (x) any and all remaining claims of infringement of any claimed copyrights in DotA or Dota 2 against uCool, if any.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the declarations filed in support of this motion, the exhibits attached to those declarations, the records and papers on file in this action, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

1    DATED: January 6, 2017

2                             QUINN EMANUEL URQUHART & SULLIVAN, LLP

3

                            By  */s/ Evette D. Pennypacker*

4                                Claude M. Stern

5                                Evette D. Pennypacker
                               Mark Tung

6                                Michael F. LaFond
                               Maissa Chouraki

7                                *Attorneys for uCool, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT...................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

III. APPLICABLE LEGAL STANDARDS...............................................................................11

IV.  ARGUMENT .........................................................................................................................12

   A.   Valve's Assertion of Dota 2 Depends Entirely on Ownership of DotA. ................12

   B.   uCool is Entitled to Summary Judgment on DotA Gameplay and the Visual
        Elements in DotA from Warcraft III ......................................................................12

        1.   Eul Placed DotA Gameplay into the Public Domain ...................................12

        2.   Valve Cannot Demonstrate Standing to Assert Visual Elements of
             DotA .............................................................................................................14

             (a)   Valve cannot demonstrate standing to assert visual elements
                   of DotA found in Warcraft III ............................................................14

             (b)   Valve will not be able to adduce admissible evidence
                   demonstrating ownership of visual elements from outside
                   Warcraft III .........................................................................................14

   C.   Valve Does Not Own the Copyrights in All 57 Asserted Characters. ....................15

        1.   Valve's copyright in Dota 2 does not cover the "unique and
             distinctive sets of skills" for heroes that first appeared in DotA.................15

        2.   The players who first proposed DotA Allstars characters, including
             the selection of abilities, are the authors of those characters. ....................15

        3.   The editors do not own copyrights in characters they did not create. ..........16

        4.   Valve cannot show the chain of title for the 57 asserted characters.............18

             (a)   The characters created by Eul passed into the public domain..........19

             (b)   Valve lacks standing to assert derivative elements Neichus'
                   created .................................................................................................19

             (c)   Valve does not own derivative elements created by Guinsoo..........19

             (d)   Valve does not own the copyright in characters created by
                   Terroblaze, Meian, Madcow, Afrothunder, or any character
                   that Guinsoo copied from another version of DotA. ........................20

             (e)   Valve has not produced evidence demonstrating ownership
                   over any characters that Valve attributes to Icefrog........................21

5.    Valve cannot avoid summary judgment by shifting its focus to computer code in the 57 characters. .............................................23

D.    Blizzard Is Barred From Asserting DotA by the Doctrine of Claim Splitting. .........24

V.    VALVE'S DISCOVERY POSITIONS PRECLUDE NEW EVIDENCE ............................24

VI.    CONCLUSION .............................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*AT & T Corp. v. Dataway Inc.*,
    577 F. Supp. 2d 1099 (N.D. Cal. 2008) .................................................................................21

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000)........................................................................................17, 18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..............................................................................................................11

*Brookhaven Typsetting Servs., Inc. v. Adobe Sys., Inc.*,
    2007 WL 2429653 (N.D. Cal. Aug. 24, 2007 .......................................................................11

*Capcom Co. v. MKR Grp., Inc.*,
    2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .......................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..............................................................................................................11

*Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*,
    2001 WL 34118030 (N.D. Cal. June 13, 2001) ......................................................................3

*Craigslist Inc. v. 3Taps Inc.*,
    942 F. Supp. 2d 962 (N.D. Cal. 2013) .............................................................................15, 16

*Dongxiao Yue v. Chordiant Software, Inc.*,
    2009 WL 4931679 (N.D. Cal. Dec. 21, 2009) ......................................................................12

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000)...............................................................................................16

*Fahmy v. Jay-Z*,
    261 F.R.D. 180 (C.D. Cal. 2009) ..........................................................................................14

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ................................................................................................................2

*Fred Riley Home Bldg. Corp. v. Cosgrove*,
    864 F. Supp. 1034 (D. Kan. 1994) ........................................................................................22

*Golan v. Holder*,
    132 S. Ct. 873 (2012) ............................................................................................................13

*Greenberg v. Nat'l Geographic Soc.*,
    533 F.3d 1244 (11th Cir. 2008).............................................................................................17

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
    739 F. Supp. 1392 (C.D. Cal. 1990).................................................................................2, 13

*Hakopian v. Mukasey*,
    551 F.3d 843 (9th Cir. 2008)...................................................................................................3

*Hofstetter v. Chase Home Fin., LLC,*
    2010 WL 4392916 (N.D. Cal. Oct. 29, 2010) ................................................25

*IXL Inc. v. AdOutlet.Com, Inc.,*
    2001 WL 315219 (N.D. Ill. Mar. 29, 2001) ................................................18

*Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.,*
    2013 WL 10448869 (N.D. Cal. Oct. 22, 2013) ................................................24

*Jarvis v. K2 Inc.,*
    486 F.3d 526 (9th Cir. 2007).................................................................18

*Lilith Games (Shanghai) Co., Ltd. v. uCool, Inc.,*
    Case No. 15-cv-1267 (N.D. Cal.).......................................................3, 23

*MAI Sys. Corp. v. Peak Computer, Inc.,*
    991 F.2d 511 (9th Cir. 1993).................................................................16

*Mariscal v. Graco, Inc.,*
    52 F. Supp. 3d 973 (N.D. Cal. 2014) ....................................................7

*Media.net Advert. FZ-LLC v. Netseer, Inc.,*
    2016 WL 4036092 (N.D. Cal. July 28, 2016) ................................................23

*Metcalf v. Bochco,*
    294 F.3d 1069 (9th Cir. 2002).........................................................23, 24

*Miller v. Int'l Bus. Machines Corp.,*
    2007 WL 1148996 (N.D. Cal. Apr. 18, 2007) ................................................21

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,*
    2013 WL 1995208 (N.D. Cal. May 13, 2013) ..........................................2, 19

*Monge v. Maya Magazines, Inc.,*
    688 F.3d 1164 (9th Cir. 2012)................................................................17

*Moore v. Stepp,*
    2013 WL 1832640 (N.D. Cal. May 1, 2013) ................................................25

*In re Napster, Inc. Copyright Litig.,*
    191 F. Supp. 2d 1087 (N.D. Cal. 2002) .........................................12, 15, 16

*Nissan Fire & Marine Ins. CO. v. Fritz Companies, Inc.,*
    210 F.3d 1099 (9th Cir. 2000)..........................................................11, 14, 20

*In re Oracle Corp. Sec. Litig.,*
    627 F.3d 376 (9th Cir. 2010)................................................................21

*PB Grp., Inc. v. Proform Thermal Sys., Inc.,*
    2008 WL 2714426 (E.D. Mich. July 8, 2008)................................................22

*Righthaven LLC v. Hoehn,*
    716 F.3d 1166 (9th Cir. 2013)..........................................................14, 20

*Ryan v. CARL Corp.,*
    23 F. Supp. 2d 1146 (N.D. Cal. 1998) ................................................17

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005)...........................................................................20

*Siniouguine v. Mediachase Ltd.*,
    2012 WL 2317364 (C.D. Cal. June 11, 2012)..............................................17

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014)......................................................................19

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)................................................................2, 14

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
    692 F.3d 1009 (9th Cir. 2012)...................................................1, 12, 17, 18

*Wyatt Tech. Corp. v. Malvern Instruments Inc.*,
    2009 WL 2365647 (C.D. Cal. July 29, 2009) .............................................13

*Zendel v. Circle Location Servs., Inc.*,
    2012 WL 12876540 (C.D. Cal. Feb. 2, 2012) .............................................24

## Statutes

17 U.S.C. § 102(a)...........................................................................................15

17 U.S.C. § 103 ................................................................................................17

17 U.S.C. § 201 ..........................................................................................12, 13

17 U.S.C. § 201(a)...........................................................................................16

17 U.S.C. § 201(c)...........................................................................................17

17 U.S.C. § 204 ..........................................................................................2, 21

17 U.S.C. § 410 ................................................................................................11

17 U.S.C. § 501(b)...........................................................................................14

Fed. R. Civ. P. 37 ............................................................................................25

Fed. R. Civ. P. 37(c) ........................................................................................25

Fed. R. Civ. P. 37(c)(1) .....................................................................................7

Fed. R. Civ. P. 56(c) ........................................................................................11

**ISSUES TO BE DECIDED**

1.  Should Valve Corporation's copyright claim over the derivative work "Dota 2" be dismissed because Valve did not create, and does not independently own, the underlying work from the original DotA that is reused in Dota 2?

