1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Claude M. Stern (Bar No. 96737)
2      claudestern@quinnemanuel.com
   Evette D. Pennypacker (Bar No. 203515)
3      evettepennypacker@quinnemanuel.com
   Mark Tung (Bar No. 245782)
4      marktung@quinnemanuel.com
   Michael LaFond (Bar No. 303131)
5      michaellafond@quinnemanuel.com
   Maissa Chouraki (Bar No. 307711)
6      maissachouraki@quinnemanuel.com
   555 Twin Dolphin Dr., 5th Fl.
7  Redwood Shores, California   94065
   Telephone:    (650) 801-5000
8  Facsimile:    (650) 801-5100

9  Attorneys for uCool, Inc.

10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  Blizzard Entertainment, Inc., and Valve       CASE NO. 3:15-cv-04084-CRB
16  Corporation,
                                                  **DEFENDANT UCOOL, INC.'S NOTICE
17             Plaintiffs,                        OF MOTION AND MOTION FOR
                                                  SANCTIONS**
18        v.
                                                  **Date:         March 10, 2016**
19  Lilith Games (Shanghai) Co. Ltd., and         **Time:         10:00 a.m.**
    uCool, Inc.,                                  **Courtroom:    6, 17th Floor**
20                                                **Judge:        The Hon. Charles R. Breyer**
               Defendants.
21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2017 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom 6 located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant uCool, Inc. will and hereby does move the Court to sanction Plaintiffs Blizzard Entertainment, Inc. and Valve Corporation pursuant to Federal Rules of Civil Procedure 11(c) and 26(g), and 28 U.S.C. §1927.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the declarations and attached exhibits filed in support of this motion, the records and papers on file in this action (including but not limited to the briefing and argument on uCool's motion for partial summary judgment), and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

DATED: January 11, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Evette D. Pennypacker*
    Claude M. Stern
    Evette D. Pennypacker
    Mark Tung
    Michael F. LaFond
    Maissa Chouraki
    *Attorneys for uCool, Inc.*

## **ISSUES TO BE DECIDED**

i.   Should Plaintiffs and their counsel be sanctioned through dismissal of this action for making material, false statements in their First Amended Complaint, which allegations were made without a reasonable investigation, in violation of Federal Rule of Civil Procedure 11?

ii.  Should Plaintiffs and their counsel be sanctioned through dismissal of this action for making material, false statements in their briefing and oral argument made in Opposition to uCool's Motion to Dismiss the First Amended Complaint, which statements were made without a reasonable investigation, in violation of Federal Rule of Civil Procedure 11?

iii. Should Plaintiffs and their counsel be sanctioned through dismissal of this action for failing to dismiss their complaint after discovering evidence demonstrating their claims lacked sound legal or factual foundations, in violation of Federal Rule of Civil Procedure 11 and 28 U.S.C. §1927?

iv.  Should Plaintiffs and their counsel be sanctioned for: (i) providing an incorrect and misleading response to uCool's interrogatory on DotA ownership, and (ii) repeatedly misrepresenting that their DotA ownership related document production was complete, even when it was not; either of which is a violation of Federal Rule of Civil Procedure 26(g)?

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.....................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................................................2

III.  APPLICABLE LEGAL STANDARDS.................................................................................9

IV.   ARGUMENT .......................................................................................................................10

      A.   The First Amended Complaint Contained Material, False Allegations. ...................11

           1.   Valve's claim is factually baseless. ..............................................................11

           2.   Valve's claim is legally baseless. .................................................................12

      B.   Plaintiffs' Made False Statements to Overcome uCool's Motion to Dismiss. .........13

      C.   Plaintiffs Failed to Amend or Dismiss Their Claims After Learning the
           Truth. ........................................................................................................................13

      D.   Plaintiffs' Misrepresentations in Discovery. ...........................................................14

      E.   The Most Severe Sanctions Are Appropriate. ..........................................................15

V.    CONCLUSION ...................................................................................................................15

**Cases**

B.K.B. v. Maui Police Dep't,
  276 F.3d 1091 (9th Cir. 2002)......................................................................... 10

Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.,
  892 F.2d 802 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991)....................... 2, 10, 13

Byrnes v. Lockheed-Martin, Inc.,
  2005 WL 3555701 (N.D. Cal. Dec. 28, 2005) ........................................... 13, 14

Choyce v. SF Bay Area Indep. Media Ctr.,
  2014 WL 2451122 (N.D. Cal. June 2, 2014) ................................................... 11

