# MAYER DECLARATION

# EXHIBIT 5

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4   _____
 5   Blizzard Entertainment, Inc., and Valve    )
     Corporation                                )
 6                                              )
              Plaintiff,                        )
 7                                              )
         vs.                                    )CASE NO.
 8                                              )3:15-cv-
     Lilith Games (Shanghai) Co. Ltd., uCool, Inc.,)04084-
 9   and uCool Ltd.,                            )CRB
                                                )
10            Defendants.                       )
     _____
11
            VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION
12
                              OF
13
                         SCOTT LYNCH
14   _____
15
            Taken at 1201 Third Avenue, Suite 3200
16
                      Seattle, Washington
17
18
19
20
21
22
23   JOB NO. 113434
24   DATE TAKEN:   September 29, 2016
25   REPORTED BY:  KATHLEEN HAMILTON, RPR, CRR, CCR 1917
```

```
 1                A P P E A R A N C E S
 2    FOR THE PLAINTIFF:
 3                          MARC MAYER
                            DANIEL KOHLER
 4                          Mitchell Silberberg &
                            Knupp
 5                          11377 West Olympic Boulevard
                            Los Angeles, California 90064
 6
 7
 8
 9                          KARL QUACKENBUSH
                            Valve Corporation, General
10                          Counsel
                            10900 NE 4th Street
11                          Bellevue, Washington 98004
12
13
      FOR THE DEFENDANT UCOOL, INC:
14
                            CLAUDE STERN
15                          EVETTE PENNYPACKER
                            MICHAEL LAFOND
16                          Quinn Emanuel Urquhart &
                            Sullivan
17                          555 Twin Dolphin Drive
                            Redwood Shores, California 94065
18
19
20
21
22
      ALSO PRESENT:
23
                            MELODY SORENSEN, Videographer
24
                              *   *   *   *   *
25
```

1       SEATTLE, WASHINGTON; SEPTEMBER 29, 2016

2                    9:01 a.m.

3                     -o0o-

4

5            THE VIDEOGRAPHER:  We're now on the record.

6   This is the start of media 1 of the video recorded

7   deposition of Scott Lynch in the matter of Blizzard

8   Engagement, Inc., et al., versus Lilith Games Company

9   LTD, et al., in the United States District Court,

10  Northern District of California, San Francisco Division.

11  Number 3:15-cv-04084-CRB.

12           This deposition is being held at 1201 3rd

13  Avenue Suite, 3200 Seattle, Washington, on September

14  29th, 2016, at approximately 9:02 a.m.

15           My name is Melody Sorensen.  I am the legal

16  video specialist from TSG Reporting, Inc., headquartered

17  at 747 3rd Avenue, New York, New York.  The court

18  reporter is Kate Hamilton in association with TSG

19  Reporting.

20           Counsel, please introduce yourselves.

21           MR. MAYER:  Marc Mayer of Mitchell

22  Silberberg and Knupp.  I'm here with my colleague Daniel

23  Kohler, also Mitchell Silberberg, and Karl Quackenbush

24  of Valve Corporation.  We're attorneys for the

25  plaintiffs.

1          MR. STERN:  Claude Stern, Evette Pennypacker
2    and Mike LaFond of Quinn Emanuel on behalf of uCool.
3          THE VIDEOGRAPHER:  Will the court reporter
4    please swear in the witness and begin.
5
6    SCOTT LYNCH              witness herein, having been
7                             first duly sworn on oath,
8                             was examined and testified
9                             as follows:
10
11                  E X A M I N A T I O N
12   BY MR. STERN:
13      Q.   Good morning, Mr. Lynch.  Could you spell your
14   last name?
15      A.   L-y-n-c-h.
16      Q.   And your first, please?
17      A.   S-c-o-t-t.
18      Q.   And Mr. Lynch, where do you reside?
19      A.   In Kirkland, Washington.
20      Q.   And are you currently employed?
21      A.   Yes.
22      Q.   Where are you employed?
23      A.   Valve Corporation.
24      Q.   And how long have you been employed by Valve
25   Corporation?

Page 245

1    the assigned assets to any third party.
2            Do you see that?
3        A.   Yes.
4        Q.   Why was that "except" provision put in at the
5    beginning of that sentence?
6        A.   Why was the "except" provision?
7        Q.   Yeah.
8        A.   To reflect the statement that he made on War
9    Center.
10       Q.   In that respect, the agreement with -- there's
11   no such similar "except" provision in the agreement with
12   ▮▮▮▮▮▮▮▮ correct?
13       ▮    There is no --
14       Q.   Such similar "except" provision in the agreement
15   with ▮▮▮▮▮▮▮▮.
16              MR. MAYER:  Objection.
17              THE WITNESS:  Exhibit 52 does not have that
18   same "except" language?
19   BY MR. STERN:
20       Q.   Right.  Tell me what -- what information --
21              MR. MAYER:  Wait, wait.  Were you
22   answering --
23              THE WITNESS:  I didn't answer your question.
24   BY MR. STERN:
25       Q.   I'm sorry.

Page 246

1    A.   I was just repeating your question.

2         (Witness reviews exhibit.)

3         (As read) seller does not assign or otherwise

4    transfer ownership.

