1   Colin H. Murray (State Bar No. 159142)
     colin.murray@bakermckenzie.com
2   Teresa H. Michaud (State Bar No. 296329)
     teresa.michaud@bakermckenzie.com
3   **BAKER McKENZIE**
    Two Embarcadero Center, 11th Floor
4   San Francisco, CA 94111
    Telephone: +1 415 576 3000
5   Facsimile:  +1 415 576 3099

6   W. Barton Rankin (*Admitted Pro Hac Vice*)
     w.rankin@bakermckenzie.com
7   **BAKER McKENZIE**
    2300 Trammell Crow Center
8   2001 Ross Avenue
    Dallas, Texas 75201
9   Telephone:  +1 214 978 3000
    Facsimile:  +1 214 978 3099

10
    Attorney for Defendant
11  Lilith Games (Shanghai) Co. Ltd.

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15  Blizzard Entertainment, Inc., and Valve
    Corporation,                                   **Case No.  3:15-cv-04084-CRB**
16
                    Plaintiffs,                     **NOTICE OF MOTION AND MOTION
17                                                  BY DEFENDANT LILITH GAMES
              v.                                    (SHANGHAI) CO. LTD. TO DISMISS
18                                                  PLAINTIFF'S SECOND AMENDED
    Lilith Games (Shanghai) Co. Ltd., uCool, Inc., COMPLAINT; MEMORANDUM OF
19  and uCool Ltd.,                                 POINTS AND AUTHORITIES IN
                                                    SUPPORT
20                  Defendants.
                                                    Date:     February 2, 2018
21                                                  Time:     10:00 a.m.
                                                    Crtrm:    6, 17th Floor
22                                                  Before:   The Hon. Charles R. Breyer

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on February 2, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6, located on the 17th Floor of this Court, 450 Golden Gate Avenue, San Francisco, CA  94102, before the Honorable Charles R. Breyer, Defendant Lilith Games (Shanghai) Co. Ltd. ("Lilith") will and hereby does move this Court for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the First Claim for Relief for Copyright Infringement against Lilith's game Soul Hunters contained in Plaintiffs' Second Amended Complaint filed herein on November 8, 2017 (the "SAC", ECF No. 210.)  This motion is made on the grounds that the First Claim for Relief, the only claim against Lilith, fails to state facts sufficient to constitute a cause of action upon which relief may be granted against Lilith's game Soul Hunters. The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

**REQUESTED RELIEF**

Defendant Lilith seeks an order from this Court dismissing any claims of copyright infringement asserted against Lilith's game Soul Hunters with prejudice.  The entire Complaint fails against Lilith's game Soul Hunters because the Complaint does not contain sufficient factual allegations to state a claim for relief against Soul Hunters that is plausible on its face, as required by Federal Rule of Civil Procedure 12(b)(6).  As a result, Plaintiffs fail to allege factual allegations sufficient to reach the minimum pleading standard as against Defendant Lilith's game Soul Hunters.

Dated:    November 17, 2017                    Respectfully submitted,

**BAKER McKENZIE**
Colin H. Murray
Teresa H. Michaud

**BAKER McKENZIE**
W. Barton Rankin

By:  /s/ W. Barton Rankin
       W. Barton Rankin
       Attorneys for Defendant
       Lilith Games (Shanghai) Co. Ltd.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

# TABLE OF CONTENTS

**Page No.**

NOTICE OF MOTION AND MOTION

REQUESTED RELIEF

STATEMENT OF ISSUES TO BE DECIDED

MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION ................................................................................................................. 1

II.   BACKGROUND FACTS ...................................................................................................... 1

    A.    Plaintiffs were aware of Soul Hunters when this suit was initiated, but did not attempt to accuse that game of infringement in either their Original or First Amended Complaint. .................................................................................................. 1

    B.    After the FAC was filed, Plaintiffs learned through discovery that Lilith's game Dot Arena has little, if any, exposure under United States copyright law. ........ 2

    C.    With no justification for continuing to assert a claim against Dot Arena, Plaintiffs now seek to improperly expanding its allegations to Lilith's game Soul Hunters ..................................................................................................... 2

III.  ARGUMENT ......................................................................................................................... 5

    A.    A copyright claim should be dismissed if the claimant does not plead facts that would plausibly support a showing that constituent elements of the copyrighted work has been copied. ............................................................................... 5

    B.    Blizzard has not plead sufficient facts to plausibly state a claim for copyright infringement against Soul Hunters. ........................................................................ 6

        1.    Blizzard has failed to identify any allegedly infringed work. .......................... 6

        2.    Blizzard has failed to state a claim that Soul Hunters infringes any game that could be included within its definition of the Blizzard Works. ....................................................................................................................... 7

    C.    Valve has not plead sufficient facts to plausibly state a claim for copyright infringement against Soul Hunters ........................................................................ 10

        1.    Valve has failed to identify any allegedly infringed version of DotA. .......... 10

        2.    Valve has failed to state a claim of infringement against DotA or Dota 2 ....................................................................................................................... 11

