May 30, 2018

**Via ECF**

The Honorable Jacqueline Scott Corley
United States District Court Magistrate Judge
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Blizzard Entertainment, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, No. 3:15-cv-04084-CRB-JSC:  Joint Letter Regarding Plaintiffs' Motion to Compel Deposition

Dear Judge Corley:

Plaintiffs Blizzard Entertainment, Inc. and Valve Corporation and Defendant Lilith Games (Shanghai) Co. Ltd. ("Lilith") submit this joint letter seeking resolution of a dispute regarding the location for the deposition of Lilith's corporate designee(s) pursuant to Fed. R. Civ. P. 30(b)(6).

## Plaintiffs' Statement

**Background of Dispute.**  This action arises from Lilith's creation and distribution of certain mobile games (the "Lilith Games"), including games that it has ***admitted*** were copied from Plaintiffs' games.  (Mayer Ex. 4.)  Though Lilith is based in Shanghai, China, the Lilith Games were distributed worldwide on ***U.S.-based*** platforms (namely, the Apple iTunes Store and Google Play Store), marketed and advertised on ***U.S.-based*** social networks (including Facebook and Twitter), and made available to the public through servers located in the U.S.

Plaintiffs seek by this motion to enforce a Notice of Deposition of a Lilith ***corporate designee*** in California.  (Mayer Ex. 1).  Plaintiffs' Notice seeks corporate testimony about basic facts, such as the design, creation and development of the Lilith Games; the distribution of the Lilith Games; and Lilith's profits.  Plaintiffs have agreed that Lilith may choose between the Bay Area or Los Angeles and have agreed to share the cost of witness travel.  Lilith, however, has refused to make a corporate representative available for deposition in California and demanded that any depositions take place in ***Hong Kong*** (a three-hour flight from Shanghai and 15 hour flight from California) – even though Lilith is ***not located there***, this case is pending in California, and all lawyers are located in or have an office in California.

Lilith's refusal to make a witness available in this District is wholly unjustified.  Lilith does extensive business in the United States and consistently has availed itself of the U.S. court system.  Indeed, Lilith requires its users to agree that any disputes relating to certain mobile applications be brought in "***state and federal courts located in San Francisco, California***," and that "each of the parties hereto waives any objection to jurisdiction and venue in such courts." (Mayer Ex. 3.)  It was ***Lilith*** that initially sued uCool in California in 2015.  It distributed the Lilith Games to thousands of U.S. users.  It received millions of dollars in U.S. revenue.  It entered into distribution agreements with Apple and Google in California.  It marketed its games in California.  Lilith's representatives also have traveled to the United States no fewer than ***three times*** during the pendency of this lawsuit, including for business meetings and mediations.  By contrast, travel to Hong Kong will be enormously expensive, time-consuming, and burdensome for ***all*** counsel.  And, Hong Kong is not even where Lilith is based; it is an arbitrary location

chosen just because it is more convenient than the U.S. for Lilith (and no one else).[1]  Finally, if Lilith's corporate witnesses are well-prepared on critical issues, then the need for additional individual depositions may be obviated.  Or, at minimum, Plaintiffs will be able to more effectively ascertain what depositions they actually need and avoid wasting time.

**The Court Should Order That The Deposition Take Place In The United States.**  Because Lilith is based in mainland China (where civil depositions are not permitted under the law), it ***cannot*** be deposed at its principal place of business.  Thus, this Court need not give deference to Lilith's preferred location.  *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628-29 (C.D. Cal. 2005) ("*Cadent*").  Moreover, where, as here, a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has taken advantage of the Federal Rules pertaining to discovery, courts will require its witnesses to be deposed in the United States.  *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000).  Designees of foreign corporations often are compelled to appear for deposition on American soil.  *See, e.g., Corning Optical Communs. Wireless Ltd. v. Solid, Inc.*, 2015 U.S. Dist. LEXIS 71889 (N.D. Cal. Feb. 12, 2015) (foreign corporate deposition ordered to take place in San Francisco); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2008 U.S. Dist. LEXIS 019319 (N.D. Cal. Apr. 15, 2008) (French designee ordered to travel to California); *Dean Foods Co. v. Eastman Chem. Co.*, 2001 U.S. Dist. LEXIS 25447 (N.D. Cal. Aug. 13, 2001) (Japanese designee).