2.  In the alternative, should Valve's claims related to the following elements of Dota 2, each of which first appeared in DotA, be dismissed:

    a.  the sequence, structure, and organization of gameplay, copyright in which was abandoned to the public by DotA's original creator, Eul?

    b.  the characters originally created by Eul, whose copyrights were also abandoned to the public?

    c.  visual elements first appearing in DotA, to which ███████████████████ ████████████████████████████████████?

    d.  the characters originally created by Guinsoo, ██████████████████ ████████████████████████████?

    e.  the characters originally created by Terrorblaze ███████████████ ██████?

    f.  the characters originally created by Neichus, ███████████████ ████████████████████████?

    g.  the characters originally created by Meian, Madcow, Afrothunder, Cottontop, ShadowPenguin or Eva00r, from whom Valve never received an assignment or exclusive license?

    h.  any characters created by a party whom Valve has been unable to identify, and therefore does not have an assignment or license from?

    i.  the characters allegedly created by Icefrog from whom Valve has not produced evidence of authorship?

Should any remaining claims related to DotA or Dota 2 be dismissed because Blizzard has not asserted any claims relating to DotA or Dota 2 in this litigation, and would now be barred from doing so by the doctrine of claim splitting?

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

In 2002, Blizzard included software in its Warcraft III game that allowed players to build unique, detailed modifications ("mods").   It was a marketing ploy; a way to use avid players to create new content, excitement and interest in their game.   Blizzard failed to include in its End User License Agreement ("EULA") a provision that would assign these authors' copyrights in the works they created back to Blizzard. Whether this was intentional by Blizzard—and part of a scheme to give users ownership rights in the work they created—or a fatal copyright ownership error will never be known.   But, when, in 2002, player Kyle Sommer (pseudonym "Eul") created a mod called Defense of the Ancients (DotA) that attracted a deep following, Blizzard had no copyrights in his creation.   Nor did Blizzard obtain copyrights from any of the players creating characters in the years following Eul's work.   It was only when *Valve*—not Blizzard—decided to commercialize what had until that time been a free community project by creating Dota 2[1] in September of 2004 that Blizzard began to sit up and take notice.   But it was too late.   Eul had already dedicated his rights to the public, and any remaining rights he might have had were later assigned to Valve.   Others who contributed to DotA, Steven Feak (pseudonym "Guinsoo") ███████████████████████████████████████████████████████████████ ███████████████████████████████     ████████████████████████████ ███████████████████████████████████████████, neither obtained assignments from the many other anonymous players who indisputably contributed numerous characters to DotA.   Neither Plaintiff owns the copyrights to DotA, and neither has standing to assert rights in that game or its content.

Nevertheless, Valve claims uCool infringes Dota 2, a **derivative work** based on DotA. "A derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create."   *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012).   Here, Valve concedes that **every gameplay element, piece of character artwork, and character** Valve accuses uCool

---

[1]  Valve dropped the capital A in DotA when it named the sequel, Dota 2.

of infringing in Dota 2 first appeared in the original DotA, which Valve does not own.   Because Valve will never be able to demonstrate one of the two required elements of copyright infringement, "ownership of a valid copyright,"   *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), uCool is entitled to summary judgment on Valve's claim.

Valve cannot claim uCool infringes DotA gameplay because that gameplay has been in the public domain since 2004.   *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990).   Nor can Valve assert the visual elements of DotA 2 derived from Warcraft III because ██████████████████████████████████████████████.

And, summary judgment is appropriate on Valve's asserts alleged ownership and infringement of the identified 57 DotA characters, since:

- **15** characters are owned by third parties from whom Valve has never received any written copyright assignment as required by 17 U.S.C. §204.

- ████████████████████████████████████████ *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008)

- ████████████████████████████████████, in violation of the rule that standing must exist **when the suit is filed**.   *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2013 WL 1995208, at *9 (N.D. Cal. May 13, 2013).

- █████████████████████████████████

- **5** characters were placed in the public domain by their original creator when he publicly stated that "[w]hoever wishes to release a version of DotA may without my consent." *Hadady*, 739 F. Supp. at 1399.

- **7** characters have no evidence of Valve ownership.

*If* Blizzard had included an assignment provision in its EULA, *if* Eul did not dedicate his DotA creation to the public, and *if* either Plaintiff had obtained all rights remaining after Eul's abandonment, then one of them might have some ownership interest in DotA/Dota 2 to assert here. None of these things happened.   uCool's motion should be granted.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**The Parties.**   Valve and Blizzard are computer game developers and publishers.   FAC

1   ¶¶8, 11.[2]   uCool markets and publishes video games developed by third parties, including the

2   accused game Heroes Charge released in 2014.   *See* Declaration of David Guo ¶¶7, 10, Dkt. 69-8

3   in *Lilith Games (Shanghai) Co., Ltd. v. uCool, Inc.*, Case No. 15-cv-1267 (N.D. Cal.). Heroes

4   Charge is a mobile game in which players select characters from a large roster of more than 80

5   characters and complete a series of missions, facing each other in teams of five.   Dkt. 64-7, 64-8.

6   **Asserted Claims.**   Valve asserts a single copyright for the game Dota 2.   FAC ¶27.

7   Plaintiffs have been cagey about their identification of who owns what and what is being asserted,

8   however, Blizzard eventually made clear it is **not** asserting copyright ownership or infringement of

9   either DotA or Dota 2.   *See* FAC Schedule A; Dkt. 90 at 3 ("Blizzard's claims are not currently at

10   issue, and discovery into those claims has been temporarily stayed by Judge Breyer.").   Valve

11   appears to assert copyrights in three **non-literal**[3] elements of DotA 2, including: (i) the "unique

12   and distinctive sets of skills possessed by" certain characters appearing in DotA 2 (FAC ¶¶45-46),

13   (ii) the "appearance [of Valve's] . . . characters" in Dota 2 (FAC ¶¶42-43), and (iii) gameplay that

14   "play[s] in a manner that is similar to . . . Dota 2[.]"   FAC ¶54.   Valve has **not** accused uCool of

15   copying literal source code.   *See, generally* FAC.

16   **Relevant Procedural Background.**   In February 2016, uCool moved to dismiss, arguing

17   Plaintiffs did not and could not properly allege ownership in DotA or the asserted DotA

18   characters. (Dkt. 44 at 8-11; Dkt. 61 at 4-9.)   The Court denied uCool's motion, encouraged

19   uCool to file an early partial summary judgment motion on the issue of DotA ownership, and later

20   limited discovery to that issue, including "which [DotA] characters were created in which version,

21   and who created those characters."   LaFond Decl. Ex. DD, at 12-14; Dkt. 79.