Christian v. Mattel, Inc.,
  286 F.3d 1118 (9th Cir. 2002) ..................................................................... 9, 10

Cotterill v. City & Cty. of San Francisco,
  2010 WL 1223146 (N.D. Cal. Mar. 10, 2010) ....................................... 2, 10, 13

Ctr. City Music v. Kisner,
  23 F.3d 400 (4th Cir. 1994).......................................................................... 12

Fahmy v. Jay-Z,
  261 F.R.D. 180 (C.D. Cal. 2009) .................................................................. 13

Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.,
  115 F.R.D. 303 (D. Neb. 1987)...................................................................... 12

Kinderstart.com LLC v. Google, Inc.,
  2007 WL 831811 (N.D. Cal. Mar. 16, 2007) ....................................... 10, 12, 15

Lloyd v. Schlag,
  884 F.2d 409 (9th Cir. 1989).......................................................................... 2

Minden Pictures, Inc. v. John Wiley & Sons, Inc.,
  2013 WL 1995208 (N.D. Cal. May 13, 2013) ................................................ 14

N.D. Iowa Feb. 25, 1987) Bourne Co. v. Hunter Country Club, Inc.,
  990 F.2d 934 (7th Cir. 1993).......................................................................... 12

Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship,
  76 F.3d 1003 (9th Cir. 1996).......................................................................... 10

Pannonia Farms, Inc. v. USA Cable,
  2004 WL 1276842 (S.D.N.Y. June 8, 2004)................................................... 12

Silva v. TEKsystems, Inc.,
  2013 WL 3939500 (N.D. Cal. July 25, 2013) ............................................. 2, 15

Sybersound Records, Inc. v. UAV Corp.,
  517 F.3d 1137 (9th Cir. 2008)....................................................................... 12

U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,
    692 F.3d 1009 (9th Cir. 2012) ............................................................................ 11

**<u>Statutes</u>**

17 U.S.C. § 204 (a) .............................................................................................. 4

28 U.S.C. § 1927 ...................................................................................... 10, 13, 15

28 U.S.C. §1927 ................................................................................... ii, 1, 2, 15

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

uCool has been forced to spend extensive resources defending claims Plaintiffs did not investigate and had no factual basis to bring.   Evidence uCool gathered demonstrates as a matter of law that neither Plaintiff Blizzard Entertainment, Inc. ("Blizzard") nor Valve Corporation ("Valve" and collectively with Blizzard "Plaintiffs") conducted any investigation to confirm that either (or even both combined) owned the copyrights to DotA, the work from which the asserted Dota 2[1] indisputably derives.   Had either Blizzard or Valve conducted even the most rudimentary pre-filing investigation, they would have easily learned that numerous authors contributed to the creation of the asserted characters.   And, when they learned these facts in discovery, they still did nothing to correct their error.   Instead, in the face of uCool's motion to dismiss, Plaintiffs' doubled down on their position, repeatedly telling the Court that there were only four DotA authors and that Plaintiffs had obtained rights from all four.   Then, when the Court ordered discovery on DotA ownership, Plaintiffs hid documents while falsely representing again and again that they had produced all documents – a position that may have remained undetected had it not been for uCool's receipt of documents from a third party.

What makes all of this even more egregious is that Plaintiffs' lead counsel must have had extensive knowledge of these issues, which relate to lead counsel's prior work for Blizzard. Lead counsel represented Blizzard when the End User License Agreement that failed to assign rights from DotA authors to Blizzard was in effect, when Blizzard accused Riot of violating its trademarks and obtained an assignment from one of the alleged DotA authors, and when Blizzard accused Valve of violating Blizzard's copyrights and ███████████████████████ ████████████████████████████████████ And, the same in-house counsel that represents Valve now represented Valve at all times relevant to this lawsuit, including when Valve obtained an assignment from Kyle Sommer, ████████████████████ ██████████████████████████████ and in 2009-2010 when Valve hired ██████████ and had a dispute over DotA copyrights with ██████████████████

---

[1]  Valve dropped the capital A in DotA when it named the sequel, Dota 2.

Despite their counsels' intimate familiarity with the history and documentation related to DotA ownership, Plaintiffs falsely represented to this Court that Plaintiffs owned all rights to DotA and, after repeatedly telling uCool their DotA ownership document productions were complete, Plaintiffs failed to produce literally thousands of pages of DotA ownership documents until after all of Plaintiffs' DotA ownership-related 30(b)(6) depositions were complete.