5         Yeah, I don't see any "except" statement.

6    Q.   Tell me what -- what Valve contends -- withdraw

7    that.

8         What does Valve believe was the features,

9    characteristics or qualities of Mr. Sommer's work that

10   was released to the public?

11            MR. MAYER:  Objection.  Calls for a legal

12   conclusion.

13            THE WITNESS:  I don't -- I don't understand

14   the question.

15   BY MR. STERN:

16   Q.   Well, it says -- this is the agreement that was

17   written by Valve.  Valve signed the agreement.  Valve

18   said that Valve believes that Mr. Sommer quote, released

19   his work to the public for further development.

20            MR. MAYER:  Objection.  Mischaracterized the

21   testimony.

22   BY MR. STERN:

23   Q.   Closed quote.  That's paragraph B.

24        My question is:  What did Valve believe the

25   impact on Mr. Sommer's rights in the work were from his

1  quote, releasing his work to the public for further
2  development, closed quote?
3              MR. MAYER:  Objection.
4              THE WITNESS:  Okay.  There was a --
5              MR. MAYER:  Yeah.  Let me just object,
6  because I think that mischaracterized the document and
7  the testimony.
8  BY MR. STERN:
9      Q.   My question stands.
10          The question is:  What did Valve believe the
11 impact on Mr. Sommer's rights of the work were from his
12 quote, releasing his work to the public for further
13 development, closed quote?
14             MR. MAYER:  Same objection.
15             THE WITNESS:  What did we believe that the
16 impact on his rights were.  Well, I mean I think we
17 thought he had all of his rights.  I don't think we
18 changed anything by making that statement.
19 BY MR. STERN:
20     Q.   That's valid.
21          So Valve's position is that Mr. Sommer as of
22 September 22nd, 2004, had certain rights in his work in
23 DotA, and then in September 23rd, 2004, when he released
24 his work to the public for further development, that
25 that did not impact his ownership rights in that work;

1  is that fair?
2          MR. MAYER: Object -- objection.
3  Mischaracterizes the testimony. Calls for a legal
4  conclusion. Lacks foundation.
5          THE WITNESS: I think Eul had all of his
6  rights, and the statement didn't change the rights that
7  he had, other than him giving permission to people that
8  wanted to continue to work on the mod.
9  BY MR. STERN:
10    Q.  Okay. And so when he released his -- when he
11 released the work for further development to the public,
12 is it your understanding that the people who continued
13 to work on the mod, did they gain any rights in what he
14 had done?
15         MR. MAYER: Objection. Legal conclusion.
16         THE WITNESS: No, I think they only got
17 permission to work on the mod.
18 BY MR. STERN:
19    Q.  Okay. So you -- would it be fair to say that
20 you saw what Mr. Eul was doing was giving the public a
21 license to his work?
22         MR. MAYER: Objection. Legal conclusion.
23         THE WITNESS: I don't know exactly who he
24 was talking to. But this group that he was talking to,
25 and maybe it's anybody that wanted to keep developing

1   the mod that he had last released, he was saying they
2   have permission to do that.
3   BY MR. STERN:
4      Q.   Did -- in 2010 did anybody at Valve ever do any
5   research as to what it meant to dedicate a copyrighted
6   work to the public?
7               MR. MAYER:  Objection.  Legal conclusion.
8               THE WITNESS:  Had we done any research on
9   what?  What it meant to dedicate a --
10  BY MR. STERN:
11     Q.   What it meant to dedicate a copyrighted work to
12  the public.
13     A.   I don't recall doing any work like that.
14     Q.   And you're speaking on behalf of Valve; is that
15  correct?
16     A.   Yes.
17     Q.   Do you recall if anybody made any -- by the way,
18  just if -- if Valve's position was that Mr. Sommer
19  retained all of his rights in the work he created even
20  after he made this statement on September 23rd, 2004, to
21  the public, why is it that Mr. Johnson wrote him and
22  said quote -- this is in the Exhibit 41 which you
23  previously saw -- I suppose it is debatable as to what
24  you actually own, closed quote?
25              MR. MAYER:  Objection.  Mischaracterized the

1  testimony.  Mischaracterizes Valve's position.

2          THE WITNESS:  Can you say that again?

3  BY MR. STERN:

4     Q.   Yeah, sure.

5          If you look at Exhibit 41, right in the center,

6  you've testified under oath that it's Valve's position

7  that Mr. Sommer's dedication to the public or his action

8  of September 23rd, 2004, by making that statement on

9  that blog, that did not affect his proprietary rights in

10 his work.

11         You -- but Mr. -- Mr. Johnson said on September

12 25th, 2010, about six years ago, quote -- and he said

13 this to Mr. Sommer -- Given that you essentially

14 open-sourced the product when you stopped working on it,

15 I suppose that it's debatable as to what you actually

16 own, period, closed quote.

17         Do you see that?

18         MR. MAYER:  I'm going to object.  I'm going

19 to object.  I mean this question's filled with

20 mischaracterizations and -- and problems.  I'm objecting

21 to the question.

22         THE WITNESS:  I see the second sentence in

23 the e-mail.

24 BY MR. STERN:

25    Q.   Okay.  And the question is:  Is Mr. -- is