    D.    Plaintiffs should not be given leave to amend their allegations yet again. ................ 14

IV.   CONCLUSION ................................................................................................................... 15

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

i

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ......................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................5

*Capcom U.S.A., Inc. v. Data E. Corp.*,
   No. C 93-3259 WHO, 1994 U.S. Dist. LEXIS 5306 (N.D. Cal. Mar. 16, 1994) ................. *passim*

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ......................................................................................5

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   No. 13-cv-01842-JST, 2014 U.S. Dist. LEXIS 75345 (N.D. Cal. June 2, 2014) ........................14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ......................................................................................5

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC*,
   183 F. Supp. 3d 820, 830 (S.D. Tex. 2016), 183 F. Supp. 3d ...........................................8, 13, 14

*DC Comics v. Towle*,
   802 F.3d 1012 (9th Cir. 2015) ..................................................................................12, 14

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2010) ....................................................................................14, 15

*Gorski v. Gymboree Corp.*,
   No. 14-cv-01314-LHK, 2014 U.S. Dist. LEXIS 97816 (N.D. Cal. Jul. 16, 2014) ............... *passim*

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................................5

## Statutes

17 U.S.C. § 101 ..............................................................................................................6

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

Case No. 3:15-cv-04084-CRB

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Should Blizzard Entertainment, Inc.'s ("Blizzard") and Valve Corporation's ("Valve") copyright infringement claims against Lilith's game Soul Hunters be dismissed?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Despite admittedly being aware of Lilith's game Soul Hunters when this lawsuit was filed over two years ago, Plaintiffs only now attempt to accuse Soul Hunters of copyright infringement in the Second Amended Complaint (the "SAC"). The SAC, however, contains the same fatal pleading deficiencies that resulted in the dismissal of the Original Complaint. (Ct's Order Granting Mot. to Dismiss at 6-11, ECF No. 35.) Specifically, Plaintiffs fail to allege facts that plausibly demonstrate that any element from its own works are copyrightable, and they certainly do not plead facts plausibly demonstrating that Soul Hunters as a whole is substantially similar to any of Plaintiffs games. Instead, Plaintiffs continue to rely solely on conclusory allegations of the same type that were already determined by this Court to be insufficient. (*See e.g.*, SAC ¶ 52, ECF No. 210.) Accordingly, any claim in the SAC against Soul Hunters should be dismissed without leave to amend.

## II.    BACKGROUND FACTS

### A.    Plaintiffs were aware of Soul Hunters when this suit was initiated, but did not attempt to accuse that game of infringement in either their Original or First Amended Complaint.

This action was filed on September 8, 2015. (Pls.' Compl., ECF No. 1.) At that time, in paragraph 7 of Plaintiffs' Original Complaint for Copyright Infringement, Plaintiffs acknowledged that Lilith released Soul Hunters in the United States. (*Id.* ¶ 7.) Soul Hunters, however, is not mentioned at any other point in the Original Complaint. Instead, Plaintiffs' infringement allegations against Lilith, contained in paragraphs 15-20, only referenced Lilith's game Dot Arena and another game titled Dao Ta Chaun Qi, released in 2014 in China. (*Id.* ¶¶ 16-17.) Notably, the Court dismissed the Original Complaint in its entirety, holding that Plaintiffs failed to state a claim for copyright infringement. (Ct.'s Order Granting Mot. to Dismiss at 6-11, ECF No. 35.) In that order, the Court set forth the standard for properly pleading a claim of copyright infringement, including

1

the threshold requirement that "to the extent that Plaintiffs accuse [Defendants] of copying Plaintiffs characters as well as settings, terrain, background art, and other assets, Plaintiffs must also demonstrate the copyrightability of these elements." (*Id.* at 7.)   While the Court held that the Original Complaint did not state a claim, the Court did give Plaintiffs leave to amend.

Plaintiffs then filed their First Amended Complaint (the "FAC") on January 8, 2016.  (ECF No. 36.)  Similar to the original complaint, other than a lone reference in the introduction, Plaintiffs do not mention Soul Hunters again in the FAC or accuse it of infringement. (*See* Ct.'s Order Denying Pls.' Mot. to Compel at 2, ECF No. 211.)   Rather, Plaintiffs continued to focus their allegations on Dot Arena.  (*See* FAC ¶¶ 31-32 & Exs. A-D, ECF No. 36.)