To determine whether a foreign entity's designee should be compelled to testify in the United States, courts weigh the following five *Cadent* factors (232 F.R.D. at 628-29)***, all*** of which favor a California deposition:

**1.      Location of Counsel.**  The lawyers for this case are in Los Angeles and Dallas.  Should the depositions proceed in Hong Kong, counsel for ***both parties*** will face costly international travel and several days abroad.  Documents will need to be shipped overseas, and arrangements must be made for conference room facilities.  Plaintiffs conservatively estimate that the cost for just one attorney and one paralegal could exceed $60,000.  Plaintiffs will agree to share the cost of travel to California for Lilith's representatives, which will be much less expensive.

**2.      Number of Representatives.**  Despite Plaintiffs' repeated requests, Lilith has not disclosed the number of corporate representatives it intends to offer.  Plaintiffs anticipate that the topics could be covered by no more than two or three representatives, and have offered to discuss narrowing the scope of their deposition topics to minimize the number of representatives.  If Lilith's witnesses are well-prepared, competently testify on the topics, can authenticate and explain key documents, and can identify relevant witnesses, it is possible that additional depositions can be avoided (or at least minimized).  Otherwise, there is a risk that Plaintiffs will travel to Hong Kong only to learn that they have not noticed the right witnesses.

**3.      Resolution of Discovery Disputes.**  Where there is great distance between a deposition and a court which must resolve discovery disputes, the court's ability to do so is seriously impaired.  *Dean Foods Co. v. Eastman Chem. Co.*, *supra*, 2001 U.S. Dist. LEXIS 25447 at *19; Thus, if disputes are likely to occur, courts will order that the deposition take place in the forum where the case is pending.  *Dean Foods Co.*, 2001 U.S. Dist. LEXIS 25447 at *23.  As the Court is aware, this has been a contentious case.  Plaintiffs have already been in front of this Court several times and anticipate that the deposition will invite further disputes.  Indeed, Lilith is already balking at Plaintiffs' request for additional deposition time because an interpreter must be used.  If the depositions take place in Hong Kong, the parties will be unable to contact the

---

[1]  While the parties initially discussed scheduling depositions in Hong Kong, Lilith did not provide deposition dates or the names of its designees.  After research, Plaintiffs determined that given the burden and prejudice of Hong Kong depositions they were entitled to have Lilith's corporate designee sit for deposition in the United States and thus re-noticed the depositions in California.  Mayer Ex. 1.

Court due to the significant time difference. Moreover, if the Court orders the deposition to proceed in Hong Kong, it will be compelling discovery on foreign soil, implicating international comity concerns. *In re Honda American Motors Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535 (D. Md. 1996).

**4.     Business Travel.**  When a foreign defendant has reached into a forum to conduct business it should be compelled to appear for deposition in that forum. *SEC v. Banc de Binary*, 2014 U.S. Dist. LEXIS 34373 (D. Nev. Mar. 14, 2014). In addition to Lilith's extensive business in California and with California-based entities, individuals associated with Lilith travel to the United States regularly when it is in *their* interests. For instance, Lilith representatives attended the Game Developers Conference in San Francisco in 2017 and 2018, and likely in 2016 as well. (*See* Mayer Ex. 2.) Mr. Wang also traveled to San Francisco for a mediation in the Lilith/uCool action, and to Valve's offices in 2016 to discuss another lawsuit. Since Mr. Wang is the CEO of a company that releases games in numerous international markets, it is not unfair to require him or his company to send a representative to the U.S.

**5.     Equities**.  Lilith has made millions of dollars exploiting mobile games that it *admits* were copied from Plaintiffs' games, knowing that Plaintiffs are U.S. companies. Lilith also directly injected itself into the U.S. when it entered into contracts with Google, Apple, Facebook, and Twitter; uploaded its content to a U.S. server; hired U.S. lawyers to *file a lawsuit* (and seek injunctive relief) against uCool in this forum; and demanded that users of its apps and related services to agree to a California forum-selection clause. Lilith's demand that Plaintiffs must send their lawyers to Hong Kong – *which is not even its residence* – for *any* deposition just compounds the injury to Plaintiffs, forcing them to unnecessarily spend tens of thousands of dollars and go to an arbitrary location just to obtain basic testimony. Interests of fairness dictate that the deposition take place in California.