22   **Warcraft III's World Editor.**   Blizzard released Warcraft III in 2002 with a separate

23   program called the "World Editor" that enabled players to change the rules of the game, create

---

25   [2] "Allegations in a complaint are considered judicial admissions."   *Hakopian v. Mukasey*, 551

26   F.3d 843, 846 (9th Cir. 2008).   Plaintiffs thus cannot contradict allegations in their own complaint.
     [3] Software copyrights protect literal and non-literal elements of a computer program.   The literal

27   elements are the computer code, and the non-literal elements include graphics, organization,
     gameplay, and similar elements created by the code, not the code itself.   *See Computer Access*

28   *Tech. Corp. v. Catalyst Enterprises, Inc.*, 2001 WL 34118030, at *13 (N.D. Cal. June 13, 2001)

1   new characters, and create new locations.   Moss Tr. 34:18-38:16; ███████████████

2   ███████████████████████████████████   █████████████████

3        The World Editor was governed by a EULA; however, the EULA contained no provision

4   that assigned user-created materials back to Blizzard.   *See* ██████████████, Exs. D & F.[4]

5   Instead, the only limitation put on "New Materials" (the term the EULA uses to define user-

6   created work) is the purposeful creation of New Materials for a commercial purpose.   *Id.*

7   Otherwise, the New Materials belong to the user.[5]   *Id.*

8        **Eul Creates the First DotA and Original DotA Characters.**   In 2002, Eul created

9   DotA.   Sommer Tr. 52:19-53:9; 57:4.   DotA so changed the Warcraft III rules, objectives, and

10  characters that players and the press described DotA as a different game genre.   Moss Tr. 133:10-

11  134:9; LaFond Decl. Ex. AAA.   Eul created the original DotA gameplay rules and sequence and

12  the original set of DotA characters.   Sommer Tr. 49:16-50:4. **Eul created five asserted**

13  **characters**: Omniknight (Sommer Tr. 73:23-25; █████████████), Clinkz (Sommer Tr.

14  71:11-14), Juggernaut (Sommer Tr. 72:4-5; █████████████); Troll Warlord (█

15  █████████); and Sniper (Sommer Tr. 72:23-24).

16       **Eul Dedicates His Rights in DotA To the Public.**   Eul worked on DotA for two years,

17  creating updates and adding new characters.   Sommer Tr. 71:12-14; Valve Supp. Response to

18  Rog. No. 7 at 8:4-5. On September 23, 2004, Eul decided he no longer wanted to work on DotA

19  and dedicated his work to the public through a public announcement on a web forum:

20       "I wish I could give you a last map that's playable, but I can't. Instead, from this
         point forward, DotA is now open source. ***Whoever wishes to release a version of***
21       ***DotA may without my consent, I just ask that for a nod in the credits to your map.***"

22  Sommer Tr. 59:11-22; LaFond Decl. Ex. M (emphasis added).   Fans immediately understood that

23  Eul was giving them the right to create an endless amount of "modded versions of DotA."

24  LaFond Decl. Ex. M.

25  _____

26  [4]  There was a EULA that shipped with "Warcraft III: Reign of Chaos," and one that shipped with
    the expansion, "Warcraft III: The Frozen Throne"; however, neither contained an assignment-back

27  provision.   LaFond Decl. Exs. D & E.
    [5]  Subsequent EULAs contained express clauses assigning user-created materials back to Blizzard.

28  *See, e.g.,* LaFond Decl. Ex. AA.

1    **Creation DotA Allstars.**   Around the time that Eul released his work to the public, other

2  Warcraft III players began to develop new, derivative versions of DotA which kept the same basic

3  gameplay but introduced small changes or new content and used different names such as ███████

4  ████████   and "DotA Allstars."   *See, e.g.* ████████████; Mescon Tr. 22:16-24:14.

5  ████████████████████████████ ████████████████████████████

6  ████████████████████████ ████████████████████████

7    ███  DotA Allstars ultimately included 130 characters, far more than the 80 or so total

8  characters in the accused Heroes Charge.   *See* Kitchen Decl. ¶ 4; Dkt. 64-7, 64-8.   ████████

9  ████████████████████████████████████████████████

10  ████████████████████████████[8]

11    **DotA and DotA Allstars gameplay.**   DotA and DotA Allstars have the same basic

12  gameplay originally created and dedicated to the public by Eul.   *Compare* Sommer 121:10-

13  125:16 *with* ████████████.   Players are divided into two teams of five each.   *Id.*   Each

14  player selects one "hero" from a large roster of "heroes".   *Id.*   Each team is tasked with

15  destroying the other team's central structure.   Moss Tr. 134:10-135:3. To accomplish that goal,

16  players use their heroes to fight.   Sommer Tr. 125:1-16; ████████████.   Once one team

17  destroys the other team's central structure, the game is over.   Moss Tr. 134:10-135:3.

18    ████████████████████ ████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████ ████████

21  ████████████████ ████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████ ████████████████████

24  ─────────────────

25  [6] Neither ████████████ has ever been located, so their real names are not known.

26  [7] ████████████████████   However, Eul did not create Queen of Pain, therefore she was not in the

27  original map.   Sommer Tr. 175:4-25.

28  [8] ████████████████████████████████████ ██ ████████████████

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████ Valve

5  has never identified, much less produced any copyright assignments from, the authors of these

6  other DotA versions.   LaFond Decl. ¶ 18029.

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ███████████████████████  ████████████████████████████████████

14 ████████████████████████████████  ████████████████████████████

15 ████████████████████████████████████████████████████████████

16   ████████████████████████████████  ██████████████████████████

17 ████████████████████████████████████████████████████████████

18 ██████████████  ████████████████████████  ████████████████████

19 ████████████████████████████████████████████████████████████

20 █████████  ██████████████████████████████████████████████████

21 _____

22  [9]   Doom's original name was "Doom Bringer," and Guinsoo refers to him as Doom Bringer at

23 his deposition.   Although Doom Bringer was later renamed to "Doom," the selection of that
character's abilities and graphics did not change.   Baker Decl. ¶ 10.

24 [10]  Wraith King's original name was "Skeleton King," and Guinsoo refers to him as Skeleton King

25 at his deposition.   Although Skeleton King was later renamed to "Wraith King," the selection of
that character's abilities and graphics did not change.   Baker Decl. ¶ 9.

26 [11]  Guinsoo testified he copied Death Prophet (Feak Tr. 133:5-15), Lich (*Id.* 143:13-25), and

27 Wraith King (*Id.* 169:15-24) from Eul's map.   But, Eul testified the only five asserted characters
he created were Omniknight, Phantom Lancer, Troll Warlord, Crystal Maiden, Clinkz, Sniper, and

28 Juggernaut.   Sommer Tr. 232: 7-15 (non-confidential portion). Thus, Death Prophet, Lich and
Wraith King had to have come from another, unknown, map source.

1 ███████████████████████████   ████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████   ███

4 ████████████████████████████████████████████████████████

5 ████████████████████████████   Some players programmed a character into a simple

6 "test" mod (also referred to as a "test map" or "sample map") using the World Editor then shared

7 it with Guinsoo.   Baker Tr. 97:2-9; Moss Tr. 102:24-103:21.

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ██████████████████████████████████████   █████████████████

11 █████████████████████████████████   ██████████████████████

12 ████████████████████████████████████████████████████████

13 ██████████████████████████████   ████████████████████

14 ██████████████████████████████████████████████████████

15 ████████   ████████████████████████████████████████████

16 ██████████████████████████████████   Valve has not produced copyright

17 assignments for any of these characters.[13]

18 **The Role of Editor Passes to Neichus.**   In early 2005, Neichus became the next editor.