Plaintiffs and their counsel have been delinquent in their Rule 11 duties. *See, e.g. Lloyd v. Schlag*, 884 F.2d 409, 412 (9th Cir. 1989) (failure to investigate copyright transfer agreements violated Rule 11); *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 892 F.2d 802, 804 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991). Plaintiffs' conduct also falls below the standards set forth in 28 U.S.C. §1927 and Federal Rule of Civil Procedure 26(g). *See, e.g. Cotterill v. City & Cty. of San Francisco*, 2010 WL 1223146, at *6 (N.D. Cal. Mar. 10, 2010) (§1927 mandates that counsel change course upon learning their claims are baseless); *Silva v. TEKsystems, Inc.*, 2013 WL 3939500, at *3 (N.D. Cal. July 25, 2013) (misrepresenting that all documents have been produced is sanctionable under Rule 26(g)).

uCool thus moves for dismissal of this action as a sanction on the grounds that Plaintiffs: (i) violated Rule 11 by making numerous, material, false statements in the FAC and failing to conduct an adequate prefiling investigation, (ii) violated Rule 11 by making demonstrably false statements in their opposition to uCool's motion to dismiss, (iii) violated both 28 U.S.C. §1927 and Rule 11 by failing to drop or amend their claims even after they learned of the FAC's defects, and (iv) violated Rule 26(g) by making misrepresentations in their interrogatory responses, and by misrepresenting to uCool that document production was complete while withholding highly relevant documents until after all of Plaintiffs' 30(b)(6) DotA ownership depositions ended.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

***Plaintiffs' First Complaints Failed to State a Cause of Action.*** Plaintiffs first accused uCool of infringing the copyrights at issue on May 29, 2015, when they lodged a complaint-in-intervention in prior litigation between uCool and its present codefendant, Lilith Games (Shanghai) Co., Ltd. *See Lilith Games (Shanghai) Co., Ltd. v. uCool, Inc.*, Case No. 15-cv-1267 (N.D. Cal. 2015) Dkt. 43-1. That attempt to intervene was denied. *Id.* at Dkt. 93. Plaintiffs

then refiled substantially the same complaint on September 8, 2015, initiating this litigation. *See* Dkt. 1. uCool filed a motion to dismiss arguing: (i) Plaintiffs did not adequately allege ownership of copyrights in "Defense of the Ancients" or "DotA," (ii) Plaintiffs did not adequately identify representative examples of infringement, and (iii) Plaintiffs did not adequately describe the allegedly infringed characters. *See, generally* Dkt. 20. The Court granted uCool's motion and dismissed Plaintiffs' complaint with leave to amend. Dkt. 35.

**Plaintiffs' First Amended Complaint Contains Numerous False Allegations.** To address the issues identified in the Court's order on uCool's motion to dismiss, Plaintiffs filed a First Amended Complaint, signed by their lead counsel, that made the following allegations:

- "Pursuant to written agreements, Blizzard and Valve collectively own 100% of the copyright in all original expression embodied within the DotA mod." FAC ¶26.

- "Each of DotA's heroes was derived from a character model . . . present in Warcraft III." FAC ¶24.

- "Each DotA character's set of skills is represented in game using an icon derived from Warcraft III." FAC ¶25.

- Valve's "protected expression" encompasses the following characters which appeared in DotA and Dota 2: Enchantress, Spirit Breaker, Queen of Pain, Demnok, Tidehunter, Pugna, Slithice, and Axe. FAC ¶¶ 28, 46, 47, Exhibit B.

Based on publicly available documents, uCool understood that these allegations could not be correct, and uCool filed a second motion to dismiss. *See* Dkt. 44.

**Plaintiffs Make Further False Statements in Opposition to uCool's Motion to Dismiss.** Rather than backing down, Plaintiffs filed an opposition—also signed by lead counsel—which further misrepresented that there are "**only** four authors of DotA: Eul, Icefrog, Guinsoo, and Pendragon."[2] Dkt. 55 at 3 (emphasis added). Plaintiffs' counsel reiterated this alleged fact at the April 8, 2016 hearing[3]. April 8, 2016 Hg. Tr. at 13. This claim was false. Pendragon was the webmaster for the DotA forums, not an author of DotA. Mescon Depo. 136:11-137:2.

---

[2] The creators of DotA and DotA Allstars shared their work over the internet using pseudonymous "screen names"; most testified that they do not know the real names of the other individuals that they worked with, so their testimony used those same screen names. *See* Moss Depo. 22:20-23:10; Baker Depo. 26:22-29:15; ▮▮▮▮▮▮▮▮▮▮▮▮ A chart matching the witnesses to their screennames is attached as Exhibit DD to the LaFond Declaration.