**B.    After the FAC was filed, Plaintiffs learned through discovery that Lilith's game Dot Arena has little, if any, exposure under United States copyright law.**

On May 24, 2017, Plaintiffs served their First Set of Interrogatories on Lilith, seeking certain development and financial information concerning Dot Arena.   (Rankin Decl. ¶ 2, submitted separately in support of this motion.)  In response, Lilith disclosed that, contrary to the unsupported allegations in the FAC, Dot Arena was actually developed and maintained entirely outside of the United States, and was released for users located in Southeast Asia. (*Id.*)  Thus, the vast majority of user activity concerning Dot Arena fell outside of the United States.  Moreover, Lilith also disclosed in its responses that, in the limited instances in which a user has logged in to play Dot Arena with a U.S. IP address, the revenues generated from such use have only been approximately $10,000.  (*Id.*) In fact, due to the lack of interest in Dot Arena, Lilith ceased making that game available to new users in August 2017. (*Id.*)

**C.    With no justification for continuing to assert a claim against Dot Arena, Plaintiffs now seek to improperly expanding its allegations to Lilith's game Soul Hunters.**

In the SAC, Plaintiffs admit that Soul Hunters is distinct from Lilith's other games, and as a result, any claim of copyright infringement as to Soul Hunters must be specific to the expressions in that game. In fact, Plaintiffs acknowledge, as they must, that Soul Hunters' expression of game elements is different.  (SAC ¶ 43, ECF No. 210) ("Soul Hunters is a 'reskin' or 'reimplementation' of Dota Legends – that is it is the same basic game as Dota Legends, but with **changes** to some of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

the games artwork and with some **additional, new, or different** heroes." (emphasis added))  Also, the images attached in Exhibits A and B to the SAC, further demonstrate the differences between Soul Hunters and Dot Arena.  For example, in Exhibit A, Plaintiffs compare images from Blizzard's alleged character Chen Stormstout to an alleged character from Dot Arena called Pandor.  (SAC Ex. A at 1, ECF No. 210.)  But no comparison is made between Chen Stormstout and a character from Soul Hunters.  (*Id.*)  In other words, Plaintiffs concede that the expressions from Dot Arena are not the same as those from Soul Hunters, as a review of Exhibits A and B further bear out.  Thus, allegations against Dot Arena are inapplicable to Soul Hunters and a claim of copyright infringement against Soul Hunters would necessarily have to be supported by separate factual allegations specific to that game.

Plaintiffs do not make a single specific allegation of infringement against Soul Hunters in the body of the SAC.  Instead, the SAC's section titled "Defendants' Infringement of Plaintiffs' Copyrighted Works," includes nothing but conclusory allegations.  In particular, at the outset of this section, Plaintiffs lump all of what they contend to be the accused games together in a conclusory definition of "Infringing Games."  (SAC ¶ 50, ECF No. 210) ("The Lilith Games and Heroes Charge (collectively the 'Infringing Games') are detailed audiovisual works that contain music, sound effects, artwork, digital character 'sprites' . . ., and animations.")  Despite acknowledging in the exhibits to the SAC that the expressions across the accused games are different, Plaintiffs make no effort to individualize or support their allegations with any factual detail in the body of the SAC.  (*See* SAC ¶¶ 52, 55, & 60, ECF No. 210.)  Rather, the SAC includes allegations that are substantively identical to the allegations that the Court already held to be insufficient.  (*See id.*; Ct.'s Order Granting Mot. to Dismiss at 6-11, ECF No. 35.)

Plaintiffs' only arguable attempt at factual support for their allegations is found in Exhibits A-D.  In particular, Plaintiffs contend that collectively the "Infringing Games" are substantially similar to only the following aspects of Plaintiffs' various, undefined games: Exhibit A – Visual Depictions of Heroes;  Exhibit B – Comparison of Hero Roles, Skills, and Abilities;  Exhibit C – Depictions of Locations and Landmarks;  and Exhibit D – Depictions of Icon Artwork.  (SAC ¶¶ 57-68, ECF No. 210.)  Even a cursory examination of these exhibits reveal that there are no

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

3

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

competent factual allegations asserted against Lilith's game Soul Hunters.  Taking Exhibits C & D first, Plaintiffs notably do not reference a single expression of any location, landmark, or icon from Soul Hunters in those exhibits.  (*Id.* Exs. C & D.)

Next,  Exhibit A consists only of bare photos of game characters allegedly appearing in one or more of Plaintiffs' and Defendants' games.  (*Id.* Ex. A.)  Contrary to the Court's previously order, there are zero allegations whatsoever concerning what is or is not allegedly protectable about these characters.[1]  (*See* Ct.'s Order Granting Mot. to Dismiss at 7-8, ECF No. 35.)  Further, there are only a relatively few images in Exhibit A that allege to be from Soul Hunters, and as is readily apparent from the following example, there are vast differences between the alleged character from Plaintiffs' alleged work and Soul Hunters:

**Plaintiffs' Game:**                     **Defendant's Game:**

"Heigan the Unclean" from World of Warcraft            "Lucius" from Soul Hunters
(Sprite and Hero Card)

The last of the exhibits, Exhibit B, is similarly lacking.  Plaintiffs allege in conclusory fashion that "many heroes in the Infringing Games are endowed with sets of in-game abilities and skills that are nearly identical to those possessed by the heroes features in DotA and Dota 2."  (SAC ¶60, ECF No. 210.)  Plaintiffs further allege that Exhibit B sets forth representative comparisons that allegedly support that conclusory allegation.  (*Id.* ¶ 61.)  But tellingly, Plaintiffs do not provide any allegation illustrating what the expression of these skills and abilities look like between the games in its Exhibit B.  Rather, Plaintiffs merely provide a written description of the ideas underlying the expression, which are unprotected.