Plaintiffs respectfully request that the Court enforce the Amended Notice of Deposition.

### Lilith's Statement

**Background of Dispute.**  The parties previously agreed that the depositions of Lilith's employees, in their individual and corporate representative capacities, would be taken in Hong Kong. (Rankin Decl. ¶¶ 2-4.) Hong Kong was chosen because it is convenient to Lilith's Shanghai headquarters, but is not subject to China's legal restrictions on conducting depositions. (Rankin Decl. ¶¶ 2-4.) Plaintiffs' counsel agreed to that location, and as evidence of that agreement, Plaintiffs served 7 deposition notices—one 30(b)(6) notice and six individual notices—all of which were noticed to take place in Hong Kong. (Rankin Decl. ¶ 3, Ex. 1.) Now, Plaintiffs seek to undue that agreement for only Lilith's employees that will be deposed in their corporate capacities. Plaintiffs' motion, if granted, would not result in a decrease to their discovery expenses, but would significantly increase the discovery burden on Lilith. (Rankin Decl. ¶ 6.) In particular, Plaintiffs noticed six other individual depositions to occur in Hong Kong. (Rankin Dec. ¶ 3, Ex. 1.) Thus, the parties will be conducting depositions in that location and incurring the related expense for doing so, regardless of the outcome of Plaintiffs' motion. Accordingly, the relief now sought by Plaintiffs would not alleviate their need to incur any of the expenses described in their statement above. Rather, the only result of Plaintiffs' motion, if granted, would be to unnecessarily increase the expense and business disruption to Lilith. To avoid such an inefficient and inequitable outcome, the parties should simply conduct Lilith's 30(b)(6) deposition in Hong Kong at the same time they are conducting the depositions of Lilith's employees in their individual capacities.

**The 30(b)(6) Depositions Should be Conducted in Hong Kong.**  "There is a general presumption that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." *Imageware Sys. v. Fulcrum Biometrics, Ltd. Liab. Co.*,

No. 13CV936-DMS(JMA), 2014 U.S. Dist. LEXIS 193601, at *5 (S.D. Cal. Nov. 25, 2014). With that presumption as a starting point, courts further consider the following factors: (1) the location of counsel for the parties in the forum district; (2) the number of corporate representatives a party is seeking to depose; (3) the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; (4) whether the persons sought to be deposed often engage in travel for business purposes; and (5) the equities with regard to the nature of the claim and the parties' relationship. *See id.* (citing *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628-29 (C.D. Cal. 2005)). In this case, the *Cadent* factors demonstrate that Hong Kong is the proper venue for the Lilith's 30(b)(6) depositions. Indeed, California courts applying the *Cadent* factors to facts similar to those present here have found a foreign venue to be more appropriate than California. *See id.* at *6-9; *see also Finjan, Inc. v. ESET, LLC*, No. 17CV183 CAB (BGS), 2017 U.S. Dist. LEXIS 197466, at *4-6 (S.D. Cal. Nov. 29, 2017); *see also Shinde v. Nithyananda Found.*, No. ED CV 13-363-JGB (SPx), 2015 U.S. Dist. LEXIS 189257, at *13-15 (C.D. Cal. May 21, 2015).

**Location of Counsel.** Here, Plaintiffs' attorneys are located in Los Angeles, the place where it seeks to compel the depositions. Lilith's primary counsel who will attend the depositions, however, is located in Dallas, Texas. (Rankin Decl. ¶ 6.) Thus, not all necessary counsel reside in California. And it would not be proper to force all other interested parties to travel from Dallas and Shanghai, respectively, just to accommodate Plaintiffs' attorneys. This is especially true here where the parties are going to incur the expense of taking depositions in Hong Kong regardless of the outcome of this motion. Because of that, Plaintiffs' representation that taking Lilith's 30(b)(6) depositions in California "will by much less expensive" is simply not accurate. Moreover, Plaintiffs make no effort to substantiate their expenses with any evidence or show what portion of those expenses would be incurred irrespective of the location of the deposition. In contrast to Plaintiffs' inaccurate and unsubstantiated claims, the motion, if granted, will directly increase the cost of discovery to Lilith significantly. (Rankin Decl. ¶ 6.) Plaintiffs, as a result, have not shown that this factor weighs in favor of granting their motion. *See Imageware Sys.*, 2014 U.S. Dist. LEXIS 193601, at *5.