19 Feak Tr. 95:4-96:16, 218:16-219:17; Moss Tr. 61:18-62:10.   Neichus acted as editor for a

20 handful of versions, and incorporated new characters submitted by Terrorblaze, Afrothunder[14],

21 Cottontop, and ShadowPenguin.   Moss Tr. 107:5-108:20; Baker Tr. 146:3-149:15.   While

22 ─────────────────────

23 [12] Zetta and Syl-la-ble have not been located so their real names are not known.

24 [13] ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████   Valve is now barred by Federal Rule of Civil

Procedure 37(c)(1) from presenting evidence regarding who created WindRanger, and
consequently, how Valve could hold title to Windranger.   *See, e.g. Mariscal v. Graco, Inc*., 52 F.

27 Supp. 3d 973, 981 (N.D. Cal. 2014) (excluding undisclosed evidence at summary judgment).

28 [14] Afrothunder has not been located, so his or her real name is unknown.

Neichus was editor, **Afrothunder created one asserted character**: Bristleback (Moss Tr. 107:8-108:7).   Valve has never produced any written copyright assignment from Afrothunder.

Neichus also created original content which was added to DotA Allstars, first by Guinsoo and later by Neichus while he was editor.   Moss Tr. 31:20-32:22.   **Neichus created ten asserted character**s: Axe (Moss Depo 69:15-70:1, 113:7-9; Baker Tr. 191:20-191:25); Earthshaker (Moss Tr. 67:12-18; ███████████████); Enchantress (Moss Tr. 118:2-8; Baker Tr. 192: 1-192:23); Tiny (Moss Tr. 68:19-69:8); Ogre Magi (Moss Tr. 123:14-18; Baker Tr. 192:20-193:8; ███████████████); Ursa (Moss Tr. 131:11-17; Baker 166:5-166:14, 193:11-12; ███████████████); Necrophos[15]  (Moss Tr. 123:4-13; Baker Tr. 193:13-14); Phantom Lancer (Moss Tr. 124:21-125:3; ███████████████); Shadow Fiend (Moss Tr. 66:3-20; Baker Tr. 194:9-195:5); and Tinker (Moss Tr. 129:14-21; Baker Tr. 195:12-13).   Valve did not acquire any rights from Neichus until July 22, 2016, 6 months **after** filing the FAC.   *See* Moss Tr. 173:1-5; LaFond Decl. Ex. I.

**The Role of Editor Passes to Icefrog.**   After a short time, Neichus asked another player, Icefrog (███████████) to take over as editor.   Moss Tr. 99:14-100:14.   Icefrog also took submissions from players and inserted them into the game, including from Terrorblaze, Cottontop, and Eva00r.   *Id*; Baker Decl. ¶ 7; Baker Tr. 163:8-164:5-; ███████████████.

**Terrorblaze's Work on DotA.**   Terrorblaze worked with Guinsoo, Neichus, and Icefrog. Baker Tr. 33:5-11; 112:10-14:17; LaFond Decl. Exs. T & U; 138:24-139:12; 146:10-148:4; 151:4-17; 156:5-8; 162:1-163:7; *see also* Moss Tr. 47:14-49:18; ███████████████.
**Terrorblaze created or co-created six asserted characters**: Abaddon (Baker Tr. 133:14-134:13; Moss Tr. 48:8-49:9); Tidehunter (Baker Tr. 146:10-21; Moss Depo 108:15-108:20, 129:4-129:13; ███████████████); Spirit Breaker (Baker Tr. 162:1-163:7; Moss Tr. 127:17-128:6); Jakiro (Baker Tr. 188:8-189:11); Huskar (Baker Tr. 190:3-13); and Obsidian Destroyer (Baker Tr. 170:15-173:7). ███████████████

---

[15] Necrophos' original name was "Necrolyte," and Neichus refers to him as Necrolyte at his deposition; although though Necryolyte was later renamed to "Necrophos," the selection of that character's abilities and graphics did not change.   Baker Decl. ¶ 11.



Dota 2 "play[s] very, very similar to … [DotA] Allstars".   Baker Tr. 188:5-7.

Based on an analysis of DotA code, as least Mirana, Dazzle, Templar Assassin, Storm Spirit, and Windranger were added to DotA ████████████████████.   Kitchen Decl   ¶4; LaFond Decl. ¶¶ 43-44, Exs. X & Y. ████████████████████████

**Valve's Belated and Failed Attempts to Obtain Rights to DotA.**

██████████████████████████████████████, Valve failed to obtain assignments from any other authors before suing uCool, including Meian, Madcow, Guinsoo, Neichus, Terrorblaze, Cottontop, Afrothunder, or ShadowPenguin.   LaFond Decl. ¶ 20.

**Valve, Blizzard and Riot All Believe They Have Rights in DotA.**   In 2011, a dispute developed between Riot, Valve and Blizzard over DotA rights.   Dkt. 107-6 ████████████████████████████████████████████████████████████████████████████████████████████████████

[16] ████████████████████████████████████████████████████████████████████████████████████████



1 ██████████████████████████████████████████████     ████████████

2 ████████████████████████████████████

3      **DotA was not registered until February of 2016.**   At the time this suit was filed, neither

4 Valve nor Blizzard had registered a DotA copyright.   LaFond Decl. ¶ 21-22; Dkt. 1; Dkt. 55-4,

5 Dkt. 55-5, Dkt. 55-7.   Only after uCool filed its Motion to Dismiss the FAC did Blizzard and

6 Valve register a copyright in three DotA versions: DotA 6.83, DotA Beta 2, and DotA 6.68, Dkt.

7 55-4-7.

8 **III.    APPLICABLE LEGAL STANDARDS**

9      Summary judgment is warranted where "there is no genuine issue as to any material fact"

10 and "the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A

11 court must enter summary judgment "against a party who fails to make a showing sufficient to

12 establish the existence of an element essential to that party's case."   *Celotex Corp. v. Catrett*, 477

13 U.S. 317, 322 (1986).   A party cannot avoid summary judgment if their "evidence is merely

14 colorable, . . . or is not significantly probative"; "[t]he mere existence of a scintilla of evidence . . .

15 will be insufficient."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).   Thus, "a

16 moving party without the ultimate burden of persuasion at trial . . . may carry its initial burden of

17 production by either producing evidence negating an essential element of the nonmoving party's

18 case, or . . . showing that the nonmoving party does not have enough evidence of an essential

19 element of its claim or defense to carry its ultimate burden of persuasion at trial."   *Nissan Fire &*

20 *Marine Ins. CO. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

21      Here, Plaintiffs bear the ultimate burden of persuasion at trial on the issue of ownership,

22 and, therefore, at summary judgment, they must produce evidence of ownership to prevail.   *See*

23 *Brookhaven Typsetting Servs., Inc. v. Adobe Sys., Inc.*, 2007 WL 2429653, at *5 (N.D. Cal. Aug.

24 24, 2007 ("Brookhaven has the ultimate burden of persuasion on its infringement claim . . .

25 Brookhaven must show [] that it owns the copyright in the alleged copied work.")   Because

26 Plaintiffs did not register DotA within five years of publication, ***they are not entitled to a***

27 ***presumption of ownership of a valid copyright in DotA*** (17 U.S.C. § 410) and summary judgment

28 is appropriate since Plaintiffs cannot produce evidence to demonstrate ownership of a valid

1  copyright.  *See, e.g.*, *Dongxiao Yue v. Chordiant Software, Inc.*, 2009 WL 4931679, at *3 (N.D.