[3] A transcript of the April 8, 2016 hearing is attached as Exhibit AAA to the LaFond Declaration.

*How Defense of the Ancients Was Actually Created.*  In 2002, Blizzard released a computer game entitled Warcraft III: Reign of Chaos which was bundled with a separate program called the "World Editor" that permitted Warcraft III users to create customized modifications to Warcraft III called "mods" or "maps."  FAC ¶¶ 13,22; ██████████████████[4].  The World Editor program was subject to an end user license agreement that does not contain any clauses assigning copyrights in user-created content back to Blizzard, meaning users own the copyright in any content they create.  *See* LaFond Decl. Exs. D & E (Blizzard's EULAs).  Put simply, Blizzard authorized its users to create certain content but never had any agreement that user created content would belong to Blizzard.[5]

In 2002, Eul (Kyle Sommer), developed a mod called "Defense of the Ancients," abbreviated as "DotA."  Sommer Depo 52:19-53:10.  In 2004, Eul ceased working on DotA and issued a public statement that other players were free to create new versions of DotA without his consent.  Sommer Depo. 59:13-64:19.  In 2010—years after his dedication to the public—Eul assigned whatever rights he retained in DotA to Valve.  Sommer Depo. 101:11-103:9.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████[7]

Despite alleging they own "100% of the copyright," and that the Queen of Pain is Valve's "protected expression," ████████████████████████████████████████

---

[4] Cited transcript excerpts are attached as exhibits FF through MM to the LaFond Declaration.
[5] Of course, under the Copyright Act, any such assignment of rights from the customer to Blizzard would have to be in writing, signed by the user.  *See,* 17 U.S.C. § 204 (a).
[6] ████████████████████████████████
█████████████████████████████████████
███████████████████████████████

█████████████████████████████████████████████████████████████ FAC ¶¶ 26, 47.

***Guinsoo Continues to Develop DotA Allstars.*** █████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ Character submissions were typically very detailed, two to three pages long, and contained character backstories, a selection of abilities or powers, proposed graphics, and numerical values for the character's attributes. *See, e.g.* Baker Depo. 112:10-114:17; LaFond Decl. Ex. QQ.; ███████████████████████ Some players would submit characters by programming them into a simple "test" mods (also referred to as a "test map" or "sample map") using the World Editor. Baker Depo. 165:2-11; Moss Depo. 102:24-103:21. Players whose work went into DotA Allstars include Neichus (Alex Moss), Terrorblaze (Derek Baker), ████ ████████████████████████████████████████ Moss Depo. 47:14-49:18; Baker Depo. 146:10-148:4. These individuals created characters identified in the complaint, including Axe, Tidehunter, and Spirit Breaker. Moss Depo. 112:10-133:1; Baker Depo. 146:17-18; FAC Ex. B.[9]

Prior to filing the complaint, neither Blizzard nor Valve ever contacted Neichus, much less executed an assignment for the characters Neichus created. Moss Depo. 138:3-6. Nor did Blizzard or Valve ever contact or receive an assignment from TerrorBlaze, Syl-la-ble, or Zetta. Baker Depo. 186:17-187:11. Nonetheless, the FAC falsely claims that Plaintiffs owned all characters created by both Neichus and Terrorblaze. *See* FAC ¶ 26, Ex. B.

***Neichus and Icefrog Work on DotA Allstars.*** In 2005, Neichus worked on a handful of DotA Allstars versions, incorporating new characters submitted by TerrorBlaze, AfroThunder,

_____

[8] █████████████████████████████████████████████████████████

[9] For the Court's convenience, a chart matching the characters in the FAC to the lines of deposition testimony identifying their creator is attached as Exhibit EE to the LaFond Declaration.