---

[1] In the SAC "Plaintiffs allege that the similarities depicted in Exhibit A, attached hereto and incorporated by reference herein, are representative of Defendants' pervasive infringement of Plaintiffs games."  (Id. ¶ 58) (emphasis in original.)

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA  94111
+1 415 576 3000

4

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

Plaintiffs also tellingly do not provide any factual allegation regarding the overall look and feel of their alleged games as compared to Soul Hunters. Indeed, in a suit where the works at issue are the games as a whole, not individual characters, (*see* Ct.'s Order of 5/16/17 at 14, ECF No. 162), the absence of any such allegation is remarkable. But the explanation for that absence is simple. There is no credible argument that these games are substantially similar. (*See* Rankin Decl. ¶ 3.)

### III.    ARGUMENT

A.    **A copyright claim should be dismissed if the claimant does not plead facts that would plausibly support a showing that constituent elements of the copyrighted work has been copied.**

When determining a motion to dismiss for failure to state a claim, the Court accepts "all well-pleaded allegations of material fact and draws all reasonable inferences in favor of the non-moving party, but the Court is not required to accept as true allegations that contradict exhibits attached to the Complaint . . . or allegations that are merely conclusory." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Rather, the plaintiff must support each element of its claim with competent factual allegations demonstrating that the claim is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim for copyright infringement, Plaintiffs were required to plead sufficient facts to show (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. (Ct.'s Order Granting Mot. to Dismiss at 4, ECF No. 35;) *Gorski v. Gymboree Corp.*, No. 14-cv-01314-LHK, 2014 U.S. Dist. LEXIS 97816, at *9 (N.D. Cal. Jul. 16, 2014). Regarding the second element, the plaintiff was required to allege that "the infringer had access to the plaintiffs' copyrighted work and that works at issue are substantially similar." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). In the Ninth Circuit, courts apply both an extrinsic and an intrinsic test to determine substantial similarity. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007). The extrinsic test requires an analysis of whether the protected elements, if any, are substantially similar. *Id.* at 1133. In doing so, the Court filters out all non-protected elements, and conducts a comparison to determine whether substantial similarity exists regarding only the protectable elements. *Gorski*, 2014 U.S. Dist. LEXIS 97816, at *13 (citation omitted). Further, only elements of original expression are subject to copyright protection, as

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

opposed to ideas, rules, concepts, or game play mechanics.  *See Capcom U.S.A., Inc. v. Data E. Corp.*, No. C 93-3259 WHO, 1994 U.S. Dist. LEXIS 5306, at *33-35 (N.D. Cal. Mar. 16, 1994). Indeed, at the pleadings stage, the claimant must first plead sufficient facts demonstrating that the works contain protectable elements, and then plead sufficient facts demonstrating that the allegedly infringing works are substantially similar to those protected elements, as opposed to non-protectable elements. *Gorski*, 2014 U.S. Dist. LEXIS 97816, at *13-16.  It is also necessary to plead sufficient facts that would plausibly establish the intrinsic test, which is a subjective comparison of the two works from the perspective of an ordinary observer, focusing on the "total look and feel" of the two works.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).  Absent allegations that the extrinsic and intrinsic tests can be plausibly satisfied, the infringement claim should be dismissed.  *Gorski*, 2014 U.S. Dist. LEXIS 97816, at *13-16.

**B.    Blizzard has not plead sufficient facts to plausibly state a claim for copyright infringement against Soul Hunters.[2]**

**1.    Blizzard has failed to identify any allegedly infringed work.**

Before addressing Blizzard's allegations regarding Soul Hunters, or lack thereof, Blizzard has not even identified any individual work or game that it contends to be infringed standing alone. Under 17 U.S.C. § 101, "[w]here the work is prepared in different versions, each version constitutes a separate work." In view of that clear statutory language, which applies to the video games here, the Court held that the "works" at issue in this matter are not individual characters or compilations of various games considered together, but rather, the works at issue are the individual versions of Plaintiffs' alleged games.  (Ct.'s Order of 5/16/17 at 14, ECF No. 162.) Despite the Court's clear direction, Blizzard attempts to lump numerous disparate games into a single definition of "Blizzard Works," and then make sweeping allegations that the "Blizzard Works" are allegedly being infringed.  In particular, Blizzard gives the following definition to the term "Blizzard Works": "Blizzard is the owner of valid and subsisting copyrights in each of the Warcraft, Diablo, and Starcraft games (including Hearthstone and Heroes of the Storm) and in related products and

---

[2] In this motion, Lilith only challenges Plaintiffs' allegations as to the second element of their copyright infringement claim against Soul Hunters.  Lilith, however, in no way concedes that Plaintiffs can establish either element as to any of Lilith's games.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

merchandise (the 'Blizzard Works')."  (SAC ¶ 20, ECF No. 210.)  In the lone cause of action asserted against Lilith, Blizzard further makes the following conclusory allegations: "Lilith has infringed and is continuing to infringe, Blizzard's and Valve's copyrights by reproducing, adapting, distributing, publicly performing, and publicly displaying, and authorizing others to reproduce, adapt, distribute, publicly perform, and publicly display copyrighted elements of the ***Blizzard Works***."  (*Id.* at ¶ 74) (emphasis added.)  Blizzard's claim of copyright infringement against Soul Hunters should, thus, go no further, as Blizzard has failed to identify the copyrightable elements of any individual game, much less show how such elements are substantially similar to the expressions that make up Lilith's game Soul Hunters. *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *9-16.