**Number of Corporate Representatives to be Deposed.** Lilith anticipates that it will present *at least* two or three corporate representatives to testify in response. Given the subject matter of the noticed topics, personnel integral to Lilith's day-to-day operations will have to sacrifice valuable work hours. Moreover, since each deponent would be responsible for only a portion of the 30(b)(6) topics, each deponents' deposition could be only a few hours. On balance, it is excessive and unreasonable to have these deponents travel to California and miss several work days for a few hours of testimony. *Finjan*, 2017 U.S. Dist. LEXIS 197466, at *4-5; (*see* Rankin Decl. ¶ 6.) Accordingly, this factor weighs against Plaintiffs' motion.

**Likelihood of Discovery Disputes.** "[O]nly disputes *requiring judicial intervention* weigh[] on the side of having the deposition in the forum district." *Imageware*, 2014 U.S. Dist. LEXIS 193601, at *7 (emphasis original). "The central question is whether the parties' discovery conduct suggests that they or the deponents will be uncooperative or obstructionist if the depositions occur in the corporate employer's country." *Id.* "It is exceedingly rare for a dispute to arise that *requires* the need for judicial intervention *during* the course of the deposition." *Id.* at *8 (emphasis added).[2] While this case may have had its share of contention, that contention has largely existed between Plaintiffs and *uCool*, not Lilith. Plaintiffs and Lilith have enjoyed a

---

[2] Plaintiffs' conclusory argument concerning issues of comity is without merit for at least three reasons: (1) Lilith's presence at the depositions in Hong Kong would be voluntary, so the court would *not* be compelling Lilith's testimony on foreign soil by deciding that Hong Kong is the proper venue, (2) voluntary depositions in Hong Kong are *permissible*, and (3) courts routinely decide that certain corporate depositions should be conducted outside the U.S. *See Imageware*, 2014 U.S. Dist. LEXIS 193601, at *6-9; *see also Finjan*, 2017 U.S. Dist. LEXIS 197466, at *4-6.

A972150.2/46804-00001

relatively cordial relationship for adverse parties and have not been unreasonably uncooperative or obstructionist. Accordingly, this factor also weighs against Plaintiffs' motion.

**Whether the Deponents Often Travel for Business.** "The inquiry with regard to business travel should not focus on whether the *deponent* is a frequent traveler in general, but instead focus on *that deponent's* travel history to the forum where the adverse party seeks to conduct the deposition." *Imageware* at *8 (emphasis added). Here, Plaintiffs seek to conduct their 30(b)(6) depositions in California and, for this factor, they rely exclusively on the travel history of Mr. Wang, Lilith's CEO, and the purported attendance of *unidentified* "Lilith representatives" at a video game conference in San Francisco. Put simply, Mr. Wang is not going to testify on behalf of Lilith in response to Plaintiffs' 30(b)(6) deposition notice. (Rankin Decl. ¶ 4.) Plaintiffs nevertheless use his travel history as a basis for compelling multiple Lilith corporate representatives that reside in Shanghai to appear in California when, as in *Imageware*, there is nothing in the record to suggest that any of the potential deponents travel often to the United States, let alone to California. Accordingly, this factor weighs against Plaintiffs' motion. *See id*.

**Equities Regarding Nature of the Claim and Parties' Relationship.** Plaintiffs contend that the equities weigh in their favor by arguing that Lilith has conducted business in the United States, and claiming that Lilith "admits" copying from Plaintiffs' games. Lilith wholly disagrees that it has admitted to copying Plaintiffs' claims. While space does not permit a full non-infringement analysis here, Plaintiffs tellingly omits the fact that this document, from which it only submits a small excerpt, refers to a game not accused in this matter. (Rankin Decl. ¶ 7.) Plaintiffs further omit other portions of this document reflecting the expression of Lilith's game, which is significantly different from Plaintiffs' games in every meaningful way. Moreover, all of Lilith's games were originally developed outside the U.S. While Soul Hunters was released for the U.S. market, all of Lilith's other games have been maintained outside of, marketed to, and distributed in territories outside the U.S. These are contentious matters central to the parties' underlying dispute, and they certainly do not tip the equities in Plaintiffs' favor on the issue of deposition location.