2  Cal. Dec. 21, 2009) ("In light of the absence of a statutory presumption of validity, Plaintiffs have

3  not met their burden to prove that the copyrights at issue are valid.")

4  **IV.    ARGUMENT**

5      **A.    Valve's Assertion of Dota 2 Depends Entirely on Ownership of DotA.**

6      Dota 2 is a **derivative** work based on the original DotA, and as a derivative copyright, it

7  does not protect elements that first appeared in DotA.  "[A] derivative author may own the

8  copyright in material the author contributed to a preexisting work, but not in infringing material or

9  material the author did not create."  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d

10  1009, 1016 (9th Cir. 2012).  Valve alleges "Dota 2's heroes are **derived** from heroes present in

11  DotA and **have the same or similar skills and powers as their DotA counterparts**."  *See* FAC

12  ¶28 (emphasis added).  Valve also appears to accuse **gameplay** derived from DotA.  *See* FAC

13  ¶54 (accusing Heroes Charge of "play[ing] in a manner that is similar to DotA and Dota 2,").

14  And Valve concedes it did not create DotA.  FAC ¶22.

15      Because the Dota 2 copyright does not cover elements that first appeared in DotA, and

16  because Valve did not create DotA, "to show ownership, [Valve] need[s] to produce chain of title

17  from the [] author to themselves."  *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087,

18  1101 (N.D. Cal. 2002).  Accordingly, Valve must show complete chain of title assigning: (i)

19  copyrights in DotA gameplay, (ii) copyrights in visual elements of DotA appearing in Dota 2, and

20  (iii) copyrights in the asserted characters that first appeared in DotA.  Valve has not done this.

21      **B.    uCool is Entitled to Summary Judgment on DotA Gameplay and the Visual Elements in DotA from Warcraft III**

22

23      **1.    Eul Placed DotA Gameplay into the Public Domain**

24      Copyright in a work "vests initially in the author or authors of the work.  17 U.S. C. §

25  201.  It is undisputed that Eul created DotA; he created the map, the characters, their abilities and

26  themes, the rules, and named the game.  Sommer Tr. 60:16-61:12.  Eul worked alone and did

27  not implement others' characters.  Sommer Tr. 62: 13-64:1; Moss. Tr 18:2-19:8 ; Mescon Tr.

28  45:17 -46:4; Baker Tr. 236: 12-14; ███████████████████.  Because Eul was the sole

developer of DotA, and Blizzard's EULA did not assign his copyrights back to Blizzard, copyright

1    vested in him and he owned 100% of the original works in DotA.   17 U.S.C. § 201.

2         In 2004, Eul abandoned his copyrights in DotA and donated them to the public.

3    Copyright abandonment occurs "if there is an intent by the copyright proprietor to surrender rights

4    in his work."   *Wyatt Tech. Corp. v. Malvern Instruments Inc.*, 2009 WL 2365647, at \*11 (C.D.

5    Cal. July 29, 2009) (holding copyright abandoned on summary judgment).   In determining

6    whether there has been abandonment, courts look to the objective intent of the individual at the

7    time of abandonment, not later declarations of subjective intent.   *Hadady Corp.*, 739 F. Supp. at

8    1399 (holding copyright abandoned on summary judgment where "Mr. Hadady declares that he

9    did not subjectively intend by the two day notice to abandon Hadady Corp.'s copyright interest.

10   But his declaration flies in the face of the only possible meaning the two day copyright notice

11   conveyed, and does not raise a triable issue of material fact.").

12        In his 2004 WarCenter post, Eul gave the public permission to "release a version of DotA

13   without [his] consent[.]"[17]   This is copyright abandonment.   *Id.* at \*11 ("an overt act evidencing

14   such an intent is necessary to establish abandonment."); LaFond Decl. Ex. M; Sommer Tr. 59:13-

15   60:2.   Eul testified that he "intended that people release versions of DotA without [his] consent."

16   Sommer Tr. 65: 25-66:2.   This was also memorialized by Eul in the assignment agreement he

17   signed with Valve.   LaFond Decl. Ex. M; Sommer Tr. 102:21-103:9.   Because Eul gave anyone

18   permission to use his work and release subsequent versions of DotA without his permission, he

19   abandoned his work, including the sequence, gameplay, original set of characters and overall look

20   and feel of DotA, and placed his DotA copyrights into the public domain.   *Hadady Corp.*, 739 F.

21   Supp. at 1399.

22        Valve cannot own what Eul created.   *Golan v. Holder*, 132 S. Ct. 873, 892 (2012)

23   ("Anyone has free access to the public domain, but no one . . . acquires ownership rights in once-

24   protected works.").   The "core game" of DotA, in which a player picks a character, kills "stuff"

25   and tries "to destroy [the] enemy base was a part of Eul's game and remains at the heart of DotA

---

26

27   [17] Although Eul's post asked that anyone creating a new version of DotA give "a nod in the
     credits to [their] map," Eul did not follow up on this request as fans built their own DotA maps.

28   Sommer Tr. 82: 24-83:8.

gameplay."   Mescon Tr. 48:1-7; Sommer Tr. 121:6-125:19.   Because the DotA sequence, gameplay, and overall look and feel of the game were all aspects of DotA that were abandoned by Eul in 2004, Valve does not now, nor will it ever, be able to assert ownership over those elements.

**2.      Valve Cannot Demonstrate Standing to Assert Visual Elements of DotA**

(a)      Valve cannot demonstrate standing to assert visual elements of DotA found in Warcraft III

Blizzard avers it owns all Warcraft III copyrights, and ███████████████████████

████████  ██████████  ████████████████████████  ██

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████  ████████████████████████████████████

████████████████  ███████████████████████████

██  ██████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████  ████████████████

███████████████  ████████████████████████████████

████████████████████████████  ████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████  This undermines Valve's assertion of infringement on the appearance of all 57 asserted characters and all other visual elements appearing in DotA.

(b)      Valve will not be able to adduce admissible evidence demonstrating ownership of visual elements from outside Warcraft III

Valve cannot meet its burden to demonstrate ownership of visual elements from outside of Warcraft III.   *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).   Witnesses, including Valve's own 30(b)(6) witnesses, testified that they did not know where non-Warcraft III visual elements originated, including but not limited to characters

such as Phantom Lancer (Moss Tr. 29:12-21) and Enigma (Baker Tr. 168:21-24) or other aspects of the game (██████████████).   A party who did not create the copyright at issue must show complete chain of title from the author to assert a copyright.   *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002).   Here, Valve cannot even **name** the authors, much less prove full chain of title; Valve failed to carry its burden on summary judgment.

**C.    Valve Does Not Own the Copyrights in All 57 Asserted Characters.**

> **1.    Valve's copyright in Dota 2 does not cover the "unique and distinctive sets of skills" for heroes that first appeared in DotA.**

Valve admits "Dota 2's heroes are **derived** from heroes present in DotA and **have the same or similar skills and powers as their DotA counterparts**."   *See* FAC ¶28 (emphasis added). ████████████████████████████████████████████████████████████████████████ ███████████████████████   ████████████████████████   Accordingly, Valve must show chain of title assigning a copyright for **each character** it is asserting.   *In re Napster*, 191 F. Supp. 2d at 1101.   Valve has not done this, and uCool is entitled to summary judgment.

> **2.    The players who first proposed DotA Allstars characters, including the selection of abilities, are the authors of those characters.**

The hero designs submitted to Guinsoo, Neichus, and Icefrog—and the "unique and distinctive sets of [character] skills" proposed in those submissions—meet both requirements to create a work of authorship subject to copyright: (i) they are "original works," that were (ii) "fixed in a[] tangible medium of expression."   *See Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 971 (N.D. Cal. 2013) (quoting 17 U.S.C. § 102(a)).   Accordingly, the original copyrights in those character submissions accrued to the author of the original submissions.   *See* 17 U.S.C. § 201(a).

Originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."

---

██ ███████████████████████████████████████████████████████████████████████████ however witnesses have confirmed that those characters are merely the DotA characters Skeleton King and Windrunner **renamed**, without changes to visual appearance or their selection of skills and abilities.   Baker Decl. ¶ 21.   Moreover, Valve is explicitly asserting the "unique and original and arrangement of [] in-game skills" (FAC ¶47), **not** character names; so renaming these characters does not change the analysis.

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000).   The "minimal degree of creativity" required is so low that "[t]he vast majority of works make the grade quite easily."   *Id.*; *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 971 (N.D. Cal. 2013) (classified ads met minimal degree of creativity).   Multi-page documents containing: (i) fictional character biographies, (ii) a unique selection of character powers, many of which were completely original, *see, e.g.* Baker Tr. 168:7-13, (iii) a selection of graphics and icons to use for the characters, and (iv) a selection of numerical attributes to give to the character clearly meet this standard.   *E.g.* Baker Tr. 112:10-14:17 & Exs. 99, 103; ███████████████████████.   And with the exception of the characters that Guinsoo adapted from other versions of DotA, *see, supra* § 4(d), there is no evidence that the character submissions relevant to this litigation included unique sets of abilities "copied from other works," as would be required to disprove originality.[19]   *Ets-Hokin*, 225 F.3d at 1076.   There is also no dispute that character designs submitted to Guinsoo, Neichus, or Icefrog, directly or through "sample maps" were made in a manner that "permit[ed] [the submissions] to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration," which is the standard to determine whether a work is "fixed in a tangible medium."[20]   *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993).

Accordingly, the individuals submitting new characters to Guinsoo, Neichus, and Icefrog, are the authors of those characters, including the "unique and distinctive sets of [character] skills" for the proposed character; and Valve must demonstrate chain of title from each author of a DotA character to itself to demonstrate ownership.   *In re Napster*, 191 F. Supp. 2d at 1101.

### 3.   The editors do not own copyrights in characters they did not create.

The Copyright Act recognizes three types of works that may be created when one individual uses another's work: (i) "joint works," *see* 17 U.S.C. § 201(a); (ii) "collective works,"

---

[19] Despite perhaps meeting the minimum pre-requisite for originality, if necessary, uCool will later demonstrate that these characters are not protectable because they are all derived from traditional tropes and as such are scenes a faire. *See Capcom Co. v. MKR Grp., Inc.*, 2008 WL 4661479, at *5 (N.D. Cal. Oct. 20, 2008) (stock characters are not protectable).

[20] The same cannot be said of programming done by Guinsoo, Neichus, or Icefrog that merely edited a submission from another author.   There, the selection of skills would be "copied from other works, and copying from another work destroys originality."   *Ets-Hokin*, 225 F.3d at 1076.

1   *see* 17 U.S.C. § 201(c); and (iii) "derivative works," *See* 17 U.S.C. § 103.   The distinction makes

2   little difference here, since neither a collective work nor a derivative work gives rise to copyrights

3   in material the editor compiled but did not create.   *See Ryan v. CARL Corp*., 23 F. Supp. 2d 1146,

4   1149 (N.D. Cal. 1998) (creator of collective work only has copyright in the collection as a whole,

5   not its constituent elements); *U.S. Auto Parts*, 692 F.3d at 1016 (author of derivative copyright

6   does not own copyright in underlying work author did not create).   And, DotA Allstars cannot be

7   a joint work because the various authors generally did not work together and never evinced an

8   intent to be co-authors.   *See Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000).

9         While Dota 2 is a derivative work, DotA Allstars is best understood, if at all, as a

10   collective work.   A collective work involves the selection, coordination, and arrangement of

11   individual works to create a new "original work of authorship."   *See Monge v. Maya Magazines,*

12   *Inc.*, 688 F.3d 1164, 1180 (9th Cir. 2012).   ███████████████████████████████

13   ███████████████████████████████████████████████████████████████

14   ███████████████████████   ███████████████   While Guinsoo, Neichus,

15   and Icefrog were not the authors of many of the individual works that were submitted to them, *see,*

16   *infra* §C(2), they did exercise editorial control by arranging which heroes made it into the game.

17   *Id*.   Pursuant to the Copyright Act, this may give the editors a copyright in the specific selection

18   and arrangement of characters **as a whole**,[21] but not in the underlying characters, or the

19   underlying rules and gameplay which were created and subsequently abandoned by Eul, as neither

20   were created by the editors.   *See, e.g.*, *Ryan*, 23 F. Supp. 2d at 1149 (magazine had a copyright in

21   the overall selection and arrangement of articles, but the copyrights in the individual articles

22   belonged to their original authors); *Siniouguine v. Mediachase Ltd.*, 2012 WL 2317364, at *5

23   (C.D. Cal. June 11, 2012) (programmer made "contributions to a collective work" where his code

24    

---

25   [21] Since DotA is a collective work, Valve cannot own the selection and arrangement of characters

26   that appeared in DotA.   The copyright in a collective work protects "only the **privilege** of

reproducing and distributing . . . that particular collective work[.]"   17 U.S.C. § 201(c) (emphasis

27   added).   Because this is a privilege and not an exclusive right, it is not transferable, and Valve

could not have acquired it through assignment. *See Greenberg v. Nat'l Geographic Soc.*, 533

28   F.3d 1244, 1276 (11th Cir. 2008) ("the 'privilege' of § 201(c) is not transferable").

1    was "intended to be combined with customers' own . . . content to create a collective whole"); *IXL*

2    *Inc. v. AdOutlet.Com, Inc.*, 2001 WL 315219, at *9 (N.D. Ill. Mar. 29, 2001) (parties who created

3    website together created a collective work where "each section of the AdOutlet web site

4    constitutes a separate, independent work and is a contribution to the collective whole").

5          Nor is DotA Allstars a series of derivative works under *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th

6    Cir. 2007).   The Ninth Circuit clarified that where individual works were compiled **and**

7    **transformed**, then the new work was a derivative work and not a collective work.   *See Jarvis*,

8    486 F.3d at 532.   Valve may be tempted to argue that under that reasoning, the editors' act of

9    coding the proposed new characters—including their unique selection of abilities was

10    transformative and resulted in a derivative work.   *Id*.   But Valve does not assert code, and

11    coding the skills into the map does not actually change, i.e., transform, **which skills** were selected

12    in the first place; ███████████████████████████████████

13    ███████████████████████   ██████████████████   And, if DotA

14    Allstars were a derivative work, that would still not grant the editors a copyright in the underlying

15    selection of skills for characters they did not create.   *See U.S. Auto Parts*, 692 F.3d at 1016.

16          Nor can DotA Allstars be understood as a joint work.   Joint works require coauthors to:

17    (i) intend to be coauthors, and (ii) make some objective manifestation of that intent.   *See*

18    *Aalmuhammed*, 202 F.3d at 1234.   ██████████████████████

19    ████████████████████████████████████████████

20    ████████████████████████████████████████████

21    ████████████████████████████████████████████

22    ████████████████████████████████████████████

23    ████████████████████████████████████████████

24    ████████████████████████████████████████████

25    ████████████████████   None of this demonstrates an intent to be coauthors, and Valve has

26    identified no "objective manifestation" of intent from Meian, Guinsoo, Neichus, or Icefrog.