Cottontop, and ShadowPenguin. Moss Depo. 107:5-108:20; Baker Depo. 146:3-149:18. After Neichus stopped working on DotA, Icefrog added characters submitted by TerrorBlaze, CottonTop, and others. Baker Depo. 188:8-190:2. Guinsoo later worked for Riot Games, Inc., and in 2011, assigned any rights he had in DotA to Riot, who subsequently transferred those rights to Blizzard (not Valve). ████████████████ Dkt. 43-10. ████████████████

████████████████████████████████

***Valve Attempts to Commercialize DotA, Sparking Conflict with Blizzard.*** In 2009, Valve decided to commercialize DotA by creating a sequel named Dota 2 and sought a trademark in Dota 2 in 2010. ████████████████; Dkt. 44-10 at ¶22. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

***Blizzard and Valve <u>Never</u> Investigated DotA's Authors.*** ██████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ It also appears that neither party spoke to Icefrog, even though Icefrog is a **Valve employee**. ████████████████████████████████████

████████████ Nonetheless, Plaintiffs never contacted either Neichus or Terrorblaze

before filing the FAC. Moss Depo. 138:3-6; Baker Depo. 186:17-187:11. Instead, Plaintiffs misrepresented in the FAC that "Blizzard and Valve collectively own 100% of the copyright in all original expression embodied within the DotA mod." FAC ¶26. Then, despite his prior claims that ██████████████████████████████████████████████████████ Plaintiffs' lead counsel further misrepresented to the Court that there were "only four authors of DotA: Eul, Icefrog, Guinsoo, and Pendragon". Dkt. 55 at 3; April 8, 2016 Hg. Tr. 13:13.

The FAC also falsely alleges that Valve's "protected expression" encompasses the characters Spirit Breaker, Axe, Enchantress, Queen of Pain, Demnok Tidehunter, Pugna, and Slithice. In fact, Valve did not have an assignment or exclusive license for any of those characters at the time the complaint was filed. ██████████████████████████████ ██████ Moss Depo. 108:15-108:20; 113:7-9; 118:2-11; Baker Depo. 146:17-18; 158:6-164:5; FAC ¶¶28, 46, 47, Ex. B; *see also* LaFond Decl. Exs. EE, PP.

Plaintiffs' failure to investigate continued **throughout the litigation**. ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

***Blizzard and Valve <u>Never</u> Investigate How DotA was Created.*** DotA was originally created by modifying Blizzard's Warcraft III, however, every DotA author has stated that DotA uses some outside graphics to create new character models and icons. ██████████████ Baker Depo. 168:21-24; Moss Depo. 29:13-18; ███████████████████ DotA thus contains icons and character models not present in Warcraft III; ███████████████████████ ████████████ Thus, the FAC's allegations that "[e]ach of DotA's heroes was derived from a character model . . . present in Warcraft III" and "[e]ach DotA character's set of skills is represented in game using an icon derived from Warcraft III," are false. FAC ¶¶24, 25.

***Blizzard and Valve Undermine the Court's Order Staging Discovery.*** Even though the Court denied uCool's Motion to Dismiss the FAC, the Court limited discovery to DotA ownership with the understanding that uCool could file an expedited motion for summary judgment. *See* April 8, 2016 Hg. Tr. at 14 ("It appears to me that discovery should be limited . . . I'll see you back here in 90 days or 120 days and we'll sort through"); *see also* Dkt. 79. Nonetheless, by

May of 2016, Plaintiffs were still withholding discovery on DotA ownership, so uCool moved to compel. *See* Dkt. 90. Magistrate Judge Corley granted the motion, ordered Valve to supplement its response to uCool's Interrogatory No. 7, and ordered the Parties to agree to a list of custodians and search terms. LaFond Decl. ¶¶24-32.

Valve supplemented Interrogatory No. 7 but did not identify █████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████

In August, 2016 Plaintiffs' counsel represented in writing that Plaintiffs had fully complied with Judge Corley's order and produced all documents. LaFond Decl. ¶¶34-38. uCool raised concerns, but, surprisingly lead counsel **again** stated Plaintiffs had completed their production. *Id.* Relying on these representations, uCool scheduled depositions. *Id.* ¶39.

***Blizzard and Valve are Caught Withholding Documents.*** Prior to August 2016, uCool found an internet post allegedly written by an anonymous Valve employee, stating that Icefrog's prior employer, S2 Games, LLC, may have a superior claim to Icefrog's alleged rights in DotA. *See* LaFond Decl. Ex. SS. uCool served a Rule 45 subpoena, and S2 Games produced documents on September 9, 2016. S2 Games' production included documents **never produced** by Valve that: ████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████ On September 22, 2016, in response to a demand from uCool, and the night after the first Valve 30(b)(6) deposition, Valve produced its copy of those documents. LaFond Decl. ¶¶47-48.