### 2. Blizzard has failed to state a claim that Soul Hunters infringes any game that could be included within its definition of the Blizzard Works.

Blizzard attempts to lump the following series of games into its improperly vague definition: "Warcraft, Diablo, and Starcraft games (including Hearthstone and Heroes of the Storm)."  (SAC ¶ 20, ECF. No. 210.)  Taking what Blizzard refers to as its Diablo and Starcraft games first, it should be noted that in other portions of the SAC, Blizzard acknowledges that multiple versions of these games exist.  (*See* SAC ¶ 29, ECF No. 210) ("Blizzard is the owner of the games Diablo III and Starcraft II").  Yet, Blizzard never identifies specifically which version of those games is alleged to be infringed.  Instead, Blizzard, in essence, takes the improper position that all versions should be considered together.  Again, the Court has already rejected that argument. (Ct.'s Order of 5/16/17 at 14, ECF No. 162.)

Further, Blizzard does not assert any factual allegations to plausibly demonstrate that (1) any elements of these games are copyrightable, or (2) any expression from Soul Hunters is substantially similar to any protectable elements, or (3) that the total look and feel of the games are substantially similar.  (*See* Ct.'s Order Granting Mot. to Dismiss at 6-11, ECF No. 35);  *Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *8, 26-36.  In fact, the only specific allegations that Blizzard makes concerning those games are found in paragraph 29 of the SAC, in which Blizzard briefly describes certain characters allegedly named King Leoric the Skeleton King and Terran Marines.  (SAC ¶ 29, ECF No. 210.)  But Blizzard makes no allegation that any character from Soul Hunters is

7

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

substantially similar to any element of those identified from the Diablo and Starcraft games, much less substantially similar to any copyrightable elements.  *See Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at \*14-17, \*26-36.  Thus, Blizzard, failed to assert facts that plausibly state a claim that Soul Hunters infringes any version of Blizzard's alleged Diablo or Starcraft series of games, collectively or individually.

The same is true for Blizzard's alleged games Hearthstone and Heroes of the Storm.  The only allegations Blizzard makes that are specific to either Hearthstone or Heroes of the Storm are in the form of brief descriptions concerning the unprotectable concepts underlying the two games. (SAC ¶ 19, ECF No. 210); *cf. DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 830 (S.D. Tex. 2016), 183 F. Supp. 3d at 829-30 (holding that the only aspect of the plaintiff's card game that was entitled to significant copyright protection was the actual appearance of the characters and settings in which they interacted, not the rules of play).  Blizzard does not assert any factual allegations concerning how those games are actually expressed or what elements of such expression are allegedly the proper subject of copyright protection.  Blizzard certainly does not assert any allegations comparing any alleged copyrightable elements from Hearthstone and/or Heroes of the Storm to Soul Hunters.  Thus, again, Blizzard has failed to assert any factual allegations that would plausibly state a claim that Soul Hunters in any way infringes Hearthstone or Heroes of the Storm. *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at \*9-16.

Lastly, Blizzard's allegations concerning its Warcraft series of games similarly fail to state a claim of copyright infringement against Soul Hunters.  In particular, while paragraphs 21-28 of the SAC describe various alleged aspects of the Warcraft games, there is no allegation that any expression from any Warcraft game is substantially similar to any expression from Soul Hunters. (*See* SAC ¶¶ 21-28, ECF No. 210.)    For example, Blizzard points to the following characters as exemplary from its Warcraft universe:  Chen Stormstout, Illidan Stormrage, and Gul'dan.  (*Id.* at ¶ 25.)  Yet, Blizzard does not allege that any character actually expressed in the game Soul Hunters is substantially similar to any element, protected or unprotected, of those exemplary characters. Similarly, in Exhibits C and D, Blizzard unsuccessfully points to various locations, landmarks, and icons that it contends to be infringed.  (*Id.* ¶¶ 64-66.)  But Blizzard, in addition to not identifying any

Baker & McKenzie LLP
Two Embarcadero Center,
11th Floor
San Francisco, CA 94111
+1 415 576 3000

copyrightable elements, does not even reference Soul Hunters in those exhibits, much less allege that any landmark, location, or icon from Soul Hunters are copied from any allegedly protected image in any of Blizzard's Warcraft games. (SAC Exs. C&D, ECF No. 210.)