On the other hand, when considering the equities as they relate to the location of Lilith's corporate representative depositions, this factor, like all others, weighs against Plaintiffs. Without question, compelling Lilith's representatives to travel to California will have more of a significant impact on Lilith than ordering these depositions to occur in Hong Kong. Indeed, accounting for travel, deposition preparation, and one day of deposition, each representative could miss *at least* four days of work—amounting to 12 lost employee work days for Lilith. (Rankin Decl. ¶ 6.) Coupled with the fact that counsel for *all* parties will already have to travel to Hong Kong for the depositions Plaintiffs intend to take of Shanghai residents, it is clear that Plaintiffs' efforts to compel Lilith to make its representatives available in California serve only to unnecessarily multiply costs for Lilith and, in fact, results in a *less efficient* process than simply conducting all of depositions on the trip to Hong Kong that *all* parties already have to make. Accordingly, as a matter of fundamental fairness and efficiency, this factor weighs squarely against Plaintiffs' position and its motion should be denied.

## Plaintiffs' Reply Statement

Lilith ignores key facts, including that (1) Lilith has made millions of dollars from conduct in the United States, (2) Lilith filed a lawsuit in this Court, (3) Lilith requires its users to litigate claims against it here. Lilith also cannot seriously dispute that it knowingly used Plaintiffs' intellectual property in the game "apps" *at issue*, because it has conceded they are the ***same game*** as the Chinese "Dao Ta Chuan Qi." *See, e.g.,* Dkt. 216-3 (2017 interrogatory responses).

Lilith also overstates the burden to Lilith, and ***never identifies*** who its proposed designees will

5
A972150.2/46804-00001

be. Lilith never explains why Mr. Wang (who travels here, and signed or is named on Lilith's contracts) and/or its CFO Sherry Hu (who also travels here, and is the sole custodian of its financial documents) will not be corporate designees, obviating the need for separate individual depositions. Plaintiffs are prepared to work with Lilith to minimize burden, and if Lilith designates appropriate and knowledgeable witnesses, ***there may be no need for a trip to Hong Kong***. The cases Lilith cites are distinguishable. In *Imageware* and *Finjan*, litigants sought depositions of *five* and *nine* designees, none of which regularly traveled to the United States. In *Shinde*, the plaintiff sought to depose *individuals*, not designees.

Finally, there was no binding agreement on the deposition location. Plaintiffs noticed depositions in Hong Kong for ***early June***. Lilith ***refused*** to make any witnesses available then, and ***never*** committed to ***any*** alternative dates: thus, no depositions will be going forward as noticed. Since Lilith would not comply with the initial 30(b)(6) notice, Plaintiffs withdrew it and re-noticed the deposition for California. Lilith ***still*** has not committed to or provided dates for ***any*** depositions, and has not been prejudiced by the location change.

Respectfully submitted,

| MITCHELL SILBERBERG & KNUPP LLP | BAKER & McKENZIE LLP |
|---|---|
| By: */s/ Marc E. Mayer*<br>Karin G. Pagnanelli<br>  kpg@msk.com<br>Marc E. Mayer<br>  mem@msk.com<br>Emily Evitt<br>  efe@msk.com<br>11377 West Olympic Boulevard<br>Los Angeles, CA 90064-1683<br>Telephone: (310) 312-2000<br>Facsimile: (310) 312-3100<br><br>*Attorneys for Blizzard Entertainment, Inc. and Valve Corporation* | By: */s/ W. Barton Rankin*<br>W. Barton Rankin<br>  bart.rankin@bakermckenzie.com<br>1900 N. Pearl Street, Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-3000<br>Facsimile: (214) 307-6674<br><br>*Attorneys for Lilith Games (Shanghai) Co. Ltd.* |

## **SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from W. Barton Rankin.

By: */s/ Marc E. Mayer*          .

Dated: May 30, 2018