27          **4.**      **Valve cannot show the chain of title for the 57 asserted characters.**

28    Valve produced three assignments: (1) from Eul, who abandoned his copyrights, (2) from

1    Icefrog, ██████████████████████████████████████████, and (3)

2    from Neichus, ██████████████████████████████████████.    As a matter

3    of law, Valve cannot demonstrate chain of title to the asserted 57 characters.

4                            (a)      The characters created by Eul passed into the public domain.

5           Eul's copyrights in DotA, including DotA characters, are in the public domain. *See, supra*

6    §B(1).    As a matter of law, Valve cannot own Eul's characters: Omniknight, Clinkz, Juggernaut,

7    Troll Warlord, and Sniper.    *See*, *supra* § II at 4.

8                            (b)      Valve ██████████████████ derivative elements Neichus' created

9    ██████████████████████████████████████████████████████████████████████████

10   ███████████████████  ████████████████████████████████████████████████████████

11   ████    Dkt. 36 (FAC dated January 8, 2016).    It is well established that "[w]hen evaluating

12   whether the standing elements are present, [courts] must look at the facts as they exist at the time

13   the complaint was filed."    *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047

14   (9th Cir. 2014) (internal quotation omitted).    The facts that existed at the time the complaint was

15   filed in January 2016 are undisputed: Plaintiffs **did not even contact** Neichus until June 2016, ██

16   ████████████████████████████████████████████  ████████████████████████████

17   ██████

18           This District's decision in *Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 2013 WL

19   1995208 (N.D. Cal. May 13, 2013) is directly on point.    There, the plaintiff was collaterally

20   estopped from arguing that their copyright assignment agreements were sufficient to grant

21   standing under the Copyright Act.    *Minden*, 2013 WL 1995208 at *7.    To remedy this problem,

22   the plaintiff executed new assignment agreements months **after** filing suit.    *Id*. at *8.    This

23   attempt to cure defective standing was rejected because "[i]f Plaintiff lacked standing to sue at the

24   time the case was filed, it cannot now "cure" this fundamental lack with a later assignment of

25   rights."    *Id*. at *9.    ██████████████

26           Valve cannot assert Neichus' characters: Axe; Earthshaker; Enchantress; Tiny; Ogre Magi;

27   Ursa; Necrophos; Phantom Lancer; Shadow Fiend; and Tinker.    *See, supra* § II at 8.

28                            (c)      Valve does not own derivative elements created by Guinsoo

1   ████████████████████████████████████████████████████

2   ████████████████████   ████████████   ████████████████

3   ████████████████████████████   *Silvers v. Sony Pictures*

4   *Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) ("[T]he Copyright Act does not permit copyright

5   holders to choose third parties to bring suits on their behalf[.]"); *see also Righthaven*, 716 F.3d at

6   1170.   The Court should thus grant summary judgment with respect to any characters created by

7   Guinsoo.   LaFond Decl. Ex. W; Baker Decl. ¶ 8; *Nissan Fire*, 210 F.3d at 1106.   Valve does not

8   own Zeus, Slardar, Centaur Warrunner, Terrorblade, Anti-Mage, Medusa, Crystal Maiden, Pugna,

9   Dazzle, Vengeful Spirit, Keeper of Light, Phantom Assassin, Treant Protector, and Demnok

10   Lamnik the Warlock.   *See, supra* § II at 6.

11           (d)    <u>Valve does not own the copyright in characters created by</u>
   <u>Terroblaze, Meian, Madcow, Afrothunder, or any character that</u>

12               <u>Guinsoo copied from another version of DotA.</u>

13   ████████████████████████████████████████████████████

14   ████████████   ████████████████   ████████████████████

15   ████████████████   Without chain of title, Valve cannot claim ownership over : Abaddon;

16   Tidehunter; Spirit Breaker; Jakiro; Huskar; or Obsidian Destroyer, *see, supra* § II at 8, and

17   summary judgment over those characters should be granted.

18       Plaintiffs never produced assignment agreements from Meian, Madcow, or Afrothunder.

19   LaFond Decl. ¶ 20.   ████████████████████████████████████

20   ████████████████████   ████████████████████   Without assignments, Valve

21   cannot claim ownership over Bristleback, Drow Ranger, Razor; and Queen of Pain, *see, supra* §§

22   II at 5, 7, and summary judgment should be granted.

23       Plaintiffs have been unable to even identify, much less acquire an assignment agreement

24   from the individuals who created the other versions of DotA, ████████████████████

25   ████████████   ████████████████████████████████████████

26   ████████████████████████████████   As Valve cannot produce

27   assignments covering these characters, Valve cannot own: Lina, Wraith King, Naga Siren; Death

28

Prophet; Lich; Lion; Luna; Viper; and Doom.   *See, supra* § II at 5-6.[22]

(e)    <u>Valve has not produced evidence demonstrating ownership over any<br>characters that Valve attributes to Icefrog.</u>

To the extent Valve may attribute any asserted character to Icefrog, that is not sufficient to prove ownership.   After a year of discovery, Valve has yet to produce evidence that Icefrog actually created any of the characters that Valve attributes to him; as Valve bears the burden of proving ownership, this alone is grounds for summary judgment.   *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence").   Every witness who worked with Icefrog testified that he was technically capable but not a creative force who generated new character ideas.   Neichus testified that the entire time he worked with Icefrog, Icefrog created no characters.   Moss Tr. 100:15-101:20. ████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████     ████████████████████████     And when describing one **un-asserted** character, Terrorblaze remarked that the character was unusual because Icefrog contributed creative input—something he did not usually do.   Baker Tr. 180:9-22. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████     ████████████████████     Valve's other 30(b)(6) witness, Eul, implicitly acknowledged this was evasive when he agreed that where a character appears is **not** indicative of who authored that character.   Sommer Tr. 159:5-8.

uCool has no doubt that Valve will come forward with a declaration from Icefrog—their employee—claiming he personally created several characters; but the uncorroborated testimony of

---

[22] ████████████████████████████████████████████████████ ████████████████████████████     ██     ████████████████     Blizzard withheld this document until November 2, 2016, so uCool could not investigate.   LaFond Decl. ¶ 54.

[23] Of course, Valve's interrogatory responses cannot be used as evidence of Valve's claim on summary judgment.   *AT & T Corp. v. Dataway Inc.*, 577 F. Supp. 2d 1099, 1109 (N.D. Cal. 2008); *Miller v. Int'l Bus. Machines Corp.*, 2007 WL 1148996, at *2 (N.D. Cal. Apr. 18, 2007)

1    a putative copyright owner does not create a triable issue of fact.[24]   *See Fred Riley Home Bldg.*

2    *Corp. v. Cosgrove*, 864 F. Supp. 1034, 1044 (D. Kan. 1994). ███████████████

3    ████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████

5    ██████████  ████████████████████

6         Even if Icefrog did create characters, Valve would not own them.   █████████

7    ████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████  ██████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████  ███████████████████  █████████

11   ████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████

13   ██████████████████  ███████████████████████████  ████████████████████████

14   ████████████████████████████████   *See PB Grp., Inc. v. Proform*

15   *Thermal Sys., Inc.*, 2008 WL 2714426, at *4 (E.D. Mich. July 8, 2008) (granting summary

16   judgment under Michigan law where parole evidence resolved any contract ambiguity).[27]

17   ████████████████████████████████████████████████████████████████████████

18   ███████████████████████████████  ███████████████████   and Ex. 67.

19   The DotA code released in that period shows multiple asserted DotA characters were introduced.

20   Kitchen Decl. ¶ 4.   █████████████████████████████████████

21         Accordingly, Valve cannot claim ownership over the characters   ████████████████

22   ─────────────────────────

23

24   [24]  Valve already attempted to completely reverse Eul's testimony through an "errata" sheet; uCool
      has no doubt they will take similar steps regarding their other employee.   LaFond Decl. ¶ 55.