After learning Valve had withheld documents—despite lead counsel's claims to the contrary—uCool demanded that Plaintiffs immediately produce all documents as ordered by Judge Corley, and also provide uCool with declarations signed under penalty of perjury explaining why documents were withheld; lead counsel agreed. LaFond Decl. ¶¶49-55 & Exs. W, X. However, by that time, Plaintiffs' 30(b)(6) depositions had already been scheduled and were nearly complete. LaFond Decl. ¶¶39; 56-59. Plaintiffs collectively produced **39,599 pages** of documents **after** the depositions were completed. *Id.* ¶¶56-59. Several of the late produced

documents demonstrate that Plaintiffs' prior representations were simply false:



***Blizzard and Valve Refuse to Drop Untenable Claims.*** ███████████████

██████████████████████████████ ██ █████████████████████████████████████

██████████████████████████████████ Nonetheless, Plaintiffs did

not amend their claims, their complaint, or **any** discovery responses, and instead stood by while

uCool expended months of attorney time and resources to reveal what Plaintiffs already knew: that

Plaintiffs could not possibly own all of the asserted characters.

## III.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 11 requires attorneys to certify that in every pleading or

other paper presented to the Court "the claims, defenses, and other legal contentions are warranted

by existing law," and "the factual contentions have evidentiary support."   When determining

whether Rule 11 has been violated, "a district court must conduct a two-prong inquiry to

determine (1) whether the complaint is legally or factually 'baseless' from an objective

perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before

signing and filing it."   *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).   When

examining the claims in the complaint, "[t]he presence of one non-frivolous claim in the complaint

[10] Plaintiffs refused to disclose Guinsoo's contact information for months, even after ordered to
supplement an interrogatory response.   *See* LaFond Decl. ¶¶84-103.

does not insulate the remainder of the complaint from a motion for Rule 11 sanctions." *Kinderstart.com LLC v. Google, Inc.*, 2007 WL 831811, at \*1 (N.D. Cal. Mar. 16, 2007).

28 U.S.C. § 1927 sanctions "[a]ny attorney . . . who [] multiplies the proceedings in any case unreasonably and vexatiously[.]"   Sanctions under § 1927 do not require a showing of bad faith, and are available where an attorney acts in a knowingly, reckless manner.   *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), *as amended* (Feb. 20, 2002).   "Once counsel is or should be aware of the impropriety of his or her conduct, the costs, expenses, and attorneys' fees for any subsequent proceedings may be considered to be excess expenses and counsel may be required to personally pay them under § 1927."   *Cotterill v. City & Cty. of San Francisco*, 2010 WL 1223146, at \*6 (N.D. Cal. Mar. 10, 2010).

Federal Rule of Civil Procedure 26(g) requires that an attorney sign all discovery responses, certifying that the information contained within them is based on "knowledge, information, and belief formed after a reasonable inquiry[.]"   When ruling on a sanctions motion under Rule 26(g), courts apply an "objective" standard, and bad faith is not required.   *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship*, 76 F.3d 1003, 1008 (9th Cir. 1996).

## IV.   ARGUMENT

uCool has been forced to litigate a meritless claim that Plaintiffs and their counsel failed to investigate **before filing suit,** or to correct even when apprised of their reckless behavior during the suit.   This is precisely what Rule 11 and 28 U.S.C. § 1927 are designed to prevent.   *See, e.g. Christian*, 286 F.3d at 1128; *Bus. Guides*, 892 F.2d at 804.   uCool has also been prejudiced by Plaintiffs repeated certifications that their discovery was complete when it was not—a violation of Rule 26(g).   Accordingly, Plaintiffs' baseless claims should be summarily dismissed, and both Plaintiffs and their counsel should be sanctioned.

At least the following acts justify the relief sought: (i) filing the FAC with material, false allegations stated without investigation, (ii) opposing uCool's motion to dismiss with material, false, uninvestigated statements; (iii) failing to dismiss or amend claims after learning the truth from Neichus and Guinsoo; and (iv) making misrepresentations in discovery responses and repeatedly claiming their document production was complete when it was not.

**A.** **The First Amended Complaint Contained Material, False Allegations.**

Valve avoided dismissal by making a factually baseless claim as to copyright ownership, and a separate, legally baseless claim that it had standing based on a non-exclusive license.

**1.** **Valve's claim is factually baseless.**

To state a claim for copyright infringement, Valve first had to own a valid copyright. *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 2451122, at *4 (N.D. Cal. June 2, 2014). This was a problem for Valve because the asserted work—Dota 2—is a derivative work; and "a derivative author may own the copyright in material the author contributed to a preexisting work, but not in infringing material or material the author did not create." *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012); *see also* FAC ¶ 28 ("Dota 2's heroes are derived from heroes present in DotA"). **Every** asserted Dota 2 character in the FAC first appeared in DotA; this is stated in FAC Exhibit B and was reaffirmed in Valve's responses to contention interrogatories. FAC Ex. B; LaFond Decl. Ex. OO. Thus, Valve could never have stated a claim against uCool based on Dota 2 without separately alleging that Valve owned DotA.