Blizzard's only other reference to Soul Hunters comes in the form of its comparisons of character images in Exhibit A to the SAC. As it relates to Soul Hunters, Blizzard includes four of its alleged character images across four separate games and compares those images to three character images from Soul Hunters and one Facebook advertisement. (SAC, Ex. A, ECF No. 210.) Ignoring the Court's previous order, Blizzard makes zero factual allegations concerning these character images, including what elements may allegedly be subject to copyright protection. *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *9-16. If anything, an examination of these works establishes non-infringement. *See id.* For example, Blizzard includes the following comparison in Exhibit A of its alleged character Heigan the Unclean from World of Warcraft to Lucius from Soul Hunters:

| **Plaintiffs' Game:** | **Defendant's Game:** |
|---|---|

  

**"Heigan the Unclean" from World of Warcraft**

**"Lucius" from Soul Hunters
(Sprite and Hero Card)**

Blizzard does not provide any threshold allegations regarding its character "Heigan the Unclean" as to what elements it alleges are subject to copyright protection, as opposed to unprotected elements, such as the idea of a bearded wizard character with robes and a staff. (*See* Ct's Order Granting Mot. to Dismiss at 7-8, ECF No. 35.) Without such threshold allegations, it cannot be determined whether a plausible claim has been stated as to whether the character from Soul Hunters is substantially similar to any allegedly copyrightable elements. *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *9-16. For that reason alone, this comparison of bare images cannot support

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

a claim for copyright infringement. *See id.*

While Blizzard's allegations are wholly lacking, it is readily apparent from these images that there cannot be a claim of copyright infringement either on the character level or certainly not the game of World of Warcraft as a whole. *See Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *48 (holding that two characters were not substantially similar to one another because they constituted different expressions of the same stereotype—a karate fighter.) In particular, the names of the characters are completely different, as is virtually every aspect of expression between the two. Lucius is expressed in a different manner physically, from a short "sprite" image to just an upper torso view in the "hero card." Lucius is wearing purple and black robes, while holding a crooked staff adorned with a skull in one hand and a spell book in the other. Further, Lucius is depicted with two horns actually growing from his head. In contrast, Blizzard's alleged character is wearing purple, gold, and red robes that are tapered and connected by a series of chains clasped together with skull emblems. Blizzard's alleged character is also holding a straight staff adorned with a yellow sphere in one hand and nothing in the other hand. Further, Blizzard's character is wearing an animal skull with horns as a helmet. Thus, many differences exist between these characters just based on these static images alone. *See id.* at *34 * 50-51 (finding no substantial similarity between characters where multiple distinctive elements from one character are absent from the other). The remaining character images suffer from the same fatal flaws, and those are each addressed in **Exhibit C** to the Rankin Declaration submitted in support of this motion.

At bottom, Blizzard has not presented any competent factual allegations that Soul Hunters infringes upon any protectable element of any of Blizzard's games. As a result, Blizzard has not stated a plausible claim of infringement against Lilith's game Soul Hunters, and any attempted claim in the SAC should be dismissed. *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *9-16.

### C.    Valve has not plead sufficient facts to plausibly state a claim for copyright infringement against Soul Hunters.

#### 1.    Valve has failed to identify any allegedly infringed version of DotA.

As the Court has already noted, there are hundreds of versions of DotA that have been released, and that it is only the individual versions of DotA that are the works at issue. (Ct.'s Order

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

of 5/16/17 at 14, ECF No. 162.)  Valve, however, attempts to extend its allegations of infringement to nothing more than "DotA," without identifying a particular version.  (SAC ¶ 74, ECF No. 210.)  Valve cannot be said to have asserted a plausible claim that Soul Hunters is substantially similar to DotA if it cannot even identify the version that is allegedly at issue.

        **2.**        **Valve has failed to state a claim of infringement against DotA or Dota 2.**

The allegations related to Valve's alleged works, DotA and Dota 2, fail to state a claim of copyright infringement against Lilith's game Soul Hunters.  If anything, Valve's allegations establish non-infringement.  *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *10.  Like its co-Plaintiff, Valve tellingly does not make any allegation that the "look and feel" of any version of DotA or Dota 2 is substantially similar to the "look and feel" of Soul Hunters.  Valve also makes no allegation that any settings, icons, or locations within any version of DotA or Dota 2 are substantially similar to those expressed within Soul Hunters.  As explained above, Exhibit D to the SAC lists a number of allegedly representative icons that are expressed in one or more unidentified versions of DotA and/or Dota 2 over which Valve contends in conclusory fashion to maintain copyright protection.  Yet, in this exhibit, Valve does not compare a single image from DotA or Dota 2 to any icon or image expressed in Soul Hunters.  (*See* SAC Ex. D, ECF No. 210.)  Thus, Valve, like Blizzard, cannot rely on Exhibit D to support a claim of copyright infringement against Soul Hunters.