25   [25]  It's worth noting that Valve withheld all documents relating to S2 Games during discovery, and
      uCool only discovered this issue after S2 produced documents.   LaFond Decl. ¶¶ 41-44.

26   [26]  Icefrog's deposition responses were so deficient that uCool sought relief from Magistrate Judge
      Corley.   *See* Dkt. 112.   However, Judge Corley ruled that was "not a question for this Court,"

27   because uCool's summary judgment motion was still forthcoming at that time.   *See* Dkt. 115.
      Accordingly, uCool is raising the issue again here.

28   [27] █████████████████████████████  ██████████████████████



**5.  Valve cannot avoid summary judgment by shifting its focus to computer code in the 57 characters.**

As their case began to fall apart, Plaintiffs have attempted to shift the focus away from the "unique and original selection and arrangement of [] in-game skills," pleaded in the complaint (FAC ¶47) and towards computer code—appearing to claim that only individuals who wrote code for DotA Allstars own a copyright in the selection of character skills. ▮▮▮▮▮

▮ This pivot should not be permitted, but nevertheless Plaintiffs' argument fails.

For over a year, Plaintiffs repeatedly argued this litigation was **not** about computer code. Plaintiffs' motion to intervene in the prior litigation was denied because "Blizzard and Valve do not allege that Lilith or uCool copied their source code."  *See* Case No. 15-cv-1267; Dkt. 93 at 3. Plaintiffs have since filed two additional complaints, neither of which contains **any** allegations regarding copied source code.  *See* Dkt. 1, 36.  And when the Parties were negotiating the protective order, Plaintiffs' counsel stated "we are not anticipating that any source code will need to be produced in this action."  LaFond Decl. Ex. FF.

▮▮▮▮▮ The next month, Plaintiffs began to question third party witnesses about source code at deposition.  *See, e.g.* Mescon Tr. (136:8-10); Baker Tr. (11:25-12:3); ▮▮▮▮▮  Plaintiffs' attempt to save their claims by pointing to code should be foreclosed because they **never** alleged uCool even had access to any allegedly copyrighted source code.  *See, e.g. Media.net Advert. FZ-LLC v. Netseer, Inc.,* 2016 WL 4036092, at *2 (N.D. Cal. July 28, 2016); *see also* FAC (containing no allegations of access).

Moreover, any copyright in the "unique and original selection and arrangement of [] in-game skills," (FAC ¶47) first resides in the individual who originally fixed said selection in a tangible medium, *not* the individual who later translated that selection into computer code. For example, in *Metcalf v. Bochco*, the Ninth Circuit held that the "selection and arrangement of []

1   elements" in a screenplay belonged to the author of the screenplay—**not** the infringing studio who

2   transformed the screenplay into a television series.   *See* 294 F.3d 1069, 1074-75 (9th Cir. 2002).

3   This case is no different: individuals like Terrorblaze or Neichus would fix unique and original

4   selections or arrangements of character skills in fixed media, including forum posts, word

5   processing documents, and "sample maps," which someone like Guinsoo or Icefrog would then

6   transform into code in the World Editor.   *See* Baker Tr. 112:10-114:17 & Exs. 99, 103.   But this

7   transformation through coding no more gave Guinsoo or Icefrog a copyright in the **selection and**

8   **arrangement** of skills than it did the defendant in *Metcalf*.   294 F.3d at 1074-75.

9          **D.      Blizzard Is Barred From Asserting DotA by the Doctrine of Claim Splitting.**

10          Claim splitting also bars Blizzard from trying to save Valve by asserting Guinsoo's works.

11   "[C]laim-splitting [] is a subspecies of the doctrine of claim preclusion . . . [and] bars a second

12   action where (1) the same parties, or their privies, were involved in the prior litigation, (2) the

13   prior litigation involved the same claim or cause of action as the later suit, and (3) the prior

14   litigation was terminated by a final judgment on the merits."   *Icon-IP PTY Ltd. v. Specialized*

15   *Bicycle Components, Inc.*, 2013 WL 10448869, at *2 (N.D. Cal. Oct. 22, 2013).   The court

16   **assumes** the final prong is met, even if the prior litigation is ongoing.   *Id.*; *see also* Murphy v.

17   Wells Fargo Home Mortg., at *7 (N.D. Cal. Aug. 19, 2013) ("The claim splitting bar prevents

18   duplicate cases even if the earlier-filed action has not reached a conclusion").

19          In intellectual property actions, the second element is satisfied if the same product is

20   accused in both actions and plaintiffs' claims arose before the first action was filed.   *E.g. Icon-IP*

21   *PTY Ltd. v. Specialized Bicycle Components, Inc.*, 2013 WL 10448869, at *3 (N.D. Cal. Oct. 22,

22   2013).   For example, in *Zendel v. Circle Location Servs., Inc.*, plaintiff alleged the television

23   show "Ugly Betty" infringed her copyrights; however one year earlier the same plaintiff had filed

24   a different suit claiming that "Ugly Betty" infringed **different** copyrights.   *See*, 2012 WL

25   12876540, at *4 (C.D. Cal. Feb. 2, 2012).   The court found this was barred because all the

26   copyrights could have been asserted in the first action.   *Id.* at *5.   So too here.

27   **V.     VALVE'S DISCOVERY POSITIONS PRECLUDE NEW EVIDENCE**

28          A party that fails to provide information in discovery "is not allowed to use that

information . . . to supply evidence **on a motion**".   Fed. R. Civ. P. 37 (emphasis added); *Hofstetter v. Chase Home Fin., LLC*, 2010 WL 4392916, at *3 (N.D. Cal. Oct. 29, 2010) ("Under Rule 37(c), untimely disclosed materials may not be used at trial or on summary judgment"). Exclusion is a "self-executing, automatic sanction," requiring no additional showing.   *Id*. at *2.

uCool's November **2015** Interrogatory Number 7 asked Valve to identify the creator of each asserted character or non-character element in Valve's work.   LaFond Decl. Ex. J.   Valve initially refused to provide this information, claiming it was "unduly burdensome," uCool's motion to compel was granted.   *See* Dkt. 90; LaFond Decl. ¶ 24, Ex. J.   Valve's July 2016 supplemental response **still** did not answer the question; ███████████████████████ ██████████████████████████████████████████████████████ █████████████████████████████     ████████████████     ██████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

█████     Pursuant to Rule 37, Valve is not allowed to introduce authorship information for these characters.

Separately, Icefrog was designated as Valve's 30(b)(6) witness as to "development, creation, design, and authorship of those versions of DotA in which they participated in creating," and ████████████████████████████████████████.   *See* LaFond Decl. ¶40.   ████████ ██████████████████████████████████████████████████████ █████████████████████████████████████     ████████████████

█████     Valve's failure to prepare Icefrog is the same as withholding discovery; Valve cannot introduce authorship evidence relating to characters ███████████████████████.   *See Moore v. Stepp*, 2013 WL 1832640, at *4 (N.D. Cal. May 1, 2013).

## VI.   CONCLUSION

For the foregoing reasons, uCool respectfully requests that this Court grant uCool's motion for partial summary judgment as to Plaintiffs' claims relating to DotA 2.

1

2
DATED: January 6, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3

By  /s/ Evette D. Pennypacker

4
Claude M. Stern
Evette D. Pennypacker

5
Mark Tung
Michael F. LaFond

6
Maissa Chouraki
Attorneys for uCool, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28