Valve's solution was to falsely allege that, collectively with Blizzard it "owned 100% of the copyright" in DotA, and that certain DotA characters were Valve's "protected expression." FAC ¶¶ 26, 28, 47, Ex. B. But Valve never received assignments covering those characters, and Plaintiffs could not have owned "100%" of the DotA copyright when they filed the FAC—they did not obtain any copyrights from Neichus until six months later. LaFond Decl. Ex. I. Plaintiffs also never obtained any copyrights from ███████████ or Terrorblaze, even though they created characters asserted in the FAC. ████████████████████████████

████ Moss Depo. 108:15-108:20; 113:7-9; 118:2-11; Baker Depo. 146:17-18; 158:6-164:5.

████████████████████████████████████████████████████████████

Why did he not talk to any of them before suing uCool?

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Moreover, despite numerous public reports stating that Neichus created much of DotA's content, Plaintiffs never

contacted Neichus before filing suit.   Moss Depo. 138:3-6; LaFond Decl. Exs. A, B.   And, had Plaintiffs spoken to Icefrog, a Valve employee, before filing, then ████████████████ ██████████████████ ██     ████████████████████████

In sum, Plaintiffs executed copyright assignments without ever asking the assignors what they created, then filed suit in the hopes that some claims would stick; that is not sufficient under Rule 11.   *Kinderstart.com LLC* 2007 WL 831811, at *1.   Accordingly, Valve's claim is frivolous, was not investigated, and should be dismissed as a sanction under Rule 11.   *See, e.g. Pannonia Farms, Inc. v. USA Cable*, 2004 WL 1276842 (S.D.N.Y. June 8, 2004) (plaintiff subject to Rule 11 sanctions for alleging infringement of characters where plaintiff only owned rights in derivative works and not the original characters).

### 2.      Valve's claim is legally baseless.

████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████   This is a legally baseless claim.
████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████ ██ ████████████████ ██ ████████
██████████████████████████████████████████████████

---

[11]   In addition to not speaking with Icefrog before filing suit, Plaintiffs also did not provide Icefrog with a document hold notice for **11 months**.   LaFond Decl. ¶¶67-74.

[12]   *See Hulex*, 115 F.R.D. at 304; *Cass Cty. Music Co. v. I.G.L. Racquet Club, Inc.*, 1987 WL 8593, at *1 (N.D. Iowa Feb. 25, 1987); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993); *Ctr. City Music v. Kisner*, 23 F.3d 400 (4th Cir. 1994) (unpublished).

[13]   ASCAP is an acronym for "the American Society of Composers, Authors, and Publishers." *Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.*, 115 F.R.D. 303, 304 (D. Neb. 1987).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ Valve's claim is thus legally baseless as well as factually baseless.

**B.    Plaintiffs' Made False Statements to Overcome uCool's Motion to Dismiss.**

Rather than reconsider their position after receiving uCool's motion to dismiss, Plaintiffs doubled down on baseless allegations by claiming there are "**only** four authors of DotA: Eul, Icefrog, Guinsoo, and Pendragon." Dkt. 55 at 3 (emphasis added); April 8, 2016 Hg. Tr. at 13. Again, an interview with Icefrog—who is, and was, a Valve employee—would have revealed that ███████████████████████████████████████ This implies that Plaintiffs' counsel did not speak to Icefrog even after receiving uCool's motion to dismiss, and his subsequent statements were also unverified. ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████ To save their complaint from dismissal, Plaintiffs and their lead counsel made false statements without attempts at verification: the very definition of a Rule 11 violation. *Bus. Guides*, 892 F.2d at 804.

**C.    Plaintiffs Failed to Amend or Dismiss Their Claims After Learning the Truth.**

Pursuant to Rule 11, "[w]hen it becomes apparent that a case lacks evidentiary support, a client and his lawyer have a duty to withdraw their complaint." *Byrnes v. Lockheed-Martin, Inc.*, 2005 WL 3555701, at *9 (N.D. Cal. Dec. 28, 2005). Likewise, once counsel knows, or should know, that their claims are baseless, they cannot continue to press those claims pursuant to 28 U.S.C. § 1927. *Cotterill*, 2010 WL 1223146, at *6. Here, Plaintiffs should have amended or dismissed the FAC on at least two occasions.