Similarly, Valve points to the following characters that allegedly appear in an unidentified version(s) of Dota 2 as exemplary of the characters allegedly being copied:  Barathium the Spirit Breaker, Luna the Moon Rider, and Mogul Khan the Axe.  (SAC ¶ 36, ECF No. 210.)  But with the exception of Luna the Moon Rider, which is addressed below, Valve does not allege that any character in Soul Hunters is substantially similar in any way to Barathium the Spirit Breaker or Mogul Khan the Axe.  Simply put, Valve does not make a single allegation in the body of the SAC concerning any specific expression from Soul Hunters that Valve contends is substantially similar to a protectable expression from DotA or Dota 2.  *See Gorski*, 2014 U.S. Dist. LEXIS 97816, at *9-16.

Rather, Valve only references Soul Hunters expressly in Exhibits A and B attached to the SAC.  In Exhibit A, Valve only references the character "Alana the Dark Assassin" from Soul Hunters and "Lanaya the Templar Assassin" allegedly from Dota 2 through the following bare

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

character images:

**Plaintiffs' Game:**                                        **Defendant's Game:**

            

"Lanaya the Templar Assassin" from Dota 2          "Alana the Dark Assassin" from Soul Hunters
                                                        (Sprite and Hero Card)

Similar to Blizzard's insufficient comparisons, Valve does not provide any allegations concerning what constitutes the allegedly protectable elements from the character "Lanaya the Templar Assassin." Valve also fails to allege any facts regarding this character and how it would satisfy the three-part test from *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015), including the requirement that the "character must be sufficiently delineated to be recognizable as the same character whenever it appears." *Id.* at 1021. In fact, on the same page as Exhibit A, Valve discloses an alleged image from a version of DotA of a character titled "Lanaya the Templar Assassin" that looks vastly different from the expression disclosed in Dota 2. (SAC Ex A, ECF No. 210). Thus, Valve has failed to assert any factual allegations concerning this character for the Court to begin an analysis of whether a plausible claim of copyright infringement has been made on the character level, much less a claim of infringement regarding the entire work of Dota 2 that is at issue. (*See* Ct.'s Order of 5/16/17 at 13-14, ECF No. 162;) *see Gorski*, 2014 U.S. Dist. LEXIS 97816, at *15-16.

Moreover, the only logical conclusion that could be drawn from a visual comparison of the images from Exhibit A is that there can be no plausible claim of copyright infringement stated by Valve against Soul Hunters. Specifically, the image of "Alana the Dark Assassin" as Valve alleges it to appear in Soul Hunters is wearing a purple two-piece outfit with shoulder armor extending down over the arms and a cape. (SAC, Ex. A at 14, ECF No. 210.) The character as it is alleged to appear in Soul Hunters is also carrying a dagger in one hand and nothing in the other. (*Id.*) In contrast, "Lanaya the Templar Assassin" as allegedly expressed in Dota 2 is wearing a green and pink collar that extends over the shoulders and flares in an upward direction. This character is also

12

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

1    wearing a green and gold colored dress and boots, and appears to have some sort of mystical fog

2    coming from both hands as they are extended.  Based on these differences alone, there can be no

3    plausible claim of copyright infringement on any level, especially given the lack of competent

4    factual allegations on the subject. *See Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *34-35.

5           Valve's comparisons from Exhibit B are similarly insufficient to state a claim.  In Exhibit B,

6    Valve compares six characters from some version of Dota and/or Dota 2 to a character as it allegedly

7    appears in Soul Hunters.  According to the SAC, Exhibit B is intended to show the similarities in the

8    special abilities or skills of characters from DotA and/or Dota 2 as compared to an allegedly

9    infringing character from an accused game.  (SAC ¶¶ 60-62, ECF No. 210.)  The idea or concept

10   underlying a character's special ability or skill, however, is not protectable.  *See DaVinci Editrice*

11   *S.R.L.*, 183 F. Supp. 3d at 825, 833.  Rather, it is only the expression of these special moves that may

12   be the subject of copyright protection.  *Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *43-46.

13   Thus, for Valve to rely upon the special moves of one or more characters, it was incumbent on Valve

14   to assert facts showing how these are expressed in DotA and/or Dota 2, as well as how the

15   expressions from Soul Hunters are substantially similar to any allegedly protectable elements.  (Ct.'s

16   Order of 12/8/15, ECF No. 35.)  Valve's Exhibit B falls short. For example, Valve presents the

17   following descriptions:

<table>
<tr><td align="center"><u>**Plaintiff's Game:**</u></td><td align="center"><u>**Defendant's Game:**</u></td></tr>
</table>

 



"Luna the Moon Rider" as featured in DotA and Dota 2

Luna the Moonrider is a female ranged hero who rides a dark, armored, sabre-toothed cat and who attacks by throwing a glaive weapon that hits multiple enemies at once and by controlling the power of the moon.

Her in-game skills include the abilities to (1) call down a beam of lunar energy, causing damage to the enemy; (2) empower her glaive to jump from one enemy to another (with the damage dealt decreasing per jump), thereby striking multiple opponents per attack; (3) passively increase the attack damage of her and her allies; and (4) call down barrage of lunar energy attacks, striking random nearby enemies and causing damage.