First, in May 2016, uCool located Neichus, interviewed him, completed interrogatory responses based on his knowledge and disclosed his identity to Plaintiffs. LaFond Decl. ¶¶77-81.

█████████████████████████████████████████████████████████ Of course, "[i]f Plaintiff[s] lacked standing to sue at the time the case was filed, [they] cannot now 'cure' this fundamental lack with a later assignment of rights." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 2013 WL 1995208, at *9 (N.D. Cal. May 13, 2013). Nonetheless, neither Plaintiff took action to amend the FAC even though the Neichus assignment demonstrates **neither** Plaintiff owned any rights Neichus had when they filed the FAC.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Faced with this knowledge, Plaintiffs had a duty to withdraw those claims. *Byrnes*, 2005 WL 3555701, at *9. They did not.

**D.** **Plaintiffs' Misrepresentations in Discovery.**

uCool's Interrogatory No. 7 asked Valve to identify the author of each DotA character they claimed to own; instead of admitting that they were unsure as to the authorship of some characters, Valve fabricated an answer, without investigation, that proved completely wrong. Valve never interviewed Neichus, yet claimed that he was not an author of any DotA content. *See* LaFond Decl. Ex. PP; Moss Depo. 138:3-6. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ Even when Valve finally interviewed Neichus, they appeared disinterested in the truth: Neichus testified Valve never asked **what** he had created. Moss Depo. 153:22-154:20.

Separately, uCool only learned that Plaintiffs had repeatedly misrepresented that their document productions were complete **by chance**—had uCool never subpoenaed S2 Games, the truth would not have come out. LaFond Decl. ¶¶40-55. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ By withholding documents from April until November, Plaintiffs undermined the Court's order staging discovery to facilitate early summary judgment. *See* April 8, 2016 Hg. Tr. at 8. ████████████████████████████

████████████████████████████████████████████████████ Because the

documents were not produced until **after** all the 30(b)(6) depositions, it is unclear which is false:

the documents or the ███████████████ LaFond Decl. ¶¶56-66.  Rule 26(g) is supposed to

preclude this sort of conduct; sanctions are appropriate.  *See Silva*, 2013 WL 3939500, at *3.

**E.     The Most Severe Sanctions Are Appropriate.**

Blizzard and Valve put false statements into the FAC without investigating them, which

statements were the **only** support for Valve's claim to own the copyrights at issue.  *See, supra* pp.

2-10.  uCool has now been forced to litigate for over a year, at great expense, simply to prove

what Plaintiffs could have learned from talking to **their own employee**—that Plaintiffs do not

own the copyrights they assert.  *See, supra* §IV(A).  Valve's claim to own "100%" of DotA was

always meritless, thus dismissal of Valve's claim is the most appropriate sanction—this would be

so even if Valve actually owned a small part of DotA, because a lone non-frivolous claim cannot

save a complaint from Rule 11.  *Kinderstart.com LLC* 2007 WL 831811, at *1.  Likewise,

Blizzard made false allegations in the FAC without investigation and failed to amend or withdraw

the FAC after the allegations proved false, so Blizzard's claims too should be dismissed.

Pursuant to both Rule 11 and 28 U.S.C. §1927, Blizzard and Valve should also be required

to cover uCool's attorneys' fees since at least the date when the FAC was filed: had Plaintiffs told

the truth, neither staged discovery nor uCool's motion to dismiss would have been necessary.

In the alternative, if Plaintiff's FAC is not dismissed, Plaintiffs should be subjected to

evidentiary sanctions pursuant to Rule 26(g) for withholding relevant documents until after key

depositions were completed.  *See Silva*, 2013 WL 3939500, at *3.  uCool requests that Plaintiffs

be precluded from introducing declaration testimony from any of their 30(b)(6) witnesses—an

appropriate sanction that will obviate the need for uCool to take more 30(b)(6) depositions.

**V.     CONCLUSION**

For the foregoing reasons, uCool respectfully requests that Plaintiffs and their counsel be

sanctioned pursuant to Rules 11 and 26(g) and 28 U.S.C. § 1927.

DATED: January 11, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By    */s/ Evette D. Pennypacker*
  Claude M. Stern
  Evette D. Pennypacker
  Mark Tung
  Michael F. LaFond
  Maissa Chouraki
  *Attorneys for uCool, Inc.*