"Sarya" from Soul Hunters

Sarya is a female "middle line" hero who rides a dark, armored, sabre-toothed cat, who attacks by throwing a glaive weapon that hits multiple enemies at once, and by "summon[ing] beams of scorching light that shine from above" to "obliterate her enemies."

Her in-game skills include the abilities to (1) call down a beam of light, causing damage to the enemy; (2) empower her glaive to jump from one enemy to another (with the damage dealt decreasing per jump), thereby striking multiple opponents per attack; (3) passively increase the attack damage of her and her allies; and (4) call down a barrage of light beams, striking random nearby enemies and causing damage.

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

13

Case No. 3:15-cv-04084-CRB
NOTICE OF MOTION AND MOTION BY DEFENDANT LILITH TO DISMISS SECOND AMENDED COMPLAINT; MEMO IN SUPPORT
876334-v6\DALDMS

(SAC Ex B at 2, ECF No. 210.)  First, it should be noted that visually, these characters are very different.  In fact, there are vast differences in how the character titled "Luna the Moon Rider" appears even in Valve's own alleged works.  *See DC Comics*, 802 F.3d at 1021.  When comparing either of Valve's alleged versions to the differently named "Sarya" as allegedly appearing in *Soul Hunters*, it is also readily apparent that they are expressed in different sizes, their costumes are different in color and appearance, as is the weapon being held by the respective characters.  Further, in describing "Luna the Moon Rider" in the body of the SAC, Valve alleges that this character has purple armor, a distinctive headdress, and commands the power of the moon.  (SAC ¶ 36, ECF No. 210.)  The expression of Sarya from *Soul Hunters* does not share any of those characteristics.  *See Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *34-35.

Valve has also wholly failed to allege any competent factual allegations concerning the expression of the in-game skills that are used by these two characters.  Valve has failed to allege any facts showing how these skills are expressed within the respective games or what portions of such skills Valve alleges to be subject to copyright protection.  *See DaVinci Editrice S.R.L.*, 183 F. Supp. 3d at 825, 833; *Capcom U.S.A., Inc.*, 1994 U.S. Dist. LEXIS 5306, at *34-35.  Without such allegations, Valve cannot rely on Exhibit B to in any way state a claim for copyright protection, as this Court has already held.  (Ct.'s Order of 12/8/15 at 7, ECF No. 35.).  The remaining comparisons from Exhibit B as they relate to *Soul Hunters* suffer from the same fatal flaws, which are further detailed in **Exhibit D** to the Rankin Declaration submitted in support of this motion.

Plaintiffs have simply not alleged sufficient facts to state a claim of copyright infringement against Lilith's game *Soul Hunters*.  As a result, any such claim set forth in the Second Amended Complaint should be dismissed in its entirety.

### D.    Plaintiffs should not be given leave to amend their allegations yet again.

While leave to amend shall be granted when justice requires, courts may exercise their discretion to deny such leave if, for example, the plaintiff has been previously granted leave, but fails to cure its pleading deficiencies.  *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2010); *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 U.S. Dist. LEXIS 75345, at *9-16 (N.D. Cal. June 2, 2014).  Leave should be denied here. Despite being very aware that Soul

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Hunters was Lilith's only game released in the United States when this lawsuit was filed, Plaintiffs made the conscious decision not once, but twice, to exclude it from any infringement allegations. (*See* Ct.'s Order Denying Pls.' Mot. to Compel at 2, ECF No. 211.)  Plaintiffs cannot credibly justify their delay in attempting assert a claim against Soul Hunters.

Additionally, Plaintiffs have shown that they are incapable of asserting a plausible claim of copyright infringement against Soul Hunters.  Plaintiffs have already had one complaint dismissed because its allegations were not sufficiently supported.  (Ct.'s Order Granting Mot. to Dismiss 6-11, ECF No. 35.)  As set forth above, despite having public access to Soul Hunters for years, Plaintiffs repeat those same mistakes again.  There is nothing to suggest that giving Plaintiffs yet another bite at the apple will render different results.  Accordingly, this motion should be granted, and Plaintiffs claim(s) against Soul Hunters should be dismissed with prejudice.  *See Destfino*, 630 F.3d at 959.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Lilith Games (Shanghai) Co. Ltd., respectfully requests that the Court grant this Motion and dismiss with prejudice all claims of copyright infringement asserted by Plaintiffs against Lilith's game Soul Hunters.


Dated:    November 17, 2017                    Respectfully submitted,

                                              **BAKER McKENZIE**
                                              Colin H. Murray
                                              Teresa H. Michaud

                                              **BAKER McKENZIE**
                                              W. Barton Rankin


                                              By: _/s/ W. Barton Rankin_____
                                                  W. Barton Rankin
                                                  Attorneys for Defendant
                                                  Lilith Games (Shanghai) Co. Ltd.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000